**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>          v.<br><br>GODIVA CHOCOLATIER, INC. and DOES 1 through 50,<br><br>          Defendants. | Civil Action No.: 1:19-cv-00972-AJN<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Steve Hesse and Adam Buxbaum ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action against Godiva Chocolatier, Inc. and DOES 1 through 50 (collectively, "Godiva" or "Defendant"), seeking monetary damages, injunctive relief, and other remedies. Plaintiffs make the following allegations based on the investigation of their counsel and on information and belief, except as to allegations pertaining to Plaintiffs individually, which are based on their personal knowledge.

## **INTRODUCTION**

1.    Plaintiffs bring this consumer protection and false advertising class action lawsuit against Godiva based on its false and deceptive packaging and advertising practices with respect to a number of its chocolate products manufactured and sold in the United States bearing a "Belgium 1926" statement on the label (the "Godiva Chocolate(s)" or "Product(s)").

2.    At all relevant times, Godiva has prominently displayed the "Belgium 1926" representation (the "Belgium Representation") on the front packaging of all the Godiva Chocolates, representing that the Godiva Chocolates are made in Belgium.

3.      Godiva also extensively utilizes the Belgium Representation across its entire marketing campaign, such as on its Godiva storefronts, supermarket display stands, and print and social media advertising.

4.      Godiva intentionally plays on the false impression that the Godiva Chocolates are made in Belgium and then imported to the United States, in order to enhance the image of Godiva Chocolates as luxury chocolates.  It does this because Belgian chocolates are widely known to be among the highest quality in the world.

5.      However, unbeknownst to consumers, the Godiva Chocolates are not made in Belgium as represented.   Rather, all of the Godiva Chocolates are made in Reading, Pennsylvania.

6.      Plaintiffs and other consumers purchased the Godiva Chocolates relying on Godiva's Belgium Representation and reasonably believing that the Godiva Chocolates are in fact made in Belgium.

7.      Had Plaintiffs and other consumers known that the Godiva Chocolates were not made in Belgium, they would not have purchased them, or would have paid significantly less for them.  Therefore, Plaintiffs and consumers have suffered injury in fact as a result of Godiva's deceptive practices.

8.      Plaintiffs bring this class action lawsuit on behalf of themselves and all others similarly situated. Plaintiffs seeks to represent a Nationwide Class, a New York Subclass, a California Subclass, and a California Consumer Subclass (defined *infra* in paragraph 39) (collectively referred to as the "Classes").

9.      Plaintiffs, on behalf of themselves and other consumers, are seeking damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate.

FIRST AMENDED CLASS ACTION COMPLAINT

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are at least thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Godiva is a citizen of a state different from at least some members of the proposed Classes.

11.     This Court has personal jurisdiction over Godiva because Godiva has sufficient minimum contacts with the State of New York, and/or otherwise intentionally avails itself of the markets in the State of New York through the promotion, marketing, and sale of Godiva Chocolates in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice. Godiva is also headquartered in New York.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Godiva maintains its principle place of business in this District and therefore resides in this District.

## PARTIES

13.     Plaintiff Steve Hesse is a citizen of New York, and he currently resides in Suffolk County.  In or around February of 2016 and 2017, and in or around November of 2016 and 2017, Mr. Hesse purchased the Godiva Dark Chocolate Raspberry bar from a Godiva store in Smith Haven Mall in Lake Grove, New York, and from a Kohl's store in East Setauket, New York. In purchasing the Product, Mr. Hesse saw and relied on the front label of the Product.  Specifically, Mr. Hesse saw and relied on the phrase "Belgium 1926" on the label of the Product. Based on this representation, Mr. Hesse believed he was purchasing imported chocolate from Belgium. However, unbeknownst to Mr. Hesse, the Product that he purchased was not made in Belgium. Mr. Hesse would not have purchased the Product, or would have paid significantly less for it,

had he known that it was not made in Belgium.  Therefore, Mr. Hesse suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein.

14.     Plaintiff Adam Buxbaum is a citizen of California, and he currently resides in Sonoma County. In or around December 2017, Mr. Buxbaum purchased the Godiva Solid Milk Chocolate bar from a Target store in Santa Rosa, California. In purchasing the Product, Mr. Buxbaum saw and relied on the front label of the Product. Specifically, Mr. Buxbaum saw and relied on the phrase "Belgium 1926" on the label of the Product. Based on this representation, Mr. Buxbaum believed he was purchasing imported chocolate from Belgium. However, unbeknownst to Mr. Buxbaum, the Product that he purchased was not made in Belgium. Mr. Buxbaum would not have purchased the Product, or would have paid significantly less for it, had he known that it was not made in Belgium. Therefore, Mr. Buxbaum suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and fraudulent practices, as described herein.

