UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated, | Case No. 1:19-cv-00972-AJN |
| *Plaintiffs*, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| GODIVA CHOCOLATIER, INC., | |
| *Defendant*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS THE FIRST AMENDED
<u>CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ................................................................................ 2

III.    LEGAL STANDARD ...................................................................................... 3

IV.     ARGUMENT .................................................................................................. 3

   A.   **Plaintiffs Adequately Plead Statutory Consumer Protection Claims** ......................... 3

      1.   The Reasonable Consumer Standard Applies ............................................... 4

      2.   Whether a Representation Is Likely To Deceive A Reasonable Consumer Is A
           Question Of Fact That Should Not Be Resolved Now ..................................... 4

      3.   The Belgium Representation Is Misleading ................................................... 6

      4.   The Year "1926" Does Not Cure The Deceptive "Belgium" Statement ............. 9

      5.   Godiva Relies On Case Law That Is Inapposite Based On The Facts Here ............... 10

   B.   **Plaintiffs Adequately Plead Breach Of Express And Implied Warranty Claims** ..... 14

      1.   Breach Of Express Warranty ..................................................................... 14

      2.   Breach Of Implied Warranty ..................................................................... 16

   C.   **Plaintiffs Adequately Plead Common Law Claims** ......................................... 18

      1.   Fraud And Intentional Misrepresentation ................................................... 18

      2.   Negligent Misrepresentation .................................................................... 20

      3.   Quasi-Contract/Unjust Enrichment ............................................................ 22

   D.   **The First Amendment Does Not Protect Godiva's Misleading Belgium
        Representation** ...................................................................................... 24

   E.   **Plaintiffs Have Standing To Pursue Injunctive Relief** .................................... 27

V.      CONCLUSION ............................................................................................... 31

# TABLE OF AUTHORITIES

**Cases**                                                                                  **Page(s)**

*Ackerman v. Coca–Cola Co.*,
   No. 09–CV–395 (DLI), 2013 WL 7044866 (E.D.N.Y. July 18, 2013) ..................................30

*Ackerman v. Coca-Cola Co.*,
   No. CV-09-0395 (JG) (RML), 2010 WL 2925955 (E.D.N.Y. July 21, 2010) .........................7

*Allen v. ConAgra Foods, Inc.*,
   No. 3:13-CV-01279-WHO, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018)...........................29

*Anderson v. Seaworld Parks & Entm't, Inc.*,
   No. 15-CV-02172-JSW, 2016 WL 4076097 (N.D. Cal. Aug. 1, 2016) ................................26

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................................3, 19

*Astiana v. Ben & Jerry's Homemade, Inc.*,
   No. C 10-4387 PJH, 2011 WL 2111796 (N.D. Cal. May 26, 2011) ......................................21

*Astiana v. Hain Celestial Grp., Inc.*,
   783 F.3d 753 (9th Cir. 2015) ................................................................................................24

*Atik v. Welch Foods, Inc.*,
   No. 15-CV-5405 (MKB) (VMS),
   2016 WL 5678474 (E.D.N.Y. Sept. 30, 2016) .......................................................................5

*Bd. of Trs. of Univ. of N.Y. v. Fox*,
   492 U.S. 469 (1989)................................................................................................................25

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017).................................................................................18

*Belfiore v. Procter & Gamble Co.*,
   94 F.Supp.3d 440 (E.D.N.Y. 2015) .......................................................................................30

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................................................................3

*Benson v. Kwikset Corp.*,
   62 Cal. Rptr. 3d 284 (Cal. Ct. App. 2007) ............................................................................26

*Bowring v. Sapporo U.S.A.*,
   234 F. Supp. 3d 386 (E.D.N.Y. 2017) ...................................................................................13

*Broomfield v. Craft Brew All., Inc.*,
   No. 17-CV-01027-BLF, 2017 WL 5665654 (N.D. Cal. Nov. 27, 2017)................................29

*Broomfield v. Craft Brew Alliance, Inc.*,
   No. 17-cv-01027-BLF, 2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ........................... *passim*

*Brown v. Hain Celestial Grp., Inc.*,
   913 F. Supp. 2d 881 (N.D. Cal. 2012) .................................................................................14

*Bruton v. Gerber Prods. Co.*,
   961 F. Supp. 2d 1062 (N.D. Cal. 2013) ...............................................................................25

*Buonasera v. The Honest Co., Inc.*,
   208 F. Supp. 3d 555 (S.D.N.Y. 2016).................................................................................15

*Cabrera v. Bayer Healthcare, LLC*,
   No. LACV1708525JAKJPRX, 2019 WL 1146828 (C.D. Cal. Mar. 6, 2019) .......................17

*Campbell v. Freshbev LLC*,
   322 F.Supp.3d 330 (E.D.N.Y 2018) ...................................................................................31

*Central Hudson Gas & Electrical. Corp. v. Public Service Commission*,
   447 U.S. 557 (1980)...........................................................................................................25

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002)...............................................................................................5

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) ............................................................................................17

*Concha v. London*,
   62 F.3d 1493 (9th Cir. 1995) ..............................................................................................18

*Cty. of Nassau v. Expedia, Inc.*,
   992 N.Y.S.2d 293 (N.Y. App. Div. 2014) ...........................................................................23

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .............................................................................27, 28, 29, 31

*Delgado v. Ocwen Loan Servicing, LLC*,
   13-CV-4427, 2017 WL 5201079 (E.D.N.Y. Nov. 9, 2017) ...................................................22

*Delgado v. Ocwen Loan Servicing, LLC*,
   No. 13-CV-4427 NGG RML, 2014 WL 4773991 (E.D.N.Y. Sept. 24, 2014) .......................30

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)..................................................................................22

*Dumas v. Diageo PLC*,
   No. 15CV1681 BTM (BLM), 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) .........................12

iii

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ..................................................................................4

*Elkind v. Revlon Consumer Prods. Corp.*,
  No. 14-cv-2484(JS) (AKT), 2015 WL 2344134 (E.D.N.Y. May 14, 2015)...........................19

*Fed. Trade Comm'n v. Wellness Support Network, Inc.*,
  No. 10-cv-04879-JCS, 2014 WL 644749 (N.D. Cal. Feb. 19, 2014) ....................................26

*Fernandez v. Atkins Nutritionals, Inc.*,
  No. 3:17-CV-01628-GPC-WVG, 2018 WL 280028 (S.D. Cal. Jan. 3, 2018) .................28, 29

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)..................................................................................................4

*Forschner Grp., Inc. v. Arrow Trading Co. Inc.*,
  30 F.3d 348 (2d Cir. 1994)..................................................................................................14

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
  No. 12-MD-2413 RLM, 2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) ............................5, 24

*Gasser v. Kiss My Face, LLC*,
  No. 17-cv-01675-JSC 2018 WL 4847071 (N.D. Cal. Apr. 4, 2018).....................................29

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*,
  317 F.R.D. 374 (S.D.N.Y. 2016) .........................................................................................30

*Goldemberg v. Johnson & Johnson Consumer Cos, Inc.*,
  8 F.Supp.3d 467 (S.D.N.Y. 2014) .......................................................................................10

*Hadley v. Kellogg Sales Co.*,
  273 F. Supp. 3d 1052 (N.D. Cal. 2017) ...............................................................................15

*Hendricks v. StarKist Co.*,
  30 F. Supp. 3d 917 (N.D. Cal. 2014) ...................................................................................17

*Hollman v. Taser Int'l Inc.*,
  928 F. Supp. 2d 657 (E.D.N.Y. 2013) ..................................................................................15

*Joseph v. J.M. Smucker Co.*,
  No. CV 17-8735 FMO, 2019 WL 1219708 (C.D. Cal. Mar. 13, 2019) ................................17

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
  315 F. App'x 603 (9th Cir. 2008) ........................................................................................21

*Mantikas v. Kellogg Co.*,
  910 F.3d 633 (2d Cir. 2018)................................................................................................13

*Marcus v. AT&T Corp.*,
  138 F.3d 46 (2d Cir. 1998)..................................................................................................4

*Martin v. Tradewinds Beverage Co.*,
  No. CV 16-9249 .............................................................................................................26

*Martin v. Tradewinds Beverage Co.*,
  No. CV16-9249 PSG, 2017 WL 1712533 (C.D. Cal. Apr. 27, 2017) ...................................17

*Marty v. Anheuser-Busch Cos, LLC*,
  43 F. Supp. 3d 1333 (S.D. Fla. 2014) ....................................................................5, 7, 8, 10

