USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/29/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Steve Hesse, *et al.*,

                Plaintiffs,

    –v–

Godiva Chocolatier, Inc., *et al.*,

                Defendants.

---

19-cv-972 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This putative class action concerns Godiva Chocolatier's use of the representation "Belgium 1926" on its chocolate products made and sold in the United States. Plaintiffs allege that this representation led them to purchase Godiva's chocolates products believing that they were made in Belgium—when they are in fact made in Pennsylvania. Plaintiffs therefore contend that this representation violates New York and California consumer-protection laws, express and implied warranties, and several common-law guarantees. Godiva has now moved to dismiss. For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

## I.    BACKGROUND

### A. Factual Background

For the purposes of a motion to dismiss, the Court takes well-pleaded allegations in Plaintiffs' Complaint as true and draws all reasonable inferences in Plaintiffs' favor. *See Koch v. Christie's Intern. PLC*, 699 F.3d 141, 145 (2d. Cir. 2012).

Godiva, a chocolate manufacturer, places the representation "Belgium 1926" "prominently . . . on the front packaging of all the Godiva chocolates." Amended Complaint

(Compl.), Dkt. No. 12, ¶ 2.  Godiva also "extensively utilizes the [Belgium 1926] representation across its entire marketing campaign, such as on its Godiva storefronts, supermarket display stands, and print and social media advertising."  *Id.* ¶ 3.  Plaintiffs include the following example of Godiva's packaging in their Complaint:



*Id.* ¶ 24.  Plaintiffs also include examples of Godiva's online, storefront, in-store, and social-media advertising, all of which contain the Belgium 1926 representation.  *Id.* ¶ 25.  The crux of this case is that despite these representations, Godiva's chocolates have all been made in Reading, Pennsylvania during the relevant time period.  *Id.* ¶ 27.  "None of the Godiva Chocolates are made in Belgium."  *Id.*

Plaintiff Steve Hesse is a citizen of New York, and Plaintiff Adam Buxbaum a citizen of California.  *Id.* ¶¶ 13, 14.  Because of the Belgium 1926 representation, they purchased Godiva chocolates believing that they were purchasing chocolate made in and imported from Belgium.

*Id.* ¶¶ 6, 13, 14.  They would not have purchased the products, or would not have paid as high a price, had they known the chocolate was made in the United States.  *Id.* ¶ 7.  In support of this assertion, Plaintiffs point to tangible and intangible differences in reputation and ingredients between American and Belgian chocolates.  *Id.* ¶¶ 28, 29.  For example, they note that "Belgium is widely understood and recognized as producing among the highest quality chocolates in the world."  *Id.* ¶ 18.  And they assert that American chocolate differs in taste from that produced in Belgium, due "to the use of different butters, creams, and alcohol."  *Id.* ¶ 28.  Nonetheless, Plaintiffs "wish to and are likely to continue purchasing the Godiva Chocolates in the future."  *Id.* ¶ 15.  Without a change in Godiva's labeling, "they will be unable to rely with confidence on Godiva's representations in the future and will therefore abstain from purchasing the Products."  *Id.* ¶ 15.

### B.  Procedural Background

Plaintiffs filed this action in January 2019.  *See* Dkt. No. 1.  In their Amended Complaint, Dkt. No. 12, Plaintiffs aver that they bring this action on behalf of four putative classes: First, a nationwide subclass, defined as "[a]ll persons in the United States who, within the relevant statute of limitations period, purchased any of the Godiva Chocolates."  Compl. ¶ 39.  Second, a New York subclass, defined as all such persons who "purchased any of the Godiva Chocolates for personal, family, or household purposes in the state of New York."  *Id.*  Third, a California subclass, defined as all persons who "purchased any of the Godiva chocolates in the state of California."  *Id.*  And fourth, a "California Consumer" subclass, defined as all such persons who "purchased any of the Godiva chocolates for personal, family, or household purposes in the state of California.  *Id.*

Plaintiffs assert claims for these respective subclasses under New York and California state laws.  They assert the following claims: (1) violation of New York General Business Law (GBL) § 349, (2) violation of New York GBL § 350, (3) breach of express warranty under New

York law, (4) breach of implied warranty under New York law, (5) violation of California's

Consumer Legal Remedies Act, (6) violation of California's Unfair Competition Law, (7)

violation of California's False Advertising Law, (8) breach of express warranty under California

law, (9) breach of implied warranty under California law, (10) common-law fraud,

(11) intentional misrepresentation, (12) negligent misrepresentation, (13) "Quasi Contract/Unjust

Enrichment/Restitution."  Compl. ¶¶ 51–172.

      In April 2019, Godiva moved to dismiss the Amended Complaint and requested that the

Court take judicial notice of certain documents.  Dkt. 22–24.  Godiva argued that Plaintiffs lack

standing for injunctive relief, warranting dismissal in part for lack of subject-matter jurisdiction

under Rule 12(b)(1).  And Godiva argued that Plaintiffs had failed to state any of their claims,

warranting complete dismissal under Rule 12(b)(6).  This motion is now before the Court.

