**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVE HESSE and ADAM BUXBAUM, on behalf
of themselves and all others similarly situated,

        Plaintiffs,

    v.

GODIVA CHOCOLATIER, INC.,

        Defendant.

No. 1:19-cv-0972-AJN

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 1

III.    THE SETTLEMENT TERMS ................................................................................ 3

    A.      The Settlement Class ................................................................................ 3

    B.      Monetary Benefit to the Settlement Class ............................................... 3

    C.      Release of Settlement Class Members' Claims ....................................... 5

    D.      Attorneys' Fees and Costs and Class Representative Service Awards ................... 5

IV.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ................................. 6

    A.      The Settlement Meets the Rule 23(a) Criteria ........................................ 6

        1.      Rule 23(a)(1) – Numerosity is Satisfied ................................. 6

        2.      Rule 23(a)(2) – Commonality is Satisfied ............................... 6

        3.      Rule 23(a)(3) – Typicality is Satisfied ..................................... 7

        4.      Rule 23(a)(4) – Adequacy is Satisfied ..................................... 7

    B.      The Settlement Meets he Rule 23(b)(3) Criteria ..................................... 8

        1.      Common Questions Predominate ............................................. 8

        2.      A Class Action is Superior to Alternative Methods of Adjudication ......... 9

V.      THE SUCCESSFULLY COMPLETED NOTICE PLAN SATISFIES DUE PROCESS 10

VI.     THE SETTLEMENT MERITS FINAL APPROVAL ................................................ 11

    A.      Procedural Fairness – Rule 23(e)(2)(A-B) ............................................ 12

    B.      Substantive Fairness – Rule 23(e)(2)(C-D) .......................................... 14

        1.      Rule 23(e)(2)(C)(i) – The Costs, Risks, and Delay of Trial and Appeal .. 14

        2.      Rule 23(e)(2)(C)(ii) – Effectiveness of Proposed Method of Distributing Relief ................................................................................ 16

        3.      Rule 23(e)(2)(C)(iii) – The Timing and Terms of Proposed Class Counsel's Proposed Award of Attorneys' Fees ....................................... 17

    4.      Rule 23(e)(2)(C)(iv) – There Are No Agreements Required to Be Identified under Rule 23 ........................................................................ 17

    5.      Rule 23(e)(2)(D) – Class Members Are Treated Equitably ..................... 18

  C.      The Remaining *Grinnell* Factors ......................................................... 18

    1.      *Grinnell* Factor No. 2 – The Class's Reaction Has Been Positive............ 18

    2.      *Grinnell* Factor No. 3 – The Stage of the Proceedings and the Amount of Discovery Completed Warrants Final Approval....................................... 19

    3.      *Grinnell* Factor No. 7 – Whether Godiva Can Withstand a Substantially Greater Judgment ...................................................................... 20

    4.      *Grinnell* Factor Nos. 8-9 – Range of Reasonableness Of Settlement Fund .................................................................................................. 20

VII.    CONCLUSION............................................................................................ 23

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
   689 F.3d 229 (2d Cir. 2012)..................................................................................8, 9

*In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*,
   No. MDL 1500, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................19

*Athale v. Sinotech Energy Ltd.*,
   No. 11 Civ. 05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) .............20

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)......................................................................13

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
   222 F.3d 52 (2d Cir. 2000)........................................................................................7

*Broomfield v. Craft Brew Alliance, Inc.*,
   No. 17-cv-01027-BLF, 2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) ...................6

*Broomfield v. Craft Brew Alliance, Inc.*,
   Case No. 5:17-cv-01027-BLF (N.D. Cal.)...............................................................23

*Carlotti v. ASUS Computer Int'l*,
   No. 18-CV-03369-DMR, 2019 WL 6134910 (N.D. Cal. Nov. 19, 2019) ..............18

*Charron v. Wiener*,
   731 F.3d 241 (2d Cir. 2013)....................................................................................20

*Christine Asia Co., Ltd. v. Yun Ma*,
   No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019)...12

*In re Citigroup Inc. Sec. Litig.*,
   199 F. Supp. 3d 845 (S.D.N.Y. 2016)......................................................................5

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)............................................................................ *passim*

*City of Providence v. Aeropostale, Inc.*,
   No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).........15

*Consol. Rail Corp. v. Town of Hyde Park*,
   47 F.3d 473 (2d Cir. 1995)........................................................................................6

*In re Dial Complete Mktg. and Sales Practices Litig.*,
   No. 11-md-2263-SM (D.N.H. May 31, 2019) ........................................................21

*Dupler v. Costco Wholesale Corp.*,
   705 F. Supp. 2d 231 (E.D.N.Y. 2010) .................................................................17

*Elkind v. Revlon Consumer Prods. Corp.*,
   No. CV 14-2484 (JS) (AKT), 2017 WL 9480894 (E.D.N.Y. Mar. 9, 2017)............................8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240(CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)................................16

*Ferrick v. Spotify USA Inc.*,
   No. 16-cv-8412 (AJN), 2018 WL 2324076 (S.D.N.Y. May 22, 2018) ...................................9

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)..................................................................................7

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ...........................................................15

*Hicks v. Stanley*,
   No. 01 Civ. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005)...............................13

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .............................................................................9

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)...................................................................13

*In re Nucoa Real Margarine Litig.*,
   No. CV 10-00927-MMM, 2012 WL 12854896 (C.D. Cal. June 12, 2012) ...........................22

