**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> GODIVA CHOCOLATIER, INC., <br><br> Defendant. | Case No. 1:19-cv-0972-AJN |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION FOR ATTORNEYS' FEES AND COSTS AND**
<u>**CLASS REPRESENTATIVE SERVICE AWARDS**</u>

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND .......................................................................................................... 2

    A.    Summary of Relevant Settlement Terms ................................................................ 2

    B.    The Requested Fee Award Resulted from Arm's-Length Negotiations ................. 2

III.   THE REQUEST FOR ATTORNEYS' FEES SHOULD BE APPROVED ...................... 3

    A.    The Requested Fee Award Is Reasonable Under the Percentage Method ............. 4

    B.    The *Goldberger* Factors Support the Requested Fee Award ................................. 8

        1.    *Goldberger* Factor No. 1: Class Counsel's Time and Labor ..................... 9

        2.    *Goldberger* Factor No. 2: The Magnitude and Complexity of the Litigation ................................................................................................ 10

        3.    *Goldberger* Factor No. 3: The Risk of the Litigation .............................. 10

        4.    *Goldberger* Factor No. 4: The Quality of Representation ....................... 12

        5.    *Goldberger* Factor No. 5: The Requested Fee in Relation to the Settlement ................................................................................................ 13

        6.    *Goldberger* Factor No. 6: Public Policy Considerations ......................... 13

    C.    The Requested Fee Award Is Reasonable Under a Lodestar Cross Check ........... 13

IV.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED ......................................................................................................... 16

V.     THE CLASS REPRESENTATIVE SERVICE AWARDS SHOULD BE APPROVED  17

VI.    CONCLUSION .......................................................................................................... 18

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                    **Page(s)**

*Alleyne v. Time Moving & Storage, Inc.*,
   264 F.R.D. 41 (E.D.N.Y. 2010) ...........................................................................6

*Asare v. Change Grp. of New York, Inc.*,
   No. 12 Civ. 3371(CM), 2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ...............................11

*Athale v. Sinotech Energy Ltd.*,
   No. 11-cv-05831 (AJN), 2013 WL 11310686 (S.D.N.Y. Sep. 4, 2013) ...............................16

*In re Austrian & German Bank Holocaust Litig.*,
   80 F. Supp. 2d 164 (S.D.N.Y. 2000)...................................................................10

*Beckman v. KeyBank, N.A.*,
   293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................16

*Beebe v. V&J Nat'l Enters., LLC*,
   No. 6:17-CV-06075 EAW, 2020 WL 2833009 (W.D.N.Y. June 1, 2020)..............................8

*Behzadi v. Int'l Creative Mgmt. Partners, LLC*,
   No. 14-cv-4382 (LGS), 2015 WL 4210906 (S.D.N.Y. July 9, 2015)....................................6

*In re BioScrip, Inc. Sec. Litig.*,
   273 F.Supp.3d 474 (S.D.N.Y. 2017)...............................................................7, 12

*Bitzko v. Weltman, Weinberg & Reis Co., LPA*,
   No. 1:17-cv-00458, 2021 WL 3514663 (N.D.N.Y. Aug. 10, 2021)........................................6

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)..........................................................................................5

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed
   Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007)...............................................................................4

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..............................................................................12

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).......................11

*In re Colgate-Palmolive Co. ERISA Litig.*,
   36 F. Supp. 3d 344 (S.D.N.Y. 2014)............................................................7, 16, 17, 18

*In re Credit Default Swaps Antitrust Litig.*,
   No. 13md2476 (DLC), 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016)....................................16

*Davenport v. Elite Model Mgmt. Corp.*,
    No. 1:13-cv-01061-AJN, 2014 WL 12756756 (S.D.N.Y. May 12, 2014) ..........................5, 7

*Diaz v. E. Locating Serv. Inc.*,
    No. 1:10-cv-04082-JCF, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)...................................6

*Dupler v. Costco Wholesale Corp.*,
    705 F. Supp. 2d 231 (E.D.N.Y. 2010) ...............................................................................3, 18

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
    MDL No. 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)...........................................9

*Ferrick v. Spotify USA Inc.*,
    No. 16-cv-8412 (AJN), 2018 WL 2324076 (S.D.N.Y. May 22, 2018) ..................................16

*Fleisher v. Phoenix Life Ins. Co.*,
    No. 11-cv-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015) ............................6, 12

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005)........................................................................................17

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
    279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................................10

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000)........................................................................................ *passim*

*Grice v. Pepsi Beverages Co.*,
    363 F. Supp. 3d 401 (S.D.N.Y. 2019)..................................................................................18

*Guippone v. BH S & B Holdings LLC*,
    No. 09 Civ. 1029(CM), 2011 WL 5148650 (S.D.N.Y. Oct. 28, 2011) ...........................17, 18

*Hart v. RCI Hospitality Holdings, Inc.*,
    No. 09 Civ. 3043(PAE), 2015 WL 5577713 (S.D.N.Y. Sept. 27, 2015)..................................6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983)...............................................................................................................3

*Hicks v. Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005).................................8

*In re Interpublic Sec. Litig.*,
    No. 02-CV-6527 (DLC), 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ................................12

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998)................................................................................................15

*Luciano v. Olsten Corp.*,
    109 F.3d 111 (2d Cir. 1997) .......................................................................................15

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ......................................................................16

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ..............................................................................16

*Masters v. Wilhelmina Model Agency, Inc.*,
    473 F.3d 423 (2d Cir. 2007) .........................................................................................5

*McDaniel v. Cnty. of Schenectady*,
    595 F.3d 411 (2d Cir. 2010) .....................................................................................3, 4

*McGreevy v. Life Alert Emergency Response, Inc.*,
    258 F. Supp. 3d 380 (S.D.N.Y. 2017) ........................................................................9

*In re Metlife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ......................................................................10

*Moreno v. City of Sacramento*,
    534 F.3d 1106 (9th Cir. 2008) ..................................................................................14

*Pantelyat v. Bank of America, N.A.*,
    No. 16-cv-8964 (AJN), 2019 WL 402854 (S.D.N.Y. Jan. 31, 2019) ..................13, 16

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
    No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960 (S.D.N.Y. Feb. 9, 2010) ................9

*In re Penthouse Exec. Club Comp. Litig.*,
    No. 10 Civ. 1145(KMW), 2014 WL 185628 (S.D.N.Y. Jan. 14, 2014) ......................6

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) .............................................................................4, 8

*Rapoport-Hecht v. Seventh Generation, Inc.*,
    No. 14-CV-9087 (KMK), 2017 WL 5508915 (S.D.N.Y. Apr. 28, 2017) ...................8

*Roberts v. Texaco, Inc.*,
    979 F. Supp. 185 (S.D.N.Y. 1997) ...........................................................................16

*Sand v. Greenberg*,
    No. 08-cv-7840 (PAC), 2011 WL 1338196 (S.D.N.Y. Mar. 22, 2011) ...................18

*Seekamp v. It's Huge, Inc.*,
    No. 1:09-CV-0018, 2014 WL 7272960 (N.D.N.Y. Dec. 18, 2014) .........................13

*Shapiro v. JPMorgan Chase & Co.*,
  No. 11 CIV. 7961 (CM), 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..............................10

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020)....................8, 14

*Springer v. Code Rebel Corp.*,
  No. 16-cv-3492 (AJN), 2018 WL 1773137 (S.D.N.Y. Apr. 10, 2018) ...................................7

*In re Sumitomo Copper Litig.*,
  74 F. Supp. 2d 393 (S.D.N.Y. 1999)....................................................................................13

*Tart v. Lions Gate Entm't Corp.*,
  No. 14-CV-8004 (AJN), 2016 WL 10537385 (S.D.N.Y. May 16, 2016) ..........................5, 18

*Thompson v. Metro. Life Ins. Co.*,
  216 F.R.D. 55 (S.D.N.Y. 2003) .............................................................................................3

*Times v. Target Corp.*,
  No. 18 Civ. 02993, 2019 WL 5616867 (S.D.N.Y. Oct. 29, 2019) .........................................17

*Torres v. Gristede's Operating Corp.*,
  519 F. App'x 1 (2d Cir. 2013) ..........................................................................................7, 14

*U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*,
  No. 12 Civ. 9412 (PAE), 2016 WL 6996176 (S.D.N.Y. Nov. 30, 2016) ...............................15

*Vista Outdoor, Inc. v. Reeves Family Tr.*,
  No. 16 Civ. 5766, 2018 WL 3104631 (S.D.N.Y. May 24, 2018)...........................................15

*Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)....................................................................................................4

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), ........................................................................................7

*Yang v. Focus Media Holding Ltd.*,
  No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014).......................17

*Zink v. First Niagara Bank, N.A.*,
  No. 13-CV-01076-JJM, 2016 WL 7473278 (W.D.N.Y. Dec. 29, 2016)..............................5, 6

## Other Authorities

Fed. R. Civ. P. 23 ...................................................................................................................3

Fed. R. Civ. P 23 advisory committee's note to 2018 amendment..................................................3

*Law's $1,000-Plus Hourly Rate Club*, National Association of Legal Fee
    Analysis, July 23, 2018 ........................................................................................................15

## I.    INTRODUCTION

The Settlement Agreement[1] between Plaintiffs and Defendant Godiva Chocolatier, Inc. ("Godiva" or "Defendant") provides up to $15 million in cash for Class Members to claim, and provides each Class Member the opportunity to recover more than the full value of his or her alleged price premium damages on average on a per-product basis stemming from the challenged conduct. The Settlement is a fair, adequate, and reasonable resolution of this Action, and as detailed in Plaintiffs' concurrently-filed Motion for Final Approval, should be finally approved by the Court.

For their efforts, and the benefit they have conferred upon the Class, the Settlement Agreement permits Class Counsel to seek an award of reasonable attorneys' fees and expenses of up to $5,000,000, as well a Class Representative Service Award of up to $5,000 to each of the two Plaintiffs—both of which, subject to an order from the Court, will be paid by Godiva separate and apart from Settlement Benefits to the Class. In other words, while these amounts must be reasonable, they will have no impact on the compensation paid to the Class.

As discussed below, Class Counsel's attorneys' fee request is reasonable under the percentage method, with a lodestar cross check. It also satisfies each of the six criteria set out by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)—i.e., the "*Goldberger* factors"— the standard in this Circuit for evaluating the reasonableness of fee requests. The requested $5,000 Class Representative Service Awards are also well deserved, as this Settlement would not have been possible absent Plaintiffs' efforts.

---

[1] All capitalized terms used and not otherwise defined herein have the definitions set forth in the Settlement Agreement. The Settlement Agreement is attached to the Declaration of Timothy J. Peter In Support Of Plaintiffs' Motion For Final Approval and Motion For Attorneys' Fees and Costs and Class Representative Service Awards ("Peter Decl.") as Ex. A.

## II.    BACKGROUND[2]

### A.    Summary of Relevant Settlement Terms

Under the Settlement, Godiva is obligated to pay up to $15,000,000 to satisfy aggregate Claims. Settlement Agreement ¶ 68(c). Each Claimant who submits sufficient Proof of Purchase may claim $1.25 per Godiva Chocolate Product purchased during the Class Period, up to $25 (i.e., up to 20 purchases). *Id*. ¶ 68(a). Each Claimant who does not submit Proof of Purchase may claim $1.25 per Godiva Chocolate Product purchased during the Class Period, up to $15 (i.e., up to 12 purchases). *Id.* ¶ 68(b).

Separate and apart for the amount made available to Class Members, Godiva is also responsible for paying the Settlement Notice and Administration Costs to Kroll Settlement Administration LLC ("Kroll"). *Id.* ¶ 63. These costs are a minimum of $465,096. Declaration of Jeanne C. Finegan ¶ 32. Godiva is also responsible for separately paying Class Counsel's attorneys' fees and costs in an amount of up to $5,000,000, and a $5,000 Class Representative Service Award to each of the two Plaintiffs. Settlement Agreement ¶¶ 99, 107. The Settlement is not contingent upon the Court awarding any particular amount in attorneys' fees and costs or the Class Representative Service Awards. *Id.* ¶¶ 103, 108.

### B.    The Requested Fee Award Resulted from Arm's-Length Negotiations

The requested attorneys' fees and costs are presumptively reasonable because they were negotiated by the Parties at arm's-length through the assistance of Jill Sperber of Judicate West, Inc., an experienced, well-respected mediator. Declaration of Jill Sperber (ECF No. 57, Ex. A) ¶¶ 5-9; Peter Decl. ¶ 20. In particular, the Parties agreed that Plaintiffs would seek no more than

---

[2] The factual and procedural background of this case, along with additional terms of the Settlement Agreement, are set forth in Plaintiffs' concurrently-filed Motion for Final Approval, as well as their Motion for Preliminary Approval (ECF Nos. 65-66).

$5,000,000 in fees and costs, but that Godiva retains the right to oppose the amount of fees sought. Settlement Agreement ¶ 99. Class Counsel considered $5,000,000 as reasonable based on consideration of, *inter alia*, the benefits achieved for the Class, the time and effort devoted to the litigation, and applicable legal authority. Peter Decl. ¶ 49. Godiva, on the other hand, recognized that if it litigated the fee issue, it could do worse. As the United States Supreme Court explained: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

Further, the fee amount was not negotiated until after the compensation to the Class had been agreed upon. Peter Decl. ¶ 20. This serves as independent confirmation that the fee was not the result of collusion or a sacrifice of the interests of the class. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) (approving fee request when "the fees were negotiated separately and after the settlement amount had been decided, thus considerably removing the danger that attorneys' fees would unfairly swallow the proceeds that should go to class members."); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (because "the issue of attorneys' fees was not raised during the Settlement negotiations until after the parties had already agreed upon the benefit to the class" "the Court's 'fiduciary role in overseeing the award is greatly reduced.'") (citation omitted); Fed. R. Civ. P 23 advisory committee's note to 2018 amendment (courts may look at "the treatment of any award of attorney's fees, with respect to both the manner of negotiating the fee award and its terms.").

## III.     THE REQUEST FOR ATTORNEYS' FEES SHOULD BE APPROVED

Class Counsel in a class action settlement may be entitled to a "reasonable fee." *Goldberger*, 209 F.3d at 47. There are two methods available to the Court to calculate attorneys' fees: the "lodestar" method and the "percentage" method. *Id*. The Court has full discretion in choosing which method to employ. *See McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d

Cir. 2010) (holding that "the decision as to the appropriate method [is left] to the 'district court, which is intimately familiar with the nuances of the case.'") (quoting *Goldberger*, 209 F.3d at 48).

Here, the Court should utilize the percentage method, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). "The lodestar method, on the other hand, disincentivizes early settlements, tempts lawyers to run up their hours, and 'compels district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) (quoting *Wal-Mart*, 396 F.3d at 121). The percentage method is also the preferred method in the Second Circuit. *McDaniel* 595 F.3d at 417 (acknowledging 'the trend in this Circuit is toward the percentage method'") (citations omitted). Although not required, the lodestar can serve as a useful "cross check on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 43 (internal quotation marks omitted).

Accordingly, Plaintiffs explain below why the requested attorneys' fees are reasonable under the percentage method with a lodestar cross check.

### A.   The Requested Fee Award Is Reasonable Under the Percentage Method

Under the percentage method, the court calculates the fee award as some percentage of the value provided to the class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Although this Settlement does not create a traditional "common fund," its total value—i.e., the maximum amount Godiva is liable to pay under the Settlement—is at least $20,465,096. This includes: (1) the $15,000,000 maximum amount made available to satisfy Settlement Class Member Claims, (2) the minimum of $465,096 for Settlement Notice and Administration Costs, and (3) the requested $5,000,000 for attorneys' fees and reasonable expenses. Together, these amounts constitute the denominator for purposes of

evaluating the fee as a percentage of the Settlement value.

The U.S. Supreme Court has held that the district court may award fees to class counsel based on the size of the entire fund, regardless of whether all the money in the fund is claimed by the class. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The high court reasoned that the class's "right to share the harvest of the suit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel", even though there was a reversion to the defendant. *Id.* at 472. Consistent with this reasoning, in the Second Circuit, attorneys' fees are calculated on the entire value or benefit available to the class, not the amount actually claimed by the class. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding the "entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and therefore fees should be allocated based on "total funds made available, whether claimed or not.").

As this Court has recognized, this principle applies equally to claims-made settlements. *See Davenport v. Elite Model Mgmt. Corp.*, No. 1:13-cv-01061-AJN, 2014 WL 12756756, at *13 (S.D.N.Y. May 12, 2014) ("In addition, the Second Circuit has ruled that '[a]n allocation of fees by percentage should ... be awarded on the basis of total funds made available whether claimed or not.'") (quoting *Masters* and citing *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997)); *Tart v. Lions Gate Entm't Corp.*, No. 14-CV-8004 (AJN), 2016 WL 10537385, at *3 (S.D.N.Y. May 16, 2016) ("Awarding attorneys' fees based on a percentage of the settlement fund rather than the amount of claims submitted by class members is proper") (citing *Masters* and *Boeing*). This Court's interpretation and application of *Masters* is consistent with many other district courts in this Circuit. *See, e.g.*, *Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 WL 7473278, at *8-9 (W.D.N.Y. Dec. 29, 2016) (in "claims-made" settlement fees are based

on percentage of the total benefit to the class, not the amount claimed); *Behzadi v. Int'l Creative Mgmt. Partners, LLC*, No. 14-cv-4382 (LGS), 2015 WL 4210906, at *2 (S.D.N.Y. July 9, 2015) ("This is a claims made settlement, meaning the amount paid to the class will depend on the number of claims submitted by class members. Nevertheless, awarding attorneys' fees based on a percentage of the settlement amount rather than the amount paid is proper."). The fact that a defendant will not ultimately pay out unclaimed funds does not change the analysis. *See, e.g.*, *Hart v. RCI Hospitality Holdings, Inc.*, No. 09 Civ. 3043(PAE), 2015 WL 5577713, at *17 (S.D.N.Y. Sept. 27, 2015); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628, at *11 (S.D.N.Y. Jan. 14, 2014); *Diaz v. E. Locating Serv. Inc.*, No. 1:10-cv-04082-JCF, 2010 WL 5507912, at *8 (S.D.N.Y. Nov. 29, 2010); *Alleyne v. Time Moving & Storage, Inc.*, 264 F.R.D. 41, 59 (E.D.N.Y. 2010). As such, the entire $15,000,000 available to satisfy Claims should be considered.

Moreover, despite the fact that any attorneys' fees and costs awarded by the Court will be paid separately from compensation to the Class, the total amount available for fees and costs should still be considered as part of the overall settlement value because they would otherwise normally be paid by class members from a common fund. *See, e.g., Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 1:17-cv-00458 (BKS/DJS), 2021 WL 3514663, at *8 n.6 (N.D.N.Y. Aug. 10, 2021) (holding that in cases where the award of attorneys' fees is separate from, and does not deplete, the settlement fund, courts have found it appropriate to use the separate attorneys' fees as part of the denominator in the calculation of the percentage.) (internal quotation marks omitted); *Zink*, 2016 WL 7473278, at *8-9 (including attorneys' fees in the denominator in claims-made settlement because "even if indirectly, attorney's fees paid directly by the defendant are a benefit to the class."); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405 (CM), 2015 WL 10847814, at

6

*16 n.10 (S.D.N.Y. Sept. 9, 2015) (same). Similarly, the minimum that Godiva will pay for Settlement Notice and Administration Costs ($465,096) should be included because it is value provided to Class Members. *See*, *e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (including costs of notice and administration to the denominator in determining settlement value). Thus, the fees and costs request of $5,000,000 represents 24.43% of the total settlement value.

The next step involves consideration of whether "the fee is a reasonable percentage of the total value of the settlement fund created for the class." *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014).[3] To determine a baseline reasonable fee, courts look at the range of awards approved in other settlements of a similar size and complexity, based on the subject matter of the claims. *Id.* Here, the requested 24.43% is reasonable and appropriate. For one, it is consistent with fees awarded by this Court in other class action settlements. *See*, *e.g.*, *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018) (describing award of 33.3% of a common fund as "within the range of fee awards typically awarded."); *Davenport,* 2014 WL 12756756, at *13 ("Class Counsel's request for less than one-third of the fund is reasonable and 'consistent with the norms of class litigation in this circuit.'"); *In re BioScrip, Inc. Sec. Litig.*, 273 F.Supp.3d 474, 502 (S.D.N.Y. 2017) (awarding attorneys' fees of 25% of the $10 million settlement fund).

Indeed, fee awards by district courts in this Circuit are often around one-third of the settlement value. *See*, *e.g.*, *In re Warner*, 618 F. Supp. at 749 ("[t]raditionally, courts in this Circuit and elsewhere have awarded fees in the 20%-50% range in class actions"); *Torres v. Gristede's*

---

[3] This analysis encompasses the fifth *Goldberger* factor (the requested fee in relation to the settlement).

*Operating Corp.*, 519 F. App'x 1, 6 (2d Cir. 2013) ("the district court did not abuse its discretion by awarding attorney's fees in an amount exceeding one-third of the settlement's pecuniary value."); *Beebe v. V&J Nat'l Enters., LLC*, No. 6:17-CV-06075 EAW, 2020 WL 2833009, at *8 (W.D.N.Y. June 1, 2020) ("a request for one-third of the settlement fund is reasonable and consistent with the norms of class litigation in this circuit") (internal quotation marks omitted); *Rapoport-Hecht v. Seventh Generation, Inc.*, No. 14-CV-9087 (KMK), 2017 WL 5508915, at *3 (S.D.N.Y. Apr. 28, 2017) (awarding 33.3% of $4.5 million settlement fund); *Raniere*, 310 F.R.D. at 216, 220–22 (approving one-third of $4,650,000 settlement as fees). Empirical evidence of settlements in this District confirms the foregoing. *See, e.g.*, *Hicks v. Stanley*, No. 01 Civ. 10071(RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (considering evidence that the mean percent fee for settlements between $9.7 million and $15 million is 28%).

In sum, the requested attorneys' fees and costs represent 24.43% of the value of the Settlement and thus are reasonable and appropriate under the percentage method.

## B.   The *Goldberger* Factors Support the Requested Fee Award

The reasonableness of the fee request should also be analyzed under the following *Goldberger* factors: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *18 (S.D.N.Y. July 21, 2020) (quoting *Goldberger*, 209 F.3d at 50). As explained below, each of these factors supports the reasonableness of the fee request.

1.    ***Goldberger* Factor No. 1: Class Counsel's Time and Labor**[4]

As of February 17, 2022, Class Counsel has expended approximately 2,258.6 hours on this litigation. Peter Decl. ¶ 26; Declaration of Aubry Wand In Support Of Plaintiffs' Motion For Final Approval and Motion For Attorneys' Fees and Costs and Class Representative Service Awards ("Wand Decl.") ¶ 16. As can be seen from these declarations, Class Counsel devoted significant time and effort to this litigation, including, *inter alia*, pre-suit investigation of the claims, drafting several iterations of the complaint and other pleadings, successfully opposing a motion to dismiss, propounding and responding to written discovery, reviewing extensive documentary evidence, consulting with expert witnesses, preparing for class certification, negotiating the Settlement over the course of two mediations and months of further negotiations, taking efforts to obtain approval of the Settlement, and overseeing the settlement notice process. Peter Decl. ¶ 27; Wand Decl. ¶ 23. The scope of worked performed by Class Counsel was necessary and reasonable for complex class actions of this type. And if the Settlement is approved, Class Counsel will continue to devote considerable time in the future overseeing administration of the Settlement. Peter Decl. ¶ 31; Wand Decl. ¶ 26; *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (considering class counsel's future efforts to oversee the claims process in awarding a 33% fee); *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ. 7670(BSJ)(JCF), 2010 WL 532960, at *2 (S.D.N.Y. Feb. 9, 2010) ("[A]s class counsel is likely to expend significant effort in the future implementing the complex procedure agreed upon for collecting and distributing the settlement funds, the multiplier will diminish over time."). Accordingly, this factor supports the requested fee award.

---

[4] When the percentage method is used, the analysis of this factor also serves as a lodestar "cross check" on the reasonableness of the percentage awarded. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 389 (S.D.N.Y. 2017). Additional details regarding the lodestar cross check are set forth below in Section III.C.

2.      *Goldberger* **Factor No. 2: The Magnitude and Complexity of the Litigation**

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). This case is no exception. Before reaching this Settlement, Plaintiffs considered several complex issues, not all of which were formally litigated. For example, Defendant would likely assert a federal preemption defense regarding country of origin labeling on food products. *See, e.g.,* ECF No. 42, Answer, Fifth Affirmative Defense at 18-19. And Plaintiffs would have to address numerous other issues relating to the reasonable consumer standard, damages, etc. in order to certify a class and ultimately prevail on the merits of their claims. For example, "[p]roof of damages in complex class actions is always complex and difficult and often subject to expert testimony." *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 (CM), 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014). Nor is this case's complexity diminished by the fact that Plaintiffs were able to reach a prompt and efficient settlement. In order to do so on the favorable terms presented to the Court, Plaintiffs were required to conduct prolonged settlement negotiations, during which additional complex issues were tackled. Peter Decl. ¶¶ 18-21. Accordingly, this factor supports the requested fee award.

3.      *Goldberger* **Factor No. 3: The Risk of the Litigation**

This factor is often cited as the "first, and most important, *Goldberger* factor." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (internal quotation marks omitted). Success in contingent litigation of consumer class actions like this one is far from certain. Litigating this case to a favorable classwide judgment—i.e., prevailing on both liability and damages—would be fraught with risks at every stage. *See In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (recognizing that the risks of establishing liability and

damages weigh in favor of a fee's reasonableness). Among other things, it would likely require Plaintiffs to certify a class, defeat motion(s) for summary judgment, prevail on the merits at trial, and then defend the results on any appeal. If "settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Asare v. Change Grp. of New York, Inc*., No. 12 Civ. 3371(CM), 2013 WL 6144764, at *11 (S.D.N.Y. Nov. 18, 2013). And even if successful, any payment to the class would not be made for several years.

Aside from general litigation risk, litigation of similar consumer false advertising cases has presented uncertainties of outcome. For example, over the course of the last three years, Class Counsel devoted thousands of hours of time, as well several hundred thousand dollars in out-of-pocket costs, litigating a deceptive origin case involving potato chips, but ultimately failed to certify a class. Wand Decl. ¶ 27. In other words, litigating contingent cases like this one presents real risks of recovering zero fees despite considerable outlays of attorney time, losing large sums of money in advanced out-of-pocket costs, and most importantly, recovering nothing for the class. Peter Decl. ¶ 35 (noting the contingency risk in light of the closure of Godiva's brick and mortar stores in North America). In addition to some of the risks specific to this case discussed above, the back label of some of the Products may have included a New York address, a fact which, depending on several unknown issues (including the outcome of expert evidence by Defendant), may have threatened the crux of Plaintiffs' case. Despite these risks, Class Counsel decided to pursue this litigation on a full contingency basis. *Goldberger*, 209 F.3d at 53 ("(o)f course contingency risk . . . must be considered in setting a reasonable fee."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a

contingent basis is an important factor in determining an appropriate fee award.").[5] Accordingly, this factor supports the requested fee award.

### 4. *Goldberger* Factor No. 4: The Quality of Representation

Courts "have consistently recognized that the result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Fleisher*, 2015 WL 10847814, at *21. The exceptional result obtained here speaks to the quality of Class Counsel's representation. For one, this Settlement guarantees Settlement Class Members timely payment in excess of the full trial damages they could expect to personally recover on an average per-product basis stemming from the challenged conduct. Class Counsel's substantial experience prosecuting complex class action cases on behalf of consumers, including false origin cases, and their zealous litigation in this case, no doubt was an important part in achieving this result. Peter Decl. ¶¶ 41-44; Wand Decl. ¶¶ 10-15. That Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a testament to the skill displayed by Class Counsel. *See In re BioScrip, Inc.*, 273 F.Supp.3d at 502 (recognizing that the skill of opposing counsel can be considered under this *Goldberger* factor).

Lastly, the efficiency and relative speed of resolution—particularly in light of the excellent result obtained—reflects the quality of Class Counsel's representation. It should not serve as a basis for a downward departure from what is a reasonable percentage fee. *In re Interpublic Sec. Litig.*, No. 02-CV-6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("Any award of attorneys' fees ... should not penalize counsel for settling at an early stage of the litigation when

---

[5] In *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated on other grounds by Goldberger*, the Second Circuit observed that "[n]o one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success."

it appeared appropriate to do so."). Indeed, Class Members will derive a substantial benefit by receiving timely payment under this Settlement. Accordingly, this factor supports the requested fee award.

        **5.**     *Goldberger* **Factor No. 5: The Requested Fee in Relation to the Settlement**

For the reasons discussed *supra* in Section III.A, this factor supports the requested fee award.

        **6.**     *Goldberger* **Factor No. 6: Public Policy Considerations**

In awarding attorneys' fees, the Second Circuit "take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-0018 (LEK/CFH), 2014 WL 7272960, at *2 (N.D.N.Y. Dec. 18, 2014) ("[P]ublic policy militates in favor of the fee in light of the role that consumer protection class actions play in regulating the marketplace."). And as this Court has previously recognized, "the public policy benefits of rewarding counsel for pursuing class claims that might not be viable as individual actions" is a factor that can confirm the reasonableness of a fee award. *See Pantelyat v. Bank of America, N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *9 (S.D.N.Y. Jan. 31, 2019) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) (explaining that, in a case with low individual recovery amounts, "[e]conomic reality dictates that [the] suit proceed as a class action or not at all.")). Accordingly, this factor supports the requested fee award.

      **C.**     **The Requested Fee Award Is Reasonable Under a Lodestar Cross Check**

Following *Goldberger*, although not required, courts in the Second Circuit may opt to use the lodestar method as a "cross check" to the percent method. *Goldberger*, 209 F.3d at 50. As part of the cross check, the lodestar is determined by "multiplying the hours spent by each attorney and

paraprofessional . . . by their current hourly rates[.]" *Signet*, 2020 WL 4196468, at *16. As explained below, Class Counsel's combined lodestar of $1,471,214.50, with a 3.35 multiplier, supports the requested fee award.[6] Peter Decl. ¶¶ 26, 28; Wand Decl. ¶ 16.

As of February 17, 2022, Class Counsel has spent a total of 2,258.6 hours litigating the Action, compiled from contemporaneous time records maintained by each individual who performed work on the case. Peter Decl. ¶¶ 26, 28-29; Wand Decl. ¶ 16. In reviewing the lodestar, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50; *Torres,* 519 F. App'x at 4 (trial courts evaluating fee requests "need not, and indeed should not, become green-eyeshade accountants"). Instead, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case[.]" *Goldberger*, 209 F.3d at 50.  Here, the number of hours expended in this case is reasonable when considering the complexity of the litigation and the result obtained. Class Counsel deftly balanced vigorous litigation of this case with the benefits of minimizing unnecessary work—all with the goal of achieving the best possible result for the Class. For example, Class Counsel was able to obtain meaningful discovery from Godiva while avoiding costly discovery disputes. Indeed, the Parties were in the midst of an ongoing and significant discovery dispute that Plaintiffs were preparing to present to the Court at the time they decided to enter into settlement discussions. Peter Decl. ¶ 12; Wand Decl. ¶ 24. Class Counsel also worked in cooperation with one another to endeavor to divide tasks, ensure efficient case management, and avoid duplicative work. Peter Decl. ¶ 29; Wand Decl. ¶ 25. In short, Class Counsel did not undertake extraneous work nor was there an incentive to do so. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("It must also be kept in

---

[6] The multiplier is calculated by dividing $4,932,164.56 (the total requested fee award less out of pocket expenses) by $1,471,214.50 (Class Counsel's combined lodestar).

mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee.").

In evaluating the reasonableness of the hourly rates, courts look to current rates that prevail in the district in which the court sits. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("The 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'") (citing *Blum v. Stevenson*, 465 U.S. 886, 896 n. 11 (1984); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("current rates, rather than historical rates, should be applied in order to compensate for the delay in payment").

Here, Class Counsel billed at rates ranging from $550-$985 an hour for attorneys. Peter Decl. ¶ 28; Wand Decl. ¶ 17. These hourly rates are consistent with the market rates for lawyers of similar quality litigating matters of similar magnitude in this District. Indeed, partners at law firms in New York have charged over $1,000 an hour for a number of years. *See, e.g., Vista Outdoor, Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding reasonable hourly partner rates between $1,165 and $1,260 and hourly associate rates between $569.02 and $753.42) (citing *MSC Mediterranean Shipping Co. Holdings S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017)); *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("[P]artner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation.") (internal quotation marks omitted); *see also Law's $1,000-Plus Hourly Rate Club*, National Association of Legal Fee Analysis, July 23, 2018. ("Kirk A. Radke [from] Kirkland & Ellis LLP in New York had an hourly fee of $1,250 [as early as 2010] . . . lawyer John M. Reiss, from White & Case in New York,

started billing $1,100 an hour last year [2017]"). *See also* Peter Decl. ¶¶ 32-34 (citing cases in which Class Counsel's rates have been approved, and surveys of market rates).

Once a court has made the initial computation, the court may, in its discretion, increase the lodestar by applying a multiplier. The multiplier can be adjusted based on risk that Class Counsel assumed in taking on this litigation on a contingent basis. *Goldberger*, 209 F.3d at 47, 54. Here, Class Counsel's fee request represents a 3.35 multiplier on their lodestar. Based on the risk taken in pursuing this case without advanced compensation, and the quality of counsel's work and results achieved in this litigation, this multiplier is reasonable. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding a "modest multiplier" of 4.65, which was "well within the range awarded by courts in this Circuit and courts throughout the country."); *see also In re Credit Default Swaps Antitrust Litig.*, No. 13md2476 (DLC), 2016 WL 2731524, at *17 (S.D.N.Y. Apr. 26, 2016) (multiplier of over 6); *In re Colgate-Palmolive*, 36 F. Supp. 3d at 353 (multiplier of 5.2); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197-98 (S.D.N.Y. 1997) (multiplier of 5.5). This Court has awarded multipliers above 3.35. *Pantelyat*, 2019 WL 402854, at *10 (multiplier of 4.89); *Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831 (AJN), 2013 WL 11310686, at *9 (S.D.N.Y. Sep. 4, 2013) (multiplier of 5.65); *Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *10 (S.D.N.Y. May 22, 2018) (multiplier of 5.02). In sum, a lodestar cross check supports the reasonableness of the requested attorneys' fees.

## IV.   CLASS COUNSEL'S EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

Class Counsel is also entitled to be reimbursed for litigation costs and expenses. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010).  Here, Class Counsel has incurred a

total of $67,835.44 in expenses. Peter Decl. ¶ 36; Wand Decl. ¶ 29. All of these expenses were integral to the successful prosecution of this case. *See id.* Most of the litigation expenses were for expert work, which courts consider "essential to the litigation and invaluable to the Class." *See In re Colgate-Palmolive*, 36 F. Supp. 3d at 353 ("Courts routinely award [expert] costs."). Class Counsel's other expenses were typical and reasonable and should be reimbursed. *See Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, computer research, photocopying, postage, meals, and court filing fees).

## V.    THE CLASS REPRESENTATIVE SERVICE AWARDS SHOULD BE APPROVED

Lastly, Plaintiffs respectfully request that the Court approve a Class Representative Service Award of $5,000 each. "Service awards are common in class action cases…." *Times v. Target Corp.*, No. 18 Civ. 02993, 2019 WL 5616867, at *5 (S.D.N.Y. Oct. 29, 2019). In examining the reasonableness of service awards, courts consider the personal risk incurred by the named plaintiff, the time and effort expended by the named plaintiff in assisting the prosecution of the litigation, and the ultimate recovery in vindicating statutory rights. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). These considerations weigh in favor the Service Awards requested here.

First, Plaintiffs undertook risk in lending their names to a case that was sure to garner at least some public attention. Declaration of Steve Hesse ("Hesse Decl.") ¶ 8; Declaration of Adam Buxbaum ("Buxbaum Decl.") ¶ 8; *see also Guippone v. BH S & B Holdings LLC*, No. 09 Civ. 1029(CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011) ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."). Second, Plaintiffs have devoted considerable time to the litigation, which includes, *inter alia*, reviewing the complaints and other

17

pleadings, engaging in extensive communications with Class Counsel, searching for responsive documents, providing answers to multiple sets of written discovery, and reviewing and approving the Settlement Agreement and related documents. Hesse Decl. ¶¶ 5-6; Buxbaum Decl. ¶¶ 5-6. *See also In re Colgate-Palmolive*, 36 F. Supp. 3d at 354 (awarding $5,000 service awards to each of six plaintiffs who "reviewed draft pleadings and motions, searched for and produced relevant documents, reviewed filings, and communicated regularly with Class Counsel.").

Lastly, the requested Service Awards are reasonable in comparison to other awards granted in this District. *See, e.g., Guippone*, 2011 WL 5148650, at *8 ($10,000 service award); *Sand v. Greenberg*, No. 08-cv-7840 (PAC), 2011 WL 1338196 at *5 (S.D.N.Y. Mar. 22, 2011) (proposed $10,000 service award to named plaintiffs "appears to be reasonable, and is very similar to allocation plans that courts routinely approve in the context of settlement"); *Dupler*, 705 F. Supp. at 245-46 (awarding $25,000 to the lead plaintiff in a consumer class action and $5,000 to another plaintiff); *Grice v. Pepsi Beverages Co.*, 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) ($5,000 service award); *Tart*, 2016 WL 10537385, at *3 (same). Thus, the requested Service Awards are reasonable and should be approved by the Court.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant approval of $5,000,000 in attorneys' fees and costs ($4,932,164.56 for attorneys' fees and $67,835.44 for out-of-pocket expenses), and a $5,000 Class Representative Service Award to each of the two Plaintiffs.

DATED:  February 21, 2022

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Timothy J. Peter*
Timothy J. Peter (admitted *pro hac vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
E-mail: tpeter@faruqilaw.com

Innessa M. Huot
685 Third Avenue, 26th Floor
New York, NY 10017
Tel: 212-983-9330
Fax: 212-983-9331
E-mail: ihuot@faruqilaw.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (admitted *pro hac vice*)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Tel: 310-590-4503
Fax: 310-590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiffs*