UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GODIVA CHOCOLATIER, INC.,<br><br>Defendant. | No. 1:19-cv-0972-AJN |

**DECLARATION OF TIMOTHY J. PETER IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL AND MOTION FOR ATTORNEYS' FEES AND COSTS AND
<u>CLASS REPRESENTATIVE SERVICE AWARDS</u>**

I, Timothy J. Peter, declare as follows:

1. I am an attorney duly licensed to practice in the Commonwealth of Pennsylvania. On May 20, 2019, this Court granted my Motion for Admission *Pro Hac Vice* in this Court (Dkt. No. 31). I am a partner at Faruqi & Faruqi, LLP (the "Faruqi Firm"), which, alongside the Wand Law Firm, P.C., serves as Co-Counsel of record for Plaintiffs Steve Hesse and Adam Buxbaum ("Plaintiffs") in the above-referenced case (collectively, "Class Counsel"). During my time at the Faruqi Firm, I served in various capacities, including my current position as Chair of the firm's Consumer Litigation Department and one of the lead attorneys on this matter.

2. I respectfully submit this declaration in support of two motion: (1) Plaintiffs' Motion for Final Approval; and (2) Plaintiffs' Motion For Attorneys' Fees And Costs And Class Representative Service Awards. I was actively involved in the litigation of this action from the inception, and I have reviewed my firm's files and records relating to this case prior to the submission of this declaration. Except as otherwise noted, the facts set forth in this declaration are based in part upon my personal knowledge, and I would competently testify to them if called upon to do so.

## I. Introduction

3. This class action challenged Defendant Godiva Chocolatier Inc.'s ("Defendant") deceptive use of the phrase "Belgium 1926" and other statements about Belgium on the label of Godiva chocolate products, when the products are not made exclusively in Belgium.

4. Class Counsel have been responsible for the diligent prosecution of this action and for the negotiation of the Settlement Agreement. We have vigorously represented the interests of Plaintiffs and the Settlement Class Members throughout the course of the action and settlement negotiations.

## II.     Overview of Class Counsel's Work On This Matter, Settlement Negotiations, and Preliminary Approval

5.     Before filing any complaint in this action, Class Counsel extensively investigated the claims in this Action. Specifically, Class Counsel's pre-suit investigation included, but was not limited to: (a) obtaining and reviewing the challenged Godiva chocolates, including their labeling, packaging, and other advertisements and promotions for them, both in third party retail stores, Godiva's brick and mortar stores, and online websites; (b) obtaining and reviewing electronic images of Godiva's website and other electronic marketing platforms; (c) obtaining and reviewing financial information regarding the challenged Godiva chocolates and Defendant; and (d) conducting extensive legal research to evaluate the prospective merits and weaknesses of the case.

6.     On January 31, 2019, Plaintiff Steve Hesse filed a complaint in the Southern District of New York against Defendant in *Hesse v. Godiva Chocolatier, Inc.* No. 1:19-cv-00972-AJN (the "Hesse Action").

7.     On January 31, 2019, Plaintiff Adam Buxbaum also commenced a proposed class action in the Northern District of California against Defendant in *Buxbaum v. Godiva Chocolatier, Inc.*, No. 3:19-cv-00558-WHO (the "Buxbaum Action").

8.     On March 4, 2019, for purposes of judicial efficiency, the Buxbaum Action was voluntarily dismissed without prejudice, and on March 5, 2019, the complaint in the Hesse Action was amended to include the claims in the Buxbaum Action. ECF No. 12 (First Amended Class Action Complaint).

9.     On April 19, 2019, Defendant filed a Motion to Dismiss the First Amended Class Action Complaint, arguing primarily that no reasonable consumer would be deceived into

believing the Godiva chocolates are made in Belgium. ECF No. 22-23. On May 20, 2019, Plaintiffs opposed the Motion to Dismiss. ECF No. 32. On June 3, 2019, Defendant filed a reply in support of its Motion to Dismiss. ECF No. 34.

10. On May 29, 2020, the Court granted in part and denied in part the Motion to Dismiss, with the following damages claims surviving the motion: (1) violation of New York's GBL § 349, (2) violation of New York's GBL § 350, (3) violation of California's Consumers Legal Remedies Act, (4) violation of California's Unfair Competition Law, (5) violation of California's False Advertising Law, (6) breach of express warranty under New York law; (7) breach of express warranty under California law, and (8) breach of implied warranty under New York law. ECF No. 39.

11. On June 12, 2020, Defendant filed an Answer to the First Amended Class Action Complaint. ECF No. 42.

12. Subsequent to the Court's order on Defendant's Motion to Dismiss, Plaintiffs and Class Counsel engaged in substantial discovery in preparation for class certification, including negotiating a protective order, propounding and responding to interrogatories, document requests, and requests for admission (including supplemental responses), producing documents, and reviewing over ten thousand documents produced by Defendant. Class Counsel also engaged in multiple meet and confers with Defendant to resolve discovery disputes, including one Plaintiffs were ready to present to the Court.

13. Class Counsel also consulted experts in the fields of statistics and economics and the chocolate industry.

14. Specifically, Class Counsel retained and consulted a damages expert to assess whether any damages were associated with Plaintiffs' theory of liability. This expert conducted a

choice-based conjoint analysis to answer this question. Plaintiffs simultaneously worked with an expert in the chocolate industry to consult on matters relating to the conjoint survey, including *inter alia*, what attributes consumers value in chocolates, and to assist with tailored document requests and interrogatories.

15. Ultimately, the conjoint analysis yielded a 6% price premium. When applied to the weighted average purchase price of $7.65 per Godiva Chocolate Product,[1] if the expert's analysis survived a *Daubert* challenge and Plaintiffs were to prevail at trial, the average recovery would be $0.46 per qualifying purchase.

16. As such, the monetary relief negotiated on behalf of the Settlement Class ($1.25 per qualifying product) is more than the price premium damages on average and on a per-product basis that Class Members could have recovered at trial.

17. If Plaintiffs and Class Counsel were not able to negotiate this Settlement, they would have been prepared to present the opinions of these experts (and other experts) in support of class certification, summary judgment, and trial.

18. The Parties ultimately engaged in extensive arm's-length settlement negotiations spanning several months and two mediation sessions with Jill R. Sperber, a well-respected and experienced mediator at Judicate West. The first mediation occurred on March 2, 2021, and lasted all day. The Parties were unable to reach a settlement during this mediation, but ultimately agreed to continue negotiations through the mediator.

---

[1] This weighted average was derived from IRi retail data from nationwide sales of the Godiva chocolate products at third-party, non-warehouse retailers.

4

19. In an effort to continue working toward a resolution in this matter, the Parties participated in a second full-day mediation session on April 1, 2021 with Ms. Sperber. The Parties were still unable to reach settlement, although they made considerable progress towards resolution.

20. The Parties continued to negotiate under the auspices of Ms. Sperber, and on May 1, 2021, they were able to execute a Memorandum of Understanding ("MOU"), subject to confirmatory discovery. Only after reaching an agreement on the substantive terms of relief for the Class did Class Counsel engage in any discussion regarding recovery of attorneys' fees and costs.

21. In the subsequent months, Plaintiffs completed their confirmatory discovery. Among other things, Plaintiffs reviewed additional documents and information relating to the nature of Plaintiffs' claims, class member information, sales and pricing data, and determined which products were covered by the Settlement.

22. In furtherance of the MOU, the Parties finalized the terms of the Settlement Agreement, culminating in the execution of the Settlement Agreement on September 23, 2021. A true and correct copy of the executed Settlement Agreement (including all Exhibits) is attached hereto as **Exhibit A**.

23. Besides the Settlement Agreement, there are no other agreements between the Parties regarding settlement.

### III. The Faruqi Firm's Lodestar and Expenses

24. From Plaintiffs and Class Counsel's initial investigations of the case, Class Counsel anticipated the need to, and was ready to, spend a significant number of hours litigating this case. This litigation carried the risk that Plaintiffs might not prevail on their claims, due to the complex nature of the factual and legal claims at issue. This risk also bore the possibility that Class Counsel

would receive no compensation for its time, effort, and resources. Despite these risks, Class Counsel continued to prosecute the case on behalf of Plaintiffs and the Settlement Class.

25. Indeed, the Faruqi Firm is well-aware of the substantial costs and risks involved with such litigation, having previously litigated, certified, and settled similar class actions regarding geographical misrepresentations on beer products.

26. From the inception of this case until February 17, 2022, the total hours billed by the Faruqi Firm for this case is 1,596.3 hours. The total lodestar based on the firm's current billing rates is $1,007,604.50 as of the same date.

27. The work done by my firm in this case includes, but is not limited to: numerous client communications; factual investigation and legal research regarding Plaintiffs' claims (both pre-suit and during litigation); drafting multiple complaints and other pleadings; briefing an extensive opposition to Defendant's Motion to Dismiss; engaging in substantial discovery (as further outlined in Paragraph 12 *supra*); retaining several consulting experts; corresponding with counsel for Defendant; attending multiple mediation sessions; engaging in months of follow up negotiations with Defendant under the auspices of Ms. Sperber; negotiating an MOU; conducting extensive confirmatory discovery; negotiating and drafting a long form Settlement Agreement and exhibits; working with the Settlement Administrator to develop a robust Notice Plan; seeking and obtaining preliminary approval of the Settlement; overseeing the implementation of the Notice Plan; communicating and assisting Settlement Class Members with questions and concerns regarding the Settlement website and Claim Form; and seeking final approval of the Settlement.

28. Inserted below is a chart summarizing the hours expended on the tasks in this case. The hourly rate referenced in the chart is based on the firm's current hourly billing rates.[2] Class Counsel's hourly rates on this case ranged from $550-$985 for attorneys, which as further outlined below, is consistent with billable rates in this District.

| Timekeeper; Position; and, if an attorney, number of years practicing | Hours up to 2/17/2022 | Hourly Rate | Lodestar |
|---|---|---|---|
| Nadeem Faruqi; Co-Founder and Partner; over 30 years | 26.70 | $985 | $26,299.50 |
| Timothy J. Peter; Chair of Consumer Protection Division and Partner; over 12 years | 383.50 | $775 | $297,212.50 |
| Benjamin Heikali; Partner; over 6 years | 531.20 | $645 | $342,624.00 |
| Ruhandy Glezakos; Associate; over 6 years | 274.90 | $565 | $155,318.50 |
| Joshua Nassir; Associate; over 4 years | 261.10 | $550 | $143,605.00 |
| Derek Behnke; Managing Paralegal | 10.10 | $425 | $4,292.50 |
| Anthony Aloise; Paralegal | 2.00 | $400 | $800.00 |
| Brian Giacalone; Paralegal | 29.20 | $375 | $10,950.00 |
| Susanna Marton; Paralegal | 39.50 | $375 | $14,812.50 |
| Mordehai Peretz; Paralegal | 10.40 | $325 | $3,380.00 |
| Evan Aldo; Paralegal | 27.70 | $300 | $8,310.00 |
| **TOTALS FOR FIRM** | **1,596.3** | | **$1,007,604.50** |

29. As is the general practice of most law firms, each of the attorneys and support staff at the Faruqi Firm are responsible for keeping contemporaneous records of the time spent on each case. The time and descriptions displayed in the Faruqi Firm's billing records have been

---

[2] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989).

maintained in the computerized records at the Faruqi Firm. I have personally reviewed all of the Faruqi Firm's time entries and have used billing judgment to ensure they are accurate, and to ensure that duplicative or unnecessary time has been excluded and that only time reasonably devoted to the litigation has been included. Class Counsel further worked in cooperation with one another to ensure efficient case management, including dividing tasks and avoiding duplicative work between the two firms. Not being paid by the hour, Class Counsel in this case had an incentive to conduct their efforts efficiently. Moreover, I endeavored to assign as much work as possible to more junior attorneys and administrative staff when practical to do so. For example, all administrative tasks were assigned to paralegals.

30. In my judgment and based on my years of experience in class action litigation, the number of hours expended, and the services performed by my firm, were reasonable and necessary for our representation of Plaintiffs and the Class.

31. The Faruqi Firm's above-referenced lodestar does not include the additional time that they will need to devote to implementing the Settlement (should the Court grant final approval), which will include (but is not limited to) preparing for and attending the Final Approval Hearing, addressing any objections, continuing to assist Class Members with questions and concerns, communicating with Defendant and the Settlement Administrator and overseeing the remainder of the settlement administration generally, and taking other further steps to ensure a successful conclusion of the litigation.

32. Moreover, I believe our hourly rates are reasonable pursuant to following authorities and evidence of the Faruqi Firm's previously approved rates in other class actions, including matters in this District:

8

a. *In re: Scotts EZ Seed Litig.*, No. 7:12-cv-04727-VB-PED (S.D.N.Y. Dec. 19, 2018) (ECF Nos. 351-2, 367) (approving partner rates up to $950, associate rates up to $555, and paralegal rates up to $375)

b. *In Re: The Home Depot, Inc. Shareholder Derivative Litig.*, No. 1:15-cv-2999-TWT, ECF No. 82-2, 84 (N.D. Ga. 2017) (approving Faruqi Firm's 2018 partner rates up to $ 850, associate rates up to $580, and paralegal rates up to $310)

c. *In re Lidoderm Antitrust Litig.*, Case No. 14-md-02521-WHO (Apr. 3, 2014) (ECF Nos. 1024-1, 1055) (approving Faruqi Firm's 2018 partner rates up to $900, associate rates up to $590, and $400 for paralegal rates);

d. *Rudani v. Ideanomics, Inc.*, No. 1:19-cv-06741-GBD, ECF No. 132 (S.D.N.Y. Jan. 25, 2022) (approving Faruqi Firm's rates ranging from $595 to $950 for partners, and $475 to $550 for associates);

e. *In re: Arby's Restaurant Group, Inc. Data Sec. Litig.*, Case No. 1:17-cv-1035-WMR (N.D. Ga. Mar. 22, 2017) (ECF Nos. 190-191) (approving Faruqi Firm's 2019 partner rates up to $825, associate rates up to $450, and paralegal rates up to $310 in a data breach class action);

f. *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT), ECF Nos. 107-8; 109 (S.D.N.Y. Oct. 2, 2014) (in 2014, approving Faruqi Firm's rates of $875-$625 for partners and $375-$585 for associates); and

g. *Astiana v. Kashi Co.*, No. 3:11-CV-1967-H (BGS) (S.D. Cal. Sept. 2, 2014) (approving the Faruqi Firm's 2014 partner rates up to $875, associate rates up to $510, paralegal rates up to $315 in granting plaintiffs' motion for final approval and for award of attorneys' fees, costs, and incentive awards, as established in

ECF No. 229-4).

33. Comparable hourly rates have also been deemed reasonable by various courts in this District and other courts for reasonably comparable services, including the following:

   a. *Hawaii Structural Ironworkers Pension Trust Fund v. AMC Entm't Holdings, Inc. et al*, No. 1:18-cv-00299, ECF Nos. 223, 230 (S.D.N.Y. Feb. 14, 2022) (this Court approving hourly rates of up to $1325 in class action);

   b. *Vista Outdoor, Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding reasonable hourly partner rates between $1,165 and $1,260 and hourly associate rates between $569.02 and $753.42) (citing *MSC Mediterranean Shipping Co. Holdings S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017)); and

   c. *U.S. Bank Nat'l Ass'n v. Dexia Real Estate Capital Mkts.*, No. 12 Civ. 9412 (PAE), 2016 WL 6996176, at *8 (S.D.N.Y. Nov. 30, 2016) ("[P]artner billing rates in excess of $1,000 an hour[] are by now not uncommon in the context of complex commercial litigation.").

34. Based on the foregoing, and my knowledge, experience, and research, the hourly rates charged by the Faruqi Firm are within the range of market rates charged for similar work performed by attorneys of equivalent experience, skill, and expertise. I became familiar with these rates by, *inter alia*: (1) discussing fees with other class action attorneys; (2) reviewing prior attorneys' fees applications; and (3) obtaining declarations regarding prevailing market rates filed by attorneys seeking similar fees. Moreover, as demonstrated by **Exhibit B** (2020 Partner Compensation Survey) and **Exhibit C** (2018 Real Rate Report), both attached hereto, the rates charged by my firm are consistent with those reported in surveys conducted by independent

10

professionals. *See* Ex. B at 61; Ex. C at 21-22. From that basis, I am able to conclude that the rates charged by my firm are commensurate with those prevailing in the market for such legal services furnished in complex class action litigation, such as this case.

35. Furthermore, the firm undertook this representation on a wholly contingent basis recognizing that the risk of non-payment has been high throughout this litigation. There were substantial uncertainties in the viability of this case as a class action, as well as substantial uncertainties in the merits of the underlying claims, and the ability to collect on any judgment that might be obtained. This uncertainty is further exacerbated by the fact that Defendant recently closed all its North American brick-and-mortar stores. Although we believed the case to be meritorious, a realistic assessment shows that the risks inherent in the resolution of the liability issues, protracted litigation in this action as well as the probable appeals process, are great.

36. Furthermore, the Faruqi Firm expended $34,000.04 in out-of-pocket costs and expenses associated with the prosecution of this case. Provided below is a summary listing of the costs and expenses incurred by the Faruqi Firm. These expenses do not include the costs and expenses Class Counsel expects to incur after filing the instant motions:

| Description | Amount |
| --- | --- |
| Copying, postage, delivery, and telephone costs | $38.13 |
| *Pro Hac Vice* Fees | $450.00 |
| Filing/Process Server Fees | $950.00 |
| Expert Consulting and other Professional Service Expenses | $17,104.62 |
| Mediation Fees | $5,050.00 |
| Discovery Expenses | $6,252.20 |
| Legal Research | $4,155.09 |
| **Total** | **$34,000.04** |

37. The actual expenses incurred in the prosecution of this case are reflected on the computerized accounting records of my law office. Those accounting records are prepared by

11

accounting staff from receipts and check records and accurately reflect all actual expenses incurred.

38. As demonstrated in the instant motions, the risk of non-payment inherent in contingency fee cases represents a gamble that Class Counsel could be left unpaid. For this reason, courts have enhanced the fee award to compensate for this risk. Here, Class Counsel represented Plaintiffs and the Class on a contingent fee basis and has therefore undertook a risk of non-payment. Class Counsel took this risk, thereby making the decision to utilize the firm's time, money, and resources on this litigation as opposed to other potential employment opportunities. This risk is amplified given the nature of a nationwide class action regarding complex claims and the risks of losing the case on the merits or a possible appeal.

39. If Class Counsel did not reach the Settlement Agreement with Defendant, this case would have likely led to trial, thereby causing substantial increased costs to all parties that would not have been reimbursed without Plaintiffs prevailing.

40. Finally, in support of Plaintiffs' service awards, while Plaintiffs have not (to their knowledge) personally experienced adverse consequences as a result of this case, it did garner a fair amount of media attention, as it was widely reported by local and mainstream media outlets.

## IV. Qualification of the Faruqi Firm

41. The Faruqi Firm is a national law firm with offices in New York, Pennsylvania, California, and Georgia. The Faruqi Firm's practice focuses on complex and class action litigation involving consumer, antitrust, wage & hour, corporate governance, and securities matters. The Faruqi Firm has extensive experience in the litigation, trial and settlement of complex class actions.

42. During my employment at the Faruqi Firm, I have been appointed as Lead Counsel or on the Executive Committee, or otherwise served as counsel, in the following class actions:

a. *Broomfield v. Craft Brew Alliance*, 5:17-cv-01027 (N.D. Cal. Feb. 28, 2017) (Faruqi Firm served as co-lead counsel and negotiated class-wide settlement in case alleging that Kona beer was deceptively advertised as being brewed in Hawaii);

b. *In re: Folgers Coffee Mktg*, No. 4:21-md-02984 (W.D. Mo. Apr. 1, 2021) (Faruqi Firm appointed co-lead counsel in food labeling class action);

c. *In Re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 1:18-cv-08472 (PKC) (Sept. 18, 2018) (Faruqi Firm appointed co-lead counsel in data breach class action);

d. *In re Scotts EZ Seed Litig.*, No. 12-cv-04727 (S.D.N.Y. June 15, 2012) (Faruqi Firm appointed co-lead counsel in false labeling class action);

e. *Forcellati, et al. v. Hyland's, Inc., et al.*, No. 2:12-cv-01983 (C.D. Cal. Mar. 8, 2012) (Faruqi Firm appointed co-lead counsel in false labeling class action);

f. *Mack v. LLR, Inc., et al.*, No. 5:17-cv-00853 (C.D. Cal. May 2, 2017) (Faruqi Firm served on the Executive Committee);

g. *In re: Arby's Restaurant Group, Inc. Data Sec. Litig.*, No. 1:17-cv-1035 (N.D. Ga. Mar. 22, 2017) (Faruqi Firm appointed co-lead counsel);

h. *In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. 2:13-ml-02438 (C.D. Cal. June 5, 2013) (Faruqi Firm appointed co-lead counsel);

i. *Cooper v. Anheuser-Busch, LLC*, No. 7:20-cv-07451, (S.D.N.Y. Sept. 11, 2020) (Faruqi Firm representing plaintiffs and the class in consumer false labeling case against alcoholic beverage manufacturer);

j. *Smid v. Campbell Soup Co., et al*, No. 1:21-cv-02417 (D.N.J Feb. 11, 2021)

(Faruqi Firm appointed to Executive Committee);

k. *Wilson et al v. Walmart Inc et al*, No. 3:21-cv-00082 (E.D. Ark. Apr. 27, 2021) (Faruqi Firm appointed to Executive Committee); and

l. *Halman Aldubi Provident And Pension Funds Ltd. v. Teva Pharm. Indus. Ltd. et al*, No. 2:20-cv-04660 (E.D. Pa. Sept. 23, 2020) (Faruqi Firm appointed lead counsel for the putative class).

43. In addition, in the last decade, the Faruqi Firm has served as lead or co-lead counsel in at least following consumer class actions:

a. *Shalikar v. Asahi Beer USA, Inc.*, No. BC702360 (Cal. Super. Ct. L.A. Cty. Apr. 16, 2018);

b. *Saidian v. Krispy Kreme Doughnut Corp.*, No. 2:16-cv-08338 (C.D. Cal. Nov. 9, 2016);

c. *Cabrera v. Bayer Healthcare LLC, et al.*, No. 2:17-cv-08525 (C.D. Cal. Nov. 22, 2017);

d. *Thomas, et al. v. Nestle USA, Inc., et al.*, No. BC649863 (Cal. Sup. Ct. Feb. 9, 2017);

e. *Astiana, et al. v. Kashi Co.*, No. 3:11-cv-01967 (S.D. Cal. Aug. 24, 2011);

f. *Dzielak v. Whirlpool Corp.*, No. 2:12-cv-0089 (D.N.J. Jan. 5, 2012); and

g. *Potzner v. Tommie Copper Inc., et al.*, No. 7:15-cv-03183 (S.D.N.Y. Apr. 22, 2015).

44. As outlined above and in my firm's current resume, attached hereto as **Exhibit D**, the Faruqi Firm has extensive experience and knowledge in litigating consumer class action cases, and particularly deceptive product origin cases.

## V. Endorsement of the Settlement

45. Class Counsel have achieved what I believe is an excellent Settlement.

46. The Settlement is the product of extensive arm's-length negotiations between experienced attorneys familiar with the legal and factual issues of this case. Moreover, Plaintiffs and Class Counsel have been actively pursuing this Action for over three years, engaging in extensive factual and legal investigation, briefing, discovery and expert work, and therefore have ample knowledge of the legal claims and defenses, the risks presented by the case, and the value achieved by the proposed Settlement.

47. In considering whether to enter into the Settlement, Plaintiffs and Class Counsel considered the significant risks of proceeding with the litigation, including the risks of not obtaining class certification, establishing liability, proving damages at trial, and the likely duration of post-trial motions and appeals. Even if Plaintiffs prevailed at trial, and any appeals were resolved in Plaintiffs' favor, payment to Class members would likely be delayed by several years.

48. When the risks of further litigation, the uncertainties involved in obtaining class certification, the burdens of proof necessary to establish liability, the probability of appeal of a favorable judgment, and the likely delay in any payments to the Class, are all balanced against the fact that Settlement Class Members will recover more than the full value of their price premium damages on average and on a per-product basis than they could have received at trial, it is clear that the Settlement is fair, adequate, and reasonable.

49. Moreover, Class Counsel considers a request of $5,000,000 in attorneys' fees and costs as reasonable based on consideration of, *inter alia*, the benefits achieved for the Class, the time and effort devoted to the litigation, the applicable legal authority, and the risk of non-payment undertaken by Class Counsel.

## VI. Release

50. Attached hereto as **Exhibit E** is a Stipulation signed by the Parties, which reiterates, for the avoidance of doubt, that the Released Claims are limited to claims that are based on, arise out of, or relate to the allegations or claims asserted in this Action – i.e., namely, that the Products have been promoted, labeled, marketed, or sold under false or deceptive country of origin claims or related to the "Belgium 1926" claim.

## VII. Miscellaneous

51. Attached hereto as **Exhibit F** is a true and correct copy of an Order granting final approval in *In re Dial Complete Mktg. and Sales Practices Litig.*, No. 11-md-2263-SM, ECF No. 260 (D.N.H. May 31, 2019).

52. Attached hereto as **Exhibit G** is a true and correct copy of the Final Order and Judgment in *Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656, ECF No. 172 (S.D. Fla. Oct. 22, 2015).

53. Attached hereto as **Exhibit H** is a true and correct copy of the Order Granting Final Approval of Class Action Settlement; Granting Award of Attorneys' Fees, Costs, and Expenses; Final Order and Judgment, in *Shalikar v. Asahi Beer USA, Inc.*, No. BC702360 (Cal. Super. Ct. L.A. Cty.).

54. Attached hereto as **Exhibit I** is a true and correct copy of the Order (1) Granting Plaintiffs' Motion For Attorneys' Fees and Costs and Class Representative Service Awards and (2) Granting Plaintiffs' Motion For Final Approval Of Class Action Settlement, in *Broomfield v. Craft Brew Alliance, Inc.*, Case No. 5:17-cv-01027-BLF, ECF No. 151 (N.D. Cal. Feb. 5, 2020).

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 21st day of February, 2022 in Philadelphia, Pennsylvania.

_____
Timothy J. Peter