UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GODIVA CHOCOLATIER, INC., and DOES 1 through 50,<br><br>Defendants. | No. 1:19-cv-00972-AJN |

## DECLARATION

I, F. Paul Bland Jr., do hereby declare as follows:

1.  I am the Executive Director of the Public Justice Foundation, a 501(c)(3) non-profit charitable public foundation dedicated to advancing the public interest, and Public Justice, P.C. ("Public Justice"), a national public interest law firm that advances the Public Justice Foundation's goals. I make this declaration of my own knowledge.

2.  I submit this declaration in connection with the above captioned matter and the designation of Public Justice as a *cy pres* recipient. I understand in *Hesse v. Godiva Chocolatier, Inc.* Plaintiffs' claims centered on allegations that Defendant made deceptive representations regarding the origin of Godiva chocolate and the marketing of that product, in violation of several consumer protection statutes. If the Court approves a *cy pres* award to the Public Justice Foundation, the Foundation will use that award to further the underlying goals of the case, directly and indirectly benefiting the class members and similarly situated persons. In particular, the Public Justice Foundation will use any such award to help advance the rights of consumers throughout the country to be free of deceptive and unfair practices and to enforce—and help others enforce—consumer personal rights and consumer protection laws.

3. Ensuring appropriate use of *cy pres* awards is important to Public Justice. As part of our work to preserve the rights of consumers and to enhance access to justice, we have proposed and received *cy pres* awards in appropriate cases. We have also represented objectors to settlements involving abuses of *cy pres* awards, and we have even refused to accept a *cy pres* award in a case where it was not appropriate. We believe that, properly used, *cy pres* awards advance class members' rights and ensure that class actions achieve their goals. Further, neither the parties, nor the parties' counsel, are involved in the governance or work of Public Justice.

4. As this declaration will detail, Public Justice has a long record of success in protecting and advancing consumers' rights. This letter will describe my background and experience and the activities of Public Justice, with a particular emphasis on our successful advocacy on behalf of consumers.

### My Background and Experience

5. I am a lawyer licensed to practice law in the States of Maryland, California, and the District of Columbia and in the U.S. Courts of Appeal for ten of the Circuits, and in the United States Supreme Court. I received my law degree from Harvard Law School in 1986.

6. I have argued or co-argued and won more than 40 reported decisions from federal and state courts across the nation, including one case in the U.S. Supreme Court and cases in six of the federal Circuit Courts of Appeal and in ten different state high courts. I have testified in both houses of Congress, several state legislatures, and administrative agencies and have been widely quoted in a wide range of national and local media.

7. I am honored to be the recipient of a number of noteworthy awards, particularly for my work in consumer rights. In 2006, for example, I was named the "Vern Countryman" Award winner by the National Consumer Law Center, which "honors the accomplishments of an exceptional consumer attorney who, through the practice of consumer law, has contributed significantly to the well-being of vulnerable consumers." In 2010, I received the Maryland Legal Aid Bureau's "Champion of Justice" Award.

### General Background about Public Justice and the Public Justice Foundation

8. The Public Justice Foundation is a 501(c)(3) non-profit charitable membership organization. Its Federal Identification Number is 59-1730478. The Foundation supports the legal work of Public Justice, P.C., a national public interest law firm, and educates the public about the critical issues that legal work addresses. Both organizations are headquartered in Washington, D.C., and have a West Coast office in Oakland, California. Any *cy pres* funds awarded by the court to the Public Justice Foundation may be allocated by the Public Justice Foundation to Public Justice, P.C., as appropriate under the tax laws, for work performed by the latter organization.

9. Public Justice is unique in that, in addition to its 22 attorneys on staff, it draws on a nationwide volunteer network of more than 2,300 plaintiffs' lawyers and other attorneys who are members of the Public Justice Foundation. This network helps to maximize Public Justice's impact. By using the skills and resources of this network, Public Justice is able to prosecute cases that private attorneys and other public interest organizations would not have the resources or expertise to pursue. We also engage in a variety of legal educational efforts and informal consulting efforts aimed at assisting attorneys who serve consumers seeking redress.

10. Because of Public Justice's record of success and commitment to ensuring that *cy pres* awards are properly used, numerous courts have previously directed that the Public Justice Foundation be awarded *cy pres* funds in consumer and other class actions. For instance, we were the recipient of *cy pres* funds for another case involving deceptive marketing, *Smith v. Wm. Wrigley Jr. Company*. This action involved false claims by Wrigley in its advertising, as well as on its package labels, that its Eclipse® gum and mints brand is "scientifically proven to help kill the germs that cause bad breath" as a result of the "natural ingredient," Magnolia Bark Extract. The largest gum company in the U.S. and worldwide, Wrigley failed to substantiate the claims at all times they were made, in violation of federal and state law. As a result of this deceptive marketing, Wrigley elevated Eclipse® gum into one of the top sellers in the product category and was able to charge a price premium for Eclipse® gum or mints. A settlement in the case was filed under Florida's Deceptive and Unfair Trade Practices Act that alleged false advertising and misleading claims about gum and mint products.

11. Other illustrations of cases where Public Justice was approved for cy pres awards, in cases that involved deceptive information provided to consumers, include:

- *Broomfield v. Craft Brew Alliance* (U.S. District Court, Northern District of California, Np. 5:17-cv-01027-BLF)
- *Holt et al v. FoodState, Inc.* (U.S. District Court, Southern District of California, No. 15cv78 L)
- *In Re Sony PS3 "Other OS" Litigation* (U.S. District Court, Northern District of California, No. C 10-1811 RS)
- *Dashnaw v. New Balance Athletics*, *Inc.* (U.S. District Court, Southern District of California, No. 17CV159-L)
- *Maxin v. RHG dba Vital Nutrients* (U.S. District Court, Southern District of California, No. 16-cv-2625)
- *Coleman v. Sentry Insurance* (U.S. District Court, Southern District of Illinois, No. 15-CV-01411-SMY-SCW)

- *Fishbein v. All Market, Inc. DBA Vita Coco* (Southern District of New York, No. 11-Civ-5580)
- *Glover v. Mahrt DBA Petaluma Egg Farm* (Alameda County Superior Court. No. RG12650058)
- *Hansult v. Telebrands* (Central District California, No. CV110288)
- *In re: Classmates.com Consolidated Litigation* (W.D. Wash. No. CV09-45RAJ)
- *In re: Gibb, LLC Cases* (Los Angeles County Super. Ct. JCCP No. 4657)
- *Knapp v. Art.com* (U.S. District Court, Northern District of California, No. 16-CV-00768-WHO)
- *Mills v. Hendrick Automotive Group* (Union County Superior Court, North Carolina No. 04-CVS-2301)
- *Oshaben v. Tickle, Inc. (Monster Worldwide, Inc.)* (San Francisco County Superior Court, No. 454538)
- *Wilson v. Airborne, Inc*. (C.D. Cal. No. EDCV 07-770-VAP)

**Our Litigation on Behalf of Consumers Subject to Unfair and Deceptive Practices**

12.   Public Justice has consistently been at the forefront of efforts to protect consumers from unfair and deceptive practices.  For example, Public Justice has played a leading role in challenging over-reaching forced arbitration clauses, and federal preemption arguments that would immunize corporations from meaningful remedies for violations of consumer protection laws. In our experience these access to justice issues frequently arise in cases involving violations of federal and state consumer protection laws.  Here are some specific examples:

13.   Public Justice was lead counsel before the U.S. Supreme Court in a case involving allegations of deception around a product used in homes. In *Home Depot U.S.A. Inc. v. Jackson*, we represented a North Carolina resident who was misled into buying an expensive and unnecessary home water treatment system. The question before the Court concerned whether, under the Class Action Fairness Act (CAFA), a counterclaim defendant is a "defendant" for purposes of removing a case from state to federal court. The Court agreed with our arguments that this consumer deception case should remain in state court.  139 S. Ct. 1743 (2019).

DECLARATION OF F. PAUL BLAND, JR., OF PUBLIC JUSTICE

14. Another important precedent that Public Justice won in a consumer deception case came in *Dang v. Samsung Electronics Co., Ltd.*, a putative class action on behalf of people who purchased a smartphone without being told important information that it infringed upon an Apple patent. Public Justice were lead counsel in the Ninth Circuit in a challenge to Samsung's arbitration clause, and the Court held that the consumers did not agree to the arbitration clause because it was not communicated to them. 673 Fed. Appx. 779 (Jan. 18, 2017). We also were lead counsel in successfully defending against Samsung's petition asking the U.S. Supreme Court to grant certiorari. 138 S. Ct. 203 (2017).

15. Similarly, in *Cottrell v. Alcon Labs,* we were lead counsel in an appeal of a dismissal of a multistate class action alleging that pharmaceutical companies violated various state consumer protection statutes by purposely packaging their prescription eye drops in droppers that emitted a far larger drop than is therapeutically necessary. The plaintiffs cited studies concluding that packaging producing a smaller drop would be both medically preferable and less expensive for consumers. The district court dismissed the case on the ground that the plaintiffs' claimed injury—that they would have paid less for the drugs had they been packaged differently—was too speculative to confer the injury-in-fact requirement for standing. The Third Circuit agreed with us that the plaintiffs had met their burden with respect to standing, although we did not prevail on the issue of federal preemption.

16. In *Tamayo v. Brainstorm USA*, 154 Fed. Appx. 564, 2005 WL 2293493 (9th Cir. Sept. 21, 2005), Public Justice was appellate co-counsel in a case where we and our team won a ruling from the U.S. Court of Appeals for the Ninth Circuit striking a contract term that banned class actions in a case involving allegations that low-income consumers (mostly Latino) had been sold low-quality computers with very poor finance terms, under several false pretenses. After the Ninth Circuit's ruling,

the case was settled for significant injunctive relief and some monetary relief for the low-income class members.

17.     *Kearney v. Direct Buy Associates* is another example of our work advocating for consumers against deceptive marketing practices. In this case, we represented consumers in California state court against a warranty company that claimed to sell vehicle service contracts online, violating state law, and then refused to honor these contracts when consumers made claims. Our suit held that the company's actions violated California's False Advertising Law, among other statutes. Although we were able to obtain class certification for consumers in this case, the defendant filed for bankruptcy shortly thereafter. As a result, the litigation was stayed.

18.     Public Justice was also co-counsel in the California Supreme Court in a case on behalf of a putative class consumers alleging deceptive statements about a household product, *Noel v. Thrifty Payless, Inc*., 7 Cal. 5th 955 (2019). The trial court refused to certify the class on the ground that the class members failed to show that they could be identified using the defendant's own records. The California Supreme Court held that ascertainability merely requires a clear and objective class definition that allows class members to self-identify as being entitled to recovery, and that plaintiffs need not prove that class members are identifiable by official records.

19.     A final example of our work protecting consumers from false advertising is *Rodriguez v. Experian*, which was filed in federal court in California. In this case, we represented consumers against the lowermybills.com website, through which individuals trying to repair their credit and reduce their debt apply for referrals to debt relief companies purportedly recommended by Experian. The suit alleged that at least one of the "recommended" partner companies was in fact an

individual who received payments from consumers and then never renegotiated their debts. He ultimately fled the country, leaving the consumers in worse debt than before. We brought the case under False Advertising Law, and the case was settled on a class basis.

20. These seven cases attest to our extensive reach and considerable track record of representing consumer interests and holding corporations accountable for misleading marketing and deceptive practices. Although we are restricting our discussion to these select examples in the interest of space, Public Justice has been counsel in a large number of other successful cases involving deceptive practices or marketing in courts around the nation.

**Public Justice's Education and Advocacy Efforts**

21. In addition to litigating public interest cases, Public Justice engages in education and advocacy to raise awareness of and address the issues central to its mission, including protecting consumers from deceptive business practices, through the Public Justice Foundation. Specifically, the Public Justice Foundation provides valuable information to consumers, legal aid lawyers, and other public interest advocates through publications, information clearinghouses, and participation in educational seminars, including providing attorneys to be featured speakers at national consumer rights and class action conferences.

22. Public Justice also promotes the ability of legal services programs to represent consumers. I personally have presented at more than 100 CLE programs around the country, for example, with a great many of my presentations addressing issues of protecting the rights of consumers. As we conduct training events, we also distribute educational materials for consumers and community-based legal aid attorneys to use in their own work. At the same time, we respond to

requests for advice and legal research from attorneys who represent persons who are the victims of deceptive or unfair business practices, as well as requests for informational assistance from individuals who are victims of such practices. We regularly provide such attorneys and consumers with strategic assistance, reviewing briefs and other pleadings and sharing our own briefs to serve as a resource.

23. Furthermore, as we educate the legal community and would-be plaintiffs, we also advocate before and seek to educate decision-makers. We have been honored to testify before U.S. House and Senate subcommittee on issues that relate to the ability of consumer plaintiffs such as those involved in this case to pursue legal remedies under the law. We will continue to conduct ongoing policy advocacy to educate state and federal lawmakers and regulators on these issues. Through advocacy, we seek to move forward the implementation and enforcement of laws and regulations to protect consumers.

24. Somewhat similarly, we also translate our litigation experience into recommendations for the judiciary. For example, Public Justice filed comments with the Federal Rule Committee in 2017 and again in 2018 and 2019 opposing proposals to gut Rule 30(b)(6) in a way that would have stifled discovery for consumers in a wide variety of important consumer protection cases.

25. Moreover, as we win cases and educate decision makers, we also believe that the American public deserves to know that justice is at stake. Given the role which political pressure may play on rulemaking and legislative processes, media coverage and favorable public debate are essential factors in this fight. Our education and awareness-raising work is designed to underscore the value of the civil justice system, help people stand up for their rights, and serve as a resource for attorneys handling public interest issues. We have invested in our communications capacity to

produce high-quality coverage and built strong relationships with key media contacts. Over time, our public advocacy on behalf of cases such as this one has resulted in blog posts that have reached more than 100,000 readers, and our social media posts highlighting these issues were viewed by approximately 50,000 people over the course of just one month. Additionally, I have been quoted extensively in news coverage related to consumer protection issues. We actively continue to secure coverage in national media on these issues, including placements in *The New York Times*, *Slate*, *Reuters*, *USA Today*, and *The San Francisco Chronicle*, among many other outlets.

### Conclusion

26.     A *cy pres* award to Public Justice would benefit the class or similarly situated persons, and would promote the law consistent with the objectives and purposes of the underlying cause of action in this case. Public Justice would use any such award to protect and advance the rights of consumers. In addition to the information set forth above, extensive background information on Public Justice and its activities is available on our website at http://www.PublicJustice.net. I would be more than pleased to provide any additional information directly to the Court if requested.

I declare under penalty of perjury under the laws of the District of Columbia that the foregoing is true and correct. Executed this 14th day of February 2022 in Washington, D.C. United States.

By: _____
F. Paul Bland, Jr.
Executive Director