**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated, | No. 1:19-cv-0972-AJN |
| Plaintiffs, | |
| v. | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS** |
| GODIVA CHOCOLATIER, INC., | |
| Defendant. | |

Plaintiffs Steve Hesse and Adam Buxbaum ("Plaintiffs") and Defendant Godiva Chocolatier, Inc. ("Defendant" or "Godiva") have entered into a Settlement Agreement, which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement and dismissal of the Action with prejudice as to Godiva, upon the terms and conditions set forth therein (the "Settlement Agreement").

On October 26, 2021, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, provisionally certifying the Settlement Class. ECF No. 72 ("Preliminary Approval Order").

Pursuant to the notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Class was notified of the terms of the proposed Settlement, of the right of members of the Class to opt-out or exclude themselves, and of the right of members of the Class to be heard at a Final Approval Hearing to determine, *inter alia*, (a) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement, and (b) whether judgment should be entered dismissing this Action with prejudice.

The Court has before it Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval") and Motion for Attorneys' Fees and Costs and Class Representative Service Awards ("Fee Application"). After reviewing the motions, the memoranda of law, and evidence in support, the Settlement Agreement and exhibits thereto, the arguments and authorities presented by the Parties and their counsel at the Final Approval Hearing held on March 28, 2022, and the record in the Action, and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1

1.      Terms and phrases in this Order shall have the same meaning as ascribed to them in the Settlement Agreement, unless otherwise defined herein.

2.      This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Class Members.

## NOTICE TO THE CLASS WAS APPROPRIATE

3.      The notice provided to the Class pursuant to the Settlement Agreement and Preliminary Approval Order—including (i) direct notice to the Class via email, (ii) the creation of the Settlement Website, and (iii) the dissemination of notice via publication and digital media notice—fully complied with the requirements of Fed. R. Civ. P. 23 and due process, was reasonably calculated under the circumstances to apprise the Class of the pendency of the Action, their right to object or exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing. In particular, through a multi-media channel approach to notice, which employed direct notice, digital, social and mobile media, an estimated 82 percent of targeted Class Members were reached by the notice program, on average 2.8 times. Declaration of Jeanne C. Finegan ("Finegan Decl.") ¶¶ 33.

4.      The Parties properly and timely notified the appropriate government officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Finegan Decl. ¶ 25. More than ninety days have elapsed since Kroll Settlement Administration ("Kroll"), the Settlement Administrator, served notice pursuant to CAFA, rendering this Order on Final Approval appropriate under 28 U.S.C. § 1715(d).

## THE SETTLEMENT CLASS IS CERTIFIED

5.      The Settlement Class is defined as:

All Persons who purchased any Godiva Chocolate Product in the United States during the Class Period. Excluded from the Settlement Class are: (a) Godiva and any of its parents',

affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Godiva Chocolate Products, (c) governmental entities, (d) the Court, the Court's immediate family, Court staff, (e) the mediator and her staff and immediate family, (f) counsel of record for the Parties, and their respective law firms, and (g) all Persons who timely and properly exclude themselves from the Settlement Class.

Settlement Agreement ¶ 65.

6.      The Settlement Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

7.      Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

8.      Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Because the Settlement Class consists of several hundred thousand Class Members, the numerosity requirement is satisfied. Finegan Decl. ¶ 6.

9.      The commonality requirement under Fed. R. Civ. P. 23(a)(2) examines whether the Class's claims "depend upon a common contention ... capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are clear common questions of law or fact in this case, including whether the challenged representations are likely to

have deceived reasonable consumers into believing that the Godiva Chocolate Products are from Belgium. Accordingly, the commonality requirement is satisfied.

10. The typicality requirement under Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Here, each Class Members' claims and legal arguments arise out of the same theory of liability—namely, that they were allegedly deceived into believing the Godiva Chocolate Products are sourced from Belgium based on the representations made on the packaging. The same is true for Plaintiffs. Accordingly, the typicality requirement is satisfied.

11. The adequacy requirement under Fed. R. Civ. P. 23(a)(4) is satisfied if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, Plaintiffs' interests are aligned with those of the Class, and they have provided significant, valuable assistance in the investigation and prosecution of this matter, and helped to bring about this Settlement. Declaration of Steve Hesse ("Hesse Decl.") ¶¶ 3, 5; Declaration of Adam Buxbaum ("Buxbaum Decl.") ¶¶ 3, 5. Plaintiffs are therefore "adequate" class representatives within the meaning of Rule 23(a)(4). *Baudin v. Res. Mktg. Corp.*, No. 1:19-cv-386 (MAD/CFH), 2020 WL 4732083, at *5 (N.D.N.Y. Aug. 13, 2020). Class Counsel is also "adequate" because they have extensive experience in class action litigation and have vigorously pursued these claims throughout this litigation. Declaration of Timothy J. Peter In Support Of Plaintiffs' Motion For Final Approval and Motion For Attorneys' Fees and Costs and Class Representative Service Awards ("Peter Decl.") ¶¶ 41-44; Declaration of Aubry Wand In Support Of Plaintiffs' Motion For Final Approval

4

and Motion For Attorneys' Fees and Costs and Class Representative Service Awards ("Wand Decl.") ¶¶ 10-15; *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *3 (S.D.N.Y. Dec. 14, 2017) (adequacy requirement met where class counsel "litigated dozens of class actions in the United States" and recovered substantial monetary relief for class members). Accordingly, the adequacy requirement is satisfied.

12.     To meet the requirements of Rule 23(b)(3), the Court must conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

13.     "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification" under Rule 23(b)(3). *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotations omitted). Here, the common issue which binds the Class together is whether the packaging of the Godiva Chocolate Products would likely deceive a reasonable consumer into believing the products are from Belgium. This systematic course of conduct, which could be proven through common evidence, overrides any potential individual inquiries relating to proof. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *14 (S.D.N.Y. Apr. 11, 2018). Moreover, in the settlement context, the Court need not inquire whether the case, if tried, would present trial management problems. *See Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *2 (S.D.N.Y. May 22, 2018).

14.     Furthermore, a class action is superior to other forms of litigation, as "proceeding individually would be prohibitive due to the minimal recovery." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Here, the only method to ensure the fair and efficient adjudication

of this Action is through a class action, which will allow individual Settlement Class Members to bring together claims that would be economically infeasible to litigate on an individual basis.

15.      Accordingly, the Rule 23(b)(3) predominance requirement is satisfied.

## THE SETTLEMENT IS FINALLY APPROVED

16.      The Court now gives final approval to the Settlement Agreement, and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class. The monetary consideration provided under the Settlement constitutes fair value given in exchange for the release of the Released Claims against the Released Parties. The Court finds that the consideration to be paid to members of the Settlement Class is reasonable, and in the best interests of the Settlement Class Members, considering, *inter alia*, the total value of their claims compared to (i) the disputed factual and legal circumstances of the Action, (ii) affirmative defenses asserted in the Action, and (iii) the potential risks and likelihood of success of pursuing litigation on the merits. The complex legal and factual posture of this case, the amount of discovery completed, and the fact that the Settlement is the result of arm's-length negotiations between the Parties all support this finding. The Court finds that these facts, in addition to the Court's observations throughout the litigation, demonstrate that there was no collusion present in the reaching of the Settlement Agreement, implicit or otherwise. Further, as explained below, this Court finds that the Settlement Agreement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23(e) and the criteria articulated in *City of Detroit v. Grinnell Corp*., 495 F.2d 448 (2d Cir. 1974).

17.      A settlement agreement may be approved if the Court finds that the agreement is fair, both procedurally and substantively, under Rule 23(e). *See Rosenfeld v. Lenich*, No. 18-CV-6720 (NGG) (PK), 2021 WL 508339, at *4 (E.D.N.Y. Feb. 11, 2021); *D'Amato v. Deutsche Bank*,

236 F.3d 78, 85 (2d Cir. 2001). In conducting this review, the Court is mindful of the "strong judicial policy in favor of settlements, particularly in the class action context." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). "The compromise of complex litigation is encouraged by the courts and favored by public policy." *Id.* at 117 (quotation omitted).

18.     Alongside the fairness inquiry, when evaluating the terms of a proposed class settlement, this Court is guided by the factors enumerated in *Grinnell*, 495 F.2d 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). These "*Grinnell* factors" are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id*. at 463 (citations omitted). The Rule 23(e) fairness inquiry requires this Court to consider whether the settlement is "fair, reasonable, and adequate" after considering additional factors[1] which "clarify[] and supplement[] the *Grinnell* factors." *Rosenfeld*, 2021 WL 508339, at *3; *see also In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 29

---

[1] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

(E.D.N.Y. Jan. 28, 2019) (new Rule 23(e) factors "add to, rather than displace, the *Grinnell* factors.").

19.     The *Grinnell* and amended Rule 23(e) factors weigh in favor of granting final approval. The Court first explains why the Settlement Agreement is procedurally and substantively fair under Rule 23(e), and then addresses the additional *Grinnell* factors which are not otherwise encompassed by the Rule 23(e) factors.

20.     **Procedural Fairness - Rule 23(e)(2)(A-B).** "Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the procedural analysis of the fairness inquiry." *Christine Asia Co., v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (internal quotations omitted). The Court finds both elements met and thus, the Settlement procedurally fair. A proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quotation omitted). Additionally, "the quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55 (quotation omitted). Here, the Settlement was negotiated by counsel experienced in litigating these types of cases through the assistance of an experienced mediator over the course of two full-day mediation sessions and months' worth of subsequent communications. *Morris v. Affinity Health Plan, Inc*., 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (involvement of experienced mediator "strong indicator of procedural fairness"). Class Counsel conducted substantial discovery before the mediations and before executing the Settlement Agreement. Peter Decl. ¶ 12. Class Counsel also consulted with experts in the fields of economics and statistics regarding damages, and the chocolate industry, before the mediation sessions. *Id*. ¶¶ 13-16. Moreover, the amount of Class relief in this Settlement

given the nature of the claims at issue is enough to overcome any doubts regarding procedural fairness.

21.     **Substantive Fairness - Rule 23(e)(2)(C-D) and *Grinnell* Factors.** The substantive fairness inquiry of Rule 23, covered under Rule 23(e)(2)(C-D), considers the following: (i): the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) whether the proposed settlement treats class members equitably relative to each other; and (v) any agreement required to be identified under Rule 23(e)(3).

22.     **Rule 23(e)(2)(C)(i) / *Grinnell* Factors Nos. 1, 4, 5 and 6 - The Costs, Risks, and Delay of Trial and Appeal.** The Court finds that these factors, individually and weighed together, militate in favor of granting final approval of the Settlement. Rule 23(e)(2)(C)'s first factor, the "costs, risks, and delay of trial and appeal, subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Rosenfeld*, 2021 WL 508339, at \*5–6 (citing *Payment Card*, 330 F.R.D at 36). Class action lawsuits have a "reputation as being most complex." *Id*. at \*5 (internal quotation marks omitted). Indeed, absent the instant Settlement, Plaintiffs would have had to "to survive summary judgment, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the class, over the [] Defendants' possible opposition." *Id*. Instead, the Parties were able to craft a settlement providing substantial monetary benefits to the Class while avoiding the expense and delay of continued litigation. Courts have consistently held that, unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to

the continuation of lengthy and expensive litigation with uncertain results. *See Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty."). This case is no exception.

23.     **Rule 23(e)(2)(C)(ii) - Effectiveness of Proposed Method of Distributing Relief.** Pursuant to Rule 23(e)(2)(C)(ii), the Court should "consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." *Rosenfeld*, 2021 WL 508339, at *6 (internal quotation marks omitted). "[A] plan of allocation need not be perfect," *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007), and instead "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of the experienced mediator Jill R. Sperber. Under the Settlement, Class Members will each be entitled to a payment of $1.25 per qualifying purchase, up to $15 or $25, depending on whether or not the Class Member has Proof of Purchase. Settlement Agreement ¶ 68 (a)-(b). The Claim Form is written in clear and concise language and could be submitted through the settlement website or Class Members could print and mail the Claim Form to the Settlement Administrator. *Id.* ¶ 70. All Settlement Benefits to Class Members will be in the form of cash payments via a check or electronic payment, whichever option the Settlement Class Member elects. *Id.* ¶¶ 82-83. This procedure is claimant-friendly, efficient, proportional, and reasonable. Therefore, the allocation plan is effective and is "rational and fair, as it treats class

members equitably while taking into account variations in the magnitude of their injuries."
*Rosenfeld*, 2021 WL 508339, at *6.

24.     **Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees.** The next factor under Rule 23 is the "terms of any proposed award of attorneys' fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the terms of the Settlement, Class Counsel may submit a Fee Application for an award of attorneys' fees and costs in an amount not to exceed $5,000,000. Godiva shall pay any Fee Award ordered by the Court via wire transfer to Class Counsel not later than ten calendar days following the issuance of an Order granting the Fee Application. The Settlement in not conditioned upon the Court's approval of a specific fee amount, nor does any fee award impact the recovery to the Class, because it is being paid separate from and in addition to the Settlement Benefits to the Class. Settlement Agreement ¶¶ 99-103. For the reasons discussed in greater detail below, the Court finds these terms reasonable under 23(e)(2)(c)(iii).

25.     **Rule 23(e)(2)(C)(iv) - There Are No Agreements Required to Be Identified Under Rule 23(e)(3).** Next, the Court has considered whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). Apart from the Settlement Agreement, there are no such agreements, so this factor supports final approval. Peter Decl. ¶ 23.

26.     **Rule 23(e)(2)(D) - Class Members Are Treated Equitably.** The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement applies to all Class Members equally as they are each entitled to receive the same payment based on the number of Godiva Chocolate Products they purchased and whether they have documented Proof of Purchase. *See*

*Carlotti v. ASUS Computer Int'l,* No. 18-CV-03369-DMR, 2019 WL 6134910, at *13 (N.D. Cal. Nov. 19, 2019) (holding that class members were treated equitably from a settlement, even when those with proof of purchase could recover more). The remaining *Grinnell* factors, discussed below, are independent from the Rule 23 inquiry.[2]

27.     ***Grinnell* Factor No. 2 - Settlement Class Members' Reaction.** Under *Grinnell*, the Court should consider the Class's reaction to the Settlement. After completing the robust, Court-approved notice plan, the Class's response to the Settlement has been positive. *See Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness). Accordingly, this *Grinnell* factor is satisfied.

28.     ***Grinnell* Factor No. 3 - The Stage of the Proceedings and the Amount of Discovery Completed Warrants Final Approval.** The next factor considers "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020). The relevant inquiry for this factor is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006*)*. Here, Plaintiffs conducted substantial discovery before the mediations and before executing the

---

[2] These include (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

Settlement Agreement. Class Counsel also consulted with experts in the fields of economics and statistics regarding damages, and the chocolate industry, before the mediation sessions. Accordingly, this *Grinnell* factor is satisfied.

29.     ***Grinnell* Factor No. 7 - Whether Defendant Can Withstand a Substantially Greater Judgment.** The Court should next consider a defendant's ability to withstand a greater judgment. However, not all of the *Grinnell* factors must be satisfied, and a defendant's ability to withstand a greater judgment, does not, standing alone, suggest that the settlement is unfair. *See Athale v. Sinotech Energy Ltd*., No. 11 Civ. 05831 (AJN), 2013 WL 11310686, at *4, 6 (S.D.N.Y. Sept. 4, 2013). This factor is either neutral or supports the reasonableness of the Settlement because while Godiva could perhaps withstand a greater judgment, it, like many companies, faced economic hardship during the pandemic. Moreover, Godiva has closed all of its North American brick and mortar stores, further calling into question Godiva's ability to withstand a greater judgment.

30.     ***Grinnell* Factor Nos. 8-9: Range of Reasonableness of Settlement Fund.** The final *Grinnell* factors require the Court to consider both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also Payment Card*, 330 F.R.D. at 47-48 (these factors "are often combined for the purposes of analysis."). Here, each Class Member who submits a timely and valid Claim Form will receive compensation of $1.25 per product, up to an aggregate amount of $15 without Proof of Purchase and $25 with Proof of Purchase. This relief is reasonable when weighed against the damages recoverable assuming Plaintiffs were able to certify a litigation class and then prevail at trial on their claims. This monetary relief is more than the alleged price

13

premium damages on average and on a per-product basis that Class Members could have recovered at trial. Peter Decl. ¶ 15-16. In addition, the benefits provided to Settlement Class Members are similar to or exceed those approved by other courts in similar geographic origin false advertising class actions. *Id.* ¶¶ 52-54.

**ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS**

31.     Plaintiffs request $5,000,000 in attorneys' fees and costs, which shall be paid by Godiva separate and apart from the money made available to satisfy Settlement Benefits to the Class and to pay the Settlement Notice and Administration Costs. After deducting Plaintiffs' litigation costs of $67,835.44, Plaintiffs seek $4,932,164.56 in attorneys' fees. For the reasons explained below, the Court finds these amounts reasonable, and hereby approves $67,835.44 in costs and $4,932,164.56 in attorneys' fees to Class Counsel.

32.     Class Counsel in a class action settlement may be entitled to a "reasonable fee." *Goldberger*, 209 F.3d at 47. There are two methods available to the Court to calculate attorneys' fees: the "lodestar" method and the "percentage of the fund" method. *Id.* The Court utilizes the percentage method, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121. The percentage method is also the preferred method in the Second Circuit. *Pantelyat v. Bank of America, N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *8 (S.D.N.Y. Jan. 31, 2019). However, because the lodestar remains useful as a "cross check on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 43 (internal quotation marks omitted), the Court also cross checks the reasonableness of Plaintiffs' fee request based on Class Counsel's lodestar.

14

33.     Before turning to this analysis, the Court observes that the attorneys' fees and costs are presumptively reasonable because they were negotiated by the Parties at arm's-length through the assistance of an experienced mediator and only at the conclusion of protected negotiations when the compensation to the Class had been agreed upon. *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 67 (S.D.N.Y. 2003) (approving fee request when "the fees were negotiated separately and after the settlement amount had been decided, thus considerably removing the danger that attorneys' fees would unfairly swallow the proceeds that should go to class members."); *Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) (because "the issue of attorneys' fees was not raised during the Settlement negotiations until after the parties had already agreed upon the benefit to the class" "the Court's 'fiduciary role in overseeing the award is greatly reduced.'") (citation omitted).

34.     **The Requested Fee Award is Reasonable Under the Percentage Method**. Under the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Although the Settlement does not create a traditional "common fund," its total value—i.e., the maximum amount Godiva is liable to pay under the Settlement—is $20,465,096. This includes: (1) the $15,000,000 maximum amount to satisfy Settlement Class Member Claims, (2) the minimum $465,096 for Settlement Notice and Administration Costs, and (3) the $5,000,000 for attorneys' fees and reasonable expenses. Together, these amounts constitute the denominator for purposes of evaluating the reasonableness of a fee as a percentage of the Settlement.

35.     In calculating the $20,465,096 settlement value, the entire $15,000,000 available to satisfy Class Member claims should be considered. *See, e.g., Masters v. Wilhelmina Model*

15

*Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007) (holding the "entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class" and therefore fees should be allocated based on "total funds made available, whether claimed or not"); *Davenport v. Elite Model Mgmt. Corp.*, No. 1:13-cv-01061-AJN, 2014 WL 12756756, at *13 (S.D.N.Y. May 12, 2014) ("In addition, the Second Circuit has ruled that '[a]n allocation of fees by percentage should ... be awarded on the basis of total funds made available whether claimed or not.'"); *Zink v. First Niagara Bank, N.A.*, No. 13-CV-01076-JJM, 2016 WL 7473278, at *8-9 (W.D.N.Y. Dec. 29, 2016) (in "claims-made" settlement fees are based on percentage of the total benefit to the class, not the amount claimed).

36.     Moreover, despite the fact that any attorneys' fees and costs awarded by the Court will be paid separately from compensation to the Class, the total amount available for fees and costs should still be considered as part of the overall settlement value because they would otherwise normally be paid by class members from a common fund. *See*, *e.g.*, *Bitzko v. Weltman, Weinberg & Reis Co., LPA*, No. 1:17-cv-00458 (BKS/DJS), 2021 WL 3514663, at *8 n.6 (N.D.N.Y. Aug. 10, 2021) ("Because attorneys' fees are part of the recovery in a typical common fund case, in cases where, as here, the award of attorneys' fees is separate from, and does not deplete, the common settlement fund, courts have found it appropriate to use the separate attorneys' fees as part of the denominator in the calculation of the percentage.") (internal quotation marks omitted). Similarly, the minimum $465,096 for Settlement Notice and Administration Costs should be included because it is value provided to Class Members. *See*, *e.g.*, *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 740 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986) (including costs of notice and administration to the denominator in determining settlement value).

37.     The next step involves consideration of whether "the fee is a reasonable percentage of the total value of the settlement fund created for the class." *In re Colgate-Palmolive Co. Erisa Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014). To determine a baseline reasonable fee, courts look at the range of awards approved in "other common fund settlements of a similar size and complexity, based on the subject matter of the claims." *Id.* Here, the requested 24.43% is reasonable and appropriate. It is consistent with fees awarded by this Court in other class action cases. *See*, *e.g.*, *Springer v. Code Rebel Corp.*, No. 16-cv-3492 (AJN), 2018 WL 1773137, at *5 (S.D.N.Y. Apr. 10, 2018); *Davenport*, 2014 WL 12756756, at *13; *In re BioScrip, Inc. Sec. Litig.*, 273 F.Supp.3d 474, 502 (S.D.N.Y. 2017). Moreover, the percentage is in line with typical awards by district courts in the Second Circuit, which are often one-third of the settlement value or higher. *See*, *e.g.*, *In re Warner Commc'n Sec. Litig.*, 618 F.Supp. at 749; *Torres v. Gristede's Operating Corp.*, 519 F. App'x 1, 3 (2d Cir. 2013).

38.     The fee request is also reasonable under the following *Goldberger* factors: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Signet*, 2020 WL 4196468, at *18 (quoting *Goldberger*, 209 F.3d at 50).

39.     ***Goldberger* Factor No. 1: Class Counsel's Time and Labor**. As set forth in Class Counsel's declarations, Class Counsel zealously litigated this case on behalf of the Class. The scope of worked performed by Class Counsel was necessary and reasonable for complex class actions of this type. And if the Settlement is approved, Class Counsel will continue to devote considerable time in the future overseeing administration of the Settlement. *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9,

2015) (considering class counsel's future efforts to oversee the claims process in awarding a 33% fee). Accordingly, this factor supports the requested fee award.[3]

40.     ***Goldberger* Factor No. 2: The Magnitude and Complexity of the Litigation**. As an initial matter, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). The Court finds that Plaintiffs and Class Counsel deftly managed several complex issues, including a federal preemption defense and issues relating to the reasonable consumer standard and damages. The fact that not all of these issues were formally litigated and resolved does not diminish their existence. To the contrary, obtaining this Settlement while avoiding the potential for adverse rulings, speaks to the complexity of the issues involved and Class Counsel's ability to manage them efficiently. Accordingly, this factor supports the requested fee award.

41.     ***Goldberger* Factor No. 3: The Risk of the Litigation**. This factor is often cited as the "first, and most important, *Goldberger factor*." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (internal quotation marks omitted). As a general matter, success in contingent litigation of consumer class actions like this one is far from certain. It presents real risks of not only recovering zero fees despite considerable outlays of attorney time, but also the prospect of losing significant advanced out-of-pocket costs. Peter Decl. ¶¶ 35, 38; Wand Decl. ¶¶ 27-28. The Court further recognizes that litigating this case to a favorable classwide judgment presents real risk, as it would likely require Plaintiffs to certify a class, defeat a motion

---

[3] The Court's analysis regarding the lodestar cross check, discussed *infra*, overlaps with this factor. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 389 (S.D.N.Y. 2017) (when the percentage method is used, the analysis of *Goldberger* Factor No. 1 also serves as a lodestar "cross check" on the reasonableness of the percentage awarded).

for summary judgment, prevail on the merits at trial, and then defend the results on appeal. And even if successful, any payment would not be made for years. Class Counsel decided to pursue this litigation on a full contingency basis in the face of these risks. *Goldberger*, 209 F.3d at 53 ("(o)f course contingency risk . . . must be considered in setting a reasonable fee."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."). Accordingly, this factor supports the requested fee award.

42.     ***Goldberger* Factor No. 4: The Quality of the Representation**. The "result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Fleisher v. Phoenix Life Ins. Co*., No. 11-cv-8405 (CM), 2015 WL 10847814, at *21 (S.D.N.Y. Sept. 9, 2015). The excellent result obtained here speaks to the quality of Class Counsel's representation. For one, this Settlement guarantees Settlement Class Members timely payment in excess of the full alleged trial damages they could expect to personally recover on a per-product basis on average stemming from the challenged conduct, while avoiding the inherent uncertainty of an unfavorable ruling. That Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a testament to the skill displayed by Class Counsel. *See In re BioScrip, Inc. Sec. Litig.*, 273 F.Supp.3d at 502 (recognizing that the skill of opposing counsel can be considered under this *Goldberger* factor). Lastly, the efficiency and relative speed of resolution reflects the quality of Class Counsel's representation, and it should not serve as a basis for a downward departure from what is a reasonable percentage fee. *In re Interpublic Sec. Litig.*, No. 02-CV-6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26,

2004). Indeed, Class Members will derive a substantial benefit by receiving timely payment under this Settlement. Accordingly, this factor supports the requested fee award.

43.     *Goldberger* **Factor No. 5: The Requested Fee in Relation to the Settlement**. This factor is discussed above. For the reasons discussed there, this factor supports the requested fee award.

44.     *Goldberger* **Factor No. 6: Public Policy Considerations**. In awarding attorneys' fees, the Second Circuit "take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). And as the Court has previously recognized, "the public policy benefits of rewarding counsel for pursuing class claims that might not be viable as individual actions" is a factor that can confirm the reasonableness of a fee award. *See Pantelyat*, 2019 WL 402854, at *9 (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) (explaining that, in a case with low individual recovery amounts, "[e]conomic reality dictates that [the] suit proceed as a class action or not at all.")). Accordingly, this factor supports the requested fee award

45.     **The Requested Fee Award is Reasonable Under a Lodestar Cross Check**. The Court also applies a lodestar cross check. As part of the cross check, the lodestar is determined by "multiplying the hours spent by each attorney and paraprofessional . . . by their current hourly rates[.]" *Signet*, 2020 WL 4196468, at *16. As explained below, Class Counsel's combined lodestar of $1,471,214.5, with a 3.35 multiplier, supports the requested fee award.

46.     Class Counsel has spent 2,258.6 hours litigating the Action. Peter Decl. ¶¶ 26, 28-29; Wand Decl. ¶ 16. In reviewing the lodestar, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Consistent with

*Goldberger*, based on the Court's familiarity with the litigation, the Court finds that the time Class Counsel attest to in their declarations, which includes categories of work, is appropriate for this type of complex litigation.

47.     In evaluating the reasonableness of the hourly rates, courts look to current rates that prevail in the district in which the court sits. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997); *see also LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998). The Court is satisfied that the hourly rates submitted by Class Counsel are reasonable under this standard. *See*, *e.g.*, *Vista Outdoor, Inc. v. Reeves Family Tr.*, No. 16 Civ. 5766, 2018 WL 3104631, at *6 (S.D.N.Y. May 24, 2018) (finding reasonable hourly partner rates between $1,165 and $1,260 and hourly associate rates between $569.02 and $753.42) (citing *MSC Mediterranean Shipping Co. Holdings S.A. v. Forsyth Kownacki LLC*, No. 16 Civ. 8103 (LGS), 2017 WL 1194372, at *3 (S.D.N.Y. Mar. 30, 2017)).

48.     Having established the lodestar, the Court may, in its discretion, increase the lodestar by applying a multiplier. *Goldberger*, 209 F.3d at 47. The requested fees result in a multiplier of 3.35, which is reasonable in light of, *inter alia*, the risk taken in pursuing this case without advanced compensation, and the quality of counsel's work and results achieved in this litigation. "Courts regularly award lodestar multipliers of up to eight times the lodestar, and in some cases, even higher multipliers." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding a "modest multiplier" of 4.65, which was "well within the range awarded by courts in this Circuit and courts throughout the country."); *Athale v. Sinotech Energy Ltd.*, No. 11-cv-05831 (AJN), 2013 WL 11310686, at * 9 (S.D.N.Y. Sep. 4, 2013) (multiplier of 5.65); *Ferrick v. Spotify*

21

*USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *10 (S.D.N.Y. May 22, 2018) (multiplier of 5.02).

49.     **Class Counsel's Costs Are Reasonable**. Class Counsel is also entitled to be reimbursed for litigation costs and expenses. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010).  Here, Class Counsel has incurred $67,835.44 in expenses. Peter Decl. ¶ 36; Wand Decl. ¶ 29. The Court finds that these expenses were typical and reasonable and should be reimbursed to Class Counsel. *See Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, computer research, photocopying, postage, meals, and court filing fees).

50.     **The Class Representative Service Awards**. "Service awards are common in class action cases…." *Times v. Target Corp.*, No. 18 Civ. 02993, 2019 WL 5616867, at *5 (S.D.N.Y. Oct. 29, 2019). In examining the reasonableness of service awards, courts consider the personal risk incurred by the named plaintiff, the time and effort expended by the named plaintiff in assisting the prosecution of the litigation, and the ultimate recovery in vindicating statutory rights. *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). These considerations weigh in favor the Service Awards requested here.

51.     First, Plaintiffs undertook risk in lending their names to this case. Hesse Decl. ¶ 8; Buxbaum Decl. ¶ 8. Evidence of actual retaliation, notoriety, or personal difficulties is not required. *Guippone v. BH S & B Holdings LLC*, No. 09 Civ. 1029(CM), 2011 WL 5148650, at *7 (S.D.N.Y. Oct. 28, 2011). Second, Plaintiffs have described the considerable time they devoted to the litigation, which includes, *inter alia*, reviewing the complaints and other pleadings, engaging in extensive communications with Class Counsel, searching for responsive documents, providing answers to written discovery, and reviewing and approving the Settlement Agreement and related

Case 1:19-cv-00972-AJN   Document 90   Filed 02/21/22   Page 24 of 28

documents. Hesse Decl. ¶¶ 5-6; Buxbaum Decl. ¶¶ 5-6. *See also In re Colgate-Palmolive*, 36 F. Supp. 3d at 354. Third, the Court takes into consideration the result obtained for the Class, which would not have been possible but for Plaintiffs' efforts. Lastly, the requested Service Awards are also reasonable in comparison to other awards granted in this District. *See, e.g., Guippone*, 2011 WL 5148650, at *8 ($10,000 service award); *Sand v. Greenberg*, No. 08-cv-7840 (PAC), 2011 WL 1338196, at *5 (S.D.N.Y. Mar. 22, 2011) (proposed $10,000 service award to named plaintiffs "appears to be reasonable, and is very similar to allocation plans that courts routinely approve in the context of settlement."); *Grice v. Pepsi Beverages Co*., 363 F. Supp. 3d 401, 412 (S.D.N.Y. 2019) ($5,000 service award).

52.     Accordingly, the Court finds that the payment of Class Representative Service Awards in the amount of $5,000 to each of the two Plaintiffs is reasonable and justified under the circumstances.

## CONCLUSION

53.     Accordingly, the Court finds that the Settlement is fair, reasonable, and adequate.

54.     The Settlement is hereby finally approved in all respects, and the Court certifies the following Settlement Class:

> All Persons who purchased any Godiva Chocolate Product in the United States during the Class Period.

> Excluded from the Settlement Class are: (a) Godiva and any of its parents', affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Godiva Chocolate Products, (c) governmental entities, (d) the Court, the Court's immediate family, Court staff; (e) the mediator and her staff and immediate family; (f) counsel of record for the Parties, and their respective law firms; and (g) all Persons who timely and properly exclude themselves from the Settlement Class.

> The Class Period is from January 31, 2015 through October 26, 2021.

Godiva Chocolate Product means any product manufactured and sold by Godiva, or sold under the Godiva brand, which contains chocolate.

55.     The Court appoints Plaintiffs as representatives of the Class and Faruqi & Faruqi LLP and the Wand Law Firm, P.C. as counsel for the Class.

56.     The Parties are hereby directed to further implement the Settlement Agreement according to its terms and provisions. The Settlement Agreement is hereby incorporated into this Final Approval Order in full and shall have the full force of an Order of this Court.

57.     Kroll is authorized and directed to issue Settlement Benefits to Settlement Class Members who submitted timely and valid Claim Forms in accordance with the terms of the Settlement Agreement. Any funds that are validly claimed but not negotiated by Settlement Class Members within the timeframe set forth in the Settlement Agreement shall be paid to Public Justice Foundation, a 501(c)(3) charity that is dedicated to advancing the public interest.

58.     The Court approves and awards: (1) attorneys' fees and expenses in the amount of $5,000,000, and (2) a Class Representative Service Award of $5,000 to each of the two Plaintiffs. These payments shall be paid by Godiva to Plaintiffs and Class Counsel in accordance with the terms of the Settlement Agreement.

59.     Upon the Effective Date of the Settlement, Releasing Parties (i.e., Plaintiffs and all Settlement Class Members who did not submit a valid and timely Request for Exclusion) shall release the following claims against Godiva and the other Released Parties:

> Any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public against any of the Released Parties that are based on, arise out of, or relate to the allegations or claims in the Action, that the Godiva Chocolate Products were misleadingly marketed or sold, or that relate to the labeling and marketing of the Godiva Chocolate Products.

24

Excluded from the Released Claims is any claim for alleged bodily injuries arising out of use of the Godiva Chocolate Products.

60.     The Released Claims are limited to claims that are based on, arise out of, or relate to the allegations or claims asserted in this Action – i.e., namely, that the Products have been promoted, labeled, marketed, or sold under false or deceptive country of origin claims or related to the "Belgium 1926" claim. Peter Decl. ¶ 50, Ex. E.

61.     With respect to all Released Claims, the Parties have waived and relinquished to the fullest extent permitted by law (a) the provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

and (b) any law of any state or territory of the United States, federal law, or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.

62.     Upon the Effective Date of the Settlement, and the Final Judgment to be entered hereon, the above release of claims and the Settlement Agreement will be binding on, and will have *res judicata* and preclusive effect on, all pending and future lawsuits or other proceedings maintained by or on behalf of the Releasing Parties. All Releasing Parties are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on or arising out of any of the Released Claims.

63.     The Persons who have submitted valid and timely Requests for Exclusion listed in Exhibit F to the Declaration of Jeanne C. Finegan are excluded from the Settlement Class and are not bound by this Order or the Final Judgment.

64.     This Final Approval Order, the Final Judgment to be entered hereon, the Settlement Agreement, and all acts, statements, documents or proceedings relating to the Settlement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Godiva of any fault, wrongdoing, or liability on the part of Godiva or of the validity for litigation of any claims that have been, or could have been, asserted in the Action. This Order, the Settlement or any such communications shall not be offered or received in evidence in any action of proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement, this Final Approval Order and the Final Judgment to be entered hereon, may be filed in any action by Godiva or Settlement Class Member seeking to enforce the Settlement or the Final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata*, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim. The Settlement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Final Approval Order that are maintained by, or on behalf of, the Releasing Parties or any other person subject to the provisions of this Order.

65.     Upon the Effective Date of this Final Approval Order, and the Final Judgment to be entered hereon, this Action shall be dismissed on the merits and with prejudice.

66.     Without affecting the finality of this Final Approval Order, and the Final Judgment to be entered hereon, for purposes of appeal, Court shall retain jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement.


**IT IS SO ORDERED.**


DATED: _____            _____
                                    Honorable Alison J. Nathan
                                    United States District Judge