## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, et al., | No. 1:19-cv-0972-AJN |
| *Plaintiffs* | Fed. R. Civ. Proc. 23(a), 23(b), 23(e), 23(h) |
| v. | |
| GODIVA CHOCOLATIER, INC., *Defendants*. | |

**OPPOSITION TO [Dkts. 80, 82], RULE 23(e) OBJECTION TO [Dkt. 80] FINAL APPROVAL AND [Dkt. 82] MOTION FOR ATTORNEY'S FEE, COSTS AND SERVICE AWARDS BY CLASS MEMBER SHIYANG HUANG**

# TABLE OF CONTENTS

**Page**

ARGUMENT..................................................................................................................3

    I.    With $15 million is on the table, no more than $7 million got claimed; but counsel insists the same $5 million fee .........................................................3

        A.    This Court owes a fiduciary duty to protect Class members ............3

        A.    No presumption of settlement fairness exists here; heightened scrutiny is required with "clear sailing" and "reverter" combination 4

        B.    This settlement cannot surpass Rule 23(e)(2)(C), just like *Briseno v. Henderson,* 998 F.3d 1014 (9th Cir. 2021) ........................................6

    II.    Settlement approval must be denied for subpar notice ..............................11

        A.    The *incentive, structure, and result* from GODIVA paying all notice costs proved failure of class notice ...................................................11

            i.    Under Supreme Court precedent, Plaintiffs—instead of GODIVA—must bear all costs of noticing the Class ..........11

            ii.    No "reasonable effort" invited Grocery buyers with notice .13

            iii.    The paltry claim *results* prove the failure of notice, even before haircuts for invalid and fraud claims ........................17

    III.    Named Plaintiffs' broken "economic reality" demands $0 service award .19

    IV.    *Stare decisis* demands $0 for plaintiffs' Service Awards ..........................20

        A.    Supreme Court law is binding, even if it was from the 1800's........21

        B.    *Johnson v. NPAS Sols.* interpreted binding Supreme Court authorities that denied such service awards ....................................21

        C.    *Greenough* and *Pettus* are still not overruled as of today ...............23

CONCLUSION ...........................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008)....................................................19

*Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015) ...........................................................3, 20

*Am. Trucking Assns., Inc. v. Smith*, 496 U.S. 167 (1990) ..................................................24

*Amchem Prods. v. Windsor,* 521 U.S. 591 (1997).............................................................11

*Boeing v. Van Gemert,* 444 U.S. 472 (1980) ....................................................................22

*Bosse v. Oklahoma,* 137 S. Ct. 1 (2016)...........................................................................24

*Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) ..........................6, 7, 8, 9, 10, 12, 14

*Central Railroad & Banking Co. v. Pettus,* 113 U.S. 116, (1885)....................................21

*China Agritech Inc. v. Resh,* 138 S. Ct. 1800 (2018) ........................................................23

*D'AMATO v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2011) ..................................................4

*Deposit Guaranty Nat. Bank v. Roper*, 445 US 326 (1980)..............................................22

*Dronenburg v. Zech,* 741 F.2d 1388 (D.C. Cir. 1984) .....................................................25

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974) ...................................3, 11, 13, 17, 20

*Eubank v. Pella Corp.,* 753 F.3d 718 (7th Cir. 2014) .......................................................19

*Gamble v. United States,* 139 S. Ct. 1960 (2019).........................................................21, 24

*Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103 (2d. Cir. 1988)...........23

*Goldberger v. Integrated Res. Inc.,* 209 F.3d 43 (2d Cir. 2000) .................4, 10, 19, 22, 23

*Hart v. BHH, LLC,* 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020) ............................20, 22

*Hutto v. Davis,* 454 U.S. 370 (1982) ................................................................................24

*In re AIG, Inc.,* 689 F.3d 229 (2d Cir. 2012)....................................................................11

*In re Baby Prods. Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013) .......................................12

*In re Bernard L. Madoff Inv. Sec. LLC,* 721 F.3d 54 (2d Cir. 2013) ................................24

*In re Gen. Motors,* 55 F.3d 768 (3d Cir. 1995) .................................................................... 10

*In re HP Inkjet Printer Litig.,* 716 F.3d 1173 (9th Cir. 2013) ............................................. 8

*In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539 (9th Cir. 2019) ........................ 13

*In re Literary Works in Elec. Databases Copyright Litig.,* 654 F.3d 242 (2d Cir.2011) .. 11

*In re ODD,* 2021 WL 3502506 (N.D. Cal. Jul. 2, 2021) ...................................................... 1

*In re ODD,* No. 3:10-md-2143-RS, ECF No. 3067 (N.D. Cal. Oct. 18, 2021) ................... 1

*In re Payment Card Interchange Fee and Merch. Disc. Antitrust Litig.,*
   827 F.3d 223 (2d Cir. 2016) ............................................................................... 4, 11

*In re Samsung Top-Load,* 997 F.3d 1077 (10th Cir. 2021) ................................................. 5

*Johnson v. NPAS Sols.,* 975 F.3d 1244 (11th Cir. 2020) ............................................. 21, 22

*Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241 (8th Cir. 1996) .................................... 10

*Kimble v. Marvel Ent'mt,* 576 U.S. 446 (2015) ................................................................ 23

*Mahoney v. Endo Health Solutions, Inc.*, No. 1:15-cv-09841, Dkt. 90 at 10 (S.D.N.Y.
   Oct. 21, 2016) .................................................................................................... 16

*McDonough v. Toys "R" Us, Inc.,* 80 F. Supp. 3d 626 (E.D. Pa. 2015) ........................... 15

*McMahon v. Shearson/American Exp., Inc.,* 788 F.2d 94 (2d Cir. 1986) ........................ 21

*Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85 (2d Cir. 2019) .................................... 24

*Molski v. Gleich,* 318 F.3d 937 (9th Cir. 2003) ................................................................ 13

*Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950) ...................... 13, 17

*OneSimpleLoan v. US Secretary of Educ.,* 496 F.3d 197 (2d Cir. 2007) ......................... 21

*Ostrowski v. Amazon*, 2016 WL 4992051 (W.D. Wash. Sept. 16, 2016) ......................... 16

*Pearson v. NBTY, Inc.,* 772 F.3d 778 (7th Cir. 2014) ......................5, 6, 11, 12, 13, 15, 18

*Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477 (1989) ............. 24

*Roes v. SFBSC Mgmt., Inc.,* 944 F.3d 1035 (9th Cir. 2019) ....................................... 12, 14

*Sakiko Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424 (S.D.N.Y. 2014) ................... 20

*Saucillo v. Peck*, --F.4th--, No. 20-55119 (9th Cir. Feb. 11, 2022) .................................... 4

*Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1 (2000) ................................ 23

*Sharp Farms v. Speaks*, 917 F.3d 276 (4th Cir. 2019) ........................................................ 4

*State Oil Co. v. Khan*, 522 U.S. 3 (1997) .......................................................................... 23

*TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021) ......................................................... 3

*Trustees v. Greenough,* 105 U.S. 527 (1882) .................................................................... 21

*United States v. Dauray,* 215 F.3d 257 (2d. Cir. 2000) ..................................................... 23

*United States v. Hatter,* 532 U.S. 557 (2001) ................................................................... 24

*United States v. Santiago,* 268 F.3d 151 (2d Cir. 2001) .................................................... 24

*Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181 (11th Cir. 2003) ..................... 20

*Weinberger v. Kendrick,* 698 F.2d 61 (2d Cir. 1982) .......................................................... 4

*Weseley v. Spear, Leeds & Kellogg,* 711 F. Supp. 713 (E.D.N.Y. 1989) ......................... 20

*White v. Auerbach,* 500 F.2d 822 (2d Cir. 1974) ................................................................ 1

*Wilson v. Playtika Ltd.,* 2020 U.S. Dist. LEXIS 222843 (W.D. Wash. Nov. 30, 2020) ... 16

*Women's Comm. for Equal Employment Opportunity v. Nat'l Broadcasting Co.,*
      76 F.R.D. 173 (S.D.N.Y. 1977) ............................................................................... 20

**Rules**

Fed. R. Civ. Proc. 23(c) ..................................................................................................... 15

Fed. R. Civ. Proc. 23(c)(2)(B) ........................................................................................... 13

Fed. R. Civ. Proc. 23(e)(2)(C) ............................................................................................. 2

Fed. R. Civ. Proc. 23(e)(2)(C)(ii) ........................................................................................ 8

Fed. R. Civ. Proc. 23(e)(2)(C)(iii) ....................................................................................... 8

Fed. R. Civ. Proc. 23(e)(5)(B) ............................................................................................. 2

*Rule 23 committee notes—1966 amendment* ................................................................... 12

*Rule 23 committee notes—2018 amendment.* ................................................................... 17

Supreme Court Rule 14.1(a) ............................................................................................... 24

## Other Authorities

Alison Frankel, *11th Circuit's strict new rule for data breach standing will figure in Equifax appeal.* Reuters.com https://reut.rs/2N5LZD9 ........................................... 1

Brief *Amicus Curiae* of Shiyang Huang, *Named Plaintiffs and Settlement Class Members v. Apple Inc.*, No. 21-15758, ECF No. 47 (9th Cir. Oct. 12, 2021) ........................ 25

Declaration of Scott A. Kamber, I*n re McCormick & Co., Inc. Pepper Prods. Mktg. & Sales Pracs. Litig.,* No. 15-mc-01825, Dkt. 237-1 (D.D.C. May 20, 2020) .......... 16

Declaration of Solorzano, *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023, Dkt. 227-1 (E.D.N.Y. Mar. 22, 2013) ............. 16

Dkt. No. 67-1 ("Settlement Agreement") ................................................................. 6, 9, 12

*GODIVA to refocus on selling in groceries where sales are brisker than in own shops.* EconoTimes (May 18, 2021). www.econotimes.com/GODIVA-finds-sweet-spot-in-lockdown-cravings-for-chocolate-1608864 ...................................................... 15

Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (5th ed. 2014) ............... 19

*Manual for Complex Litig.* (4th ed. 2008) ....................................................................... 10

Matthew Rocco, *GODIVA finds sweet spot in lockdown cravings for chocolate*. Financial Times (May 17, 2021) ............................................................................................. 15

Oral Argument Recordings, *Briseno v. Henderson,* No. 19-56297. https://www.ca9.uscourts.gov/media/video/?20201207/19-56297/ ....................... 15

Order granting Shiyang Huang's motion to brief as *amicus curiae, Joffe v. Google Inc.,* No. 20-15616 (9th Cir. Jan. 19, 2022) ...................................................................... 1

Petition for a writ of Certiorari, *China Agritech Inc. v. Resh,* No. 17-432 www.scotusblog.com/wp-content/uploads/2017/10/17-432-petition.pdf .............. 24

Statement of Interest by the United States, *In re Apple Device Perf. Litig.,* 5:18-md-2827, ECF No 575 (N.D. Cal. Dec. 2, 2020) .................................................................... 2

*Yamagata v. Reckitt Benckiser LLC*, No. 3:17-cv3529-VC, ECF No. 236 (N.D. Cal. Oct. 21, 2021) ...................................................................................................................... 1

## INTRODUCTION

Class member Shiyang Huang is an "[e]xperienced class action objector",[1] specialized in monitoring class-action settlements. **Huang has successfully clawed back $19 million back to class members**.[2] Reuters once interviewed and profiled Huang for his objection.[3] A Ninth Circuit merits panel granted his motion to brief as *amicus curiae*, circulating his brief to an *en banc* Ninth Circuit on Article III standing issues.[4] A Chief District Judge awarded Huang $500 for his service, *despite fierce opposition,* and concluded his "successful contentions certainly paralleled" experienced counsel to have saved class members $18 million dollars.[5] His petitions in the U.S. Supreme Court were covered by journalists too.[6] Although "it is well settled that objectors have a valuable and important role to perform in preventing collusive or otherwise unfavorable settlements,"[7] Justice Department warned that "Class counsel [often] discounts [objectors] as … disingenuous professionals [while] most consumer class members in this case and others

---

[1] *Yamagata v. Reckitt Benckiser LLC*, No. 3:17-cv-3529, ECF No. 236 at 3 (N.D. Cal. Oct. 21, 2021) (Huang's support of a 25% fee award justified reasonableness)

[2] *In re Optical Disk Drive Prods. Antitrust Litig.* ("ODD")*,* 2021 WL 3502506 (N.D. Cal. Jul. 2, 2021) (ordering fee reduction of over $18MM back to Class members).

[3] *See* Alison Frankel, *11th Circuit's strict new rule for data breach standing will figure in Equifax appeal.* Reuters.com https://reut.rs/2N5LZD9.

[4] *Joffe v. Google Inc.,* No. 20-15616, Order (9th Cir. Jan. 19, 2022).

[5] *ODD,* No. 3:10-md-2143, ECF No. 3067 (N.D. Cal. Oct. 18, 2021)

[6] *Huang v. Spector*, 2021 WL 4066481 (U.S. Aug. 27, 2021); *Huang v. Schultz,* 2020 WL 3183227 (U.S. May 11, 2020).

[7] *White v. Auerbach,* 500 F.2d 822, 828 (2d Cir. 1974)

like it do not have the time or the knowledge of legal process to file objections." *In re Apple Device Perf. Litig.,* 5:18-md-2827, ECF No. 575 at 7 (N.D. Cal. Dec. 2, 2020). Huang will <u>not</u> settle his objection for solely selfish benefits, and it is proved by his track record. Fed. R. Civ. Proc. 23(e)(5)(B); *cf. supra* n.5 ($500 award by contested motion). He is open to stipulate an injunction barring him from *any* payment for objecting here, absent a court order. [8] Huang is a class member. His claim number is WCF0231699.

Huang urges denial of Parties' final approval, which unsurprisingly only got a low 2.57% claim rate, for **<u>no more than $7.06 million</u>** payout—with the reality even lower.[9]

***First,*** creating a slush fund for attorney's fees while Class members are denied standing to contest Plaintiffs' ***<u>at least</u> 41.5% attorney's fee***—requires denial under Rule 23(e)(2)(C). *Dennis v. Kellogg Co.,* 697 F.3d 858, 868 (9th Cir. 2012) (attorney's fee request consisting of "38.9% of the total [settlement proceeds] is clearly excessive…")

***Second,*** class certification should be denied. The lousy 2.57% claim rate alone is "relevant" to deny class certification; the combination of clear-sailing and reverter "reeks collusion"; and Plaintiffs improperly forced the burdens of ***notice costs*** to GODIVA,

---

[8] Huang reserves rights to disgorge from any other objectors who demonstrate "no intention of improving the settlement for the class [but] files her objection, appeals, [to] pocket[] a side payment[.]" *Pearson v. Target Corp.,* 968 F.3d 827, 832 (7th Cir. 2020).

[9] Assuming each claimant requests the $15 / $25 maximum: The *maximum* Class payout is 452,621 * $15 + 10,874 * 25 = $7.06 million. *See* Dkt. 86 at 8 (452,621 claims without proof of purchase, only 10,874 claims with proof); 463,495 claims on 18,000,000 class size = 2.57% claim rate. *None of the figures has removed invalid/fraud claims yet.*

which is outlawed by *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 179 (1974). It was then so unsurprising that the notice and claim rates failed *by design* and *in results.*

*Lastly,* Named Plaintiffs cannot each receive a $5,000 "payoff" award under *stare decisis* and receive 20x "bounty" in unfairness to Rule 23(e), after counsel asks $5 million for a 2.57% lousy claims rate. Such wildly inequitable "VIP" awards invite collusion and "blindfolded" plaintiffs from monitoring counsel's fiduciary obligations, while their counsel presented a lousy settlement that abandoned fiduciary duty to Class.

Plaintiffs advertise the **$15 million *mere hypothetical*** throughtout their brief, but their ***so-encrypted actual value*** one reality: "The production of weak evidence when strong is available can lead only to the conclusion that the strong would have been adverse." *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2212 (2021).

## ARGUMENT

## I.   WITH $15 MILLION IS ON THE TABLE, NO MORE THAN $7 MILLION GOT CLAIMED; BUT COUNSEL INSISTS THE SAME $5 MILLION FEE

No matter whether collusion occurred or not—*even if it is merely* ***"implicit"***, *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015) (emphasis added), this deal cannot live.

### A.  This Court owes a fiduciary duty to protect Class members

"In ordinary non-class litigation, parties are free to settle their disputes on their own terms, and plaintiffs may voluntarily dismiss their claims without a court order. Fed. Rule Civ. Proc. 41(a)(1)(A). By contrast, in a class action, the "claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."" *Frank*

*v. Gaos,* 139 S. Ct. 1041, 1046 (2019) (quoting Fed. R. Civ. Proc. 23(e)). Under Circuit

law, this Court is "a fiduciary who must serve as a guardian of the rights of absent class

members." *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 52 (2d Cir. 2000).

> [W]hen a class action settlement has been reached by means of settlement
> classes certified after the settlement, with notice simultaneous with that of
> the settlement, we emphasize that … district judges who decide to employ
> such a procedure are bound to **scrutinize the fairness of the settlement
> agreement with even more than the usual care.** This is necessary in order
> to meet the concerns, noted in the Manual, regarding the **possibilities of
> collusion** or of undue pressure by the defendants on would-be class
> representatives.

*Weinberger v. Kendrick,* 698 F.2d 61, 73 (2d Cir. 1982) (emphasis added); *D'AMATO v.*

*Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2011); *Goldberger,* 209 F.3d at 52-53 (same).

### A. No presumption of settlement fairness exists here; heightened scrutiny is required with "clear sailing" and "reverter" combination

Rule 23(e) governs Settlement scrutiny. But "[o]ne aspect of the Settlement

Agreement that emphatically cannot remedy the inadequate representation is the

assistance of judges and mediators in the bargaining process." *In re Payment Card*

*Interchange Fee and Merch. Disc. Antitrust Litig.,* 827 F.3d 223, 235 (2d Cir. 2016).

*Sharp Farms v. Speaks,* 917 F.3d 276, 292 (4th Cir. 2019); *Saucillo v. Peck*, --F.4th--,

No. 20-55119, at *23 (9th Cir. Feb. 11, 2022) (same). Class counsels often claim a

settlement can pass muster, because settlements are "favored," Or "we got mediators"?

Or, "no government entities yet objected." None of them can help secure settlement

approval. First, Judge Posner has remarked the reality of class action settlements, or,

> the incentive of class counsel, in complicity with the defendant's counsel, to
> sell out the class by agreeing with the defendant to recommend that the
> judges approve a settlement involving a meager recovery for the class but

> generous compensation for the lawyers—the deal that promotes the self-
> interest of both class counsel and the defendant and is therefore optimal
> from the standpoint of their private interests.

*Pearson v. NBTY, Inc.,* 772 F.3d 778, 787 (7th Cir. 2014). Next, "a lack of affirmative

action taken by the Attorneys General does not indicate approval …" Letter of State AGs,

*In re Intuit Free File Litig.,* 3:19-cv-2546B, Dkt. No. 198 at 1 (N.D. Cal. Dec. 14, 2020).

Rather, circuits all agree that when (a) class counsel's fee reduction will benefit

Defendant instead of the Class ("kicker" or "reverter"), and (b) Defendant will not

oppose some amount of attorney's fee ("clear-sailing"), the risk of collusion is at its peak.

> [T]he Ninth Circuit has recognized that **where a settlement agreement
> contains a "kicker" and a "clear-sailing" agreement, "the district
> court ha[s] a special `obligation to assure itself that the fees awarded in
> the agreement were not unreasonably high' for[,] if they were, `the
> likelihood is that the defendant obtained an economically beneficial
> concession with regard to the merits provisions, in the form of lower
> monetary payments to class members** or less injunctive relief for the
> class than could otherwise have been obtained.'" [654 F.3d] at 947 (quoting
> *Staton v. Boeing Co.,* 327 F.3d 938, 964-65 (9th Cir. 2003)). The Seventh
> Circuit has arguably gone a step further and concluded **the inclusion of
> "kicker" and "clear-sailing" provisions in a settlement "weigh[s]
> substantially against the fairness of a settlement and call[s] for `intense
> critical scrutiny by the district court.'"** *In re Sw. Airlines Voucher Litig.,*
> 799 F.3d at 712 (quoting *Redman v. RadioShack Corp.,* 768 F.3d 622, 637
> (7th Cir. 2014)).
>
> … **Faced with a settlement containing a "kicker" agreement and a
> "clear-sailing" agreement, a district court must carefully consider
> whether the settlement was negotiated at arms-length.** … **A court
> should also consider the fees and costs award provided for by the
> settlement in comparison to the value of the settlement to the class.**

*In re Samsung Top-Load,* 997 F.3d 1077, 1090-91 (10th Cir. 2021).

### B. This settlement cannot surpass Rule 23(e)(2)(C), just like *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021)

Huang sums up this case in a nutshell: Plaintiffs' counsel negotiated a "good luck to class members" claims-made settlement, but persuaded GODIVA to give them "clear sailing" and "kicker" terms to protect Plaintiffs' $5 million fee and "service awards".

In Huang's view, Parties' settlement is similar enough to *Briseno v. Henderson*, 998 F.3d 1014 (9th Cir. 2021), having a "Murderers' Row of provisions out of left field that seemingly favor class counsel and the defendant at the expense of the class members." *Id.* at 1027; *accord Pearson,* 772 F.3d at 786. Huang now will explain what made the Ninth Circuit reject *Briseno*'s "murderor's row" deal, and what makes ***this case so identical.*** (*Briseno* also stipulated various injunctive terms that the Ninth Circuit later found to be worthless. 998 F.3d at 1020, 1028-29. Huang skips those because GODIVA did not stipulate to any injunctions here. Dkt. No. 67-1 ("Settlement Agreement") at 12-14.) To preview what *Briseno* shows, Huang shows twitter chats between journalists and Jay Edelson, a "Titan" in Plaintiffs' class-action bar, criticizing low claims rate results:

> There is a big schism in the plaintiff's bar, where most class lawyers are intentionally depressing claims rates (and want 1-2%) … The trick is convincing a judge that a settlement that in reality will distribute $200k to class members is worth the $40 million theoretical value some expert put on it. (*See* Exhibit A).

In *Briseno,* Defendant agreed to a deal that provides, *inter alia,* "$0.15 for each unit of [product] purchased to households submitting valid claim forms (to a maximum of thirty units without proof of purchase, and unlimited units with proof of purchase)[.]" 998 F.3d at 1020. Under the assumption that the Class has 15 million members, Parties

"claimed that it theoretically exposed [Defendant] to nearly $67.5 million in claims if every consumer submitted a claim." *Ibid.* On Plaintiffs' fee request, "the settlement stated that plaintiffs would request — and [Defendant] would not contest — $6.85 million in attorneys' fees and expenses. That amount would come directly from [Defendant] and be separate from the class settlement fund." *Ibid.* Any fee award haircuts "would revert to [Defendant] rather than the class." *Ibid.*

The Ninth Circuit, though, reversed the settlement. It concludes "[t]he settlement had all the hallmarks of a potentially collusive settlement giving short shrift to the class." *Id.* at 1025. There are ***three factors*** that combines into a reversible settlement in *Briseno*:

> First, plaintiffs' counsel "receive[d] a disproportionate distribution of the settlement." *Bluetooth,* 654 F.3d at 947. **The lion's share of the money — almost $7 million — will end up in the pockets of attorneys,** while the class receives relative scraps, less than a million dollars. So little goes to the class members in a claims-made settlement, such as this one, because the redemption rate is notoriously low, especially when it involves small-ticket items. **The redemption rate shrinks even further if the settlement, as here, provides for no direct notice to class members. […]**
>
> Second, the parties agreed to a **"clear sailing arrangement" in which [Defendant] agreed not to challenge the agreed-upon fees for class counsel.** This flashes yet another red flag under *Bluetooth. Id.* A clear sailing provision signals the potential that a defendant agreed to pay class counsel excessive fees in exchange for counsel accepting a lower amount for the class members. *Id.* at 949. Indeed, the "very existence of a clear sailing provision increases the likelihood that class counsel will have bargained away something of value to the class." *Id.* at 948 (quoting *Weinberger v. Great N. Nekoosa Corp.,* 925 F.2d 518, 525 (1st Cir. 1991)). When faced with a clear sailing provision, courts thus have a "heightened duty to peer into the provision and scrutinize closely the relationship between attorney's fees and benefit to the class, being careful to avoid awarding `unreasonably high' fees simply because they are uncontested." *Id.*

> **Finally, the agreement contains a "kicker" or "reverter" clause in
> which [Defendant], not the class members, receives the remaining
> funds if the court reduces the agreed-upon attorneys' fees.** *Id.* We
> identified this, too, in *Bluetooth,* as a warning sign. The reason is obvious:
> If [Defendant] is content to pay nearly $7 million to class counsel but the
> court finds the full amount unreasonable, **there is no plausible reason why
> the class should not benefit from the spillover of excessive fees**. As we
> warned in *Bluetooth,* "[u]nless the district court is able to conclude that in
> this particular case, a kicker provision is in the class' best interest as part of
> the settlement package, the kicker makes it less likely that the settlement
> can be approved if the district court determines the clear sailing provision
> authorizes unreasonably high attorneys' fees." *Id.* at 949.

> Here, the parties managed to run afoul of all three *Bluetooth* factors. **That
> also raises the question of whether the parties colluded to prevent any
> direct challenge to excessive fees.** Typically, class members can challenge
> an excessive fee award under Rule 23(h). But when parties agree to a
> "kicker," a 23(h) challenge cannot increase class recovery because the
> excessive fees wind up back in the defendant's pockets. That means that a
> class member may not have standing to object to the excessive fees because
> any action taken by the court would not redress the class member's
> purported injury. Meanwhile, by agreeing to the "clear sailing" clause, the
> defendant has also waived its right to challenge the attorneys' fees,
> foreclosing *any* action under Rule 23(h). ***See Pearson,* 772 F.3d at 786
> (describing this combination as "a gimmick for defeating objectors").**

*Briseno*, 998 F.3d at 1026-27 (emphasis added). "Plaintiffs attorneys don't get paid

simply for working; they get paid for obtaining results[,]" *In re HP Inkjet Printer Litig.,*

716 F.3d 1173, 1182 (9th Cir. 2013).

**If Plaintiffs could get $5 million fees *regardless of whether the Class receives

$7MM (or less) or $15MM,* the class action system is truly broken.** Rule 23(e)(2)(C)

requires denial under scrutiny of Rule 23(e)(2)(C)(ii) ("the effectiveness of any proposed

method of distributing relief to the class, including the method of processing class-

member claims") and Rule 23(e)(2)(C)(iii) ("the terms of any proposed award of

attorney's fees") (emphasis added). Settlement denial here is *necessary and required*.

Here: Parties' claims-made structure is same as *Briseno,* except that here the Class *only* lost $8 million possible claims to be made). *See* Settlement Agreement at 13, ¶ 68 (stipulating class recovery by valid claims made; $15 million maximum).

Next, "plaintiffs' counsel [will] receive[] a disproportionate distribution of the settlement" as currently stipulated. *Briseno,* 998 F.3d at 1026 (cleaned up).

Even with the current *raw* claim rates, the **maximum** class member recovery—an number still subjected to various haircuts—makes even the $7.06 million amount a fiction. Even as-is, the $5 million slush fund for Plaintiffs and their counsel would equal to Class members paying a **41% fee** to Named Plaintiffs and their counsel. *Dennis,* 658 F.3d at 868 (**38.9% is "clearly excessive" enough** (emphasis added)). Worse, these claim numbers *are subjected to further downward adjustments*, because these figures are merely preliminary—*before invalid, incorrect, duplicate, and/or ineligible claims* are removed. *Supra*; Dkt. No. 78-1, 78-2 (needing several months to complete any type of claim validation). Settlement Agreement at 16, ¶ 78 ("… thirty (30) calendar days … to reply to the Notice of Missing or Inaccurate Information….") *See also infra* at p.17.

Moreover, the parties agreed to a ""clear sailing arrangement" in which [Defendant] agreed not to challenge the agreed-upon fees for class counsel." *Briseno, supra.* That factor is present here. Settlement Agreement at 25, ¶ 99 ("Class Counsel may submit a Fee Application for an award of attorneys' fees and costs in an amount not to exceed Five Million Dollars ...") "Finally, the agreement contains a "kicker" or "reverter" clause in which [Defendant], not the class members, receives all funds if the court reduces the agreed-upon attorneys' fees." *Briseno, supra. See* Settlement Agreement at

25, ¶¶ 99-106 (attorney's fee reduction will **not** increase class member recovery at all). Plaintiffs might celebrate that their "gimmick" denied Objectors' ability to contest their fees, but Plaintiffs rather foolishly cornered objectors to challenge solely the Settlement approval. That also demonstrates how Plaintiffs abandoned their fiduciary duty to Class.

Plaintiffs—with millions of attorney's fees at stake—will invariably say Huang is frivolous. They might say only *Briseno* requires reversal because it was a 7-to-1 lopsided ratio. They even proudly told this Court that "Plaintiffs negotiated attorneys' fees and costs only after reaching agreement on the relief for the Class." Dkt. No. 66 at 13 (motion for preliminary approval). But nobody believes that. *Goldberger,* 209 F.3d at 52 ("Defendants, once the settlement amount has been agreed to, have little interest in how it is distributed and thus no incentive to oppose the fee."); *Manual for Complex Litig.* § 21.75 (4th ed. 2008) ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees ... the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."). Judge Posner does not believe in such claims, either: "Class counsel claim that often they negotiate for the benefits to the members of the class first, selflessly leaving for later any consideration of or negotiation for their award of attorneys' fees. That claim is not realistic. For we know that an economically rational defendant will be indifferent to the allocation of dollars between class members and class counsel." *Pearson,* 772 F.3d at 786; *Also see Briseno,* 998 F.3d at 1023 n.1 (indirect citing *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996)) ("a package deal."); *In re Gen. Motors,* 55 F.3d 768, 821 (3d Cir. 1995) ("private agreements to structure artificially separate fee and settlement arrangements

cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). In sum, Judge Posner's in *Pearson* is true here: 772 F.3d at 787:

> The settlement, a selfish deal between class counsel and the defendant, disserves the class. Class counsel shed crocodile tears over [GODIVA's] misrepresentations […] Yet only [2.57] percent of these fraud victims will receive even modest compensation … And for conferring these meager benefits class counsel should receive [$5] million?

## II.    SETTLEMENT APPROVAL MUST BE DENIED FOR SUBPAR NOTICE

Plaintiffs' cheap notice created "[s]tructural defects in this class action", which led to a "a fundamental conflict between [grocery, no direct notice] and [direct notice] classes and sapped class counsel of the incentive to zealously represent the latter." *Payment Card,* 827 F.3d at 236 (Rule 23(a)(4) concerns). Plus the "[s]ettlement is relevant to a class certification." *Amchem Prods. v. Windsor,* 521 U.S. 591, 619 (1997). Thus, Huang's Rule 23(e) objections, *supra,* all can apply against Plaintiffs' proposed class certification. But in addition to that, the "preferential treatment" notice structure is also troubling. The Court should exercise "undiluted, even heightened, attention in the settlement context." *Id.* at 620. *In re AIG, Inc.,* 689 F.3d 229, 238-40 (2d Cir. 2012); *In re Literary Works in Elec. Databases Copyright Litig.,* 654 F.3d 242, 249 (2d Cir.2011).

### A. The *incentive, structure, and result* from GODIVA paying all notice costs proved failure of class notice

#### i.    Under Supreme Court precedent, Plaintiffs—instead of GODIVA—must bear all costs of noticing the Class

"**[T]he plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit.**" *Eisen,* 417 U.S. at 179 (emphasis added). "In the absence of any support under Rule 23, [Plaintiffs'] effort to impose the cost of notice on

11

[Defendants] must fail. The usual rule is that a plaintiff must initially bear the cost of notice to the class." *Id.* at 178. Likewise, the Rule 23 committee notes—1966 amendment addressed "measures that might be taken during the course of the action to **assure procedural fairness, particularly giving notice to members of the class[.]**" *Ibid.* (emphasis added). Indeed, notice problems often doomed Rule 23(e) settlement approvals. *Roes v. SFBSC Mgmt., Inc.,* 944 F.3d 1035 (9th Cir. 2019); *Pearson,* 778 F.3d at 782-783; *In re Baby Prods. Antitrust Litig.,* 708 F.3d 163 (3d Cir. 2013).

Defying all the norms, ***this Settlement requires GODIVA to shoulder all costs of notice***. *See* Settlement Agreement at 20, ¶ 86 ("All Settlement Notice and Administration Costs shall be paid by GODIVA.") One must be suspicious that Plaintiffs let GODIVA to pay for their class certification requirement's notice, so that Plaintiffs will be spending $0 from their $5 million, segregated, slush fund, placed under a "gimmick" (*Briseno,* 998 F.3d at 1027)*,* so as to deny standing of objectors to challenge their fee requests. *Cf.* Exhibit D (*Briseno* district court found out that "class counsel rejected a settlement offer that would have given $4 million to the class and $4 million to class counsel.")

Even then, Plaintiffs hopes to inflate the settlement value by claiming such "notice" as a benefit to the Class. While the Ninth Circuit cabins it under district court's discretion, Judge Posner and Seventh Circuit disagrees. Here is why: "Notice and fees … are costs, not benefits. The attorneys' fees are of course not paid to the class members[.]" *Pearson,* 772 F.3d at 781. Plaintiffs offer no binding citation to the contrary, Dkt. 83 at 7, because their cited Second Circuit affirmance, *In re Warner Comm'n Sec. Litig.*, 798 F. 2d 35 (2d Cir. 1986), never discussed the value-of-notice issue whatsoever. Instead,

12

> [the] "ratio that is relevant... is the ratio of (1) the fee to (2) the fee plus what the class members received." *Id.* Basing the award of attorneys' fees on this ratio, which shows how the aggregate value of the settlement is being split between class counsel and the class, gives class counsel an incentive to design the claims process in such a way as will maximize the settlement benefits actually received by the class, rather than to connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class.

*Pearson,* 772 F.3d at 781 (Posner, J.)

In sum, Plaintiffs must pay for notice and encourage their ***clients*** absent class members to file claims and gain benefits from any settlement. It cannot be the polar opposite—where Defendant GODIVA pays for notice, and Plaintiffs "connive with the defendant in formulating claims-filing procedures that discourage filing and so reduce the benefit to the class." *Ibid.*

### ii.      No "reasonable effort" invited Grocery buyers with notice

"[I]t is **'critical'** that class members receive adequate notice." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 567 (9th Cir. 2019) (en banc). The Supreme Court held that "publication notice could not satisfy due process where the names and addresses of the beneficiaries were known." *Eisen,* 417 U.S. at 174 & n.12 (citing *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 315 (1950)). It is not the case that *any* notice will suffice; "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen,* 417 U.S. at 175; the notice must be "the best notice that is practicable." Fed. R. Civ. Proc. 23(c)(2)(B). Notice is a derivative of Constitutional Due Process. Thus, inadequate notice requires denial of class certification. *See Molski v. Gleich,* 318 F.3d 937, 952 (9th Cir. 2003) (denying

settlement because "[n]otice could have been given through individual mailings … using the names maintained by the Department of Motor Vehicles."); *Roes,* 944 F.3d at 1046 & n.7 (denying settlement because "no additional means of notice reasonably calculated to reach [some] class members was attempted", leading to a "response rate of only 18.5%"). Back to the Notice question: would Defendants be altruistic to spend an insane budget (while Plaintiffs will pay nothing) to implement exhaustive notices, when they agreed to a deal that allows ***fewer dollars payout, if fewer people file claims?*** Of course not.

The notice implemented, regrettably, reflects exactly the "cheap" approach: **if GODIVA never had your email, good luck.** Claims administrator estimated to have **18 million potential class members**. Dkt. 66 at 24. That might be a lesser problem if GODIVA were a shopping mall brand with receipts or e-mails of everybody. But the opposite is true: GODIVA—just like Wesson cooking oils in *Briseno*—flooded the ***grocery and supermarket aisles*** already. GODIVA is in Target, Instacart, Walgreens, CVS, Kroger, Costco and Shipt. www.GODIVA.com/GODIVA-in-the-aisle/GODIVA-in-the-aisle.html "Barnes & Noble, CVS, Hallmark, Macy's, The Paper Store, Target, Walgreens, Walmart[.]" https://www.nbcnews.com/select/shopping/godiva-closing-stores-ncna1255763;. But yet, Grocery subclass will get no direct notice—unless GODIVA had their emails. *Ibid. Briseno,* 998 F.3d at 1026 & n.3 ("we mention the lack of direct notice to underscore that the parties here knew that the redemption rate would be extremely low and that the agreed-upon attorneys' fees would swamp the actual recovery for class members.") Nothing besides email is attempted at all. That is already a step down from where "most claimants did not submit claim forms or any proof of purchase

14

because the parties already had their purchase and contact information." but got payment **automatically** even without needing a paltry "notice"—as here—requiring them to file a claim. *McDonough v. Toys "R" Us, Inc.,* 80 F. Supp. 3d 626, 636 (E.D. Pa. 2015).

In *Briseno,* its Settlement Administrator told a magistrate judge that "this kind of case was unlikely to yield a claims rate above 5% (and that a 2-3% was more likely)." Exhibit D. The suspicious lack of *any direct notice* to grocery is contrasted by GODIVA's now-exclusive in-store sales with grocers, since year 2021: GODIVA "announced in January that it would close all 128 of its stores and cafés in North America by the end of March [2021]." Matthew Rocco, *GODIVA finds sweet spot in lockdown cravings for chocolate.* Financial Times (May 17, 2021). www.ft.com/content/c6fc2a69-5896-459f-9817-f206d48f9efb. "Belgian chocolate group GODIVA will refocus on selling chocolates in grocery stores and other retailers, where sales are high from homebound consumers rather than an expansion of its shops." *GODIVA to refocus on selling in groceries where sales are brisker than in own shops.* EconoTimes (May 18, 2021).       www.econotimes.com/GODIVA-finds-sweet-spot-in-lockdown-cravings-for-chocolate-1608864. How can it be "reasonable" under Rule 23(c) to deny direct notice only because GODIVA did not have the e-mails?! *Briseno*'s author pointed out that issue:

> You know these are consumer goods, people now use their discount cards at [grocery stores] and supermarkets have a record of purchases. So you can subpoena [supermarkets] or their shopper card and figure out who bought Wesson oil for the past X number of years.

Oral Argument Recordings, *Briseno v. Henderson,* No. 19-56297, at 16:00-17:00 (Lee, J.).   https://www.ca9.uscourts.gov/media/video/?20201207/19-56297/; *accord Pearson*,

772 F.3d at 784 (Posner, J.) (using "**loyalty programs**" to provide direct postcard notice to 4.72 million class members); *Mahoney v. Endo Health Solutions, Inc.*, No. 1:15-cv-09841, Dkt. 90 at 10 (S.D.N.Y. Oct. 21, 2016) ("Plaintiff's counsel issued subpoenas to the **nineteen largest providers of retail pharmacy services** in the United States (e.g., **Walmart, Walgreens, CVS**) to obtain electronic files of the names and addresses of Class members that purchased the Tablets.") (emphasis added); Declaration of Solorzano, *In re Bayer Corp. Combination Aspirin Prods. Mktg. & Sales Practices Litig.*, No. 09-md-2023, Dkt. 227-1 (E.D.N.Y. Mar. 22, 2013) (plaintiffs used subpoenaed customer data from **four retail chains** to remit payment to more than 500,000 class members who had not submitted claims); *Wilson v. Playtika Ltd.,* 2020 U.S. Dist. LEXIS 222843 (W.D. Wash. Nov. 30, 2020) (stipulated discovery protective order between class plaintiffs and **Amazon** "for the purpose of providing notice to and verifying and paying the recovery amount owed to each member of the Settlement class"); Declaration of Kamber, I*n re McCormick & Co., Inc. Pepper Prods. Mktg. & Sales Pracs. Litig.,* No. 15-mc-01825, Dkt. 237-1 at 4 (D.D.C. May 20, 2020) (process of subpoenaing **Target** and **Safeway** "yielded extensive customer data that appears likely to yield electronic cash distributions to a substantial number of Class Members who did not file claims"); *Ostrowski v. Amazon*, 2016 WL 4992051 (W.D. Wash. Sept. 16, 2016) (granting motion to compel **Amazon** to produce class member data for direct notice in *In re NVIDIA GTX 970 Graphics Chip Litig.,* No. 15-cv-00760 (N.D. Cal.)).

　　In a pale comparison: Plaintiffs did so little—because GODIVA is paying for notice, presumably having some voice to decide how much it agrees to pay for—while

Plaintiffs can have class notice done "for free". Nor did GODIVA ask for such data whosoever. While digital notice **supplements** to "provide a reliable additional or alternative method for giving notice [and] make notice more effective." *Rule 23 committee notes—2018 amendment*, digital notice **is not allowance to deny** "[i]ndividual notice", which "must be sent to all class members whose names and addresses may be ascertained through reasonable effort." *Eisen,* 417 U.S. at 173-74; *Mullane,* 339 U.S. at 315. Such lousy claim rate—via lousy notice that denied **direct notice for 9 million class members over lack of e-mails**—cannot pass due process in a Settlement deal that favors less class notice, less claims turnout, for less payout except to Plaintiffs' windfall fees.

### iii.    The paltry claim *results* prove the failure of notice, even before haircuts for invalid and fraud claims

The *claim results* similarly show the lousy results from inadequate notice. Plaintiffs admit that is **at most** about 460,000 claims filed for *at most* $7.06 million—still subjected to massive haircuts. Plaintiffs cannot even tell how many supermarket-grocery class members filed a claim. Of course, they cannot: the Claim form does not ask such a simple question, and knowing that question will only make the Settlement look worse, but that arguably renders Buxbaum an inadequate grocery-subclass representative.

While typical class-action settlement fund size will *not* change with claims rate, this case does. Thus, this Court cannot avoid the reality that **a claims "cleansing" process will further throttle class recovery**, and it will be an illusion for class members to even receive the full $7 million. Below are some estimates that Huang tried his best to find—for all cases he found with at least 10,000 claims filed. And one district court noted

elsewhere: nobody can show "that it is unusual to have a large number of invalid claims submitted online in these types of class actions." *Infra,* n.14. If Huang were to apply a quite-conservative 20% invalid-claim rate out of all the cases he found, then Counsel's $5 million fee request will be so edging near 50% of the total Settlement fund!

| Cases | Raw Claims | Invalid Claims | Invalid Claim % |
|---|---|---|---|
| *Taha*[10] | 10,354 | 863 | 8.33% |
| *Rawa*[11] | 93,702 | **16,382** | 17.4% |
| *Optical Disk*[12] | 561,254 | **99,408** | 17.7% |
| *Carrier IQ*[13] | 57,266 | 57,266 − 39,458 = **17,808** | 31.1% |
| *Brown*[14] | 28,523 | **10,164** | 35.6% |

But Judge Posner wrote that "presumption should we suggest be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel." *Pearson,* 772 F.3d at 782. As soon as the claims get the "invalid claim" haircut, the 41.7% can only go higher. Such disproportionate settlement is "relevant" to denying class certification for subpar notice.

———————————

[10] *Taha v. Bucks Cnty.,* No. 12-6867, at n.1 (E.D. Pa. Nov. 30, 2020). https://casetext.com/case/taha-v-bucks-cnty-5

[11] *Rawa v. Monsanto Co.,* No. 4:17-cv-1252, Dkt. No. 42-1 at 5 (E.D. Mo. Mar. 3, 2018). https://bit.ly/3HpTOKB.

[12] *In re Optical Disk Drive Prod. Antitrust Litig.,* Exhibit C.

[13] *In re Carrier IQ, Inc., Consumer Privacy Litig.,* 2016 WL 4474366 (N.D. Cal. Aug. 25, 2016). https://scholar.google.com/scholar_case?case=12454505740094309473

[14] *Brown v. Rita's Water Ice Franchise Co., Inc.,* No. 15-3509 (E.D. Pa. Sep. 14, 2017) https://scholar.google.com/scholar_case?case=12021211525916166149.

## III.   NAMED PLAINTIFFS' BROKEN "ECONOMIC REALITY" DEMANDS $0 SERVICE AWARD

"[C]ourts theorize that one of the class representative's functions is to monitor class counsel so as to ensure that counsel does not accept a relatively weak class recovery in return for the promise of a large fee. If the class representative is also class counsel, the class loses one check on counsel's capacity to sell out the class's claims." Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* § 3:77 (5th ed. 2014). *See also id.* § 3:70 (stating that the law presumes that class representatives will monitor class counsel). *Eubank v. Pella Corp.,* 753 F.3d 718, 719 (7th Cir. 2014) (Posner, J.) ("The named plaintiffs are the representatives of the class—fiduciaries of its members—and therefore charged with monitoring the lawyers who prosecute the case on behalf of the class (class counsel).") But unfortunately, "in picking class representatives [class counsel] have no incentive to select persons capable or desirous of monitoring the lawyers' conduct of the litigation." *Id.* at 719-20. "the perception among both commentators and the Congress [is] that plaintiffs in common fund cases are mere 'figureheads,' and that the real reason for bringing such actions is 'the quest for attorney's fees.'" *Goldberger,* 209 F.3d at 53.

Since Huang already exposed Parties' disproportionate settlement proposal above, *supra,* the Settlement should be rejected out of hand, and Plaintiffs' service award request would be moot. But Huang preserves his argument that *even if* this Court intends to approve Plaintiffs' settlement proposal, Plaintiffs must get $0 service awards in light of Rule 23(e) and Rule 23(a)(4). *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 668 (E.D. Cal. 2008) (noting the court's reticence to approve the parties' proposed agreement because of

19

the disparity between the service award of $5,000 and the average class payments of $24.17); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015), *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F. 3d 1181, 1193 (11th Cir. 2003) (denying Plaintiffs' class certification / settlement because of wildly distorted "economic reality" between absent class members and named plaintiffs and/or their counsel).

## IV.   *STARE DECISIS* DEMANDS $0 FOR PLAINTIFFS' SERVICE AWARDS

> Despite the ubiquity of incentive awards in class action litigation, very few courts have grappled with these Supreme Court precedents. Stranger still, class representative incentive awards were not created by statute, rather they are judicially forged. […] No statute abrogates the holdings of *Pettus* or *Greenough*. However, in *Melito v. Experian Marketing Solutions, Inc*., the Second Circuit found in passing that those holdings did not apply to the particular class-action settlement presented to them. 923 F.3d 85, 96 (2019 2d Cir.), *cert. denied sub nom. Bowes v. Melito,* 140 S. Ct. 677 (Dec. 16, 2019). The Court of Appeals did not elaborate—nor can this Court discern—what facts distinguished the case from binding Supreme Court precedent. This issue is deserving of congressional attention.

*Hart v. BHH, LLC,* 2020 WL 5645984, at *5 n.2 (S.D.N.Y. Sept. 22, 2020) (Pauley, J.) Judge Pauley's observation is legitimate—service awards so often blindfolded Named Plaintiffs, when "[e]conomic reality dictates [Plaintiffs] suit proceed as a class action or not at all." *Eisen,* 417 U.S. at 161. Judge Pauley also noted that class representatives "are often placated [by] outsized service awards." *Sakiko Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424, 436 (S.D.N.Y. 2014) (Pauley, J.). (citing *Women's Comm. for Equal Employment Opportunity v. Nat'l Broadcasting Co.,* 76 F.R.D. 173, 180 (S.D.N.Y. 1977); *Weseley v. Spear, Leeds & Kellogg,* 711 F.Supp. 713, 720 (E.D.N.Y. 1989)). The answer is more clear under *stare decisis*. (Huang notes that *In re Payment*

*Card Interchange Fee and Merchant Discount Antitrust Litig.,* No. 20-cv-339 (2d Cir.) is

pending in the Second Circuit for the same argument.)

### A. Supreme Court law is binding, even if it was from the 1800's

Huang starts from a perhaps unremarkable premise: there is *no perishable date* on

Supreme Court precedents until the Supreme Court overrules itself.  "[A]nd the strength

of the case for adhering to such decisions grows in proportion to their 'antiquity.'"

*Gamble v. United States,* 139 S. Ct. 1960, 1981 (2019). One might ask why Huang even

starts from such a rather obvious principle?! Huang is hands-tied do so, because one

might be astonished of how many Class Counsels still do not want to believe it today.

The Second Circuit expects itself and its district courts to faithfully follow binding

Supreme Court precedents. To pick just a few here:

- "We think that the orderly administration of justice will be best served if we as one of the inferior courts follow Supreme Court precedent and adhere to the settled law of this Circuit, and a fortiori the district courts should do likewise." *McMahon v. Shearson/American Exp., Inc.,* 788 F.2d 94, 98 (2d Cir. 1986).

- "The answer might provide a policy argument … but we are bound to follow Supreme Court precedent as it currently exists." *OneSimpleLoan v. US Secretary of Educ.,* 496 F.3d 197, 208 (2d Cir. 2007).

### B. *Johnson v. NPAS Sols.* interpreted binding Supreme Court authorities that denied such service awards

Huang next relies on *Trustees v. Greenough,* 105 U.S. 527 (1882), and *Central*

*Railroad & Banking Co. v. Pettus,* 113 U.S. 116, (1885). Although not binding to this

Court, *Johnson v. NPAS Sols.,* 975 F.3d 1244, 1256-61 (11th Cir. 2020) interpreted

binding *Greenough* and *Pettus* cases at length, so Huang skips repeating *Johnson* more

here. There is little argument for "what facts distinguished the case from binding

21

Supreme Court precedent." *Hart,* 2020 WL 5645984, at *5 n.2. But one thing is for sure: silence is not consent. *See Goldberger,* 209 F.3d at 53 (class members "have no real incentive to mount a challenge that would result in only a "minuscule" pro rata gain from a fee reduction.") *Johnson* is correct in faithfully following Supreme Court precedents, rejecting calls that these Supreme Court precedents are now, somehow, "too old" to remain binding below. Since *Johnson* already explained *Greenough* and *Pettus* in detail, 975 F.3d at 1256-57, Huang will take *Johnson*'s summary of Supreme Court law:

> We take the rule of *Greenough,* confirmed by *Pettus,* to be fairly clear: A plaintiff suing on behalf of a class can be reimbursed for attorneys' fees and expenses incurred in carrying on the litigation, but he cannot be paid a salary or be reimbursed for his personal expenses. It seems to us that the modern-day incentive award for a class representative is roughly analogous to a salary—in *Greenough*'s terms, payment for "personal services."

975 F.3d at 1258. The court concluded that "[i]f anything, we think that modern-day incentive awards present even more pronounced risks than the salary and expense reimbursements disapproved in *Greenough.*" *Ibid.* "Whether … incentive award constitutes a salary, a bounty, or both, we think it clear that Supreme Court precedent prohibits it." *Id.* at 1258-59. Some might say *this case* has service awards "separate" from Class relief. But Named Plaintiffs—instead of having nobody to represent them—already piggybacked on Rule 23 absentees to economize attorney's fees and expenses. *Deposit Guaranty Nat. Bank v. Roper*, 445 U.S. 326, 338-39 (1980); *Boeing v. Van Gemert,* 444 U.S. 472, 480 (1980) ("Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs.")But nowhere in the Supreme Court precedents

allowed for an exclusive "Named Plaintiffs bonus", when Named Plaintiffs and Counsel must "fairly and adequately protect the interests of the class." Fed. R. Civ. Proc. 23(a)(4).

### C. *Greenough* and *Pettus* are still not overruled as of today

The latest attempts by some class counsel for undermining *Greenough, Pettus and Johnson* is by seizing on a mere footnote dicta that "[t]he class representative might receive a share of class recovery above and beyond her individual claim." *China Agritech Inc. v. Resh,* 138 S. Ct. 1800, 1804 n.7 (2018). They frivolously stretch *Resh* as far as overruling *Greenough* and *Pettus*. But As an overarching matter, overruling any Supreme Court law is never a small matter: even if they are incorrect, antiquated, or else—requires "special justification"—over and above the belief "that the precedent was wrongly decided." *Kimble v. Marvel Ent'mt,* 576 U.S. 446, 456 (2015) (citation omitted). *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997).

It is hardly serious to stretch *Resh*'s *dicta* as *sub silentio* overruling of two centuries-old Supreme Court precedents.[15] Rather, "the strength of the case for adhering

---

[15] "The Supreme Court has told us that it "does not normally overturn, or so dramatically limit, earlier authority *sub silentio*[.]" *Johnson,* 975 F.3d at 1260 n.12 (quoting *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000)). *See also United States v. Dauray,* 215 F.3d 257, 261 n.1 (2d. Cir. 2000) ("We are reluctant to assume that the courts decided this question of law *sub silentio*.") *Goldberger,* 209 F.3d at 49 ("an earlier panel's "*sub silentio* . . . resolution of [an] issue" with which it was not confronted is "`not binding precedent'") (both citing *Getty Petroleum Corp. v. Bartco Petroleum Corp.,* 858 F.2d 103, 113 (2d. Cir. 1988). *See also Am. Trucking Assns., Inc. v.*

to such decisions [has] grow[n] in proportion to their 'antiquity.'" *Gamble,* 139 S. Ct. at 1981. Supreme Court Rules also rejects a "*Resh* overruling" argument:

- "Only the questions set out in the petition, or fairly included therein, will be considered by the Court." Supreme Court Rule 14.1(a). But *Resh* petitioner's question presented was all about *tolling of statutory limitations*, www.scotusblog.com/wp-content/uploads/2017/10/17-432-petition.pdf, not about whether *Greenough* and *Pettus* must be overruled for being too old.

But even these arguments might not be enough for proponents of "service awards." What if Supreme Court precedents are too antiquated, expired, or simply rejected by, for example, supposedly decided by the Second Circuit? *E.g., Melito v. Experian Mktg. Sols., Inc.,* 923 F.3d 85, 96 (2d Cir. 2019).[16] But no: *only the Supreme Court* reverses itself.[17] *United States v. Santiago,* 268 F.3d 151, 155 n.6 (2d Cir. 2001) ("It is not within our purview to anticipate whether the Supreme Court may one day overrule its existing precedent."); *Hutto v. Davis,* 454 U.S. 370, 375 (1982) ("unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must

---

*Smith*, 496 U.S. 167, 190 (1990) ("In fact, it is little more than a proposal that we *sub silentio* overrule *Chevron Oil*.").

[16] It would have been worthy to mention that *Melito*'s position was citing a *now-vacated* precedent from another circuit. *In re Bernard L. Madoff Inv. Sec. LLC,* 721 F.3d 54, 68 (2d Cir. 2013) ("[V]acatur dissipates precedential force.")

[17] "[I]t is [Supreme] Court's prerogative alone to overrule one of its precedents." *United States v. Hatter,* 532 U.S. 557, 567 (2001); *Bosse v. Oklahoma,* 137 S. Ct. 1, 2 (2016). *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484 (1989) (asking inferior courts to "'leave to [the Supreme Court] the prerogative of overruling its ... decisions[.]'")

be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be.") *Dronenburg v. Zech,* 741 F.2d 1388, 1392 (D.C. Cir. 1984) ("[W]e doubt that a court of appeals ought to distinguish a Supreme Court precedent on the speculation that the Court might possibly have had something else in mind.")

*    *    *

*Greenough* and *Pettus*—still binding precedents—denied Named Plaintiffs such disparate service awards solely for themselves—regardless of whether the Class or GODIVA pays for that award from the "package deal". More than *stare decisis*, Service Awards lead to concerns that Named Plaintiffs might abandon their duty to scrutinize class counsel. *See* generally Brief *Amicus Curiae* of Shiyang Huang, *Named Plaintiffs and Settlement Class Members v. Apple Inc.*, No. 21-15758, Dkt. No. 47 (9th Cir. Oct. 12, 2021) (urging denial of service awards). Each Named Plaintiffs' $5,000 "bonus" must be denied under *Greenough* and *Pettus*.

## CONCLUSION

Plaintiffs' settlement approval request must be denied under Rule 23(e)(2)(C).

Final approval should be denied for Plaintiffs' abandonment to adequately notice the Class, as proved by the "relevant" paltry claims-made Settlement results. Alternatively, this Court must defer its ruling until claims administrator submits the amount of *actually validated* claims to evaluate the Rule 23(e)(2)(C)(ii) factor.

Each Plaintiff's $5,000 service award must be denied under *stare decisis.*

25

Dated: February 25, 2022                    Respectfully Submitted,

                                            Shiyang Huang
                                            /S/ SHIYANG HUANG
                                            2800 SW Engler Ct.
                                            Topeka, KS 66614
                                            314-669-1858
                                            defectivesettlement@gmail.com


## CERTIFICATE OF COMPLIANCE TO S.D.N.Y. LOCAL RULE 11.1, AND, COMPLIANCE TO CHAMBER RULES OF HONORABLE JUDGE NATHAN

I hereby certify that this document is created on a 12-point or larger font, and no more than 25 pages as a main memorandum, or no more than 10 pages as reply.

/s/ Shiyang Huang

## CERTIFICATE OF SERVICE

I hereby certify that on February 25, 2022, I filed the foregoing paper with this Court, and ECF will notify all participants in the case.

/s/ Shiyang Huang

26