15.     Despite being misled by Defendant, Plaintiffs wish to and are likely to continue purchasing the Godiva Chocolates in the future. Although Plaintiffs regularly visit stores where Defendant's Godiva Chocolates are sold, absent an injunction prohibiting the deceptive labeling and advertising described herein, they will be unable to rely with confidence on Godiva's representations in the future and will therefore abstain from purchasing the Products, even though they would like to purchase them. Furthermore, while Plaintiffs currently believe the Godiva Chocolates are not made in Belgium, they lack personal knowledge as to Godiva's specific business practices, leaving doubt in their minds as to the possibility that some chocolates made by Godiva could be made in Belgium.  This uncertainty, coupled with their desire to

purchase the Products, is an ongoing injury that can and would be rectified by an injunction enjoining Godiva from making the false and/or misleading representations alleged herein.   In addition, Class members will continue to purchase the Godiva Chocolates, reasonably but incorrectly believing that they are made in Belgium, absent an injunction.

16.     Defendant Godiva Chocolatier, Inc. (d/b/a Godiva) is a New Jersey corporation with its principle place of business in New York, New York.   Godiva, directly and/or through its agents, formulates, manufactures, labels, markets, distributes, and sells the Products nationwide. Godiva has maintained substantial distribution and sales in this District.

17.     The true names and capacities of DOES 1 through 50, inclusive, are unknown to Plaintiffs at this time, and Plaintiffs therefore sue such DOE Defendants under fictitious names. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and that Plaintiffs and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE Defendants.   Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE Defendants when ascertained.

## FACTUAL ALLEGATIONS

### A.     Belgian Chocolates Are Well-Known For Their Quality

18.     Belgium is widely understood and recognized as producing among the highest quality chocolates in the world.[1]   Indeed, Belgium is known for its rich history as a chocolate producing nation.   In the early 20th century, Belgian chocolatier Jean Neuhaus Jr. invented the

---

[1] The Brussels Times, *What makes Belgium's chocolate so popular?*, May 2, 2017, *available at* http://www.brusselstimes.com/component/k2/8132/what-makes-belgium-s-chocolate-so-popular (last visited on March 5, 2019).

praline – the first "filled" chocolate product.[2]  The praline was a revolutionary invention for the chocolate industry and gave Belgian chocolatiers recognition for producing among the finest chocolates in the world.

19.     To protect the Belgian chocolate image, the Belgian Royal Association of the Chocolate, Praline, Biscuits and Sugar Confectionary Industry ("CHOPRABISCO") has developed the "Belgian Chocolate Code" that provides guidelines for labeling chocolate as coming from Belgium.[3]  Among other reasons, the Belgian Chocolate Code is based on the fact "that the reputation of high quality associated with 'Belgian Chocolate' frequently induces competitors to mislead consumers by using texts or illustrations referring to Belgium[.]"[4]

20.     While this case is not predicated on Godiva's violations of the Belgian Chocolate Code, it demonstrates the significance of the Belgium origin to the chocolate industry and to consumers generally.

**B.     Godiva's "Belgium 1926" Representation**

21.     During the relevant statute of limitations period, Godiva, directly and/or through its agents, has formulated, manufactured, labeled, marketed, distributed and sold the Godiva Chocolates across the United States.  The Godiva Chocolates are sold in Godiva brick and mortar stores and through third-party retailers, including, but not limited to, Target, Amazon.com, Walgreens, CVS, and Walmart.

---

[2] https://www.neuhauschocolate.com/en/heritage.htm (last visited on March 5, 2019).

[3] CHOPRABISCO, *Belgian Chocolate Code*, available at http://www.choprabisco.be/engels/documents/BelgianChocolateCodeEN030507DEF.pdf   (last visited on March 5, 2019).

[4] *Id.* at 1.

22.     Rather than be transparent in its packaging and advertising about the difference between its Belgian-made chocolates (sold outside the U.S.) and American-made chocolates (sold in the U.S.), Godiva has intentionally propagated the misconception that all of the Godiva Chocolates are made in Belgium.  Godiva continues this deception to this day.

23.     In 2009, Godiva began utilizing the signature phrase "Belgium 1926" on the product packaging of all Godiva Chocolates.

24.     Since then, Godiva has ubiquitously and prominently used the Belgium Representation on the front packaging of the Godiva Chocolates:







FIRST AMENDED CLASS ACTION COMPLAINT

25.     Godiva has also implemented a multimillion-dollar marketing campaign that reinforces the notion that the Godiva Chocolates are made in Belgium. Many of these advertisements similarly have the Belgium Representation and other references to Belgium as a focal point (red border added for demonstrative purposes only):

Figure 1: Online Advertising



FIRST AMENDED CLASS ACTION COMPLAINT

Figure 2: Storefront Advertising



Figure 3: In-Store Advertising



FIRST AMENDED CLASS ACTION COMPLAINT

Figure 4: Social Media Advertising



FIRST AMENDED CLASS ACTION COMPLAINT



26.     With its minimalist style, Godiva's marketing campaign revolves around its purported Belgian origin, thereby magnifying the Belgium Representation to consumers and reinforcing the misconception that the Godiva Chocolates are from Belgium.

C.      **The Godiva Chocolates Are Not Made In Belgium**

27.     None of the Godiva Chocolates are made in Belgium. Instead, all of the Godiva Chocolates, during the relevant statute of limitations period, have been made in Reading, Pennsylvania.

28.     In addition to the perception that Belgian chocolates are premium chocolates, in Godiva's case, the difference between Belgian and non-Belgian chocolate represents a tangible difference in quality.   For example, in a Washington Post article, Melanie Draps, the granddaughter of the founder of Godiva, states: "I've tried the American Godivas and they do taste different."[5]  This taste difference is due in part, according to Ms. Draps, to the use of different butters, creams, and alcohol in the chocolates made in Belgium versus the chocolates sold in the United States.[6]

29.     While the mere perception that the Godiva chocolates are from Belgium – and the emotional response that this belief elicits – is the primary driver of this case, it cannot be ignored that the actual ingredients used to make Godiva Chocolates also matter.  In short, there is both a tangible and intangible difference between a true Belgian Godiva chocolate and a Godiva Chocolate made in Reading, Pennsylvania.

D.      **The False and Deceptive Belgium Representation Harms Consumers**

30.     Plaintiffs and other consumers purchased the Godiva Chocolates, relying on Godiva's Belgium Representation, reasonably believing that the Godiva Chocolates are made in Belgium.

---

[5]  Washington Post, *Godiva: Better in Belgium?*, Sept. 14, 1994, available at https://www.washingtonpost.com/archive/lifestyle/food/1994/09/14/godiva-better-in-belgium/7e011581-5fbb-43bf-bc7e-6db959bf5178/?utm_term=.64776ceecb33     (last     visited March 5, 2019)

[6] *Id.*

31.     Plaintiffs' and other consumers' reasonable belief that the Godiva Chocolates they purchased were made in Belgium was a significant factor in each of their decisions to purchase the Godiva Chocolates.

32.     Plaintiffs and Class members did not know, and had no reason to know, that the Godiva Chocolates were not made in Belgium because of how the Godiva Chocolates are deceptively labeled and advertised to create the impression that they are made in Belgium. Nothing on the front packaging of the Godiva Chocolates indicates the true manufacturing origin of the chocolates to consumers.

33.     As the entity responsible for the development, manufacturing, advertising, and sale of the Godiva Chocolates, Godiva knew that each of the Godiva Chocolates bears the Belgium Representation but is not made in Belgium.

34.     Godiva knew or should have known that Plaintiffs and other consumers, in purchasing the Godiva Chocolates, would rely on Godiva's Belgium Representation and would therefore reasonably believe that the Godiva Chocolates were made in Belgium.

35.     Consumers are willing to pay more for chocolates made from Belgium.  They are also induced to make purchases that they otherwise would not have but for the belief that the chocolate is from Belgium. Indeed, consumers, like Plaintiffs, place inherent value on this perception, in addition to any value placed on the chocolate due to taste.

36.     Because the Godiva Chocolates are not made in Belgium, Defendant's branding of the Godiva Chocolates was and continues to be misleading and deceptive.

37.     Plaintiffs and other consumers have paid a premium for the Godiva Chocolates. Plaintiffs and other consumers would have paid significantly less for the Godiva Chocolates had they known that the Godiva Chocolates were not made in Belgium. In the alternative, Plaintiffs

and other consumers would not have purchased the Godiva Chocolates at all had they known that the Godiva Chocolates were not made in Belgium. Therefore, Plaintiffs and other consumers purchasing the Godiva Chocolates suffered injury in fact and lost money as a result of Defendant's false, unfair, and fraudulent practices, as described herein.

38.    Each Class member has been exposed to the same or substantially similar deceptive practice, as each of the Godiva Chocolates have the same core "Belgium 1926" misleading statement prominently printed on their labeling. All of the Godiva Chocolates create the similar impression that they are made in Belgium.

## CLASS ACTION ALLEGATIONS

39.    Plaintiffs bring this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of all members of the following Nationwide Class, a New York Subclass, a California Subclass, and a California Consumer Subclass, as defined below:

### Nationwide Class

All persons in the United States who, within the relevant statute of limitations period, purchased any of the Godiva Chocolates.

### New York Subclass

All persons who, within the relevant statute of limitations period, purchased any of the Godiva Chocolates for personal, family, or household purposes in the state of New York.

### California Subclass

All persons who, within the relevant statute of limitations period, purchased any of the Godiva Chocolates in the state of California.

### California Consumer Subclass

All persons who, within the relevant statute of limitations period, purchased any of the Godiva Chocolates for personal, family, or household purposes in the state of California.

40.    Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former

employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

41.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes after having had an opportunity to conduct discovery.

42.     Plaintiff Hesse is a member of the Nationwide Class and the New York Subclass.

43.     Plaintiff Buxbaum is a member of the Nationwide Class, the California Subclass, and the California Consumer Subclass.

44.     Numerosity: The proposed Classes are so numerous that joinder of all members would be impractical.  Godiva Chocolates are sold across New York, California, and the United States at Godiva-owned boutique stores, online, and through high-end third-party retailers.  The number of individuals who purchased the Godiva Chocolates within the United States, the state of California, and the state of New York during the relevant time period is at least in the thousands.  Accordingly, members of the Classes ("Class members") are so numerous that their individual joinder herein is impractical.  While the precise number of Class members and their identities are unknown to Plaintiffs at this time, these Class members are identifiable and ascertainable.

45.     Common Questions Predominate: There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members.  These questions include, but are not limited to, the following:

a.   Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Godiva Chocolates;

b.   Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c.   Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d.   Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e.   Whether Plaintiffs and the Classes are entitled to damages and/or restitution, and in what amount;

f.   Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g.   Whether Plaintiffs and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

46.   Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiffs and Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Godiva Chocolates.  Each instance of harm suffered by Plaintiffs and Class members has directly resulted from a single course of illegal conduct.  Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

47.     <u>Superiority</u>: Because of the relatively small size of the individual Class members' claims, no Class member could afford to seek legal redress on an individual basis.  Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  A class action is superior to any alternative means of prosecution.

48.     <u>Typicality</u>: The representative Plaintiffs' claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

49.     <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed Classes as their interests do not conflict with the interests of the members of the proposed Classes they seek to represent, and they have retained counsel competent and experienced in class action litigation.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiffs and their counsel.

50.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23 because Defendant acted, or failed to act, on grounds generally applicable to Plaintiffs and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

### FIRST CLAIM FOR RELIEF
### Violation of N.Y. Gen. Bus. Law § 349
### *(for the New York Subclass)*

51.     Plaintiff Hesse repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52.     Plaintiff Hesse brings this claim on behalf of himself and on behalf of the members of the New York Subclass.

53.     New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . ." GBL § 349(a).

54.     The practices alleged herein – namely, advertising Godiva Chocolates as being from Belgium when they are not – are unfair, deceptive, and misleading, in violation of GBL § 349.

55.     Defendant's conduct is also unfair, deceptive, and misleading because Defendant fails to disclose that the Products are made in the U.S., in order to induce consumers' purchases of the Products.

56.     The foregoing deceptive acts and practices were directed at Plaintiff Hesse and members of the New York Subclass.

57.     Defendant's misrepresentation regarding the Godiva Chocolates is material to a reasonable consumer because it relates to the contents and characteristics of the Godiva Chocolates purchased by the consumer.  A reasonable consumer attaches importance to such representation and is induced to act thereon in making purchase decisions.

58.     Plaintiff Hesse and members of the New York Subclass have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased the Godiva Chocolates, or would have paid significantly less for the Godiva Chocolates, had they known that the Godiva Chocolates they purchased are actually made in Reading, Pennsylvania.

59.     As a result of Defendant's unlawful action, Plaintiff Hesse and members of the New York Subclass seek to enjoin Defendant's deceptive and unlawful acts and practices described herein to recover actual damages, fifty dollars, or both, whichever is greater, as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**SECOND CLAIM FOR RELIEF**
**Violation of N.Y. Gen. Bus. Law § 350**
*(for the New York Subclass)*

60.     Plaintiff Hesse repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

61.     Plaintiff Hesse brings this claim on behalf of himself and on behalf of the members of the New York Subclass.

62.     GBL § 350 provides in relevant part: "False advertising in the conduct of any business, trade or commerce . . . in this state is hereby declared unlawful."

63.     In turn, GBL § 350-a defines false advertising as:

"advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

64.     Defendant's actions are untrue and misleading in representing the Godiva Chocolates are from Belgium when they are not.

65.     Defendant's conduct is also misleading because Defendant fails to disclose that the Godiva Chocolates are made in the U.S., in order to induce consumers' purchases of the Godiva Chocolates.

66.     The foregoing misleading acts and practices were directed at Plaintiff Hesse and members of the New York Subclass.

67.     Defendant's misrepresentation regarding the Godiva Chocolates is material to a reasonable consumer because it relates to the contents and characteristics of the Godiva Chocolates purchased by the consumer.  A reasonable consumer attaches importance to such

representation and is induced to act thereon in making purchase decisions.

68.     The foregoing misrepresentation has resulted in consumer injury or harm to the New York public.

69.     Plaintiff Hesse and members of the New York Subclass have been injured as a direct and proximate result of Defendant's violations described above as they would not have purchased the Godiva Chocolates, or would have paid significantly less for the Godiva Chocolates, had they known that the Godiva Chocolates they purchased are actually made in Reading, Pennsylvania.

70.     As a result of Defendant's unlawful action, Plaintiff Hesse and members of the New York Subclass seek to enjoin Defendant's misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater (or both), as well as treble damages, reasonable attorneys' fees, and all other remedies this Court deems proper.

**THIRD CLAIM FOR RELIEF**
**Breach of New York Express Warranty**
**N.Y. U.C.C. § 2-313**
*(for the New York Subclass)*

71.     Plaintiff Hesse repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

72.     Plaintiff Hesse brings this claim individually and on behalf of the members of the proposed New York Subclass who purchased a Product directly at a brick and mortar Godiva store or on www.godiva.com.

73.     New York U.C.C. § 2-313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or

promise[,]" and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  N.Y. U.C.C. § 2-313.

74.     Defendant has expressly warranted on the packaging of the Godiva Chocolates that the chocolates are from Belgium.  These representations about the Godiva Chocolates: (1) are affirmations of fact or promises made by Defendant to consumers that the Godiva Chocolates are in fact made in Belgium; (2) became part of the basis of the bargain to purchase the Godiva Chocolates when Plaintiff Hesse relied on the representation; and (3) created an express warranty that the Godiva Chocolates would conform to these affirmations of fact or promises.  In the alternative, the representations about the Godiva Chocolates are descriptions of goods which were made as part of the basis of the bargain to purchase the Godiva Chocolates and which created an express warranty that the Godiva Chocolates would conform to the product descriptions.

75.     Plaintiff Hesse and members of the New York Subclass reasonably and justifiably relied on the foregoing express warranties believing that the Godiva Chocolates did in fact conform to these warranties.

76.     Defendant has breached the express warranties made to Plaintiff Hesse and members of New York Subclass by failing to manufacture the Godiva Chocolates in Belgium.

77.     Plaintiff Hesse and members of the New York Subclass paid a premium price for the Godiva Chocolates but did not obtain the full value of the chocolates as represented.  If Plaintiff Hesse and members of the New York Subclass had known of the true nature of the Godiva Chocolates, they would not have purchased the chocolate or would not have been willing to pay the premium price associated with the chocolate.

78.     As a result, Plaintiff Hesse and members of the New York Subclass suffered injury and deserve to recover all damages afforded under the law.

79.     Within a reasonable amount of time after Plaintiff Hesse discovered that Defendant did in fact breach the express warranty, Plaintiff Hesse notified Defendant of the breach.

**FOURTH CLAIM FOR RELIEF**
**Breach of New York Implied Warranty**
**N.Y. U.C.C. § 2-314**
***(for the New York Subclass)***

80.     Plaintiff Hesse repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

81.     Plaintiff Hesse brings this claim individually and on behalf of the members of the proposed New York Subclass who purchased a Product directly at a brick and mortar Godiva store or on www.godiva.com.

82.     New York U.C.C. § 2-314 provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  New York U.C.C. § 2-314(1).

83.     New York U.C.C. § 2-314(2) provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any."  New York U.C.C. § 2-314(2)(f).

84.     Defendant is a merchant with respect to the sale of chocolates, including the Godiva Chocolates here.  Therefore, a warranty of merchantability is implied in every contract for sale of the Godiva Chocolates to New York consumers.

85.     By advertising the Godiva Chocolates with their current packaging, Defendant made an implied promise that the Godiva Chocolates were made in Belgium.  By not making the

Godiva Chocolates in Belgium, Defendant has not "conform[ed] to the promises . . . made on the container or label[.]" *Id.* Plaintiff Hesse and New York consumers did not receive the goods as impliedly warranted by Defendant to be merchantable.

86.     Therefore, the Godiva Chocolates are not merchantable under New York law and Defendant has breached its implied warranty of merchantability in regard to the Godiva Chocolates.

87.     If Plaintiff Hesse and members of the New York Subclass had known that the Godiva Chocolates were not made in Belgium, they would not have purchased them or would not have been willing to pay the premium price associated with the chocolates.  Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Hesse and members of the New York Subclass have suffered injury and deserve to recover all damages afforded under the law.

**FIFTH CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act ("CLRA"),**
**California Civil Code §§ 1750, *et seq*.**
***(for the California Consumer Subclass)***

88.     Plaintiff Buxbaum repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

89.     Plaintiff Buxbaum brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant.

90.     The Godiva Chocolates are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Godiva Chocolates by Plaintiff Buxbaum and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

91.     Cal. Civ. Code § 1770(a)(2) prohibits "misrepresenting the source, sponsorship, approval, or certification of goods or services." By marketing the Godiva Chocolates with their current packaging and advertisements, Defendant has represented and continues to represent that the

source of the Godiva Chocolates is Belgium, when it is not. Therefore, Defendant has violated section 1770(a)(2) of the CLRA.

92.     Cal. Civ. Code § 1770(a)(4) prohibits "using deceptive representations or designations of geographical origin in connection with goods or services." By marketing the Godiva Chocolates with their current packaging and advertisements, Defendant has used deceptive representations and designations of the chocolate's geographical origin (Belgium). Therefore, Defendant has violated section 1770(a)(4) of the CLRA.

93.     Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Godiva Chocolates with their current packaging and advertisements, Defendant has represented and continues to represent that the chocolate has characteristics (imported from Belgium) that it does not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

94.     Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Godiva Chocolates with their current packaging and advertisements, Defendant has represented and continues to represent that the chocolate is of a particular style (made in Belgium) when it is of another (made in Reading, PA). Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

95.     Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Godiva Chocolates with their current packaging and advertisements, such that a reasonable consumer would believe that the chocolate is from Belgium, Defendant has violated section 1770(a)(9) of the CLRA.

96.     Defendant also violated the CLRA by intentionally failing to disclose that the Products are made in the U.S. in order to induce consumers' purchases of the Products.

97.     At all relevant times, Defendant has known or reasonably should have known that the Godiva Chocolates were not chocolates from Belgium, but instead were made in the

United States, and that Plaintiff Buxbaum and other members of the California Consumer Subclass would reasonably and justifiably rely on the packaging and other advertisements in purchasing the chocolates.

98.     Plaintiff Buxbaum and members of the California Consumer Subclass have reasonably and justifiably relied on Defendant's misleading, and fraudulent conduct when purchasing the Godiva Chocolates. Moreover, based on the materiality of Defendant's fraudulent and misleading conduct, reliance may be presumed or inferred for Plaintiff Buxbaum and members of California Consumer Subclass.

99.     Plaintiff Buxbaum and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would not have purchased the Godiva Chocolates or would have paid significantly less for the Godiva Chocolates had they known that Defendant's conduct was misleading and fraudulent.

100.    In accordance with Cal. Civ. Code § 1780(d), Plaintiff Buxbaum is filing a declaration of venue, attached hereto to this Complaint.

101.    Under Cal. Civ. Code § 1780(a), Plaintiff Buxbaum and members of the California Consumer Subclass are seeking injunctive relief pursuant to the CLRA, preventing Defendant from further wrongful acts and unfair and unlawful business practices, as well as restitution, disgorgement of profits, and any other relief this Court deems proper.

102.    Pursuant to Cal. Civ. Code § 1782, on November 28, 2018, counsel for Plaintiff Buxbaum mailed a notice and demand letter by certified mail to Defendant of their intent to pursue claims under the CLRA and other violations of the law, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received the letter on December 3, 2018. Because Defendant has failed to fully rectify or remedy the damages within 30 days of receipt of the letter, Plaintiff Buxbaum is timely filing this Complaint for damages pursuant to the CLRA.

**SIXTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code §§ 17200, _et seq._**
**(_for the California Subclass and California Consumer Subclass_)**

103.     Plaintiff Buxbaum repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

104.     Plaintiff Buxbaum brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

105.     Cal. Bus. & Prof Code § 17200 provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

106.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law.

107.     Defendant's false and misleading advertising of the Godiva Chocolates therefore was and continues to be "unlawful" because it violates the CLRA, California's False Advertising Law ("FAL"), and other applicable laws as described herein.

108.     As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff Buxbaum, and members of both the California Subclass and California Consumer Subclass.

109.     Under the UCL, a business act or practice is "unfair" if the defendants' conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims.

110.     Defendant's conduct was and continues to be of no benefit to purchasers of the Godiva Chocolates, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the chocolate's packaging and marketing. Creating consumer confusion as to the actual location of where the Godiva Chocolates are made is of no benefit to consumers. Therefore, Defendant's conduct was and continues to be "unfair."

111.     As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff Buxbaum, and members of both the California Subclass and California Consumer Subclass.

112.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public.

113.     Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Godiva Chocolates are imported from Belgium, when they are not. Defendant's conduct is also fraudulent because Defendant fails to disclose that the Products are made in the U.S. in order to induce consumers' purchases of the Products. Because Defendant misled Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass, Defendant's conduct was "fraudulent."

114.     As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff Buxbaum, and members of both the California Subclass and California Consumer Subclass.

115.     Plaintiff Buxbaum requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to Plaintiff Buxbaum, and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff Buxbaum, and members of both the California Subclass and California Consumer Subclass, may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### SEVENTH CLAIM FOR RELIEF
### Violation of California's False Advertising Law ("FAL"),
### California Business & Professions Code §§ 17500, *et seq*
### *(for the California Subclass and California Consumer Subclass)*

116.     Plaintiff Buxbaum repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

117.    Plaintiff Buxbaum brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

118.    California's FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

119.    Defendant has represented and continues to represent to the public, including Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass, through Defendant's deceptive packaging and marketing, that the Godiva Chocolates are made in Belgium and imported to the United States. Defendant's representations are misleading because the Godiva Chocolates are not made in Belgium and then imported to the United States. Because Defendant has disseminated misleading information regarding the Godiva Chocolates, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading, Defendant has violated the FAL.

120.    Defendant's conduct is also misleading because Defendant fails to disclose that the Products are made in the U.S. in order to induce consumers' purchases of the Products.

121.    Furthermore, Defendant knows, knew or should have known through the exercise of reasonable care that such representation was and continues to be unauthorized and misleading.

122.    As a result of Defendant's false advertising, Defendant has and continues to fraudulently obtain money from Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass.

123.    Plaintiff Buxbaum requests that this Court cause Defendant to restore this fraudulently obtained money to Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass, to disgorge the profits Defendant made on these transactions,

and to enjoin Defendant from violating the FAL or violating it in the same fashion in the future as discussed herein.  Otherwise, Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

## EIGHTH CLAIM FOR RELIEF
### Breach of Express Warranty
### California Commercial Code § 2313
### *(for the California Subclass and California Consumer Subclass)*

124.    Plaintiff Buxbaum repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

125.    Plaintiff Buxbaum brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

126.    California Commercial Code § 2313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description."  Cal. Com. Code § 2313.

127.    Defendant has expressly warranted on the packaging of the Godiva Chocolates that the chocolates are from Belgium. These representations about the Godiva Chocolates: (1) are affirmations of fact or promises made by Defendant to consumers that the Godiva Chocolates are in fact made in Belgium; (2) became part of the basis of the bargain to purchase the Godiva Chocolates when Plaintiff Buxbaum relied on the representations; and (3) created an express warranty that the Godiva Chocolates would conform to these affirmations of fact or promises. In the alternative, the representations about the Godiva Chocolates are descriptions of goods which were made as part of the basis of the bargain to purchase the Godiva Chocolates, and which created an express warranty that the Godiva Chocolates would conform to the product descriptions.

128.   Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass reasonably and justifiably relied on the foregoing express warranties, believing that the Godiva Chocolates did in fact conform to these warranties.

129.   Defendant has breached the express warranties made to Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass by failing to manufacture the Godiva Chocolates in Belgium.

130.   Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass paid a premium price for the Godiva Chocolates but did not obtain the full value of the chocolates as represented. If Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass had known of the true nature of the Godiva Chocolates, they would not have purchased the chocolate or would not have been willing to pay the premium price associated with the chocolate.

131.   As a result, Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass suffered injury and deserve to recover all damages afforded under the law.

132.   Within a reasonable amount of time after Plaintiff Buxbaum discovered that Defendant did in fact breach the express warranty, Plaintiff Buxbaum notified Defendant of the breach.

### NINTH CLAIM FOR RELIEF
### Breach of Implied Warranty
### California Commercial Code § 2314
### *(for the California Subclass and California Consumer Subclass)*

133.   Plaintiff Buxbaum repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

134.   Plaintiff Buxbaum brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

135.   California Commercial Code § 2314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect

to goods of that kind." Cal. Com. Code § 2314(1).

136.    California Commercial Code § 2314(2) provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

137.    Defendant is a merchant with respect to the sale of chocolates, including the Godiva Chocolates here. Therefore, a warranty of merchantability is implied in every contract for sale of the Godiva Chocolates to California consumers.

138.    By advertising the Godiva Chocolates with their current packaging, Defendant made an implied promise that the Godiva Chocolates were made in Belgium. By not making the Godiva Chocolates in Belgium, Defendant has not "conformed to the promises . . . made on the container or label." Plaintiff Buxbaum and California consumers did not receive the goods as impliedly warranted by Defendant to be merchantable.

139.    Therefore, the Godiva Chocolates are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Godiva Chocolates.

140.    If Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass had known that the Godiva Chocolates were not made in Belgium, they would not have purchased them or would not have been willing to pay the premium price associated with the chocolates. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff Buxbaum and members of both the California Subclass and California Consumer Subclass have suffered injury and deserve to recover all damages afforded under the law.

<u>**TENTH CLAIM FOR RELIEF**</u>
<u>**Common Law Fraud**</u>
***(for the Classes)***

141.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

142.    Plaintiffs bring this claim individually and on behalf of the members of the

FIRST AMENDED CLASS ACTION COMPLAINT

Classes against Defendant.

143.     Defendant has willfully, falsely, or knowingly packaged and marketed the Godiva Chocolates in a manner indicating that the Godiva Chocolates are luxury chocolates from Belgium. However, the Godiva Chocolates are not made in Belgium.  Therefore, Defendant has made misrepresentations as to the Godiva Chocolates.

144.     Defendant also failed to disclose that the Products are made in the U.S., in order to induce consumers' purchases of the Products.

145.     Defendant's misrepresentations and omissions are and were material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions) because they relate to the characteristics of the chocolates and where they were made.

146.     Defendant knew or recklessly disregarded the fact that the Godiva Chocolates are not made in Belgium.

147.     Defendant intends that Plaintiffs and other consumers rely on these representations and omissions, as evidenced by Defendant's intentionally using labeling that either directly states or clearly implies that the chocolates are from Belgium.

148.     Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's misrepresentations and omissions when purchasing the Godiva Chocolates and, had the correct facts been known, would not have purchased the Godiva Chocolates or would not have purchased them at the prices at which they were offered.

149.     Therefore, as a direct and proximate result of Defendant's fraud, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Godiva Chocolates, and any interest that

would have accrued on those monies, all in an amount to be proven at trial.

### ELEVENTH CLAIM FOR RELIEF
#### Intentional Misrepresentation
##### (*for the Classes*)

150.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

151.    Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

152.    Defendant marketed the Godiva Chocolates in a manner indicating that the Godiva Chocolates are from Belgium.  However, the Godiva Chocolates are not made in Belgium.  Therefore, Defendant has made misrepresentations as to the Godiva Chocolates.

153.    Defendant's misrepresentations regarding the Godiva Chocolates are material to a reasonable consumer because they relate to the characteristics of the chocolate.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

154.    At all relevant times when such misrepresentations were made, Defendant knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

155.    Defendant intends that Plaintiffs and other consumers rely on these representations, as evidenced by Defendant's intentionally using packaging that either directly states or clearly implies that the chocolates are from Belgium.

156.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Godiva Chocolates and, had the correct facts been known, would not have purchased the Godiva Chocolates or would not have purchased them at the prices at which they were offered.

157.    Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Godiva Chocolates, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**TWELFTH CLAIM FOR RELIEF**
**Negligent Misrepresentation**
***(for the Classes)***

158.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

159.    Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

160.    Defendant marketed the Godiva Chocolates in a manner indicating that the Godiva Chocolates were from Belgium.  However, the Godiva Chocolates are not made in Belgium.  Therefore, Defendant has made misrepresentations as to the Godiva Chocolates.

161.    Defendant's misrepresentations regarding the Godiva Chocolates are material to a reasonable consumer because they relate to the characteristics of the chocolate.  A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

162.    At all relevant times when such misrepresentations were made, Defendant knew or had been negligent in not knowing that that the Godiva Chocolates were not imported from Belgium.  Defendant had no reasonable grounds for believing its misrepresentations were not false and misleading.

163.    Defendant intends that Plaintiffs and other consumers rely on these representations, as evidenced by Defendant's intentionally using packaging that that either

directly states or clearly implies that the chocolates are from Belgium.

164.    Plaintiffs and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Godiva Chocolates and, had the correct facts been known, would not have purchased the Godiva Chocolates or would not have purchased them at the prices at which they were offered.

165.    Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiffs and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Godiva Chocolates, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## THIRTEENTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
**(for the Classes)**

166.    Plaintiffs repeat the allegations contained in paragraphs 1-50 above as if fully set forth herein.

167.    Plaintiffs bring this claim individually and on behalf of the members of the Classes against Defendant.

168.    As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiffs and members of the Classes to induce them to purchase the Godiva Chocolates.  Plaintiffs and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant.  Plaintiffs and members of the Classes therefore have been induced by Defendant's misleading and false representations about the Godiva Chocolates and paid for them when they would and/or should not have or paid more money to Defendant for the chocolates than they otherwise would and/or should have paid.

FIRST AMENDED CLASS ACTION COMPLAINT

169.     Plaintiffs and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiffs and members of the Classes.

170.     The monies received were obtained under circumstances that were at the expense of Plaintiffs and members of the Classes – i.e., Plaintiffs and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

171.     Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiffs and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

172.     As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, respectfully pray for following relief:

A.     Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiffs as Class representatives, and appointment of their counsel as Class counsel;

B.     A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Class members, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above;

D.      An award to Plaintiffs and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.      An award of all economic, monetary, actual, consequential, compensatory, and treble damages caused by Defendant's conduct;

F.      An award of punitive damages;

G.      An award to Plaintiffs and their counsel of their reasonable expenses and attorneys' fees;

H.      An award to Plaintiffs and the proposed Classes of pre- and post-judgment interest, to the extent allowable; and

I.      For such further relief that the Court may deem just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs, on behalf of themselves and the proposed Classes, hereby demand a jury trial with respect to all issues triable of right by jury.


DATED:  March 5, 2019

**FARUQI & FARUQI, LLP**

By: /s/ Innessa M. Huot
Innessa M. Huot
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
E-mail: ihuot@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (*pro hac vice* forthcoming)
400 Corporate Pointe, Suite 300
Culver City, California 90230

FIRST AMENDED CLASS ACTION COMPLAINT

Tel: 310-590-4503
Fax: 310-590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs Steve Hesse, Adam
Buxbaum and the putative Classes*

FIRST AMENDED CLASS ACTION COMPLAINT

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, Adam Buxbaum, declare as follows:

1.      I am a named Plaintiff in this action and a citizen of the State of California. I have personal knowledge of the facts stated herein and, if called as a witness, I could testify competently thereto.

2.      This Class Action Complaint is filed in the proper place of trial because Defendant is headquartered in this District.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on _____3/5/2019 | 9:50 AM PST_____, 2019 at Sebastopol, California.

_____
Adam Buxbaum