*McCracken v. Verisma Sys., Inc.*,
  No. 6:14-CV-06248(MAT), 2017 WL 2080279 (W.D.N.Y. May 15, 2017) ........................23

*McDonnell Douglas Corp. v. Thiokol Corp.*,
  124 F.3d 1173 (9th Cir. 1997) .........................................................................................15

*Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*,
  No. 16 Civ. 3645 (KPF), 2017 WL 3129799 (S.D.N.Y. July 21, 2017) ..................................7

*Nelson v. MillerCoors, LLC*,
  246 F. Supp. 3d 666 (E.D.N.Y. 2017) ...............................................................................13

*Niedernhofer v. Wittels*,
  No. 17-CV-4451 (NSR), 2018 WL 3650137 (S.D.N.Y. July 31, 2018)................................20

*In re NJOY, Inc. Consumer Class Action Litig.*,
  No. CV 14-00428 MMM, 2015 WL 12732461 (C.D. Cal. May 27, 2015)..........................7, 8

*Nuss v. Sabad*,
  No. 7:10-CV-0279, 2016 WL 4098606 (N.D.N.Y. July 28, 2016) .................................22, 23

*Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*,
  653 F.3d 241 (3d Cir. 2011)............................................................................................11

*Pernod Ricard USA LLC v. Bacardi USA*,
  702 F. Supp. 2d 238 (D. Del. 2010)..........................................................................10, 11, 12

*Phoenix Entm't Partners, LLC v. J-V Successors, Inc.*,
  305 F. Supp. 3d 540 (S.D.N.Y. 2018).................................................................................31

*Plaintiffs, v. All Mkt., Inc., Defendant.*,
  No. 16-21238-Civ-Scola, 2017 WL 11139701 (S.D. Fla. Nov. 13, 2017) ..........................5, 8

*Quality Wash Grp. V, Ltd. v. Hallak*,
  58 Cal. Rptr. 2d 592 (Cal. Ct. App. 1996) ..........................................................................21

*Quinn v. Walgreen Co.*,
    958 F. Supp. 2d 533 (S.D.N.Y. 2013) ........................................................................4

*Rahman v. Mott's LLP*,
    No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ...............................28, 29

*Robinson v. J.M. Smucker Co.*,
    No. 18-CV-04654-HSG, 2019 WL 2029069 (N.D. Cal. May 8, 2019) ................................29

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007) ........................................................................................3

*Scotch Whiskey Ass'n v. Consol. Distilled Prod., Inc.*,
    No. 79 C 3107, 1981 WL 40524 (N.D. Ill. May 7, 1981) ...............................................7

*Shalikar v. Asahi Beer U.S.A., Inc.*,
    No. LA CV 17-02713 JAK, 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017) ...........8, 10, 13, 18

*Shank v. Presidio Brands, Inc.*,
    No. 17-cv-00232, 2018 WL 1948830 (N.D. Cal. Apr. 25, 2018) .....................................29

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ......................................................................................19

*Silva v. Smucker Nat. Foods, Inc.*,
    No. 14-CV-6154 (JG) (RML), 2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) ..................15

*Simonds v. Simonds*,
    380 N.E.2d 189 (N. Y. 1978) ....................................................................................23

*Swingless Golf Club Corp. v. Taylor*,
    679 F. Supp. 2d 1060 (N.D. Cal. 2009) ......................................................................18

*In re Thelen LLP*,
    736 F.3d 213 (2d Cir. 2013) ......................................................................................20

*Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*,
    No. 14-CV-9992 SAS, 2015 WL 4190746 (S.D.N.Y. July 10, 2015) ...............................22

*United States v. United Foods, Inc.*,
    533 U.S. 405 (2001) ................................................................................................25

*Warner v. StarKist Co.*,
    No. 118CV406GLSATB, 2019 WL 1332573 (N.D.N.Y. Mar. 25, 2019) ...........................23

*Williams v. Gerber Prods. Co.*,
    552 F.3d 934 (9th Cir. 2008) ......................................................................................4

*Williams v. Oberon Media, Inc.,*
    No. CV 09-8764-JFW, 2010 WL 1644888 (C.D. Cal. Mar. 4, 2010) ........................5

*Wisdom v. Easton Diamond Sports, LLC,*
    No. 18-CV-4078 DSF (SSX), 2019 WL 580670 (C.D. Cal. Feb. 11, 2019) ...........................29

*Zakaria v. Gerber Prods. Co.,*
    No. LA CV15-00200 ...............................................................................21

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq.* .......................................................4

Cal. Bus. & Prof. Code § 17500, *et seq.* .......................................................4

Cal. Bus. & Prof. Code § 17533.7 ...............................................................26

Cal. Civ. Code § 1750, *et seq.*...................................................................4

Cal. Comm. Code § 2313(1) ......................................................................14

Cal. Comm. Code § 2314(2)(f) ...................................................................16

New York General Business Law §§ 349, 350.......................................................4

N.Y. U.C.C. § 2–313(1)...........................................................................14

N.Y. U.C.C. § 2-314(2)(f).........................................................................16

Fed. R. Civ. P. 8(a)(3)........................................................................19, 22

Fed. R. Civ. P. 9(b) ..............................................................................18

Fed. R. Civ. P. 12(b)(6)........................................................................3, 25

Plaintiffs Steve Hesse and Adam Buxbaum ("Plaintiffs") respectfully submit this Opposition to Defendant Godiva Chocolatier, Inc.'s ("Defendant" or "Godiva") Motion to Dismiss the First Amended Class Action Complaint ("FAC").

## I.    <u>INTRODUCTION</u>

Perhaps no country in the world is more closely associated with producing high quality chocolates than Belgium. Godiva has sought to exploit strong consumer sentiment for Belgian chocolates by prominently using the phrase "Belgium 1926" on the chocolates it sells and distributes in the U.S. market. Godiva does not contest the crux of this case, namely, Plaintiffs' threshold allegation that the chocolates sold in the U.S. are made in Reading, Pennsylvania using non-Belgian ingredients.

Despite this, Godiva brings a Motion to Dismiss, primarily arguing that no reasonable consumer could be deceived by the "Belgium 1926" representation because it merely pays homage to Godiva's history and heritage. However, this assertion is belied by a commonsense understanding that "Belgium 1926" plainly means the chocolates are from Belgium, or at the very least, is likely to induce a reasonable consumer to believe the chocolates are from Belgium. This belief is reasonable, regardless of whether Godiva may have been founded in Belgium in 1926, because that information does not detract from consumers' reasonable belief that the product are still made there. As a matter of law, the Court should not conclude otherwise. And to the extent there is any dispute about how reasonable consumers understand the "Belgium 1926" representation, such a dispute presents a factual inquiry not appropriate for resolution on the pleadings. Accordingly, and for the reasons explained below, Godiva's Motion to Dismiss should be denied.

II.  **STATEMENT OF FACTS**

This class action challenges Godiva's deceptive marketing practices for certain Godiva chocolate products (hereinafter referred to interchangeably as the "Products" or "Chocolates"). FAC at ¶ 1.  Specifically, each of the Products conspicuously bear the statement "Belgium 1926" on the front label (hereinafter referred to interchangeably as the "Belgium Representation" or "'Belgium 1926' Representation").[1]  *Id*. at ¶¶ 2, 23-24.  The Belgium Representation is not only used on the Products' labeling, but is also used on Godiva's off-label national marketing campaign, which includes online, storefront, in-store, and social media advertising.  *Id.* at ¶ 25.

Plaintiffs allege that they and other class members purchased the Products reasonably believing, based on the Belgium Representation, that the Products were made in Belgium, a country renowned for the taste and quality of its chocolates.  *Id.* at ¶¶ 18, 30.  Indeed, the Belgian Chocolate Code, developed by the Royal Belgian Association of the Chocolate, Praline, Biscuits and Sugar Confectionary Industry ("CHOPRABISCO"), was founded on the principle that "the reputation of high quality associated with 'Belgian Chocolate' frequently induces competitors to mislead consumers by using texts or illustrations referring to Belgium[.]"  *Id.* at ¶ 19.

Unbeknownst to Plaintiffs and the putative class members, the Products are not from Belgium and are instead manufactured in Reading, Pennsylvania.  *Id.* at ¶ 27.  Moreover, the Products are not made using ingredients from Belgium, which impacts their taste and quality.  *Id.* at ¶¶ 28, 29.  Plaintiffs allege that they and other consumers would not have purchased the Products, or would have paid less for them, if they had known that the Products were made in the U.S.  *Id*. at ¶ 37.  As a result, Plaintiffs and other consumers have been deceived and have suffered economic injury.  *Id.*

---

[1] Godiva refers to this statement as the "Heritage Representation" in its Motion to Dismiss.

III.   **LEGAL STANDARD**

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept the complaint's factual allegations, and all reasonable inferences that can be drawn from those allegations in the plaintiff's favor, as true." *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007). The notice pleading standard of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the . . . claim is and the ground upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).  In fact, "[t]he pleading of additional evidence, beyond what is required to enable the defendant to respond, is not only unnecessary, but in contravention of proper pleading procedure." *Roth*, 489 F.3d at 512 (internal quotations and alteration omitted).  At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).

IV.   **ARGUMENT**

A.   **Plaintiffs Adequately Plead Statutory Consumer Protection Claims**

The thrust of Godiva's argument is its view that the Belgium Representation merely references Godiva's Belgian heritage, and consequently, Plaintiffs' New York and California statutory consumer protection claims fail as a matter of law.  MTD at 8.  This argument is unavailing because the relevant inquiry at this stage is whether it is impossible for Plaintiffs to prove that a reasonable consumer is likely to be deceived into believing that the Chocolates are

from Belgium. As explained below, a reasonable consumer is likely to be deceived by the Belgium Representation.

                    1.       The Reasonable Consumer Standard Applies

New York's General Business Law ("GBL" §§ 349, 350), California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*, and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, all prohibit false, deceptive, or unfair conduct in trade or commerce. Courts apply the "reasonable consumer" standard to determine whether a representation is false or deceptive under each of these New York and California false advertising laws. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). Under the reasonable consumer standard, plaintiffs must only show that consumers are *likely to be deceived* by a representation. *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Williams*, 552 F.3d at 938. A reasonable consumer is "neither the most vigilant and suspicious of advertising claims nor the most unwary and unsophisticated but instead is the ordinary consumer within the target population." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1137 (N.D. Cal. 2014) (internal quotations removed).

                    2.       Whether a Representation Is Likely To Deceive A Reasonable Consumer Is A Question Of Fact That Should Not Be Resolved Now

Whether a representation is likely to deceive is almost always a question of fact, not appropriate for resolution on a motion to dismiss. *Quinn v. Walgreen Co*., 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (whether "particular act or practice is deceptive [under New York General Business Law § 349] is usually a question of fact"). As such, dismissal of false advertising claims is appropriate only in a "*rare situation*," where "it [is] *impossible* for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939 (emphasis added);

*Atik v. Welch Foods, Inc.*, No. 15-CV-5405 (MKB) (VMS), 2016 WL 5678474, at *8 (E.D.N.Y. Sept. 30, 2016) (adopting *Williams*' "rare situation" standard); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 (RRM) RLM, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (for a court to grant a motion to dismiss, the label's context must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled.") (citation omitted).

This is not one of those "rare situations" where dismissal on the pleadings is appropriate, nor is deception "impossible" here. Based on the "Belgium 1926" Representation conspicuously placed on the Chocolate's packaging, Plaintiffs were deceived into believing the Chocolates are imported from Belgium. FAC at ¶¶ 13, 14. The same is true for a reasonable consumer. *See Marty v. Anheuser-Busch Cos, LLC*, 43 F. Supp. 3d 1333, 1340-42 (S.D. Fla. 2014) (denying defendant's motion to dismiss GBL, UCL, and CLRA claims, holding that a reasonable consumer could believe Beck's beer is brewed is Germany based on label representations such as, "Originated in Germany" and "Brewed Under the German Purity Law of 1516"); *Joshua Wasser, & others, Plaintiffs, v. All Mkt., Inc., Defendant.*, No. 16-21238-Civ-Scola, 2017 WL 11139701, at *4 (S.D. Fla. Nov. 13, 2017) (holding that the phrase "Born in Brazil" was a sufficient misrepresentation to state a claim under Florida's and California's consumer protection statutes.) Indeed, the Belgian Chocolate Code, developed by the CHOPRABISCO,[2] was founded on the principle that "the reputation of high quality associated with 'Belgian Chocolate' frequently

---

[2] Godiva is a member of CHOPRABISCO and should be aware of its guiding principles. *See* http://www.choprabisco.be/engels/choprabisco_frameset.htm (last visited May 20, 2019). Because Plaintiffs have included a citation to the CHOPRABISCO webpage in their FAC (*see* FAC at ¶19, n.3), this Court can take judicial notice of this webpage through the incorporation by reference doctrine. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002); *Williams v. Oberon Media, Inc*., No. CV 09-8764-JFW (AGRx), 2010 WL 1644888, at *1 (C.D. Cal. Mar. 4, 2010) (taking judicial notice of entire webpage through the incorporation by reference doctrine).

induces competitors to mislead consumers by using texts or illustrations referring to Belgium[.]" FAC at ¶ 19.

Finally, to the extent Godiva proffers a contrary understanding of the "Belgium 1926" representation, consumers' actual understanding of this representation can and should be fleshed out through discovery. For example, at trial, Plaintiffs bear the burden of establishing threshold issues such as how consumers understand the "Belgium 1926" Representation. To that end, a perception survey can be conducted by Plaintiffs (and Godiva) to determine how consumers interpret the phrase "Belgium 1926," and more specifically, whether they believe the Chocolates are from Belgium based on this representation. Accordingly, Plaintiffs should be permitted the opportunity to conduct discovery in support of their theory of liability.

### 3.     The Belgium Representation Is Misleading

Godiva argues that the Belgium Representation is a "factually accurate phrase that imparts an unambiguous and historically accurate message[.]" and consequently reasonable consumers could not as a matter of law be deceived by it.  MTD at 9.  This argument is unavailing for several reasons.

First, Godiva's purported historical roots in Belgium are irrelevant to the question at this stage: whether it is impossible for Plaintiffs to prove that a reasonable consumer could be deceived into believing that the Chocolates are from Belgium. The fact that Godiva chocolates may have a Belgian origin would not make the Belgium Representation any less deceptive because none of the Chocolates have ever been made in Belgium during the statute of limitations period. Even accepting Godiva's interpretation of the Belgium Representation as being "factually accurate," New York and California law both prohibit advertising that is technically true but nonetheless misleading – a point of law that Godiva acknowledges.  MTD at 10 (citing *Romero v. Flowers*

*Bakeries, LLC*, Case No. 14-cv-05189-BLF, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016) ("[A] representation need not be false to mislead a reasonable consumer…"); *see also Marty*, 43 F. Supp. 3d at 1342 (holding that even if the "Brewed under the German Purity Law of 1516" statement was true, a reasonable consumer could find it misleading); *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *18 (E.D.N.Y. July 21, 2010) (holding that California law prohibits "not only advertising which is false, but also advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.") (citing *Kasky v. Nike, Inc.,* 27 Cal.4th 939, 951 (2002)).

In that same vein, Godiva contends that the Belgium Representation "makes no claim that the Products were made in Belgium."  MTD at 9.  But such a statement is not required under the applicable consumer protection statutes in order to be deceptive and therefore actionable. Rather, the Court should look to the impression that the representation creates.  *See In re NJOY, Inc. Consumer Class Action Litig.*, No. CV 14-00428 MMM (JEMx), 2015 WL 12732461, at *12-13 (C.D. Cal. May 27, 2015) (holding that "a reasonable consumer could conclude" that an "advertisement conveys an implied misrepresentation"); *Mimedx Grp., Inc. v. Osiris Therapeutics, Inc.*, No. 16 Civ. 3645 (KPF), 2017 WL 3129799, at *14 (S.D.N.Y. July 21, 2017) (denying motion to dismiss GBL §§ 349 and 350 claims when complaint "adequately alleges [] literally or impliedly false statements"); *Scotch Whiskey Ass'n v. Consol. Distilled Prod., Inc.,* No. 79 C 3107, 1981 WL 40524, at *4 (N.D. Ill. May 7, 1981) (enjoining use of "LOCH–A–MOOR" on whiskey not produced in Scotland because this term, even though not a geographical place-name, nevertheless gave the impression of being one).  Moreover, Godiva's position is at odds with other product

origin cases, summarized below, in which the challenged representations were held actionable despite having no explicit statement regarding their geographic region.[3]

Several other relevant decisions illustrate this point. In *Marty*, the beer labels *did not* say "Brewed in Germany," but the court nonetheless found that reasonable consumer could believe Beck's beer is brewed is Germany based on label representations such as, "Originated in Germany" and "Brewed Under the German Purity Law of 1516." *Marty* 43 F. Supp. 3d at 1342. Similarly, in *Wasser*, the product labels did *not* say "Made in Brazil," but the court held that the phrase "Born in Brazil" was a sufficient misrepresentation to state a claim under Florida's and California's consumer protection statutes. *Wasser*, 2017 WL 11139701 at *4. The *Wasser* court found that the "Born in Brazil" was akin to the "Originated in Germany" representation in *Marty*, and was "a statement of origin… rather than a reference to Vita Coco's Brazilian heritage, as the Defendant suggests." *Id*. at *5.

In *Shalikar v. Asahi Beer U.S.A., Inc.*, No. LA CV 17-02713 JAK (JPRx), 2017 WL 9362139, at *3 (C.D. Cal. Oct. 16, 2017) the plaintiffs alleged that a Japanese product name ("Asahi") and the use of Japanese Kanji characters on the beer label could create a misleading impression that the beer was brewed in Japan, when it was not. Again, although there was no explicit statement that the beer was brewed in Japan, the court nonetheless found that a reasonable consumer could believe that to be the case, based on the product name and use of Japanese characters. *Id.* at *7-8. And in *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027-BLF, 2017 WL 3838453, at *7 (N.D. Cal. Sept. 1, 2017), the beer labels and packaging did *not* say "Made in Hawaii," but the court still held that references to Hawaii on the beer packaging "amount

---

[3] To the extent Godiva contends that the Belgium Representation was not intended or "designed to communicate that message" (MTD at 9), such intention, or lack thereof, is irrelevant to the question of how a *consumer* interprets the Belgium Representation.

to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii."

In sum, just as in the foregoing cases, the Court should not conclude that an explicit statement "Made in Belgium" is necessary for consumers to be deceived into believing the Chocolates are made in Belgium.

### 4. The Year "1926" Does Not Cure The Deceptive "Belgium" Statement

Godiva also contends that the word "Belgium" must be read in context with the word "1926," and that the addition of the year "1926" cures any likelihood of deception.  MTD at 9-10. In advancing this argument, Godiva implicitly concedes that the term "Belgium" standing alone would be actionable. But simply adding a year, without providing any further explanation or context, does not cure the likelihood of consumer deception.

Godiva's argument ignores the fact that a product is likely to continue being made in the same location where it originated. Simply modifying "Belgium" with "1926" does not mean as a matter of reasonable interpretation that the Chocolates originated in Belgium in 1926 *and* are no longer made there. These two situations are not mutually exclusive. Put simply, a consumer is likely to reasonably construe the Belgium Representation as indicating that the Products have been made in Belgium since 1926 and continue to be made there. Indeed, many consumer brands and products tout year / geographic origin claims and are still made in the location where they originated:

- Guinness beer: Originated in Dublin, Ireland since 1759, and is still brewed there.

- Modelo beer: Founded in 1925 in Mexico, and is still brewed there.

- San Pellegrino water: Founded in 1899 in San Pellegrino, Italy, and is still bottled there.

From a reasonable consumer's perspective, the belief that Godiva was founded in Belgium in 1926 could easily be reconciled with, and even strengthened by, the belief that the chocolate is being produced there to this day.[4] For example, in *Marty*, the court held that the label representations "Originated in Germany" and "Brewed Under the German Purity Law of 1516" should be viewed in conjunction with Beck's German heritage and 139-year history of being brewed in Germany. *Marty*, 43 F. Supp. 3d at 1342. The phrase "Originated in Germany" is akin to the "Belgium 1926" statement here, in that both are likely to be interpreted to reference the origins of the product while simultaneously misleading consumers into believing the products are currently made there. In other words, even representations that purportedly reference a product's heritage are actionable so long as they are likely to deceive a reasonable consumer.

In any event, and as mentioned above, how a consumer interprets a particular representation is a question of fact that should be addressed by the trier of fact after sufficient discovery. *Goldemberg v. Johnson & Johnson Consumer Cos, Inc*., 8 F.Supp.3d 467, 480 (S.D.N.Y. 2014) ("[T]he Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer.")

5.    Godiva Relies On Case Law That Is Inapposite Based On The Facts Here

In addition to citing a number of product origin false advertising cases that actually support Plaintiffs' position – *e.g.*, *Marty*, *Wasser, Shalikar,* and *Broomfield* – Godiva relies on cases that, while dismissed on their pleadings, are so factually dissimilar to this case that they offer little guidance. For example, Godiva cites *Pernod Ricard USA LLC v. Bacardi USA*, 702 F. Supp. 2d

---

[4] Perhaps foreseeing this commonsense understanding, Godiva advances the logically flawed proposition that under Plaintiffs' interpretation of the Belgium Representation, consumers would also believe that the actual Chocolates they had purchased were made in 1926. Plaintiffs did not have this understanding. Nor would a reasonable consumer.

238, 244 (D. Del. 2010) in support of its argument that a company can legally "appeal to its heritage in marketing its products."   MTD at 11.   *Pernod Ricard* was a Lanham Act case challenging "Havana Club" rum not being produced in Havana, Cuba. The Third Circuit's holding emphasized the dispositive facts in the case: the label "clearly state[d] on the front that the liquor is 'Puerto Rican Rum' and on the back, that it is 'distilled and crafted in Puerto Rico.'"   *Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc*., 653 F.3d 241, 252 (3d Cir. 2011).   Therefore "[n]o reasonable consumer could be misled by those statements" into believing that the rum was from Havana, Cuba.   *Id.*   The opinion included the following image of the label for reader context:



*Id.* at 246.

Further, the Third Circuit in *Pernod Ricard* explicitly distinguished the case from others "in which the statement of geographic origin in an advertisement is contained in fine print" because "the phrase 'Puerto Rican Rum' is particularly prominent on the front of the bottle." *Id*. at n.13. Here, unlike the clear front label "Puerto Rican Rum" representation in *Pernod Ricard*, nowhere on the front packaging (or anywhere on the packaging for that matter) does Godiva disclose that the Chocolates are made in Reading, Pennsylvania.

Godiva's reliance on *Dumas v. Diageo PLC*, No. 15CV1681 BTM (BLM), 2016 WL 1367511 (S.D. Cal. Apr. 6, 2016) is equally misplaced. While the *Dumas* plaintiffs challenged representations on the beer packaging, such as "The Taste of Jamaica" and the D&G logo, the front packaging conspicuously disclaimed that the beer was only "Jamaican Style:"



*Dumas*, 2016 WL 1367511 at *4.

The court held that consumers would be not be confused regarding the product origin, reasoning that the phrase "Jamaican Style" displayed prominently throughout the packaging indicated that the product was ***not*** from Jamaica. *Id.* In contrast, the packaging here does not

represent that the Chocolates are "Belgian Style" or words to similar effect. The Chocolates unequivocally state "Belgium 1926."

Bowring v. Sapporo U.S.A., 234 F. Supp. 3d 386, 388 (E.D.N.Y. 2017) and Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 670–71 (E.D.N.Y. 2017) are distinguishable for the same core reason: in both actions, the challenged products contained clear, explicit and accurate disclosures about the place of production, which "eclipsed" the challenged representations. Nelson, 246 F. Supp. 3d at 675-76;[5] see also Bowring, 234 F. Supp. 3d at 391-92.[6]  This was also a point of distinction in Wasser.  See Wasser, at p. 6-7.  Again, part and parcel with Godiva's intentional lack of transparency in crafting the "Belgium 1926" Representation, Godiva makes no argument that there is any disclaimer on the Products' packaging (on the front or the back) that would cure the statement prominently advertised on the front of the package. That is because there is none.[7] Indeed, if Godiva's true intent in adding "1926" to the "Belgium" statement was to clarify that the Chocolates are no longer made in Belgium, as stated in the MTD at 2 and discussed above, then Godiva could easily have included a disclaimer identifying where the Chocolates are actually from *or* any number of additional modifying or qualifying terms to the Belgium Representation

---

[5] The disclaimer in Nelson was "BREWED AND PACKAGED UNDER THE SUPERVISION OF FOSTER'S AUSTRALIA LTD, MELBOURNE, AUSTRALIA BY OIL CAN BREWERIES, ALBANY GA AND FORT WORTH TX."

[6] The disclaimer in Bowring was "Imported by Sapporo U.S.A. Inc., New York, NY" followed by "Brewed and canned [or bottled] by Sapporo Brewing Company, Guelph, Ontario, Canada."

[7] And even if there was a disclaimer, under Second and Ninth Circuit law, "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  Mantikas v. Kellogg Co., 910 F.3d 633, 637 (2d Cir. 2018) (quoting Williams, 552 F.3d at 939); see also Shalikar, 2017 WL 9362139 at *8 (holding that "[t]he effect of the disclosures ['PRODUCT OF CANADA' on the neck of the beer bottle] cannot be determined as a matter of law on the present record.")

without burdening the style of its packaging, such as "Founded in Belgium in 1926" or "Belgian Style." Instead, Godiva has willfully chosen not to do so.

Finally, Godiva cites *Forschner Grp., Inc. v. Arrow Trading Co. Inc.*, 30 F.3d 348 (2d Cir. 1994). *Forschner* involved a Lanham Act case where the court held that the phrase "Swiss Army knife" when used in conjunction with the statement "Made in China" to describe the knife was not a false advertisement under § 43(a)(1)(B) of the Lanham Act. *Id.* at 354–56. Again, in *Forschner* there was a clear disclosure that the knives were actually made in China: "[t]he tang of the main blade of Arrow's knife is marked: STAINLESS/ CHINA[]" and the side of the box stated "Made in China." *Id.* at 351. Here, there is no such qualification on the labels of the Chocolates. Moreover, the court observed that the word "'Swiss' is read more naturally to modify 'Army' than 'knife'—and probably does. The phrase Swiss Army knife therefore denotes a knife of the type associated with the Swiss Army, rather than a military knife manufactured in Switzerland." *Id.* at 355. Here, in contrast, even if "Belgium 1926" could literally mean that Godiva was founded in Belgium in 1926, it does not follow that the Chocolates are no longer made in Belgium, as argued by Godiva.

Accordingly, the Court should deny Godiva's request to dismiss Plaintiffs' GBL, UCL, FAL, and CLRA claims.

**B.      Plaintiffs Adequately Plead Breach Of Express And Implied Warranty Claims**

1.      Breach Of Express Warranty

To prevail on a breach of express warranty claim under New York and California law, Plaintiffs must prove that: (1) the seller's statement constitutes an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached. *See* N.Y. U.C.C. § 2–313(1); Cal. Comm. Code § 2313(1); *Brown v. Hain*

14

*Celestial Grp., Inc*., 913 F. Supp. 2d 881, 899-900 (N.D. Cal. 2012); *Hollman v. Taser Int'l Inc*., 928 F. Supp. 2d 657, 681 (E.D.N.Y. 2013).  Plaintiffs have adequately alleged all three elements: (1) Godiva has made an affirmation of fact or promise by representing that each Product is from Belgium; (2) Plaintiffs relied on the Belgium Representation, which was a basis of the bargain to purchase the Products; and (3) Godiva breached the express warranty by failing to provide Products made in Belgium, as reasonably expected.

Godiva only argues that the Belgium Representation is "neither an affirmation of fact, promise, nor a description of goods about <u>where</u> Godiva's chocolates are made."  MTD at 18. Godiva reasons that the representation is only a reference to Godiva's "origin as <u>a company</u>."  *Id.* But again, Godiva conflates its perception of the Belgium Representation with that of a reasonable consumer. As discussed above, a reasonable consumer is likely to believe the Products are made in Belgium based on the Belgium Representation. Indeed, courts have declined to dismiss breach of express warranty claims based on arguably less descriptive representations. For example, in *Hadley v. Kellogg Sales Co.,* 273 F. Supp. 3d 1052, 1093 (N.D. Cal. 2017), the court denied a motion to dismiss an express warranty claim based on representations such as "[s]tart with a healthy spoonful," "nutritious," and "eat something wholesome." And, as with Plaintiffs' false advertising claims, whether a challenged misrepresentation constitutes an affirmation of fact, and therefore an express warranty, is normally a question of fact for the jury.  *See McDonnell Douglas Corp. v. Thiokol Corp*., 124 F.3d 1173, 1176 (9th Cir. 1997) ("[W]hether seller affirmed a fact amounting to an express warranty is a question of fact"); *Silva v. Smucker Nat. Foods, Inc*., No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *Buonasera v. The Honest Co.,*

*Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016) (holding that whether a reasonable consumer could interpret the term "all natural" as a factual express warranty is a matter of fact not appropriate for a motion to dismiss).

Accordingly, the Court should deny Godiva's request to dismiss Plaintiffs' breach of express warranty claims.

### 2.   Breach Of Implied Warranty

Plaintiffs' implied warranty claims are predicated on New York's and California's adoption of § 2-314(2)(f) of the U.C.C., which provides that "[g]oods to be merchantable must . . . [c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. § 2-314(2)(f); Cal. Com. Code § 2314(2)(f). Plaintiffs have adequately alleged that because the Products do not conform to the promises or affirmations of fact that they are from Belgium, Godiva has violated its implied warranty of merchantability. To the extent Godiva contends that Plaintiffs have not challenged an affirmative representation, as discussed above, the Belgium Representation is likely to be reasonably interpreted as an affirmation of fact that the Products are from Belgium.

Godiva also avers that Plaintiffs' implied warranty claims fail due to a purported lack of vertical privity. As a threshold matter, Plaintiff Hesse purchased the Products directly from Godiva at a Godiva brick and mortar store in in Smith Haven Mall, Lake Grove, New York.  FAC at ¶ 13. Therefore, Plaintiff Hesse is in vertical privity with Godiva.[8] Relatedly, Godiva ignores the fact that Plaintiff Hesse –with respect to his implied warranty claim – seeks to represent only those class members who purchased Products directly at a brick and mortar Godiva store or from

---

[8] Godiva wholly ignores this allegation and instead focuses Plaintiff Hesse's additional purchase of Godiva chocolates at Kohl's. Because Plaintiff Hesse purchased the Chocolates directly from Godiva, vertical privity is established, and Godiva's argument is moot.

Godiva's website.  *See* FAC at ¶ 72 ("Plaintiff Hesse brings this claim individually and on behalf of the members of the proposed New York Subclass who purchased a Product directly at a brick and mortar Godiva store or on www.godiva.com").  Therefore, privity is also established with respect to all members of the proposed Class.

As to Plaintiff Buxbaum's implied warranty claim, Godiva is incorrect that a lack of privity bars his claim. While California generally requires a showing of privity to maintain a cause of action for breach of implied warranty, three exceptions to the privity requirement apply here. First, it is well established that in cases involving "foodstuff," like the Chocolates here, vertical privity is unnecessary.  *See Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 932 (N.D. Cal. 2014) (acknowledging that "California law does not require privity for implied warranty claims involving sealed food products"); *Cabrera v. Bayer Healthcare, LLC,* No. LACV1708525JAKJPRX, 2019 WL 1146828, at *11 (C.D. Cal. Mar. 6, 2019) (holding that "privity of contract is not required when an implied warranty claim relates to substances intended for human consumption."); *Joseph v. J.M. Smucker Co.*, No. CV 17-8735 FMO (KSx), 2019 WL 1219708, at *5 (C.D. Cal. Mar. 13, 2019) (same).[9]

Second, an implied warranty claim is exempt from the privity requirement when a consumer relies on a product's labeling, as Plaintiff Buxbaum did here.  *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("Some particularized exceptions to the [privity] rule exist. The first arises when the plaintiff relies on written labels or advertisements of a manufacturer.").  Lastly, an exception to the privity requirement exists when a plaintiff is an

---

[9] *Martin v. Tradewinds Beverage Co.*, No. CV16-9249 PSG (MRWx), 2017 WL 1712533, at *11 (C.D. Cal. Apr. 27, 2017), cited by Godiva, is inconsistent with *Hendricks*, *Cabrera*, and *Joseph*, in which the foodstuffs exception was applied even when the plaintiff end user was ***not*** an employee of the defendant.

intended third-party recipient of the product.  *See Michael v. Honest Co., Inc.*, No. LA CV 15-07059 JAK (AGRx), 2016 WL 8902574, at \*24-26 (C.D. Cal. Dec. 6, 2016) (holding that a plaintiff-consumer does not need to show vertical privity for an implied warranty claim when purchasing the product from a retailer because she is an intended beneficiary of the warranties); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 759 (E.D. Mich. 2017) ("Although federal courts in California have reached differing conclusions on whether a consumer can assert an implied warranty claim as a third-party beneficiary between the manufacturer and the retailer, the clear weight of authority has found that such an exception is cognizable.") Here, while Plaintiff Buxbaum purchased the Products from a Target store, he, and similarly situated consumers, were undoubtedly the third-party beneficiaries of the Products sold or distributed by Godiva to retailers of the Chocolates.

Accordingly, the Court should deny Godiva's request to dismiss Plaintiffs' breach of implied warranty claims.

### C.   Plaintiffs Adequately Plead Common Law Claims

#### 1.   Fraud And Intentional Misrepresentation

Godiva asserts that Plaintiffs' fraud and intentional misrepresentation claims fail under Rule 9(b) for lack of particularity in pleading scienter.  MTD at 22.  "Rule 9(b)'s heightened pleading requirements do not apply to allegations regarding an accused's state of mind—thus, knowledge need only be alleged *generally* to state a valid claim for fraud."  *Swingless Golf Club Corp. v. Taylor*, 679 F. Supp. 2d 1060, 1067 (N.D. Cal. 2009) (citing Fed. R. Civ. P. 9(b)).  This is because realistically a plaintiff cannot be expected to plead a defendant's actual state of mind. *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995).  Instead, scienter need only be alleged

under the less stringent Rule 8 standard under *Iqbal*, which does not require "detailed factual allegations[.]" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To that end, Plaintiffs have sufficiently alleged knowledge and intent. Plaintiffs allege that, as the entity responsible for the Products, Godiva undoubtedly was aware that the Products are not made in Belgium, but that consumers are likely to reasonably believe that the Belgium Representation means the Products are made there.  FAC at ¶¶ 33-34; *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484(JS) (AKT), 2015 WL 2344134, at *12 (E.D.N.Y. May 14, 2015) (inferring intent to defraud based on defendant's knowledge that representation was misleading).

Moreover, to plead scienter under 9(b), the plaintiff must only "allege facts that give rise to a strong inference of fraudulent intent[,]" and a requisite "strong inference" can be established by showing that defendants had both the motive and opportunity to commit fraud, or "acts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).  As a company that is a member of CHOPRABISCO, Godiva was aware, or at the very least was reckless in not being aware, of the confusion that the Belgium Representation is likely to cause with consumers.  FAC at ¶ 19.  This is sufficient to establish requisite scienter.[10]

Finally, Godiva attempts to set a threshold scienter pleading standard by citing allegations in other cases that were "pled with enough specificity" to demonstrate scienter. MTD at 23 (citing cases). However, the courts in those cases only found that such allegations were ***sufficient*** to establish scienter, not a requirement of pleading scienter. Without the benefit of discovery,

---

[10] To the extent Godiva contends that Plaintiffs' fraud and intentional misrepresentation claims must also be dismissed for failure to plead a misrepresentation of fact (MTD at 22 n.7), Plaintiffs have already demonstrated that the Belgium Representation is a false and misleading statement of fact. *See supra* at Section IV.A.

Plaintiffs should not be held to a requisite level of specificity in alleging scienter, as long as they can demonstrate a strong inference of fraudulent intent. Plaintiffs have done so here, and therefore, their common law fraud and intentional misrepresentation claims should not be dismissed.

2.      Negligent Misrepresentation

Godiva seeks to apply New York law to Plaintiff Hesse's and Buxbaum's negligent misrepresentation claims on the grounds that the tortious conduct occurred within the borders of New York – the state of Godiva's principal place of business.  MTD at 24-25.  Plaintiffs agree with Godiva's position in this regard. For the same reason, and to the extent there are any material differences between New York law and the law of other states encompassed within the putative class under Plaintiffs' other common law claims – *e.g.*, fraud, intentional misrepresentation, and unjust enrichment – New York law would similarly apply because Godiva's headquarters are in New York.  *See In re Thelen LLP*, 736 F.3d 213, 220 (2d Cir. 2013) ("If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders"); *Niedernhofer v. Wittels*, No. 17-CV-4451 (NSR), 2018 WL 3650137, at *8 (S.D.N.Y. July 31, 2018) (applying law of state of the defendant's residence at the time the misstatements were made).

Thus, if the Court also agrees that New York law applies to the negligent misrepresentation claim, Plaintiffs concede that the FAC does not state sufficient facts to support a negligent misrepresentation claim, and accordingly, Plaintiffs withdraw this claim. However, to the extent the Court finds that California law applies to Plaintiff Buxbaum's negligent misrepresentation claim, Plaintiff Buxbaum has sufficiently pleaded such a claim. There is no special relationship requirement under California negligent misrepresentation law.  *See Niedernhofer*, 2018 WL 3650137 at *7 ("New York requires a duty arising from a special relationship, while California

and Florida do not."). Moreover, any argument Godiva may make regarding the application of the economic loss doctrine precluding Plaintiff Buxbaum's California negligent misrepresentation claim is unavailing because "California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable." *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK Ex, 2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (citation omitted) (quoting *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008)); *see also Broomfield*, 2017 WL 3838453 at *9-10 (following *Kalitta Air* as "binding Ninth Circuit precedent" and holding that the plaintiffs' negligent misrepresentation claim (premised on similar facts) is not barred by the economic loss doctrine).

Finally, to the extent Godiva asserts that the claim still fails for failure to allege an incorrect statement (MTD at 27-28), Plaintiff has already established that the Belgium Representation is deceptive. *See supra* Section IV.A. Plaintiffs also allege that Godiva "had no reasonable grounds for believing its misrepresentations were not false and misleading." FAC at ¶ 162. The Court should accept this allegation as true, especially because "[w]hether a defendant had reasonable ground for believing his or her false statement to be true is ordinarily a question of fact." *Quality Wash Grp. V, Ltd. v. Hallak*, 58 Cal. Rptr. 2d 592, 598 (Cal. Ct. App. 1996). Indeed, other courts addressing product origin false advertising cases have found similar allegations to sufficiently plead a negligent misrepresentation claim under California law.[11] *See, e.g.*, *Broomfield*, 2017 WL 3838453, at *10 (denying motion to dismiss negligent misrepresentation claim).

---

[11] To the extent Godiva also contends that the claim fails because Plaintiff Buxbaum did not justifiably rely on the purported misrepresentation, that argument is also unavailing. As discussed in Section IV.A, Plaintiffs relied on the Belgium Representation in purchasing the Chocolates, reasonably believing that the Chocolates were made in Belgium. In any event, whether reliance is justifiable is generally a question of fact. *See Astiana v. Ben & Jerry's Homemade, Inc.*, No. C 10-4387 PJH, 2011 WL 2111796, at *12 (N.D. Cal. May 26, 2011) (denying motion to dismiss

Accordingly, Plaintiffs withdraw their negligent misrepresentation claim, unless the Court concludes that California law applies to Plaintiff Buxbaum's claim, in which case, the Court should deny Godiva's motion to dismiss as to Plaintiff Buxbaum's negligent misrepresentation claim.

3.    <u>Quasi-Contract/Unjust Enrichment</u>

Godiva contends that Plaintiff Hesse's quasi-contract claim fails under New York law because it purportedly duplicates his other tort and contract claims. MTD at 29. As a threshold matter, Fed. R. Civ. P. 8(a)(3) allows plaintiffs to plead their claims in the alternative in New York federal court. *See Trend & Style Asia HK Co. v. Pac. Worldwide, Inc.*, No. 14-CV-9992 SAS, 2015 WL 4190746, at *5 (S.D.N.Y. July 10, 2015) (denying defendants' argument that plaintiff's unjust enrichment claim should be dismissed because it is duplicative, because Rule 8(a)(3) "expressly permit[s] plaintiffs to plead in the alternative, and the law is well settled in this regard."); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 411 n.11 (S.D.N.Y. 2011) ("The Court rejects Defendants' first argument: that unjust enrichment is disallowed where an adequate remedy at law exists. This argument is premature because Plaintiffs may plead in the alternative."); *Delgado v. Ocwen Loan Servicing, LLC*, 13-CV-4427, 2017 WL 5201079, at *15 (E.D.N.Y. Nov. 9, 2017) (same). Nonetheless, Godiva suggests that Plaintiff Hesse's unjust enrichment claim may only be pled in the alternative if he could demonstrate that his claim is not duplicative of other claims, which, according to Godiva, he cannot do. MTD at 29.

An unjust enrichment claim is not duplicative if a "reasonable trier of fact could find unjust enrichment . . . without establishing all the elements for one of [Plaintiffs'] claims sounding in law." *Nuss v. Sabad*, No. 7:10-CV-0279 (LEK/TWD), 2016 WL 4098606, at *11 (N.D.N.Y. July

---

common law fraud claim, holding that "the issues of reliance and materiality are too fact-dependent to be resolved on the present 12(b)(6) motion").

22

28, 2016).  Here, the elements of Plaintiffs' unjust enrichment claim are distinct from the elements

of Plaintiffs' other claims. For example, "a claim for violating NY GBL § 349 requires [p]roof that

[a] defendant's acts are directed to consumers" while a claim for unjust enrichment does not.

*McCracken v. Verisma Sys., Inc*., No. 6:14-CV-06248(MAT), 2017 WL 2080279, at *8 (W.D.N.Y.

May 15, 2017), *reconsideration denied*, 2018 WL 4095104 (W.D.N.Y. Aug. 28, 2018) (internal

quotation marks omitted).   Thus, "a reasonable trier of fact could find the elements unjust

enrichment without establishing all the elements for Plaintiffs' NY GBL § 349 claim." *Id.*; *see

also Warner v. StarKist Co.,* No. 118CV406GLSATB, 2019 WL 1332573, at *3 (N.D.N.Y. Mar.

25, 2019) (observing that "[t]he elements for an unjust enrichment claim are distinct from the

elements for GBL claims under §§ 349 and 350.")  Furthermore, "even if the jury determines that

the [Plaintiffs] did not rely on [Godiva's] allegedly fraudulent statements, the Court could still find

that [Godiva] received a benefit . . . that aught to in 'equity and good conscience' be turned over

to [Plaintiffs]." *Nuss*, 2016 WL 4098606, at *11.

Moreover, while claims for common law fraud and intentional misrepresentation involve

a requisite scienter requirement, the elements of an unjust enrichment claim are only: (1)

enrichment of the defendant, (2) at the plaintiff's expense, (3) the retention of which by the

defendant is against equity and good conscience.  *Cty. of Nassau v. Expedia, Inc*., 992 N.Y.S.2d

293, 296 (N.Y. App. Div. 2014).  Thus, a claim for unjust enrichment requires no showing of

scienter.  *Simonds v. Simonds*, 380 N.E.2d 189, 194 (N. Y. 1978) ("Unjust enrichment . . . does

not require the performance of any wrongful act by the one enriched. Innocent parties may

frequently be unjustly enriched.") (citations omitted). Finally, a cause of action for breach of

express and implied warranty both require a showing of an affirmation of fact, while a claim for

unjust enrichment does not. For these reasons, Plaintiff Hesse's New York unjust enrichment claim is not duplicative of his other claims and should not be dismissed.

Plaintiff Buxbaum's California unjust enrichment claim is also adequately pleaded. Godiva contends that Plaintiff Buxbaum makes conclusory allegations of unjust enrichment, and that Godiva's retention of the benefits Plaintiff Buxbaum conferred upon it was not unjust.  MTD at 30.  This is incorrect. Plaintiffs allege that Godiva made a false and misleading representation about the Products and was unjustly enriched because it retained monies paid to it at the expense of deceived consumers.  *See* FAC at ¶¶ 168-70.  This is sufficient under *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (the plaintiffs' statement that "[defendant] had 'entic[ed]' plaintiffs to purchase their products through 'false and misleading' labeling, and that [defendant] was 'unjustly enriched' as a result" is sufficient to state a quasi-contract cause of action); *see also Broomfield,* 2017 WL 3838453, at *13 (finding allegations that defendant was unjustly enriched from the misleading representations on the packaging for Kona beer, inducing consumers to pay more for the beer than they would have, were sufficient for quasi-contract claim). Accordingly, the Court should deny Godiva's request to dismiss Plaintiff Buxbaum's quasi-contract claim.

### D.    The First Amendment Does Not Protect Godiva's Misleading Belgium Representation

Godiva argues that *all* of Plaintiffs' claims should be dismissed because they impermissibly burden its right to commercial speech under the First Amendment.[12]  MTD at 31.  This argument fails because *misleading* commercial speech is not protected under the First Amendment.

---

[12] Presumably, Godiva is referring only to Plaintiffs' statutory claims.

Commercial speech is protected by the First Amendment, but to a lesser degree than other types of speech. *See United States v. United Foods, Inc.*, 533 U.S. 405, 409 (2001). The scrutiny afforded to regulation of commercial speech is described as intermediate in *Central Hudson Gas & Electrical. Corp. v. Public Service Commission*, 447 U.S. 557 (1980). Under *Central Hudson*, the Court must first determine whether the First Amendment even applies. "At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566; *see also Bd. of Trs. of Univ. of N.Y. v. Fox*, 492 U.S. 469, 475 (1989) (misleading commercial speech not protected by the first amendment). Once it is determined that the First Amendment applies to the particular kind of commercial speech at issue, then the speech may be restricted only if the government's interest in doing so is substantial, the restrictions directly advance the government's asserted interest, and the restrictions are no more extensive than necessary to serve that interest. *Central Hudson*, 447 U.S. at 566.

Here, Godiva only addresses the first step of the inquiry under *Central Hudson*, contending the challenged speech is not misleading. Godiva does not identify the specific statutes it asserts are unconstitutional, nor does it address the three factors of the *Central Hudson* test, assuming the threshold inquiry that the First Amendment applies is met. The Court should reject Godiva's argument on this basis alone.

Moreover, Godiva's constitutional challenge, an affirmative defense, is premature at this juncture. *See, e.g.*, *Bruton v. Gerber Prods. Co.*, 961 F. Supp. 2d 1062, 1093 (N.D. Cal. 2013), rev'd and remanded, 703 F. App'x 468 (9th Cir. 2017) ("To the extent that Defendants attempt to dispute the merits of [Plaintiff's] allegations by virtue of invoking a First Amendment defense, the Court finds such arguments inappropriate for a motion to dismiss brought pursuant to Federal Rule

of Civil Procedure 12(b)(6)"); *Anderson v. Seaworld Parks & Entm't, Inc.*, No. 15-CV-02172-JSW, 2016 WL 4076097, at *2 n.3 (N.D. Cal. Aug. 1, 2016) ("The Court cannot say, based on the face of the FAC or the proposed SAC, that the speech at issue would be protected [under the First Amendment]").  Alternatively, Godiva's First Amendment challenge is ancillary to its arguments pertaining to the likelihood of consumer deception. Plaintiffs' consumer protection claims under New York and California law all assert that Godiva's use of the Belgium Representation is false and deceptive. Thus, if Plaintiffs are permitted to advance their consumer protection claims – as they should for the reasons articulated above – this argument is premature because the speech at issue should be presumed misleading and afforded no protection under the First Amendment.

Indeed, courts routinely reject such First Amendment challenges when the commercial speech at issue is likely to deceive consumers. For example, in *Benson v. Kwikset Corp.*, 62 Cal. Rptr. 3d 284, 289 (Cal. Ct. App. 2007), the plaintiff alleged the defendants' products were deceptively labeled as made in the USA in violation of California consumer protection statutes. The defendants argued that California's "Made in USA." law, Cal. Bus. & Prof. Code § 17533.7, impeded its First Amendment rights to commercial free speech. *Id.* at 1267.  The California Court of Appeal rejected this argument: "[w]hile product labeling is lawful activity, the labels here were misleading in their description of where the respective products had been produced or manufactured."  *Id.*; *see also Martin v. Tradewinds Beverage Co.*, No. CV 16-9249 PSG-MRW, 2017 WL 6816608, at *6 (C.D. Cal. Sept. 5, 2017) (denying motion to dismiss on the basis the First Amendment protected commercial speech in part because the challenged deceptive representations regarding all natural tea drinks could mislead a reasonable consumer); *Fed. Trade Comm'n v. Wellness Support Network, Inc.*, No. 10-cv-04879-JCS, 2014 WL 644749, at *10 (N.D. Cal. Feb. 19, 2014) (rejecting First Amendment challenge to FDA regulations regarding alleged

deceptive advertising and holding that "deceptive commercial speech is entitled to no protection under the First Amendment.").

In sum, Godiva's Belgium Representation is afforded no protection under the First Amendment because it is misleading commercial speech and Godiva's motion to dismiss on this basis should be denied.

### E.     Plaintiffs Have Standing To Pursue Injunctive Relief

Contrary to Godiva's argument, Plaintiffs have standing to seek injunctive relief. Under *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 640 (2018), the Ninth Circuit held a previously deceived plaintiff has standing to pursue injunctive relief when: (1) "[the consumer] will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) "[the consumer] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70. Plaintiffs assert facts to establish standing consistent with *Davidson*, as they allege:

> Despite being misled by Defendant, Plaintiffs wish to and are likely to continue purchasing the Godiva Chocolates in the future. Although Plaintiffs regularly visit stores where Defendant's Godiva Chocolates are sold, absent an injunction prohibiting the deceptive labeling and advertising described herein, they will be unable to rely with confidence on Godiva's representations in the future and will therefore abstain from purchasing the Products, even though they would like to purchase them.

FAC at ¶ 15.

The threat of future harm is that Plaintiffs cannot rely with certainty on Godiva's representations as to where the Products are made and thus will refrain from purchasing the Products despite their desire to continue purchasing them. These allegations plainly satisfy *Davidson*.

Godiva attempts to distinguish *Davidson* by arguing that Plaintiffs currently know that the Products are not from Belgium.  MTD at 33.  This argument does not meaningfully distinguish *Davidson*, as there the Ninth Circuit squarely held that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson*, 889 F.3d at 969.  Thus, the fact that Plaintiffs believe the Products are not currently from Belgium does not foreclose the possibility that they will be made there in the future.  *Id.* ("We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm.").

Exacerbating this uncertainty is the fact that nowhere on the label does Godiva list "Reading, Pennsylvania" or have any type of disclaimer that the Products are made in the United States. Given Plaintiffs' uncertainty and inability to rely on the Product's packaging, this case is akin to the facts in *Davidson*, where there was "no way of determining whether the representation 'flushable' is in fact true."  *Id.* at 971.  For this same reason, *Rahman v. Mott's LLP*, No. 13-cv-03482-SI, 2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) is distinguishable. There, the court held that going forward the plaintiff could simply check the ingredients to determine the accuracy of the phrase "No Sugar Added." 2018 WL 4585024, at *3. Here, there is no way for Plaintiffs to independently verify in the future where the Chocolates are actually made prior to making a purchasing decision. And *Fernandez v. Atkins Nutritionals, Inc.*, No. 3:17-CV-01628-GPC-WVG, 2018 WL 280028, at *14-15 (S.D. Cal. Jan. 3, 2018), is simply not applicable because in that case, the plaintiff "admit[ted] that she now has knowledge that enables her to make an appropriate choice

with respect to [the defendant's] products."[13]  *Id.* at *14-15.  In other words, the plaintiff in *Fernandez* simply failed to plead allegations consistent with *Davidson*.

Finally, contrary to *Fernandez* and *Rahman*, numerous California district courts have applied *Davidson* based on facts similar to those present here.  *See, e.g., Shank v. Presidio Brands, Inc.*, No. 17-cv-00232, 2018 WL 1948830, at *5 (N.D. Cal. Apr. 25, 2018) (rejecting *Fernandez* and holding allegations "[the plaintiff] would like to purchase [the challenged product] but 'has no way of knowing whether [a] reformulation would . . . actually contain no unnatural, synthetic, or non-naturally derived ingredients'" sufficient to establish standing under *Davidson*); *Gasser v. Kiss My Face, LLC*, No. 17-cv-01675-JSC 2018 WL 4847071, at *3 (N.D. Cal. Apr. 4, 2018) (rejecting *Fernandez* and holding consistent with *Davidson*, the plaintiffs have standing to seek injunctive relief because "they cannot rely upon Defendant's labeling"); *Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2018 WL 6460451, at *13 (N.D. Cal. Dec. 10, 2018) (distinguishing *Fernandez* and holding the plaintiffs had standing for injunctive relief because they wish to purchase the products but have no way to determine whether the representation is still true); *Wisdom v. Easton Diamond Sports, LLC*, No. 18-CV-4078 DSF (SSX), 2019 WL 580670, at *3 (C.D. Cal. Feb. 11, 2019) (holding the plaintiff's allegations that he "regularly visits sporting goods stores where Easton bats are sold in order to browse and purchase the latest bat models[,]" and wishes to purchase Easton bats in the future if accurately labeled, despite being misled by the defendant's labeling, were sufficient to confer Article III standing for injunctive relief); *Robinson*

---

[13] The only other California case cited by Godiva, *Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 3838453, at *12 (N.D. Cal. Sept. 25, 2018), is inapposite to this issue because that *Broomfield* opinion was issued before *Davidson* was decided. Indeed, after *Davidson* was decided, plaintiffs filed a motion for reconsideration of the court's order dismissing claims for injunctive relief. The court granted the motion, permitting the plaintiffs leave to file an amended complaint with allegations seeking injunctive relief. *Broomfield v. Craft Brew All., Inc*., No. 17-CV-01027-BLF, 2017 WL 5665654, at *4 (N.D. Cal. Nov. 27, 2017).

*v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at *4 (N.D. Cal. May 8, 2019) (holding the plaintiff's allegations that she "will not purchase the Crisco EVOO product in the future, although [she] would like to do so, unless and until Defendant takes corrective action" sufficient to establish standing for injunctive relief).

In addition, although the Second Circuit has not squarely addressed this issue, several New York district courts have found analogous allegations confer Article III standing to pursue injunctive relief in consumer class actions. *See Delgado v. Ocwen Loan Servicing, LLC*, No. 13-CV-4427 NGG RML, 2014 WL 4773991, at *14 (E.D.N.Y. Sept. 24, 2014) (New York district court finding that plaintiffs "have [Article III] standing to pursue injunctive relief under the UCL" when the defendant's deceptive "practices are ongoing"); *Belfiore v. Procter & Gamble Co.*, 94 F.Supp.3d 440, 445 (E.D.N.Y. 2015) (holding a plaintiff has standing to pursue injunctive relief based on allegations that he purchased wipes that were deceptively advertised as being flushable when they are not and stating: "To hold [that plaintiff lacks Article III standing] would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated."); *Ackerman v. Coca–Cola Co.*, No. 09–CV–395 (DLI), 2013 WL 7044866, at *15 n. 23 (E.D.N.Y. July 18, 2013) ("[P]laintiffs have standing to seek injunctive relief based on the allegation that a product's labeling or marketing is misleading . . . To hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief.") (internal quotation marks omitted); *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 317 F.R.D. 374, 397 (S.D.N.Y. 2016) (following *Belfiore* and holding that "the fact that each Plaintiff 'would continue to purchase the Products in the future' if the misleading labeling is corrected . . . is sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm.")

While Godiva cites other New York district court opinions that hold to the contrary, in the absence of Second Circuit authority on this issue (which Godiva acknowledges), the Court should follow *Davidson* and conclude that Plaintiffs have standing to pursue injunctive relief based on the harm that Plaintiffs cannot rely with certainty on Godiva's representations as to where the Products are made and thus will refrain from purchasing the Products despite their desire to continue purchasing them.  *See Campbell v. Freshbev LLC*, 322 F.Supp.3d 330, 337-38 (E.D.N.Y 2018) (finding *Davidson* persuasive, and only dismissing injunctive relief because plaintiff failed to "plead that he intends or desires to purchase FreshBev's juices in the future"); *Phoenix Entm't Partners, LLC v. J-V Successors, Inc.*, 305 F. Supp. 3d 540, 548 (S.D.N.Y. 2018) (finding that, on an unrelated issue, "[i]n the absence of binding precedent from the Second Circuit on this issue, the Court adopts the reasoning of the Seventh and Ninth Circuits, which is persuasive."). Accordingly, Plaintiffs have standing to pursue injunctive relief.

## V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that Court deny Godiva's Motion to Dismiss in its entirety. To the extent the Court is inclined to dismiss any of Plaintiffs' claims, Plaintiffs respectfully request that the Court do so without prejudice and permit Plaintiffs leave to file an amended complaint under Rule 15 of the Federal Rules of Civil Procedure.


Dated:  May 20, 2019                              Respectfully submitted,

                                                  **FARUQI & FARUQI, LLP**

                                                  By:    */s/ Timothy J. Peter*
                                                  Timothy J. Peter
                                                  1617 John F. Kennedy Boulevard, Suite 1550
                                                  Philadelphia, PA 19103
                                                  Tel: (215) 277-5770
                                                  Fax: (215) 277-5771

Email:  tpeter@faruqilaw.com

Innessa M. Huot
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
E-mail: ihuot@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand
400 Corporate Pointe, Suite 300
Culver City, California 90230
Tel: 310-590-4503
Fax: 310-590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs Steve Hesse, Adam
Buxbaum and the putative Classes*