## II.    LEGAL STANDARD

      A Rule 12(b)(1) motion is a threshold challenge to this Court's subject-matter

jurisdiction.  Federal courts are courts of limited jurisdiction.  *Kokkonen v. Guardian Life Ins.*

*Co. of Am.*, 511 U.S. 375, 377 (1994).  "[A] claim is properly dismissed for lack of subject

matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or

constitutional power to adjudicate it."  *Morrison v. Nat'l Austl. Bank Ltd*., 547 F.3d 167, 170 (2d

Cir. 2008) (citation omitted).  "A plaintiff asserting subject matter jurisdiction has the burden of

proving by a preponderance of the evidence that it exists."  *Makarova v. United States*, 201 F.3d

110, 113 (2d Cir. 2000); *see also Whitmore v. Ark*, 495 U.S. 149, 154 (1990) ("It is well

established . . . that before a federal court can consider the merits of a legal claim, the person

seeking to invoke the jurisdiction of the court must establish the requisite standing to sue.").  In

deciding a 12(b)(1) motion, "the court must take all facts alleged in the complaint as true and

draw all reasonable inferences in favor of plaintiff."  *NRDC v. Johnson*, 461 F.3d 164, 171 (2d

Cir. 2006) (citation omitted).  "[U]nder Rule 12(b)(1), [a court is] permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013).

For a complaint to survive a motion to dismiss under Rule 12(b)(6), it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Therefore, a claim is properly dismissed at this stage if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

## III.    JUDICIAL NOTICE

The Court begins with Godiva's request for the Court take judicial notice of four documents: (1) the Patent and Trademark Office's registrations of Godiva's Belgium 1926 trademark, (2) a page on Godiva's website explaining the company's Belgian heritage, (3) a page on Godiva's website explaining the company's history, and (4) a CBS News article about Godiva's factory in Reading, Pennsylvania.  *See* Dkt. Nos. 24, 36.

At the motion-to-dismiss stage, the Court's review is limited to the facts as-pleaded by the plaintiff, documents appended to or referred to in the complaint, and "to matters of which judicial notice may be taken." *Festa v. Westchester Med. Ctr. Health Network*, 380 F.Supp.3d 308, 314 (S.D.N.Y. 2019).  Judicial notice may be taken of documents that are "integral to the complaint," such that the complaint "relies heavily upon [the documents'] terms and effect." *Palin v. N.Y. Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019).  Courts have also taken judicial notice of materials in the public record, such as federal copyright registrations, newspaper articles, and regulatory filings—all for the limited purpose of noting what the documents state, rather than to

"prove the truth of their contents."  *Ace Arts, LLC v. Sony/ATV Music Pub.*, LLC, 56 F.Supp.3d 436 (S.D.N.Y. 2014); *Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) (affirming the judicial notice of media reports and regulatory filings on a motion to dismiss).

Because the trademark registration is a matter of public record, the Court will take judicial notice of its content.  *Cf. Ace Arts*, 56 F.Supp.3d at 441 (noting that documents like federal copyright registrations are "judicially noticeable.").  Similarly, "the case law applying [Federal] Rule [of Evidence] 201 states that, '[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination,'" judicial notice should be taken.  *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc*., 423 F.Supp.2d 173, 179 n. 8 (S.D.N.Y.2006); *see also Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (affirming district court taking judicial notice of webpages and media reports).  Plaintiffs here do not challenge the authenticity of these documents, so the Court takes judicial notice of them.  *Accord Staehr v. Hartford Financial Services Group, Inc.*, 547 F.3d 406 (2d Cir. 2008) (affirming district court taking judicial notice of newspaper articles); *Fernandez v. Zoni Language Ctr., Inc.*, No. 15-cv-6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016) ("Courts may also take judicial notice of information contained on websites where the authenticity of the site has not been questioned.").

Even though the Court takes judicial notice of these documents, their purposes at the motion-to-dismiss stage are limited.  They may be used only for "determining what the

documents state," and Godiva cannot rely on them to "prove the truth of their contents." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

## IV.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF

The Court turns next to Godiva's single jurisdictional argument.  In their Complaint, Plaintiffs seek an "award of injunctive [relief] . . . including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful acts described above."  Compl. at 37 (prayer for relief). They allege that "Plaintiffs wish to and are likely to continue purchasing the Godiva Chocolates in the future," and that absent an injunction, "they will be unable to rely with confidence on Godiva's representations in the future and will therefore abstain from purchasing the Products, even though they would like to purchase them."  *Id.* ¶ 15.  And they explain that while they "believe the Godiva Chocolates are not made in Belgium, they lack personal knowledge as to Godiva's specific business practices, leaving doubt in their minds as to the possibility that some chocolates made by Godiva could be made in Belgium."  *Id.*

In the Second Circuit, "'[a] plaintiff seeking to represent a class must personally have standing' to pursue 'each form of relief sought.'"  *Kommer v. Bayer Consumer Health*, 710 Fed. Appx. 43, 44 (2d Cir. 2018) (quoting Nicosia v. Amazon.com, Inc., 834 F.3d 220, 238 (2d Cir. 2016)).  Godiva contends that Plaintiffs lack Article III standing to obtain an injunction changing Godiva's labeling.  The Court agrees with Godiva, and concludes that Plaintiffs lack injunctive standing.

### A.  Courts Are Divided On This Issue

"To satisfy the irreducible constitutional minimum of [Article III] standing, a plaintiff must demonstrate (1) a personal injury in fact, (2) that the challenged conduct of the defendant caused, and (3) which a favorable decision will likely redress."  *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) (citations and internal quotation marks omitted).  "If plaintiffs

lack Article III standing, a court has no subject matter jurisdiction to hear their claim." *Id.* These rules are the same for plaintiffs representing putative classes. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that the injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Id.* at 64. And as always, the party invoking federal jurisdiction "bears the burden of establishing the elements" of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

District courts in this circuit are divided on whether allegations like those made by Plaintiffs are sufficient to confer injunctive standing. *See Podpeskar v. Dannon Company, Inc.*, 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017) (noting that the question of whether a plaintiff seeking injunctive relief "will be able to demonstrate standing here, as here, they allege they would buy the products in the future if not mislabeled" is "unsettled" and collecting cases); *accord Petrosino v. Stearn's Prod., Inc.*, 2018 WL 1614349, at *4 (S.D.N.Y. 2018) (same); *Sitt v. Nature's Bounty, Inc.*, 2016 WL 5372794, at *6 (E.D.N.Y. 2016) (same). Some district courts have held that such allegations are enough to confer standing. In *Goldemberg*, for example, the court found the allegation that "[p]laintiff would continue to purchase the Products in the future if the misleading labeling is corrected . . . [to be] sufficient to demonstrate an intent to purchase products in the future that subjects them to future harm." 317 F.R.D. at 397; *accord Petrosino*, 2018 WL 1614349, at *5. Other courts have held the opposite: a plaintiff's claim that "[she] will purchase the Products in the future only if Defendant alters its branding" does not create "standing to seek injunctive relief because she has not demonstrated a real or immediate threat of injury." *Holve v. McCormick & Co., Inc.*, 334 F. Supp. 3d 535, 552 (W.D.N.Y. 2018) (citing

cases); *see also Buonasera v. Honest Co. Inc.*, 208 F. Supp. 3d 555, 564 (S.D.N.Y. 2016)

(Plaintiff did not "demonstrate[] a likelihood of future injury" by alleging that "if [Defendant's]

products were reformulated such that its representations were truthful, Plaintiff would consider

purchasing [them.]").

The Second Circuit has not yet resolved this issue.  It came close in *Nicosia v.*

*Amazon.com, Inc.*, in which the plaintiff purchased an allegedly deceptive weight-loss product on

Amazon and sought injunctive relief.  834 F.3d 220 (2d Cir. 2016).  But the plaintiff there did

not "allege that he intend[ed] to use Amazon in the future to buy *any* products, let alone food or

drug products generally or weight loss products in particular."  *Id.* at 239.  The Second Circuit

therefore concluded that he lacked injunctive standing.  *Id.  Nicosia* however does not resolve the

issue presented in this case, because Plaintiffs here aver that they *do* want to purchase Godiva's

chocolates, so long as the alleged misrepresentation is cured.

The Ninth Circuit is the only Court of Appeals to have directly addressed whether

plaintiffs have standing to seek injunctive relief in these circumstances.  In *Davidson v.*

*Kimberly-Clark Corporation*, plaintiff Davidson alleged that the defendant violated California's

consumer-protection laws by advertising its wipes as flushable (she alleged they were not).  889

F.3d 956 (9th Cir. 2018).  Davidson alleged that she may consider purchasing defendant's wipes

in the future, but absent an injunction, she would be unable to rely on its "flushable"

representation and could be misled again.  *Id.* at 967.  The Court found this sufficient for

injunctive standing, holding that "a previously deceived consumer may have standing to seek an

injunction against false advertising or labeling, even though the consumer now knows or

suspects that the advertising was false at the time of the original purchase, because the consumer

may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm."  *Id.*

at 969.  It reasoned that "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* at 969.  The Court then laid out the sorts of allegations that would be sufficient to confer standing: "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to . . . In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

## B.  The Court Concludes That Plaintiffs Lack Article III Standing

The Court concludes Plaintiffs in this matter lack standing to seek injunctive relief.  In reaching this conclusion, the Court begins not with out-of-circuit caselaw, but with binding Supreme Court and Second Circuit precedent.  The Supreme Court has explained that for a plaintiff to have standing to seek injunctive relief, "the threat of injury must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).  And the Supreme Court has held that where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).  Moreover, in satisfying their burden to demonstrate injunctive standing, plaintiffs cannot rest on past injury—they must allege that they are "likely to be harmed again in the future in a similar way." *Nicosia*, 834 F.3d at 220.  "The Supreme Court has repeatedly reiterated that the threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) (internal quotation marks omitted).  Under these binding cases and others, injunctive standing is proper

10

*only* if the alleged injury is "actual and imminent," "real and immediate," "certainly impending," and "likely."

Yet the injury alleged by Plaintiffs in this case is *hypothetical—if* they choose to purchase Godiva's products in the future, *then* they *may* be harmed.  The conditionality of this alleged injury removes it from the harms that Article III authorizes federal courts to remedy. Plaintiffs rest on precisely the sort of "allegations of possible future injury" that are insufficient to create subject-matter jurisdiction.  *Clapper*, 785 F.3d at 800.  Moreover, permitting such a theory of future harm requires the Court to put blinders on the fact that Plaintiffs, by virtue of bringing this litigation and the allegations they make in their complaint, know that Godiva's chocolates are not manufactured in Belgium.  It is difficult to fathom how they could be harmed by Godiva's continued representation if they know that the company's chocolates come from Pennsylvania.  Yet Plaintiffs ask the Court to overlook this flaw by alleging that they remain confused about where Godiva's chocolates come from.  That is not enough for a standing.  As many courts have explained, because a plaintiff in a false advertisement case has *necessarily* become aware of the alleged misrepresentations, "there is no danger that they will again be deceived by them."  *Elkind v. Revlon Consumer Prods. Corp*., No. 14-cv-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015); *accord, e.g., Davis v. Hain Celestial Grp., Inc*, 297 F. Supp. 3d 327, 338 (E.D.N.Y. 2018); *Tomasino v. Estee Lauder Cos*., 44 F.Supp.3d 251, 256 (E.D.N.Y. 2014).  A contrary conclusion would be "inconsistent with Article III and with Supreme Court and Second Circuit caselaw."  *Davis*, 297 F.Supp.3d at 338 (citing cases); *Buonasera v. Honest Co.*, 208 F.Supp.3d 555, 564–65 & n.3 (S.D.N.Y. 2016) ("[T]he Court declines to follow the reasoning [of one contrary District Court case] as Second Circuit precedent dictates otherwise.").

In short, Godiva succeeds in its sole challenge to this Court's jurisdiction: Plaintiffs do not have standing to seek injunctive relief.  Accordingly, the Court grants Godiva's motion on this ground and dismisses Plaintiffs' request for injunctive relief for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1).

## V.   PLAINTIFFS' STATUTORY CONSUMER-PROTECTION CLAIMS SURVIVE

The Court next addresses Godiva's contention that Plaintiffs have failed to state a single claim for relief, beginning with their statutory consumer-protection claims under New York and California law.  As noted, Plaintiffs bring claims under the New York General Business Law and California's Legal Remedies Act, Unfair Competition Law, and False Advertising Law.  For purposes of this motion, these claims boil down to the same inquiry: whether a reasonable consumer is likely to be deceived by the alleged misrepresentation.  And Godiva advances a single argument for why dismissal is warranted under these statutes: no reasonable consumer could be deceived by the "Belgium 1926" representation to believe that Godiva's chocolates are manufactured in Belgium.  Def. Br. at 10.  The Court concludes that it cannot make this determination at the motion-to-dismiss stage.

### A.  The Reasonable-Consumer Standard

Courts apply the "reasonable consumer" standard to determine whether a representation is false or deceptive under each of the relevant New York and California consumer-protection statutes. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008).  Under the reasonable-consumer standard, plaintiffs must show that consumers are likely to be deceived by a representation.  *See Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013); *Williams*, 552 F.3d at 938.  In other words, while a representation "need not be false to mislead a reasonable consumer, the representation must nevertheless be misleading or have the capacity, likelihood or tendency to deceive or confuse members of public."  *Romero v.*

*Flowers Bakeries, LLC*, 2016 WL 469370, at *7 (N.D. Cal. Feb. 8, 2016) (internal quotations omitted); *see also New World Sols., Inc. v. NameMedia Inc.*, 150 F.Supp.3d 287, 328 (S.D.N.Y. 2015) ("a deceptive act or practice has an 'objective definition,' whereby deceptive acts or practices—which may be acts or omissions—are limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." (internal quotation marks omitted)). Moreover, courts view misleading advertisement claims in light of the context of the whole label or advertisement—"the entire mosaic should be viewed rather than each tile separately." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001); *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 2017 WL 1138879 (S.D.N.Y. April 16, 2007).

This reasonableness inquiry is rarely resolved on a motion to dismiss. *See, e.g., Quinn v. Walgreen Co.*, 958 F.Supp.3d 533, 543 (S.D.N.Y. 2013) ("whether a particular act or practice is deceptive is usually a question of fact" best suited for a jury.); *accord Buonasera v. Honest Co.*, 208 F.Supp.3d 555, 566 (S.D.N.Y. 2016). Dismissal is warranted only in a "rare situation" where "it [is] impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams*, 552 F.3d at 939; *Atik v. Welch Foods, Inc.*, No. 15-cv-5405 (MKB), 2016 WL 5678474, at *8 (E.D.N.Y. Sept. 30, 2016) (adopting the "rare situation" standard); *see also In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (for a court to grant a motion to dismiss, the label's context must meet the "heavy burden of 'extinguish[ing] the possibility' that a reasonable consumer could be misled.") (citation omitted); *Goldemberg*, 8 F.Supp.3d at 480 ("[T]he Court cannot hold as a matter of law that the product labels are not misleading to a reasonable consumer.").

### B.  A Reasonable Consumer Could be Misled by the Belgium 1926 Representation

This is not one of the rare instances in which the Court may dismiss a consumer-protection claim on this posture. To the contrary, a reasonable consumer could view the phrase

Belgium 1926 as representing that Godiva's chocolates are manufactured in Belgium.  Godiva

attempts to escape this plausible view by noting that it was founded in Belgium in the year 1926,

and thus arguing that the representation is a "factually accurate phrase that imparts an

unambiguous and historically accurate message."  Def. Br. at 10.  However, an equally, if not

more, plausible inference is that the phrase represents *both* the provenance of the company—

Belgium, in 1926—and a representation that its chocolates continue to be manufactured there.

Indeed, Godiva does not explain why this latter inference is categorically unreasonable, given

that it is plausible for a consumer to interpret the representation as meaning that its chocolates

are made in the same place as they were when the company was founded.  The Court certainly

cannot conclude, at this juncture, that *no* reasonable consumer could take such a view.

Nor do any of the documents that Godiva asks the Court to take judicial notice of change

this result.  As discussed, the Court takes judicial notice of a trademark registration, several

pages on Godiva's website, and a CBS News article stating that Godiva's chocolates are

manufactured in Pennsylvania.  However, at this stage of the litigation, the Court does not take

the contents of these document as true.  *See Roth*, 489 F.3d at 509 (If the court takes judicial

notice, it does so in order to determine what statements they contained—but again not for the

truth of the matters asserted." (cleaned up)).  Godiva relies on these documents to demonstrate

that "the existence of its Reading, Pennsylvania manufacturing facility—and the fact that its

chocolates are not made in Belgium" was openly disclosed and public information, and thus a

reasonable juror could not have been misled by its representation.  Dkt. No. 24 at 2–3.  At core,

however, Godiva asks the Court to draw an inference in its favor: that because these documents

were public record, reasonable consumers were aware of where its manufacturing occurs.  That

inference is couched in assumptions—that everything in the public record is universal knowledge

and that, even if this information was widely disseminated, Godiva's label could not lead a reasonable consumer astray, to name a few.  In other words, to adopt Godiva's theory, the Court would have to draw several inferences in its favor—precisely the opposite of the Court's role at this stage.  *Iqbal*, 556 U.S. at 678.  These documents therefore do not entitle Godiva to dismissal.

Moreover, as the Court noted, the reasonableness inquiry takes account of the entire context of a product's labeling.  The Second Circuit has repeatedly explained that "in determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial."  *Geffner v. Coca-Cola Co.*, 928 F.3d 198, 200 (2d Cir. 2019) (citing cases).  Here, part of that "mosaic" is another, crucial representation: some of Godiva's packaging and social-media advertising describe its chocolates as Belgian.  The front packaging of one of its boxes, for example, contains the phrase "ASSORTED *BELGIAN* CHOCOLATE CARAMELS."  Compl. ¶ 24 (emphasis added).  Similarly, its social-media advertising states "Delicious *Belgian* chocolates brought to you . . ."  *Id.* (emphasis added).  These representations, taken along with the Belgium 1926 representation, further support the Court's conclusions that a reasonable consumer, reviewing Godiva's product holistically, could conclude that its chocolates are manufactured in Belgium.

Godiva points to a slew of consumer-protection cases, which it characterizes as factually similar, in which courts granted motions to dismiss.  However, those cases differ in material respects.  For example, in *Pernod Richard USA, LLC v. Bacardi U.S.A.*, the Third Circuit dismissed plaintiffs' claim that "Havana Club . . . amounted to a misleading statement of geographic origin."  653 F.3d 241, 248 (3d Cir. 2011).  The label there, however, "clearly state[d] on the front that the liquor is 'Puerto Rican Rum' and on the back, that it is 'distilled and crafted in Puerto Rico.'"  *Id.* at 252.  The Court thus concluded that "[n]o reasonable consumer

could be misled by those statements" into believing that the rum was from Havana.  *Id.*
Similarly, in other cases, courts have dismissed claims where the label in question expressly
disclaims its actual origin—which is not the case here.  *See Bowring v. Sapporo U.S.A.*, 234 F.
Supp.3d 386 (E.D.N.Y. 2017) (granting motion to dismiss where beer packaging included text
stating where the beer was brewed, despite imagery and text alluding to Japan); *Nelson v.
MillerCoors, LLC*, 246 F.Supp.3d 666 (E.D.N.Y. 2017) (similar disclaimer of product origin
counteracting imagery alluding to Australia).  To be sure, disclosures are not always curative.
*See Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018) ("[R]easonable consumers should
[not] be expected to look beyond misleading representations on the front of the box to discover
the truth from the ingredient list in small print on the side of the box.") (citation omitted).  But
the absence of a disclosure counsels strongly against Godiva's argument.  Moreover, in *Dumas v.
Diageo PLC*, the challenged packaging stated that the beer in question was "Jamaican Style."
2016 WL 1367511 (S.D. Cal. Apr. 6, 2016).  The Court concluded that a reasonable consumer
could not be misled into thinking that the beer was actually from Jamaica.  *Id.* at *4.  Here,
however, Godiva's chocolates do not represent that they are of a Belgian style—the
representation states "Belgium 1926."

Godiva also contends that the word "Belgium" is inextricably linked to the year "1926,"
and the latter "cures any likelihood of deception," Pl. Br. at 9, in its labeling.  It argues that for a
consumer to be deceived into thinking "Belgium 1926" represents that the products in Belgium,
the consumer must also believe that the products she is purchasing were made almost one-
hundred years ago—a clearly unreasonable belief.  This argument, however, is too clever by half.
A consumer could reasonably believe that Godiva was founded in Belgium in 1926, as Godiva
contends, and that the representation on its products of this heritage means that its products

*continue* to be manufactured in that location.  Moreover, at this stage, the Court must draw all reasonable inferences in Plaintiffs' favor.  Doing so, it is reasonable that a consumer would view a label touting the location and year of a company's founding as representing the products' continued place of production.

In sum, the Court denies Godiva's motion to dismiss Plaintiffs' statutory consumer-protection claims under New York and California law.

## VI.   MOST OF PLAINTIFFS' WARRANTY CLAIMS SURVIVE

Plaintiffs further allege that Godiva breached express and implied warranties under both New York and California law.  Most of these claims also survive Godiva's motion to dismiss.

### A.  Plaintiffs' Express Warranty Claims

To start, Plaintiffs allege that Godiva breached express warranties under New York and California law.  Under New York law, an express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  N.Y.U.C.C. § 2-313(1)(a).  "A successful breach of express warranty claim requires proof that such an affirmation or promise existed, that it was breached, and that plaintiff detrimentally relied on the warranty."  *Tears v. Boston Scientific Corp.*, 344 F. Supp. 3d 500, 512 (S.D.N.Y. 2018).  Similarly, under California law, a plaintiff must prove that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010); *see also* Cal. Com. Code § 2313(1).  Both states provide that "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain."  Cal. Com. Code § 2313; *accord* NY U.C.C. § 2-313.

For a "statement or representation to provide the basis for an express warranty claim, it still must meet the threshold requirement of being material to a reasonable consumer." *Solak*, 2018 WL 1870474, at *11; *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015). Godiva thus argues that "because the Heritage Representation is neither an actionable statement nor misleading to the reasonable consumer under the applicable consumer protection claims, the Complaint fails to establish a viable breach of warranty claim." Def. Br. at 18.  Moreover, Godiva argues that "[t]he phrase, 'Belgium 1926,' is neither an affirmation of fact, promise, nor a description of goods about where Godiva's chocolates are made. Rather, it is quite simply a statement of fact referencing Godiva's history, heritage, and origin as a company."

The Court rejects these arguments for the same reason as the statutory claims above.  At the motion-to-dismiss stage, the Court cannot conclude that no reasonable consumer would rely on and be misled by the Belgium 1926 representation.  And it is a question of fact, not law, whether the representation is a promise or description of the goods.  *See McDonnell Douglas Corp. v. Thiokol Corp.*, 124 F.3d 1173, 1176 (9th Cir. 1997) ("[W]hether seller affirmed a fact amounting to an express warranty is a question of fact"); *Silva v. Smucker Nat. Foods, Inc.*, No. 14-CV-6154 (JG) (RML), 2015 WL 5360022, at *10 (E.D.N.Y. Sept. 14, 2015) ("What a reasonable consumer's interpretation of a seller's representation might be is generally an issue of fact that is not appropriate for decision on a motion to dismiss."); *accord Buonasera*, 208 F. Supp. 3d at 567 (holding that this issue could not be decided at the motion-to-dismiss stage).  As noted, a reasonable consumer could view the statement as both the provenance of the Defendant and a representation as to its continued place of production.  In short, "Godiva conflates its perception of the Belgium Representation with that of a reasonable consumer."  Pl. Br. at 15. Plaintiffs' express warranty claims therefore survive.

### B.  Plaintiffs' Implied Warranty Claims

Plaintiffs also claim that Godiva breached implied warranties under both New York and California law.  Both states have adopted U.C.C. § 2-314(2)(f), which provides that "[g]oods to be merchantable must . . . [c]onform to the promises or affirmations of fact made on the container or label if any."  N.Y. U.C.C. § 2-314(2)(f); Cal. Com. Code § 2314(2)(f); *accord Mahoney v. Endo Health Solutions, Inc.*, 2016 WL 3951185, at *4 (S.D.N.Y. July 20, 2016) ("Goods are merchantable if they . . . conform to the promises or affirmations of fact made on the container or label.") (citing N.Y. U.C.C. § 2–314(2)(f)) (internal alterations and quotations omitted); *Hendricks v. StarKist Co*., 30 F. Supp. 3d 917, 933 (N.D. Cal. Mar. 25, 2014). Moreover, when an "implied warranty of merchantability cause of action is based solely on whether the product in dispute conforms to the promises or affirmations of fact on the packaging of the product, the implied warranty of merchantability claim rises and falls with express warranty claims brought for the same product."  *McMorrow v. Mondelez Int'l, Inc.*, 2018 WL 3956022, at *13 (S.D. Cal. Aug. 17, 2018) (alterations omitted); *accord Hadley v. Kellogg Sales Co.*, 273 F.Supp.3d 1052, 1096 (N.D. Cal. 2017).

Godiva repeats a similar argument to defeat Plaintiffs' implied warranty claims.  It argues that "while [Plaintiffs] alleg[e] that the Products were marketed as though they were made in Belgium, have not cited any affirmative statements underscoring that point."  Def. Br. at 20.  For the same reasons stated above, however, the Court cannot reach this conclusion at the motion-to-dismiss stage.

Godiva also argues that both implied warranty claims should be dismissed because of a failure to allege vertical privity.  *See* Def. Br. at 20.  This argument fails as to the New York class.  Under New York law, a "claim based upon a breach of an implied warranty . . . requires a

showing of privity between the manufacturer and the plaintiff." *Ebin v. Kangadis Food Inc.*, 2013 WL 6504547, at *6 (S.D.N.Y. Dec. 11, 2013).  Plaintiff Hesse purchased Godiva products directly from Godiva at a Godiva brick-and-mortar store in Lake Grove, New York.  Compl. ¶ 13.  Plaintiff Hesse therefore is in vertical privity with Godiva, and he seeks to represent only those individuals who purchased Godiva products directly from Godiva's physical store locations or from its website.  *See* Compl. at ¶ 72 ("Plaintiff Hesse brings this claim individually and on behalf of the members of the proposed New York Subclass who purchased a Product directly at a brick and mortar Godiva store or on www.godiva.com").  Therefore, privity is also established with respect to all members of the proposed New York subclass.

Godiva's privity argument, however, succeeds as to the California subclass.  California law likewise requires that "a plaintiff asserting a claim for breach of the implied warranty must . . . stand in vertical contractual privity with the defendant." *Martin v. Tradewinds Beverage Co.*, 2017 WL 1712533, at *11 (C.D. Cal. Apr. 27, 2017) (citing *Clemens v. Daimler*, 534 F.3d 1017, 1023 (9th Cir. 2008)); *see also Paramount Farms Intern. LLC v. Ventilex B.V.*, 500 Fed. Appx. 586, 588 (9th Cir. 2012) ("Vertical privity . . . is required to sustain an implied warranty claim in California.").  Unlike the allegations above, the Complaint contains no allegation that either named Plaintiff purchased chocolates from a Godiva physical store in California or online.

Plaintiffs contend that their implied warranty claim nonetheless survives because various exceptions to the privity requirement apply here—but none do.  *First*, they argue that vertical privity is not necessary because this is a case involving "foodstuff."  However, for this exception to apply, "the end user [of the product] must be an employee of the purchaser." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008).  Plaintiffs are not, and the exception thus does not apply.  *See also Martin*, 2017 WL 1712533, at *11 (holding that this

"exception is inapplicable because Plaintiff does not allege that she was an employee of the purchaser"). *Second*, they argue that the vertical privity requirement does not apply because they relied on "written labels or advertisements of a manufacturer." *Id.* However, this exception "is only applicable to express warranties." *Id.* (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 669 n.24 (C.D. Cal. 2014). *Third*, they argue that privity because they are "intended third-party recipient[s] of the product." Pl. Br. at 17-18. But California does not recognize any exception to this rule beyond the two already discussed. *See Martin*, 2017 WL 1712533, at *11 (noting that there are two exceptions to the privity requirement); *Long v. Graco Children's Prod. Inc.*, No. 13-cv-01257-WHO, 2013 WL 4655763, at *12 (N.D. Cal. Aug. 26, 2013) (same). And the Ninth Circuit, applying California law, has made clear that "a federal court sitting in diversity is not free to create new exceptions to" the state's privity requirement. *Clemens*, 534 F.3d at 1023. The Court therefore dismisses Plaintiffs' implied warranty claim under California law.

## VII.   PLAINTIFFS' REMAINING CLAIMS ARE DISMISSED

Plaintiffs also bring claims for common-law fraud, intentional misrepresentation, and negligent misrepresentation. These claims are all dismissed.

### A.  New York Law Governs These Tort Claims

The Court begins by determining which jurisdiction's law applies to these claims. "In diversity jurisdiction cases such as this, it is well settled that a federal court must look to the choice of law rules of the forum state." *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) (citation omitted). Under New York's choice-of-law framework, "the first question to resolve in determining whether to undertake a choice of law analysis is whether there is an actual conflict of laws." *Winter v. Am. Inst. of Med. Sci. & Educ.*, 242 F. Supp. 3d 206, 218 (S.D.N.Y. 2017). Here, California and New York law governing some of these claims diverge; for example, with

respect to negligent misrepresentation, New York requires that the parties share a "special relationship characterized by actual privity or near-privity" but California law does not. *See Anshutz Corp. v. Merrill Lynch & Co., Inc.*, 690 F.3d 98, 113-14 (2d Cir. 2012).

For tort cases like this one, the Court must next determine whether the tort rules at issue regulate conduct or allocate loss. *Cooney v. Osgood Mack, Inc.*, 81 N.Y.2d 66, 72 (N.Y. 1993). Conduct-regulating rules are those that "people use as a guide to governing their primary conduct" and have "the prophylactic effect of governing conduct to prevent injuries from occurring," such as standards of care. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 50 (2d Cir. 2013). In contrast, "postevent remedial rules," like those governing vicarious liability, "allocate losses after the tort occurs." *Cooney*, 81 N.Y.2d at 72. The torts at issue here all prospectively regulate parties' conduct.

New York has developed a specific choice-of-law inquiry for conduct-regulating tort rules. In most tort cases, both the tortious conduct and the injury occur in the same jurisdiction. *Licci*, 739 F.3d 45, 50 (2d Cir. 2013) (citing *Babcock*, 12 N.Y.2d at 477 n.2). But this is not one of those cases. Plaintiffs were injured in separate states, but Godiva's conduct occurred in its principal place of business—New York. In such circumstances, the Second Circuit has held that "it is the place of the allegedly wrongful conduct that generally has superior 'interests in protecting the reasonable expectations of the parties who relied on [the laws of that place] to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'" *Licci*, 739 F.3d at 50-51 (quoting *Schultz*, 65 N.Y.2d at 198). Because Godiva's allegedly tortious conduct occurred in New York, New York law applies to the remaining tort claims.

## B.  Fraud and Intentional Misrepresentation Claims

The Court begins with Plaintiffs' claims for fraud and intentional misrepresentation. These claims share the same elements.  *Assoun v. Assoun*, 2015 WL 110106, at *5 (S.D.N.Y. Jan. 7, 2015) (a "claim for intentional misrepresentation . . . under New York law, is identical to a claim for fraud") (citing *Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgmt., Inc.*, 95 A.D.3d 434, 439 (N.Y. App. Div. 2012)).  To prevail on a claim for fraud or intentional misrepresentation, a plaintiff must show (1) a misrepresentation or omission of fact; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) damage.  *Darsow*, 2018 WL 7500282, at *2; *B&M Linen, Corp. v. Kannegiesser, USA, Corp*., 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010).

Because both these claims are premised on fraud, they must meet Federal Rule 9(b)'s heightened pleading standard, which requires pleadings to "state with particularity the circumstances constituting the alleged fraud."  Fed. R. Civ. P. 9(b).  To satisfy this standard, Plaintiffs must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Mills v. Polar Molecular Corp*., 12 F.3d 1170, 1175 (2d Cir. 1993).  Moreover, a "fraud claim should . . . plead scienter, and although it may do so generally . . . the plaintiff must still allege facts that give rise to a strong inference of fraudulent intent."  *Kannegiesser*, 679 F. Supp. 2d at 481.  "This inference may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) (internal citations and quotation marks omitted).

Plaintiffs however put forward scant allegations as to Godiva's scienter.  To be sure, the Complaint contains conclusory allegations that Godiva "knew or recklessly disregarded the fact that Godiva Chocolates are not made in Belgium," and that it "intend[ed] that Plaintiffs and other consumers rely on these representations and omissions, as evidenced by [Godiva's] intentionally using labeling that either directly states or clearly implies that the chocolates are from Belgium." Compl. ¶¶ 146–147, 154–155.  These sorts of conclusory and legal allegations, devoid of particularized facts giving rise to an inference of scienter, are insufficient to meet Plaintiffs' burden under Rule 9(b).  *See Broomfield*, 2017 WL 3838453, at *8.  Plaintiffs also refer to "the Belgian Royal Association of the Chocolate, Praline, Biscuits and Sugar Confectionary Industry ("CHOPRABISCO")," which "has developed the 'Belgian Chocolate Code' that provides guidelines for labeling chocolate as coming from Belgium," in support of their theory of scienter. *Id.* ¶ 19.  But they fail to connect the dots and explain how this industry organization's standards speak to Godiva's state of mind.  *See Greene v. Gerber Prods. Co*., 262 F.Supp.3d 38, 73 (E.D.N.Y. 2017) (explaining that a pleading technique "that couples a factual statement with a conclusory allegation of fraudulent intent is insufficient to support the inference that the defendants acted recklessly or with fraudulent intent.").  Plaintiffs' fraud and intentional misrepresentation claims are therefore dismissed.

### C.  Negligent Misrepresentation Claim

Under New York law, to state a claim for negligent misrepresentation, Godiva must have "had a duty, as a result of a special relationship, to give correct information" to Plaintiffs.  *Hydro Investors, Inc. v. Trafalgar Power Inc*., 227 F.3d 8, 20 (2d Cir. 2000).  In other words, the parties must share a "special relationship of trust or confidence," which courts often characterize as similar to a fiduciary or "privity-like" relationship.  *Stewart v. Jackson & Nash*, 976 F.2d 86, 90 (2d Cir. 1992); *AHW Inv. P'ship v. Citigroup, Inc*., 980 F. Supp. 2d 510, 524 (S.D.N.Y. 2013).

24

There is no such allegation here—Godiva did not have this sort of a relationship with Plaintiffs. Indeed, Plaintiffs concede that if New York law applies to this claim, which it does, "the [Complaint] does not state sufficient facts to support a negligent misrepresentation claim." Pl. Br. at 20–22. This claim is therefore dismissed.

### D. Unjust Enrichment

Finally, Plaintiffs bring a claim for unjust enrichment, based on the allegation that Defendants retained profits from the chocolate sales that they would not have absent the allegedly misleading representation. To establish unjust enrichment, the plaintiff must show "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016).

However, an unjust enrichment claim is not available "when it simply duplicates, or replaces, a conventional contract or tort claim." *Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 291 (S.D.N.Y. 2014). Nor can an unjust enrichment claim serve as a backstop to remedy the other claims' defects. *See Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 790 (2012). In other words, "unjust enrichment is not a catchall cause of action to be used when others fail." *Stoltz*, 2015 WL 5579872, at *26 (citing *Corsello v. Verizon N.Y., Inc.*, 944 N.Y.S.2d 732, 790 (2012)). And an unjust enrichment claim "will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson*, 246 F. Supp. 3d at 679.

Here, Plaintiffs' unjust-enrichment claim is entirely duplicative of their twelve other theories of recovery. It relies on the same factual allegations and the same theory of liability. This is plainly insufficient. *See Koenig v. Boulder Brands, Inc.*, 995 F.Supp.2d 274, 290

(S.D.N.Y. 2014) ("Yet, an unjust enrichment claim cannot survive where it simply duplicates, or replaces, a conventional contract or tort claim." (internal quotation marks omitted)).  The unjust-enrichment claim is therefore also dismissed.[1]

## VIII.    CONCLUSION

For the reasons stated above, Godiva's motion to dismiss is GRANTED in part and DENIED in part.  The following claims survive: (1) violation of New York GBL § 349, (2) violation of New York GBL § 350, (3) violation of California's Consumer Legal Remedies Act, (4) violation of California's Unfair Competition Law, (5) violation of California's False Advertising Law, (6) breach of express warranty under New York law; (7) breach of express warranty under California law, and (8) breach of implied warranty under New York law. Moreover, Plaintiffs lack standing to seek injunctive relief in this matter.  This resolves Dkt. Nos. 22 and 24.  As oral argument is not necessary for the resolution of this motion, that request is DENIED.

The Court will schedule a status conference by separate order.


SO ORDERED.


---

[1] Godiva also argues that the First Amendment provides an independent basis to dismiss Plaintiffs' claims. Commercial speech like the one in this case is protected by the First Amendment, and restrictions on such speech are reviewed under a form of intermediate scrutiny laid out in *Central Hudson Gas & Electrical Corp. v. Public Service Commission*, 447 U.S. 557 (1980).  Here, Plaintiffs ask the Court to award damages, and the Court may be barred from doing so if the speech falls within the First Amendment's umbrella.

Under the *Central Hudson* test, the Court must determine whether the First Amendment's protections apply, in part, by determining whether the speech is "misleading."  *Central Hudson*, 447 U.S. at 566; *see also Bd. of Trs. of Univ. of N.Y. v. Fox*, 492 U.S. 469, 475 (1989) (misleading commercial speech not protected by the First Amendment). Godiva contends that because its Belgium 1926 is not misleading, the First Amendment warrants dismissal.  But as the Court has explained, this determination cannot be made at the motion-to-dismiss stage.  Godiva's constitutional argument puts the cart before the horse: Before the Court can determine whether *Central Hudson*'s first requirement is met, a fact-finder must determine whether Godiva's speech is misleading.  Only after such a determination, which cannot be made at this stage, would the Court would be positioned to analyze whether Godiva's speech satisfies the remaining *Central Hudson* elements and thus constitutes protected commercial speech.

Dated: May 29, 2020
     New York, New York

_____

ALISON J. NATHAN
United States District Judge