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)...........................................................................20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card III*),
   No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ..........11, 12, 17

*In re Penthouse Exec. Club Comp. Litig.*,
   No. 10 Civ. 1145(KMW), 2013 WL 1828598 (S.D.N.Y. Apr. 30, 2013) ..............................13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985).........................................................................................11

*Rosenfeld v. Lenich*,
   No. 18-CV-6720 (NGG) (PK), 2021 WL 508339 (E.D.N.Y. Feb. 11, 2021) .......14, 16, 17, 21

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*,
   No. 14-CV-4394 (AJN), 2018 WL 1750595 (S.D.N.Y. Apr. 11, 2018) ..............................8, 9

*Seijas v. Republic of Argentina*,
    606 F.3d 53 (2d Cir. 2010)....................................................................................9

*In re Signet Jewelers Ltd. Sec. Litig.*,
    No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)........................19

*Thompson v. Metro. Life Ins. Co.*,
    216 F.R.D. 55 (S.D.N.Y. 2003) ...........................................................13

*Vaccaro v. New Source Energy Partners L.P.*,
    No. 15 CV 8954 (KMW), 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ..........................8, 10

*Velez v. Novartis Pharm. Corp.*,
    No. 04 Civ. 09194(CM), 2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ...............................14

*Vinh Nguyen v. Radient Pharm. Corp.*,
    No. SACV 11-00406...........................................................................22

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)...........................................................................6

*In re WorldCom, Inc. Sec. Litig.*,
    388 F. Supp. 2d 319 (S.D.N.Y. 2005)...................................................16

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008)...................................................18

## Other Authorities

Fed. R. Civ. P. 23 ....................................................................................*passim*

Fed. R. Civ. P 23 advisory committee's note to 2018 amendment.........................................14, 23

Barbara J. Rothstein & Thomas E. Willging,
    FED. JUDICIAL CTR., "Managing Class Action Litigation: A Pocket Guide
    for Judges," (3d Ed. 2010) ...........................................................11

FED. JUDICIAL CTR.,
    Judges' Class Action Notice and Claims Process Checklist and Plain Language
    Guide 3 (2010) ...........................................................................11

## I.    <u>INTRODUCTION</u>

When Plaintiffs moved for preliminary approval of this Settlement,[1] they addressed each of the "*Grinnell* factors" that would apply at the final approval stage, along with the additional requirements for final approval under Fed. R. Civ. P. 23(e). The Court considered these factors before preliminarily approving the Settlement and ordering the dissemination of class notice.

The Settlement now comes before the Court again, this time for final approval. As described in greater detail below, the proposed Class should be certified for settlement purposes because all of the requirements of Fed. R. Civ. P. 23(a) and (b)(3) are satisfied. Indeed, none of the facts relevant to the class certification analysis have changed since this Court conditionally certified the Class at preliminary approval. In addition, the result of Plaintiffs' hard-fought efforts is a nationwide settlement which, if finally approved by the Court, will enable each Class Member who submitted a valid Claim Form to recover on average more than the full value of the alleged price premium damages on a per-product basis stemming from the challenged conduct. This meaningful cash compensation, which thus far has encouraged over 463,000 Claims to be filed, readily satisfies Rule 23's "fair, reasonable, and adequate" standard. For these reasons, and others explained below, the Court should grant final approval of the Settlement.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[2]

This false advertising class action centers on allegations that Defendant Godiva Chocolatier, Inc. ("Godiva") represented its Godiva Chocolate Products as being exclusively manufactured in Belgium, when they are in fact not exclusively made there. ECF No. 12. Plaintiffs

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meaning as those defined in the Settlement Agreement (ECF No. 67-1) and all citations and internal quotation marks are omitted.

[2] Plaintiffs provide a brief summary of the factual and procedural background and hereby incorporate by reference the full and detailed factual and procedural background outlined in their Motion for Preliminary Approval (ECF Nos. 65-66).

asserted several statutory and common law claims based on this factual predicate. *See generally id.* Godiva asserted in a motion to dismiss (and continues to maintain) that the labeling and marketing of its Godiva Chocolate Products is not false or misleading. ECF No. 22. On May 29, 2020, Plaintiffs defeated, in large part, Godiva's motion to dismiss, with the following damages claims proceeding: (1) violation of New York GBL § 349, (2) violation of New York GBL § 350, (3) violation of California's Consumers Legal Remedies Act, (4) violation of California's Unfair Competition Law, (5) violation of California's False Advertising Law, (6) breach of express warranty under New York law, (7) breach of express warranty under California law, and (8) breach of implied warranty under New York law. ECF No. 39.

Plaintiffs thereafter completed substantial discovery, which included negotiating a protective order, serving and responding to interrogatories, document requests, and requests for admission, and reviewing over ten thousand documents. Declaration of Timothy J. Peter In Support of Plaintiffs' Motion for Final Approval and Motion for Attorneys' Fees and Costs and Class Representative Service Awards ("Peter Decl.") ¶ 12. Plaintiffs also consulted with experts in the fields of economics/statistics and the chocolate industry. *Id.* ¶¶ 14-17. Subsequently, the Parties engaged in extensive arm's-length settlement negotiations spanning several months and two mediation sessions with Jill R. Sperber of Judicate West. Declaration of Jill R. Sperber ("Sperber Decl."), ECF No. 57, Ex. A ¶¶ 5-9; Peter Decl. ¶¶ 18-20. Between and after the mediation sessions, Plaintiffs also took confirmatory discovery on relevant topics such as sales and pricing data, class member information, and the Godiva Chocolate Products covered by this settlement. Peter Decl. ¶ 21. The Parties efforts, with the assistance of Ms. Sperber, culminated in the execution of a Settlement Agreement on September 23, 2021. *Id.* ¶ 22, Ex. A ("Settlement Agreement").

On October 12, 2021, Plaintiffs filed their Motion for Preliminary Approval. ECF No. 65. On October 26, 2021, the Court issued an order granting preliminary approval of the Settlement ("Preliminary Approval Order"), conditionally certifying the Settlement Class, authorizing notice to the Class, and directing Class Counsel to file the instant motion on February 21, 2022. ECF No. 72. Thereafter, the settlement administrator, Kroll Settlement Administration ("Kroll"), under Plaintiffs' supervision, and consistent with the Preliminary Approval Order, disseminated notice to the Class. *See generally* Declaration of Jeanne C. Finegan ("Finegan Decl.").

## III.   THE SETTLEMENT TERMS

### A.   The Settlement Class

The Settlement Class is defined as:

> All Persons who purchased any Godiva Chocolate Product in the United States during the Class Period. Excluded from the Settlement Class are: (a) Godiva and any of its parents', affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Godiva Chocolate Products, (c) governmental entities, (d) the Court, the Court's immediate family, Court staff; (e) the mediator and her staff and immediate family; (f) counsel of record for the Parties, and their respective law firms; and (g) all Persons who timely and properly exclude themselves from the Settlement Class.

Settlement Agreement ¶ 65.

Under the terms of the Settlement Agreement, Godiva Chocolate Products are defined as any product manufactured and sold by Godiva, or sold under the Godiva brand, which contains chocolate. *Id.* ¶ 43. The Class Period is January 31, 2015 through October 26, 2021 (the date Preliminary Approval was granted). *Id.* ¶ 28; *see also* Preliminary Approval Order at 12.

### B.   Monetary Benefit to the Settlement Class

Each Settlement Class Member who submits a timely and valid Claim Form will receive a monetary payment, based on the number and type of eligible purchases made during the Class Period, as follows:

**With Proof of Purchase**. Each Claimant who submits sufficient Proof of Purchase may claim $1.25 per Godiva Chocolate Product purchased during the Class Period, up to a maximum recovery of $25 (i.e., up to 20 purchases). Settlement Agreement ¶ 68(a).

**Without Proof of Purchase**. Each Claimant who does not submit sufficient Proof of Purchase, or no Proof of Purchase at all, but who submits an attestation of his/her purchase of Godiva Chocolate Products during the Class Period under penalty of perjury, may claim $1.25 per Godiva Chocolate Product purchased during the Class Period, up to a maximum recovery of $15 (i.e., up to 12 purchases). *Id.* ¶ 68(b).

**Maximum Payment of Settlement Benefits**. If the aggregate total monetary value of all valid and timely Claims submitted by Settlement Class Members meets or exceeds $15,000,000, then Godiva shall only be responsible for paying $15,000,000, and in this situation, each Settlement Class Member's Settlement Benefit will be reduced on a *pro rata* basis. *Id.* ¶ 68(c).

**Un-claimed Settlement Benefits**. Settlement Benefits shall be paid via paper checks, Zelle, PayPal, Venmo, direct deposit via ACH, or prepaid debit cards (physical or electronic), as selected by the Settlement Class Member when completing the Claim Form. Paper checks and PayPal are the only methods of payment which require Settlement Class Members making a claim to take action to receive custody of the funds. Settlement Class Members choosing one of these two payment methods shall be provided 180 days from issuance to take custody of the funds. If the funds are not negotiated or accepted within this timeframe, they shall be paid to the *Cy Pres* Recipient—in this case, Public Justice Foundation ("Public Justice"). *Id.* ¶¶ 32; 68(d). Public Justice is a 501(c)(3) charity that is dedicated to advancing the public interest. Declaration of Paul Bland ("Bland Decl.") ¶ 1. Public Justice is an appropriate recipient of these funds, as it is involved in consumer protection work, including deceptive advertising and marketing practices, is regularly

designated as a *cy pres* recipient in similar false advertising class actions, and it will use any unclaimed funds approved by the Court to help advance the rights of consumers throughout the country to be free of deceptive and unfair practices and to enforce—and help others enforce—consumer rights and consumer protection laws. *Id.* ¶¶ 8-26; *In re Citigroup Inc. Sec. Litig.*, 199 F. Supp. 3d 845, 852 (S.D.N.Y. 2016) (*cy pres* recipient's interest must "reasonably approximate" the interests of the class).

### C.    Release of Settlement Class Members' Claims

The Parties have negotiated a class-wide release that is narrowly tailored to the allegations in this Action. Upon the Effective Date of the Settlement, Plaintiffs and all Settlement Class Members who do not submit a valid and timely Request for Exclusion shall release the following claims against Godiva and the other Released Parties:

> Any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public against any of the Released Parties that are based on, arise out of, or relate to the allegations or claims in the Action, that the Godiva Chocolate Products were misleadingly marketed or sold, or that relate to the labeling and marketing of the Godiva Chocolate Products. Excluded from the Released Claims is any claim for alleged bodily injuries arising out of use of the Godiva Chocolate Products.

Settlement Agreement ¶ 57.[3]

### D.    Attorneys' Fees and Costs and Class Representative Service Awards

Plaintiffs may petition the Court for an award of reasonable attorneys' fees and costs in an amount of up to $5,000,000, and a $5,000 Class Representative Service Award to each of the two

---

[3] Attached to the Peter Decl. as Ex. E is a Stipulation signed by the Parties, which reiterates, for the avoidance of doubt, that the Released Claims are limited to claims that are based on, arise out of, or relate to the allegations or claims asserted in this Action – i.e., namely, that the Products have been promoted, labeled, marketed, or sold under false or deceptive country of origin claims or any claims related to the "Belgium 1926" language.

Plaintiffs. *Id.* ¶¶ 99, 107. Plaintiffs are concurrently filing a Fee Application which explains the factual and legal basis for their requested Fee Award.

## IV.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS

The Court has already found that the Settlement Class meets the requirements of Rule 23 and preliminarily certified it for settlement purposes under Rule 23(a) and (b)(3). Preliminary Approval Order ¶ 21. As the facts pertinent to the Court's Rule 23 analysis have not changed since then, the Court should reaffirm its finding, and certify the Settlement Class. In any event, Plaintiffs briefly reiterate why class certification remains appropriate.

### A.   The Settlement Meets the Rule 23(a) Criteria

#### 1.   Rule 23(a)(1) – Numerosity is Satisfied

Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed at a level of 40 members[.]" *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Numerosity is satisfied here because Godiva's sales records, as well as Kroll's records indicating over 463,000 Claims submitted as of today, show that there are at least several hundred thousand Settlement Class Members. Finegan Decl. ¶ 26.

#### 2.   Rule 23(a)(2) – Commonality is Satisfied

Class certification requires there to be "questions of law or fact common to the class[.]" Fed. R. Civ. P. 23(a)(2). The commonality requirement examines whether the class' claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are several common questions of law or fact in this case, the most predominant of which is whether the representations made on the Godiva Chocolate Products' packaging is likely to deceive a reasonable consumer. *See Broomfield*

*v. Craft Brew Alliance, Inc.,* No. 17-cv-01027-BLF, 2018 WL 4952519, at *5 (N.D. Cal. Sept. 25, 2018) (finding common question of "whether the packaging would mislead a reasonable consumer" as to the origin of the products). Thus, the commonality requirement is satisfied.

### 3.      Rule 23(a)(3) – Typicality is Satisfied

The typicality requirement of Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Here, each Settlement Class Members' claims and legal arguments arise out of the same theory of liability—namely, that they were deceived into believing the Godiva Chocolate Products are sourced from Belgium based on the representations made on the packaging and marketing. The same is true for Plaintiffs. Accordingly, typicality is satisfied.

### 4.      Rule 23(a)(4) – Adequacy is Satisfied

Rule 23(a) also requires that the representative plaintiffs "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other members of the class." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, Plaintiffs' interests are aligned with those of the Class, they have no conflicts of interest, they have provided significant, valuable assistance in the investigation and prosecution of this matter, and helped to bring about this Settlement. Declaration of Steve Hesse ¶¶ 3, 5-6; Declaration of Adam Buxbaum ¶¶ 3, 5-6. Plaintiffs are therefore "adequate" class representatives within the meaning of Rule 23(a)(4). Class Counsel is also "adequate" because they have extensive experience in class action litigation and have vigorously pursued these claims throughout this litigation. Peter Decl. ¶¶ 41-44; Declaration of Aubry Wand In Support Of Plaintiffs' Motion For Final Approval and Motion

For Attorneys' Fees and Costs and Class Representative Service Awards ("Wand Decl.") ¶¶ 10-15; *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *3 (S.D.N.Y. Dec. 14, 2017) (adequacy requirement met where class counsel "litigated dozens of class actions in the United States" and recovered substantial monetary relief for class members). As Plaintiffs and their counsel have diligently represented the Class and will continue to do so throughout the settlement process, Plaintiffs and their Counsel have adequately represented the Class.

> **B.      The Settlement Meets he Rule 23(b)(3) Criteria**

> **1.      Common Questions Predominate**

To meet the requirements of Fed. R. Civ. P. 23(b)(3), the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues subject only to individualized proof. *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012). "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification" under Rule 23(b)(3). *Id.* at 138; *see also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *14 (S.D.N.Y. Apr. 11, 2018) (Nathan, J.) (an "action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."). As such, the predominance test "is a test that has been held to be 'readily met' in cases involving alleged consumer fraud." *Elkind v. Revlon Consumer Prods. Corp.*, No. CV 14-2484 (JS) (AKT), 2017 WL 9480894, at *14 (E.D.N.Y. Mar. 9, 2017).

Here, the common issue that binds the class together is whether Godiva misled consumers as to whether the Godiva Chocolate Products were made in Belgium. This systematic course of

conduct, which could be proven through common evidence, overrides any individual inquiries relating to proof, to the extent there are any. *Royal Park Invs.*, 2018 WL 1750595, at *14. In addition, Plaintiffs assert they can prove deception and materiality through common evidence in the form of documentary evidence (including the Godiva Chocolate Products' packaging and marketing materials) and expert survey evidence. *Id.* (the "key to predominance is whether 'generalized evidence could be offered' to prove 'the elements of the claims and defenses to be litigated,' or whether 'individualized proof will be needed to establish each class member's entitlement to relief.'") (quoting *Johnson v. Nextel Commc's Inc.*, 780 F.3d 128, 138 (2d. Cir. 2015)).

Moreover, in the settlement context, the Court need not inquire whether the case, if tried, would present trial management problems. *See Ferrick v. Spotify USA Inc*., No. 16-cv-8412 (AJN), 2018 WL 2324076, at *2 (S.D.N.Y. May 22, 2018) ("'Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *In re Am. Int'l Grp., Inc.*, 689 F.3d at 240 (in the context of a settlement class, the issue of manageability "drop[s] out of the predominance analysis because the proposal is that there be no trial") (internal quotations omitted); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 563 (9th Cir. 2019) (holding that any "idiosyncratic differences between state consumer protection laws" does not defeat predominance when "the claims revolve[] around a 'common nucleus of facts[.]'")

Accordingly, the Rule 23(b)(3) predominance requirement is satisfied.

### 2.     A Class Action is Superior to Alternative Methods of Adjudication

A class action is superior to other forms of litigation, as "proceeding individually would be prohibitive" due to the minimal recovery. *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir.

2010). The only method to ensure the fair and efficient adjudication of this Action is through a class action, which will allow individual Settlement Class Members to bring together claims that would be economically infeasible to litigate on an individual basis. *See*, *e.g.*, *Vaccaro*, 2017 WL 6398636, at *3 (class action superior to other methods "for fairly and efficiently adjudicating these claims because it spares Plaintiffs costly individual litigation"). Accordingly, the Rule 23(b)(3) superiority requirement is satisfied.

## V.   THE SUCCESSFULLY COMPLETED NOTICE PLAN SATISFIES DUE PROCESS

At preliminary approval, the Court approved the Notice Plan, finding it met the requirements of Rule 23 and due process. Preliminary Approval Order ¶ 23. And as set forth in the Finegan Declaration, Kroll has successfully implemented the Notice Plan consistent with the Settlement Agreement and the Preliminary Approval Order. *See generally* Finegan Decl. In short, Kroll sent direct notice to 8,235,538[4] email addresses in Godiva's possession, and although not required under the Settlement, sent 7,692,027 email reminders to those who received an initial email notice that was not returned as undeliverable, did not unsubscribe, and had not yet filed a Claim. Finegan Decl. ¶¶ 14-20.  Kroll also completed publication notice consisting of 35 million media impressions, including on Facebook and Instagram, and met the notice requirements under the CLRA and CAFA. *Id*. ¶¶ 21-25.  Kroll also created a settlement website where pertinent information and documents were provided to the Class, and Class Members could submit Claim Forms and Requests for Exclusion. *Id*. ¶ 12. Lastly, Kroll set up an IVR phone number for Class Members to contact if they had any questions about the Settlement or the case. *Id.* ¶ 13.

---

[4] The initial estimate of 9,660,000 potential valid and deliverable email addresses was reduced by Kroll after a complete culling of duplicate email records, employing email verification tactics, and identifying email addresses that were unlikely to be associated with potential Class Members. Finegan Decl. ¶ 17.

In sum, Kroll's outreach efforts described above reflect an appropriate, highly-targeted, and contemporary way to employ notice to this Class. Through a multi-media channel approach to notice, which employed direct notice, digital, social and mobile media, an estimated 82 percent of targeted Class Members were reached by the notice program, on average 2.8 times. *Id.* ¶ 33. The efforts used in this Notice Program are based on the highest modern communication standards, reasonably calculated to provide notice, and consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach, which provide for a 70 percent threshold of reasonable reach. *Id.* ¶¶ 4-5, 33; FED. JUDICIAL CTR., Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 3 (2010) (notice plan is reasonable if it reaches at least 70% of the class); Barbara J. Rothstein & Thomas E. Willging, FED. JUDICIAL CTR., "Managing Class Action Litigation: A Pocket Guide for Judges," at 27 (3d Ed. 2010) (explaining that a publication notice plan that reaches 70% of class members is one that reaches a "high percentage" and is within the "norm"). These efforts fully comport with the Rule 23 requirements and due process, which require that the notice provided to the Settlement Class is "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-12 (1985).

## VI.   <u>THE SETTLEMENT MERITS FINAL APPROVAL</u>

In determining whether to grant final approval, the Court should assess whether the Settlement is fair, reasonable, and adequate after considering the Rule 23(e)(2) factors.[5] *In re*

---

[5] These factors are whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of

*Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.* (*Payment Card III*), No. 05-MD-1720 (MKB) (JO), 2019 WL 6875472, at *13 (E.D.N.Y. Dec. 16, 2019). The Court should also consider the factors enumerated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), i.e., the *Grinnell* factors,[6] *see id.* at *14, to the extent they do not overlap with Rule 23(e)(2) factors.

Here, the Court has already considered these factors and weighed them in favor of preliminary approval. Preliminary Approval Order ¶¶ 5-18. Accordingly, below Plaintiffs briefly reiterate the points contained in their motion for preliminary approval, but supplement them with facts and information that have developed since then, including the Class's response to the Settlement. *See Payment Card III*, 2019 WL 6875472, at *15 (explaining that because the "Court engaged in a lengthy and robust analysis of the class settlement and class certification factors at the preliminary approval stage," a "detailed analysis already exists for many [Rule 23 and *Grinnell*] factors and to avoid duplicity, the Court at times refers to its reasoning as set forth in the Preliminary Approval Order[.]").

## A.    Procedural Fairness – Rule 23(e)(2)(A-B)

"Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the procedural analysis of the fairness inquiry." *Christine Asia Co., Ltd. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (internal quotations omitted). As courts in this Circuit have recognized,

---

processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P 23(e)(2).

[6] These factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]" *Grinnell*, 495 F.2d at 463.

a settlement "will enjoy a presumption of fairness" when, as here, a "[s]ettlement is the product of arms-length negotiations conducted by experienced counsel, knowledgeable in complex class actions." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). Participation by a neutral third party supports a finding that the agreement is non-collusive. *See In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2013 WL 1828598, at *2 (S.D.N.Y. Apr. 30, 2013) ("A settlement like this one, reached with the help of third-party neutrals enjoys a presumption that the settlement achieved meets the requirements of due process.").

Here, the Settlement is the result of months of arm's-length negotiations among the Parties with the assistance of an experienced mediator over the course of two full-day mediation sessions. Sperber Decl. ¶ 5. This is a "strong indicator of procedural fairness." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). The failure of the Parties' initial mediation attempt further reflects the fairness of the process. *Hicks v. Stanley*, No. 01 Civ. 10071 (RJH), 2005 WL 2757792, at *5 (S.D.N.Y. Oct. 24, 2005) ("A breakdown in settlement negotiations can tend to display the negotiation's arms-length and non-collusive nature.")

Moreover, Class Counsel have considerable experience in handling consumer class actions that are similar in size, scope, and complexity to this case, and thus were capable of assessing the strengths and weaknesses of their respective positions. Peter Decl. ¶¶ 41-44; Wand Decl. ¶¶ 10-15. Plaintiffs also negotiated attorneys' fees and costs only after reaching agreement on the relief for the Class. Peter Decl. ¶ 20. This is also indicative of a fair and arm's-length settlement process. *See Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) (approving fee request when "the fees were negotiated separately and after the settlement amount had been decided, thus

considerably removing the danger that attorneys' fees would unfairly swallow the proceeds that should go to class members").

### B.  Substantive Fairness – Rule 23(e)(2)(C-D)

Rule 23(e)(2)(C) "focus[es] on what might be called a 'substantive' review of the terms of the proposed settlement." Fed. R. Civ. P 23 advisory committee's note to 2018 amendment ("2018 Am."). The substantive fairness inquiry considers whether the relief provided for the Class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). Fed. R. Civ. P. 23(e)(2)(C). The Court must also consider whether the settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement satisfies each of these factors.

### 1.  Rule 23(e)(2)(C)(i) – The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)'s first factor, the "'costs, risks, and delay of trial and appeal,' 'subsumes several *Grinnell* factors,' including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial."[7] *Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *5– 6 (E.D.N.Y. Feb. 11, 2021) (citing *Payment Card III,* 330 F.R.D. at 36). Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently

---

[7] This factor overlaps with *Grinnell* factors 1, 4, 5, and 6.

involves risks, and the purpose of settlement is to avoid uncertainty.").

Before entering into the Settlement, Plaintiffs considered the significant risks of proceeding with the litigation, including the risks of obtaining and maintaining class certification and establishing liability and proving damages at trial. Peter Decl. ¶ 47. While confident in the merits of their case, Plaintiffs understand that proceeding through class certification and trial is a risky undertaking. Plaintiffs anticipate that Godiva would continue to contest the matter at every opportunity and on all fronts—including at class certification, on the merits on summary judgment and trial, and through the appeals process. For example, even if Plaintiffs were able to certify a class, Godiva would likely advance several arguments, including *inter alia*, a preemption argument, an argument that the Products' contained a disclaimer making clear they are not from Belgium, and an argument that Plaintiffs and Class Members were not financially damaged. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004).

Here, the Settlement provides substantial monetary benefits to the Class, providing Class Members the opportunity to obtain more than the full value of their alleged price premium damages on average on a per-product basis. In addition, Class Members will greatly benefit by receiving this relief in a timely manner while avoiding the risk of an unfavorable judgment. And any judgment favorable to the Class would likely be the subject of post-trial motions and appeals, which would significantly prolong the lifespan of the litigation. *See*, *e.g.*, *City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *5 (S.D.N.Y. May 9, 2014). And even if Plaintiffs ultimately prevailed, there was a risk of non-recovery given that

Godiva has closed all its retail stores in North America. Peter Decl. ¶ 35. By settling now, Plaintiffs avoid the expenditure of resources and risk associated with continuing litigation and guarantee a quicker recovery to the Class.

In sum, when the risks of litigation, the uncertainties involved in maintaining class certification, the burdens of proof necessary to establish liability, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims, the Settlement amount is fair, adequate, and reasonable.

### 2. Rule 23(e)(2)(C)(ii) – Effectiveness of Proposed Method of Distributing Relief

Pursuant to Rule 23(e)(2)(C)(ii), the Court should "consider the effectiveness of the parties' 'proposed method of distributing relief to the class, including the method of processing class-member claims.'" *Rosenfeld*, 2021 WL 508339, at *6. "[A] plan of allocation need not be perfect," *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007), and instead "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005).

The proposed plan of distribution meets this standard. Under the Settlement Agreement, Godiva is obligated to pay up to $15 million to satisfy valid Claims, depending on the number claims made. If they made a timely and valid claim, Class Members will each be entitled to a payment of $1.25 per qualifying purchase, up to $15 or $25, depending on whether or not the Class Member has Proof of Purchase. Class Members were only required to submit a Claim Form with basic questions about class membership in order to receive compensation. Settlement Agreement ¶ 24, Exs. 1-2. The Claim Form is written in clear and concise language and could be submitted through the settlement website or Class Members could print and mail the Claim Form to the

Settlement Administrator. *Id.* ¶ 70. All Settlement Benefits to Class Members will be in the form of cash payments via a check or electronic payment, whichever option the Settlement Class Member elects. *Id.* ¶¶ 82-83. This procedure is claimant-friendly, efficient, proportional, and reasonable. Therefore, the allocation plan is effective and is "rational and fair, as it treats class members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld*, 2021 WL 508339, at *6.

### 3.    Rule 23(e)(2)(C)(iii) – The Timing and Terms of Proposed Class Counsel's Proposed Award of Attorneys' Fees

The next factor under Rule 23 is the "terms of any proposed award of attorneys' fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Plaintiffs refer the Court to their concurrently filed Fee Application. *See Payment Card III*, 2019 WL 6875472, at *22 (relying on fee motion, and the approval of the preliminary approval order, to weigh this factor in favor of final approval). Regardless, the Court should grant final approval as the Settlement in not conditioned upon the Court's approval of a specific fee amount, nor does any fee award impact the recovery to the Class. Settlement Agreement ¶¶ 102-103; *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010) (because the attorneys' fees would be paid directly by the defendant it would have no impact on the compensation to the class and thus supported the reasonableness of the fees).  Thus, this factor does not pose a barrier to granting final approval.

### 4.    Rule 23(e)(2)(C)(iv) – There Are No Agreements Required to Be Identified under Rule 23

Rule 23(e)(2)(C)(iv) concerns identification of any supplemental agreements. There are no agreements between Plaintiffs or their counsel and Godiva other than the Settlement Agreement, so this factor supports final approval. Peter Decl. ¶ 23.

### 5.      Rule 23(e)(2)(D) – Class Members Are Treated Equitably

The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the Settlement Agreement provides equal relief to the Class, as each Class Member will be eligible to recover the same relief of $1.25 per qualifying purchase. Settlement Agreement ¶ 68(a)-(b). The Settlement also treats equally those who purchased a single Godiva Chocolate Product with those who purchased multiple Godiva Chocolate Products, as all Class Members can claim a maximum of $15 (up to 12 unique purchases) without Proof of Purchase, or a maximum of $25 (up to 20 unique purchases) with Proof of Purchase. *Id.*; *see Carlotti v. ASUS Computer Int'l,* No. 18-CV-03369-DMR, 2019 WL 6134910, at *13 (N.D. Cal. Nov. 19, 2019) (holding that class members were treated equitably from a settlement, even when those with proof of purchase could recover more).  For these reasons, the Settlement Class Members are treated equitably relative to each other by the Settlement Agreement.

### C.      The Remaining *Grinnell* Factors

Plaintiffs now explain why the remaining *Grinnell* factors are satisfied.

### 1.      *Grinnell* Factor No. 2 – The Class's Reaction Has Been Positive

Next, the Court should consider the reaction of the Class to the Settlement. After completing the robust, Court-approved Notice Plan, the Class's response has been positive. As of February 21, 2022, 463,495 Claims have been submitted. Moreover, as of today's date, only one Class Members has filed an Objection and only 12 persons submitted valid requests for exclusion. Finegan Decl. ¶¶ 29-31; *see also* ECF No. 73 (Kristen Arntzen's Objection). Thus, there has been a positive response from the Settlement Class. *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness).

The claims process is ongoing, as Class Members have until February 23, 2022 to submit Claim Forms, and they have until March 7, 2022 to object or opt-out. Plaintiffs anticipate that the reaction of the Class will continue the trend and remain positive. Moreover, on or before March 21, 2022, Plaintiffs will respond to Kristen Arntzen's Objection, along with any additional Objections that may come in. Plaintiffs will also provide the Court with an updated number of Claims, Objections, and Opt-outs on or about March 21, 2022, before the Final Approval Hearing. Finegan Decl. ¶ 7.

In sum, because the Objection Plaintiffs has received thus far should be overruled for the reasons that will be articulated in Plaintiffs' forthcoming response, and given the significant number of Claims compared against the anticipated minimal number of exclusions, the response of the Class supports final approval.

### 2. *Grinnell* Factor No. 3 – The Stage of the Proceedings and the Amount of Discovery Completed Warrants Final Approval

The next factor is "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020). "The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

Here, Plaintiffs completed substantial discovery before reaching this Settlement. Among other things, Plaintiffs served and responded to several rounds of written discovery, and reviewed over ten thousand documents produced by Defendant. Peter Decl. ¶ 12. Plaintiffs also consulted

highly qualified experts in the chocolate industry and the field of economics/statistics to assist Plaintiffs with evaluating the merits of their claims and performing an exposure analysis under a price premium theory of liability. *Id*. ¶¶ 13-16. Based on this information, Plaintiffs were well-apprised of the salient legal and factual issues before engaging in the settlement process. And if Plaintiffs were not able to negotiate this Settlement, they would have been prepared to present the opinions of these experts in support of a contested class certification motion. *Id*. ¶ 17. Accordingly, this *Grinnell* factor is satisfied.

      3.    ***Grinnell* Factor No. 7 – Whether Godiva Can Withstand a Substantially Greater Judgment**

The Court should next consider a defendant's ability to withstand a greater judgment. However, not all of the *Grinnell* factors must be satisfied, and a defendant's ability to withstand a greater judgment, does not, standing alone, suggest that the settlement is unfair. *See Athale v. Sinotech Energy Ltd*., No. 11 Civ. 05831 (AJN), 2013 WL 11310686, at *4, *6 (S.D.N.Y. Sept. 4, 2013). This factor supports the reasonableness of the Settlement because while Godiva could perhaps withstand a greater judgment, it, like many companies, faced economic hardship during the pandemic. Indeed, Godiva has closed all of its North American brick and mortar stores, further calling into question Godiva's ability to withstand a greater judgment.

      4.    ***Grinnell* Factor Nos. 8-9 – Range of Reasonableness Of Settlement Fund**

The final *Grinnell* factors involve consideration of both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47-48 (E.D.N.Y. 2019) (these factors "are often combined for the purposes of analysis"). In analyzing these factors, the Court should consider the risks of

litigation, as outlined above, as "[t]he range of reasonableness for a settlement is 'a range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Rosenfeld*, 2021 WL 508339, at *8 (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005)).

Here, the Settlement provides an excellent recovery to the Class by any measure. On an individual basis, each Class Member who submits a timely and valid Claim Form will receive compensation of $1.25 per product, up to an aggregate amount of $15 without Proof of Purchase and $25 with Proof of Purchase, for a maximum exposure to Defendant of $15 million. This relief is clearly reasonable when weighed against the potential damages recoverable assuming Plaintiffs were able to certify a litigation class and then prevail at trial on their claims. Indeed, the foregoing monetary relief negotiated on behalf of the Settlement Class is more than the alleged price premium damages on average and on a per-product basis that Class Members could have recovered at trial. Peter Decl. ¶¶ 15-16. Specifically, Plaintiffs retained an economics expert to calculate an estimated price premium based on Plaintiffs' theory of liability using choice-based conjoint analysis, a well-established and court-approved economic analysis often used to calculate the alleged price premium associated with a certain product attribute. *Id*. ¶ 14. This analysis yielded a 6% price premium, and when applied to the weighted average purchase price of $7.65 per Godiva Chocolate Product,[8] would result in an average recovery of $0.46 per qualifying purchase if Plaintiffs were to prevail at trial. *Id*. ¶ 15. Thus, the $1.25 per-product that will be paid to each Class Member who submits a Claim Form represents more than a full recovery per product on average to each Class Member, and is therefore reasonable. *See In re Dial Complete Mktg. and*

---

[8] This weighted average was derived from Information Resources, Inc.'s (IRi) retail data from nationwide sales of the Godiva Chocolate Products at third-party, non-warehouse retailers.

*Sales Practices Litig.*, No. 11-md-2263-SM (D.N.H. May 31, 2019) (ECF No. 260 at p. 1), Peter Decl. ¶ 51, Ex. F ("This is a somewhat unusual case as consumer product class action settlements generally go, in that all class members who filed timely and qualified claims are being fully compensated for the price premium paid associated with the allegedly inaccurate marketing claims, up to a reasonable number . . . The settlement is reasonable, fair to class members, and is just."); *In re Nucoa Real Margarine Litig.*, No. CV 10-00927-MMM (AJWx), 2012 WL 12854896, at *13 (C.D. Cal. June 12, 2012) (granting final approval and noting "[e]ven though class members will receive slightly less than the full purchase price, and recover for a limited number of purchases, therefore, their recovery from the settlement might well be significantly more than they would receive if they prevailed at trial"); *Vinh Nguyen v. Radient Pharm. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("[C]ourts recognize that '[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel.'") (citation omitted).

Settlements in similar cases also serve as a useful benchmark to assess the reasonableness of this Settlement. *See* 2018 Am. ("[T]he nature and amount of discovery in this or other cases, or the actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base."). This Settlement is comparable to or exceeds the benefits in similar false geographic origin settlements. For example, in *Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656 (S.D. Fla.), a class action challenging the origin of Beck's beer, the court approved a class-wide settlement which included monetary benefits ranging from $.10 to $1.75 per unit depending on which beer size was purchased. Peter Decl. ¶ 52, Ex. G; *see also id.* ¶¶ 31-34, Exs. H and I (citing *Shalikar v. Asahi Beer USA, Inc.*, No. BC702360 (Cal. Super. Ct. L.A. Cty.) (settlement included monetary benefits ranging between $0.50 to $2.00 per unit and up to

$10 per household without proof of purchase)); *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF (N.D. Cal.) (approving settlement providing a maximum of $20 per household with proof of purchase and up to $10 per household without proof of purchase)).

**VII.   <u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant this Motion and enter the Final Approval Order and Final Judgment in the form submitted herewith.

DATED:  February 21, 2022

**FARUQI & FARUQI, LLP**

By: <u>*/s/ Timothy J. Peter*    </u>
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

Innessa M. Huot
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
E-mail: ihuot@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (admitted *pro hac vice*)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Tel: 310-590-4503
Fax: 310-590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs*