# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>GODIVA CHOCOLATIER, INC.,<br><br>     Defendant. | No. 1:19-cv-0972-LAP<br><br><br>**[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDING ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS** |

Plaintiffs Steve Hesse and Adam Buxbaum ("Plaintiffs") and Defendant Godiva Chocolatier, Inc. ("Defendant" or "Godiva") have entered into a Settlement Agreement, which, together with the exhibits attached thereto, sets forth the terms and conditions for a proposed settlement and dismissal of the Action with prejudice as to Godiva, upon the terms and conditions set forth therein (the "Settlement Agreement").

On October 26, 2021, the Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, provisionally certifying the Settlement Class. ECF No. 72 ("Preliminary Approval Order").

Pursuant to the notice requirements set forth in the Settlement Agreement and in the Preliminary Approval Order, the Class was notified of the terms of the proposed Settlement, of the right of members of the Class to opt-out or exclude themselves, and of the right of members of the Class to be heard at a Final Approval Hearing to determine, *inter alia*, (a) whether the terms and conditions of the Settlement Agreement are fair, reasonable, and adequate for the release of the claims contemplated by the Settlement Agreement, and (b) whether judgment should be entered dismissing this Action with prejudice.

The Court has before it Plaintiffs' Motion for Final Approval of Class Action Settlement ("Motion for Final Approval") and Motion for Attorneys' Fees and Costs and Class Representative Service Awards ("Fee Application"). The Court has also received a letter from the State Attorneys General of Florida, Idaho, Maryland, New Jersey, Ohio, and Utah, expressing concerns with the Settlement (ECF No. 98), along with three Objections to the Settlement from Kristen Arntzen (ECF No. 73), Shiyang Huang (ECF No. 92), and Eli Lehrer (ECF No. 93).

After reviewing the motions; the memoranda of law, and evidence in support, the Settlement Agreement and exhibits thereto; all concerns, oppositions, and objections to the Motion

1

for Final Approval and the Fee Application; all supporting declarations from the Settlement Administrator; and the arguments and authorities presented by the Parties and their counsel at the Final Approval Hearing held on March 28, 2022, and the record in the Action, and good cause appearing,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.      Terms and phrases in this Order shall have the same meaning as ascribed to them in the Settlement Agreement, unless otherwise defined herein.

2.      This Court has jurisdiction over the subject matter of the Action and over all Parties to the Action, including all Class Members.

## NOTICE TO THE CLASS WAS APPROPRIATE

3.      Notice of the settlement must comply with both the Due Process Clause and with Fed. R. Civ. P. 23(c)(e). Due process requires only that notice be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Weinberger v. Kendrick*, 698, F.2d 61, 70 (2d Cir. 1982) (requiring a "very general description[s] of the proposed settlement"). Rule 23 requires "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also* Fed. R. Civ. P. 23(e).

4.      The notice provided to the Class pursuant to the Settlement Agreement and Preliminary Approval Order—including (i) repeated direct notice to the Class via email, (ii) the creation of the Settlement Website, and (iii) the dissemination of notice via publication and digital media notice—fully complied with the requirements of Fed. R. Civ. P. 23 and due process, was reasonably calculated under the circumstances to apprise the Class of the pendency of the Action,

their right to object or exclude themselves from the Settlement Agreement, and their right to appear at the Final Approval Hearing. In particular, through a multi-media channel approach to notice, which employed direct notice, digital, social and mobile media, an estimated 82 percent of targeted Class Members were reached by the notice program, on average 2.8 times. Declaration of Jeanne C. Finegan ("Finegan Decl.") ¶33 (ECF No. 86). Godiva possessed email addresses for 8,235,538 potential class members. Finegan Decl. ¶ 17. Accordingly, Kroll Settlement Administration ("Kroll") emailed direct notice to each of these individuals, i.e., approximately 46% of the Class. It then sent another 7,692,027 reminder emails. *Id.* ¶ 20. In conjunction with this direct notice, Kroll implemented a state-of-the-art publication notice plan, which consisted of 35 million media impressions, including on Facebook and Instagram, and the creation of a settlement website and IVR phone support for Class Members to contact if they had any questions about the Settlement or the case. *Id.* ¶¶ 21-25.

5.     The Parties properly and timely notified the appropriate government officials of the Settlement Agreement, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Finegan Decl. ¶ 25. More than ninety days have elapsed since Kroll Settlement Administration ("Kroll"), the Settlement Administrator, served notice pursuant to CAFA, rendering this Order on Final Approval appropriate under 28 U.S.C. § 1715(d).

6.     Messrs. Huang and Lehrer and the State Attorneys General argue that notice was insufficient. The strongest critique argues that notice should have been posted on Godiva's website. While that is an additional method of notice, considering that Godiva has already sent out over 8.2 million emails, with approximately 7.7 million reminder emails, including emails from online sales on the website, requiring supplemental notice on the website would not, in the Court's view, meaningfully increase the claims rate.

7.      The State Attorneys General also argue that the claims rate would have been improved if the Parties had informed "class members of the number of Godiva chocolates they purchased," or, at a minimum, informed class members that they could have used online records to support their claims. The Parties argue that this procedure, of sending copies of receipts from online records, would raise concerns about preferential treatment because it would give class members who made online purchases an advantage over class members who did not. In addition, they argue that the time-consuming and complex procedure would be costly and error-prone and would do little to improve the claims rate. In the Court's view, that procedure would indeed be costly and error prone, considering the lengthy Class Period. As counsel for Godiva points out, the percentage of online purchases is approximately 15 percent, and accordingly, this additional notice would not materially increase the claim rate.

8.      The State Attorneys General also argue that the Parties could have searched the sales records of online retailers—that is, non-Godiva sellers—to identify additional Class Members. Mr. Huang raises a similar complaint about the lack of direct notice to every single Class Member, in particular, to in-store purchasers. The Parties argue that such notice likely would have required a subpoena and likely would raise privacy concerns with respect to that customer data. Plaintiffs cite two examples from the Western District of Missouri and the Middle District of Florida of courts rejecting similar efforts "as difficult, expensive, and essentially fruitless." *Poertner v. Gillette Co.*, 2014 WL 4162771, at *3 (M.D. Fla. Aug. 21, 2014), *aff'd*, 618 F.App'x 624 (11th Cir. 2015); *see also Jones v. Monsanto Co.*, 2021 WL 2426126, at *5 (W.D. Mo. May 13, 2021). Godiva argues that the cases cited by Mr. Huang as examples where third-party subpoenas were used to collect class member information are distinct because they involved manufacturers, not retailers, and those manufacturers had little to no consumer data to begin with,

unlike here. And any consumer data would almost certainly overlap among the third-party retailers, adding to the difficulty of processing and utilizing the consumer data as part of the notice program. In the Court's view, attempting to access third-party retailer information would be an unreasonable effort to demand for this Settlement.

9.      Finally, the State Attorneys General questioned the efficacy of the digital notice campaign. They say they did not see any ads about the settlement when they searched for Godiva-related terms. Godiva reports that the ad campaign ended on January 12, 2022, and the Attorneys General tried to search after the campaign was ended. Thus, the Court rejects this concern.

10.     Mr. Huang objects to the fact that Godiva paid the notice costs, relying on *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156 (1974). But as the Plaintiffs note, *Eisen* involved notice pursuant to Rule 23(c)(2) in the certification context, rather than conditional certification in the settlement context. And the Court notes that in more recent times, it is quite common for defendants to pay notice costs during settlement.

11.     Mr. Huang also argues that the notice was "cheap," but, as the Parties note, they have spent close to a million dollars on the costs of notice and administration (and that number is expected to increase as Kroll has yet to complete the deficiency letter and payment processes)—hardly cheap in anyone's book.

12.     Mr. Lehrer objects that the claims process had an early and arbitrary deadline before the objection and opt-out deadlines. But the point of the staggered deadlines is to allow potential objectors to consider the most current claims data before the objection deadline. In any event, the 120-day period for claims is consistent, and sometimes greater than, the typical claims period for consumer class actions.

13.     Accordingly, the Court finds that the notice procedures were reasonable in this case.

## THE SETTLEMENT CLASS IS CERTIFIED

14.    The Settlement Class is defined as:

All Persons who purchased any Godiva Chocolate Product in the United States during the Class Period. Excluded from the Settlement Class are: (a) Godiva and any of its parents', affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Godiva Chocolate Products, (c) governmental entities, (d) the Court, the Court's immediate family, Court staff, (e) the mediator and her staff and immediate family, (f) counsel of record for the Parties, and their respective law firms, and (g) all Persons who timely and properly exclude themselves from the Settlement Class.

Settlement Agreement ¶ 65.

15.    The Settlement Class is certified because it satisfies the requirements of Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

16.    Rule 23(a) imposes four threshold requirements for class certification: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"), (2) commonality ("there are questions of law or fact common to the class"), (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"), and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class"). Fed. R. Civ. P. 23(a).

17.    Numerosity is met if "the class is so numerous that joinder of all members is impracticable[.]" Fed. R. Civ. P. 23(a)(1). In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Because the Settlement Class consists of several hundred thousand Class Members, the numerosity requirement is satisfied. Supplemental Declaration of James R. Prutsman ("Supp. Prutsman Decl.") ¶ 13 (ECF No. 105).

18.    The commonality requirement under Fed. R. Civ. P. 23(a)(2) examines whether the Class's claims "depend upon a common contention ... capable of classwide resolution" such that

6

"its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). There are clear common questions of law or fact in this case, including whether the challenged representations are likely to have deceived reasonable consumers into believing that the Godiva Chocolate Products are from Belgium. Accordingly, the commonality requirement is satisfied.

19.     The typicality requirement under Rule 23(a)(3) is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009). Here, each Class Members' claims and legal arguments arise out of the same theory of liability—namely, that they were allegedly deceived into believing the Godiva Chocolate Products are sourced from Belgium based on the representations made on the packaging. The same is true for Plaintiffs. Accordingly, the typicality requirement is satisfied.

20.     The adequacy requirement under Fed. R. Civ. P. 23(a)(4) is satisfied if the plaintiff: (1) is represented by counsel who is "qualified, experienced and able to conduct the litigation[;]" and (2) does not possess interests "antagonistic to the interest of other members of the class[.]" *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). Here, Plaintiffs' interests are aligned with those of the Class, and they have provided significant, valuable assistance in the investigation and prosecution of this matter, and helped to bring about this Settlement. Declaration of Steve Hesse ("Hesse Decl.") ¶¶ 3, 5; Declaration of Adam Buxbaum ("Buxbaum Decl.") ¶¶ 3, 5. Plaintiffs are therefore "adequate" class representatives within the meaning of Rule 23(a)(4). *Baudin v. Res. Mktg. Corp.*, No. 1:19-cv-386 (MAD/CFH), 2020 WL 4732083, at *5 (N.D.N.Y. Aug. 13, 2020). Class Counsel is also "adequate" because they have extensive experience in class action litigation and have vigorously pursued these claims throughout this

litigation. Declaration of Timothy J. Peter In Support Of Plaintiffs' Motion For Final Approval and Motion For Attorneys' Fees and Costs and Class Representative Service Awards ("Peter Decl.") ¶¶ 41-44; Declaration of Aubry Wand In Support Of Plaintiffs' Motion For Final Approval and Motion For Attorneys' Fees and Costs and Class Representative Service Awards ("Wand Decl.") ¶¶ 10-15; *see also Vaccaro v. New Source Energy Partners L.P.*, No. 15 CV 8954 (KMW), 2017 WL 6398636, at *3 (S.D.N.Y. Dec. 14, 2017) (adequacy requirement met where class counsel "litigated dozens of class actions in the United States" and recovered substantial monetary relief for class members). Accordingly, the adequacy requirement is satisfied.

21.     To meet the requirements of Rule 23(b)(3), the Court must conclude "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

22.     "As long as a sufficient constellation of common issues binds class members together, variations in the sources and application of a defense will not automatically foreclose class certification" under Rule 23(b)(3). *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotations omitted). Here, the common issue which binds the Class together is whether the packaging of the Godiva Chocolate Products would likely deceive a reasonable consumer into believing the products are from Belgium. This systematic course of conduct, which could be proven through common evidence, overrides any potential individual inquiries relating to proof. *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.*, No. 14-CV-4394 (AJN), 2018 WL 1750595, at *14 (S.D.N.Y. Apr. 11, 2018). Moreover, in the settlement context, the Court need not inquire whether the case, if tried, would present trial management problems. *See Ferrick v. Spotify USA Inc.*, No. 16-cv-8412 (AJN), 2018 WL 2324076, at *2 (S.D.N.Y. May 22, 2018).

23.     Furthermore, a class action is superior to other forms of litigation, as "proceeding individually would be prohibitive due to the minimal recovery." *Seijas v. Republic of Argentina*, 606 F.3d 53, 58 (2d Cir. 2010). Here, the only method to ensure the fair and efficient adjudication of this Action is through a class action, which will allow individual Settlement Class Members to bring together claims that would be economically infeasible to litigate on an individual basis.

24.     Accordingly, the Rule 23(b)(3) predominance requirement is satisfied.

## THE SETTLEMENT IS FINALLY APPROVED

25.     The Court now gives final approval to the Settlement Agreement, and finds that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Class. The monetary consideration provided under the Settlement constitutes fair value given in exchange for the release of the Released Claims against the Released Parties. The Court finds that the consideration to be paid to members of the Settlement Class is reasonable, and in the best interests of the Settlement Class Members, considering, *inter alia*, the total value of their claims compared to (i) the disputed factual and legal circumstances of the Action, (ii) affirmative defenses asserted in the Action, and (iii) the potential risks and likelihood of success of pursuing litigation on the merits. The complex legal and factual posture of this case, the amount of discovery completed, and the fact that the Settlement is the result of arm's-length negotiations between the Parties all support this finding. The Court finds that these facts, in addition to the Court's observations throughout the litigation, demonstrate that there was no collusion present in the reaching of the Settlement Agreement, implicit or otherwise. Further, as explained below, this Court finds that the Settlement Agreement meets all applicable requirements of law, including Federal Rule of Civil Procedure 23(e) and the criteria articulated in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

26.     As the Court noted in its Preliminary Approval Order, a class action settlement is evaluated for procedural and substantive fairness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

27.     Alongside the fairness inquiry, when evaluating the terms of a proposed class settlement, this Court is guided by the factors enumerated in *Grinnell*, 495 F.2d 448, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). These "*Grinnell* factors" are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Id*. at 463 (citations omitted). The Rule 23(e) fairness inquiry requires this Court to consider whether the settlement is "fair, reasonable, and adequate" after considering additional factors[1] which "clarify[] and supplement[] the *Grinnell* factors." *Rosenfeld*, 2021 WL 508339, at *3; *see also In re Payment Card Interchange Fee & Merch. Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. Jan. 28, 2019) (new Rule 23(e) factors "add to, rather than displace, the *Grinnell* factors.").

---

[1] Fed. R. Civ. P 23(e)(2) states in pertinent part that "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

28.     The *Grinnell* and amended Rule 23(e) factors weigh in favor of granting final approval. The Court first explains why the Settlement Agreement is procedurally and substantively fair under Rule 23(e), and then addresses the additional *Grinnell* factors which are not otherwise encompassed by the Rule 23(e) factors.

29.     **Procedural Fairness - Rule 23(e)(2)(A-B).** With respect to the procedural fairness elements, the Court reiterates its findings that the Settlement terms comply with those requirements. "Rule 23(e)(2)(A), which requires adequate representation, and Rule 23(e)(2)(B), which requires arm's-length negotiations, constitute the procedural analysis of the fairness inquiry." *Christine Asia Co., v. Yun Ma*, No. 1:15-md-02631, 2019 WL 5257534, at *9 (S.D.N.Y. Oct. 16, 2019) (internal quotations omitted). The Court finds both elements met and thus, the Settlement procedurally fair. A proposed settlement is presumed fair, reasonable, and adequate if it culminates from "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quotation omitted). Additionally, "the quality of representation is best measured by results." *Goldberger*, 209 F.3d at 55 (quotation omitted). Here, the Settlement was negotiated by counsel experienced in litigating these types of cases through the assistance of an experienced mediator over the course of two full-day mediation sessions and months' worth of subsequent communications. *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012) (involvement of experienced mediator "strong indicator of procedural fairness"). Class Counsel conducted substantial discovery before the mediations and before executing the Settlement Agreement. Peter Decl. ¶ 12. Class Counsel also consulted with experts in the fields of economics and statistics regarding damages, and the chocolate industry, before the mediation sessions. *Id*. ¶¶

11

13-16. Moreover, the amount of Class relief in this Settlement given the nature of the claims at issue is enough to overcome any doubts regarding procedural fairness.

30.    **Substantive Fairness - Rule 23(e)(2)(C-D) and *Grinnell* Factors.** With respect to substantive fairness, the Court also reiterates its preliminary findings that the substantive fairness factors in *Grinnell* have been met. The substantive fairness inquiry of Rule 23, covered under Rule 23(e)(2)(C-D), considers the following: (i): the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; (iv) whether the proposed settlement treats class members equitably relative to each other; and (v) any agreement required to be identified under Rule 23(e)(3).

31.    **Rule 23(e)(2)(C)(i) / *Grinnell* Factors Nos. 1, 4, 5 and 6 - The Costs, Risks, and Delay of Trial and Appeal.** The Court finds that these factors, individually and weighed together, militate in favor of granting final approval of the Settlement. Rule 23(e)(2)(C)'s first factor, the "costs, risks, and delay of trial and appeal, subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Rosenfeld*, 2021 WL 508339, at *5–6 (citing *Payment Card*, 330 F.R.D at 36). Class action lawsuits have a "reputation as being most complex." *Id*. at *5 (internal quotation marks omitted). Indeed, absent the instant Settlement, Plaintiffs would have had to "to survive summary judgment, prevail at trial, and secure an affirmance of their victory on appeal in order to recover damages. Moreover, they would also need to certify and maintain the class, over the [] Defendants' possible opposition." *Id*. Instead, the Parties were able to craft a settlement providing substantial monetary benefits to the Class while avoiding the expense and delay of continued litigation. Courts have consistently held that,

unless the proposed settlement is clearly inadequate, its acceptance and approval are preferable to the continuation of lengthy and expensive litigation with uncertain results. *See Velez v. Novartis Pharm. Corp.*, No. 04 Civ. 09194(CM), 2010 WL 4877852, at *14 (S.D.N.Y. Nov. 30, 2010) ("As federal courts in this Circuit have consistently recognized, litigation inherently involves risks, and the purpose of settlement is to avoid uncertainty."). This case is no exception.

32.     **Rule 23(e)(2)(C)(ii) - Effectiveness of Proposed Method of Distributing Relief.**

Pursuant to Rule 23(e)(2)(C)(ii), the Court should "consider the effectiveness of the parties' "proposed method of distributing relief to the class, including the method of processing class-member claims." *Rosenfeld*, 2021 WL 508339, at *6 (internal quotation marks omitted). "[A] plan of allocation need not be perfect," *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240(CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007), and instead "need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). The plan of allocation here is straightforward and the result of extensive negotiation between highly competent counsel, with the input of the experienced mediator Jill R. Sperber. Under the Settlement, Class Members will each be entitled to a payment of $1.25 per qualifying purchase, up to $15 or $25, depending on whether or not the Class Member has Proof of Purchase. Settlement Agreement ¶ 68 (a)-(b). The Claim Form is written in clear and concise language and could be submitted through the settlement website or Class Members could print and mail the Claim Form to the Settlement Administrator. *Id.* ¶ 70. All Settlement Benefits to Class Members will be in the form of cash payments via a check or electronic payment, whichever option the Settlement Class Member elects. *Id.* ¶¶ 82-83. This procedure is claimant-friendly, efficient, proportional, and reasonable. Therefore, the allocation plan is effective and is "rational and fair, as it treats class

13

members equitably while taking into account variations in the magnitude of their injuries." *Rosenfeld*, 2021 WL 508339, at *6.

33.     Mr. Lehrer objects that relief is not "effectively" distributed. He generally objects to the size of the pot and that this is a claims-made settlement. He raises fears that a substantial number of the claims will be invalid. But the final number of valid claims was over 500,000 and over $7.5 million will be paid to the Class, so these fears do not appear to have been realized. Supp. Prutsman Decl. ¶ 13.

34.     Mr. Lehrer also objects to the *cy pres* provision. First, he objects that funds remaining from uncashed checks and PayPal payments will not be available for a second distribution to class members, and instead will be distributed to a *cy pres* recipient. Second, he objects to the identity of the *cy pres* recipient, Public Justice Foundation ("Public Justice"), because it works on "polarized issues," such as promoting abortion access, fighting against employers' ability to subject employee claims to arbitration, and fighting school dress codes on behalf of non-binary children. While the money can be earmarked for consumer fraud work, the foundation can move money to work on these more controversial issues. Mr. Lehrer argues that using funds that "belong to class members" in this manner violates the First Amendment.

35.     Plaintiffs contend that *cy pres* is appropriate because providing additional compensation to class members would be a windfall. Moreover, it would be economically unfeasible to redistribute unclaimed funds. Plaintiffs estimate that no more than $567,951 will go unclaimed, which would result in approximately a $1.11 to each class member. The Parties argue that it is reasonable for Godiva to retain unclaimed settlement dollars because otherwise "participating class members [would] receive a windfall . . ." The Court agrees.

36.     The next question is whether it would be reasonable to order distribution of the $1.11 to the non-paper claimants. While the Court could order the Settlement Administrator to conduct a second distribution, the administrative costs would outweigh the benefits of such distribution, especially in light of the administration costs already expended. *See In re Visa Check/MasterMoney Antitrust Litig.*, 2011 WL 5029841, at *9 (E.D.N.Y. Oct. 24, 2011) ("An additional distribution in this case would involve prohibitively high administrative costs. Checks that would be sent to class members in connection with such distribution would be *de minimis*. Therefore ... a *cy pres* award is a more appropriate manner by which to dispose of the remaining settlement funds than would be an additional distribution."). The Court agrees.

37.     The next question is whether Public Justice is an appropriate *cy pres* recipient. According to its website, "Public Justice pursues high impact lawsuits to combat social and economic injustice, protect the Earth's sustainability, and challenge predatory corporate conduct and government abuses." *See* publicjustice.net/who-we-are/mission/. In this regard, "Public Justice staff attorneys fight against injustices such as corporations cheating consumers and using the courts to find ways to get away with it, reckless polluters, unscrupulous payday lenders, unjust employers, punitive credit card companies, inhumane government detention centers, dangerous food producers, and more." *See* publicjustice.net/what-we-do/. The Court has not found a case within the Second Circuit approving *cy pres* funds to be distributed to Public Justice. *Dashnaw v. New Balance Athletics, Inc.*, 2018 WL 6168272, at *1 (S.D. Cal. Nov. 26, 2018) is instructive for a court rejecting *cy pres* distribution to Public Justice for false advertising of a "Made in USA" label. In analyzing Public Justice as a *cy pres* recipient, the *Dashnaw* court stated that "although protecting consumers from corporations is one of the areas in which the Public Justice Foundation is active, the settlement provides no assurance that any funds would in fact be used to protect

California consumers from false advertising as opposed to the variety of areas where Public Justice Foundation is active." *Id.* Because plaintiffs in *Dashnaw* did not provide any assurance that a *cy pres* distribution to Public Justice would be limited to "protecting consumers from, or redressing injuries caused by, false advertising," that court rejected plaintiffs' motion for preliminary class certification and settlement approval without prejudice. The Court does note, however, that the *Dashnaw* court ultimately granted *cy pres* distribution to Public Justice. Although not related to false advertising, in *Raffin v. Medicredit, Inc.*, 2018 WL 8621204, at *8 (C.D. Cal. Nov. 30, 2018), the court rejected Public Justice as a *cy pres* recipient, finding that "a *cy pres* award to Public Justice Foundation to advance class action fairness and advocates against binding arbitration, while important, is too remote from the objectives of [the California Invasion of Privacy Act] and this case." Similarly, in *Mansfield v. Southwest Airlines Co.*, 2015 WL 13651284, at *8 (S.D. Cal. Apr. 21, 2015), the court also rejected Public Justice as a *cy pres* recipient, holding that "the relationship between the claims [of violation of California labor laws] asserted, the class and the Public Justice Foundation is too tenuous to meet the requirements of *Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012)."

38.     Here, the Court does not approve Public Justice as the *cy pres* recipient (1) because it engages in controversial, polarizing advocacy, (2) its areas of activity are too remote from the harms alleged in this case, and (3) there is no assurance that the funds will go exclusively to false advertising causes.

39.     Courts use two standards to determine a *cy pres* designee: (1) the "reasonable approximation" standard; and (2) the "next best" standard. *See In re Citigroup*, 199 F.Supp. 3d at 848. The Second Circuit has not yet definitively held which standard applies. *See id.* Under the "reasonable approximation" standard, courts select the *cy pres* designee that "reasonably

approximates" the interests of the class. *See id.* at 849. Under the "next best" standard, the court selects the *cy pres* designee that is "'as near as possible' to the original trust beneficiaries." *Id*. at 850. In *In re Citigroup*, Judge Stein chose the "reasonable approximation" standard, finding it "best preserves the district court's product supervisory powers . . . with respect to the administration and allocation of settlement funds." *Id.* at 852.

40.     Accordingly, the Court ordered the Parties to submit three proposed *cy pres* recipients that would earmark funds to consumer rights and the amelioration of false advertising, which they did on April 4, 2022. The Parties proposed (1) the National Consumer Law Center ("NCLC"), (2) the Center for Science in the Public Interest ("CSPI"), and (3) the National Advertising Division of the Better Business Bureau ("NAD"). The Court has reviewed the declarations submitted from each of these organizations and selects _____ as the *cy pres* recipient in this case, as the work it performs reasonably approximates the interests of the class, is the next best option in lieu of a redistribution to the class, and the organization has earmarked any unclaimed funds to advance consumer rights and the amelioration of false advertising.

41.     The Settlement Agreement notified Class Members that a *cy pres* recipient would receive any unclaimed funds. And in the Settlement Agreement, "*cy pres* recipient" means "Public Justice Foundation, or any other nonprofit organization that may be mutually-agreed upon by the parties and approved by the Court." Accordingly, additional notice regarding the new *cy pres* recipient is not necessary.

42.     **Rule 23(e)(2)(C)(iii) - The Timing and Terms of Class Counsel's Proposed Award of Attorneys' Fees.** The next factor under Rule 23 is the "terms of any proposed award of attorneys' fees, including timing of payment[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the terms

of the Settlement, Class Counsel may submit a Fee Application for an award of attorneys' fees and costs in an amount not to exceed $5,000,000. Godiva shall pay any Fee Award ordered by the Court via wire transfer to Class Counsel not later than ten calendar days following the issuance of an Order granting the Fee Application. The Settlement in not conditioned upon the Court's approval of a specific fee amount, nor does any fee award impact the recovery to the Class, because it is being paid separate from and in addition to the Settlement Benefits to the Class. Settlement Agreement ¶¶ 99-103. The Court finds these terms reasonable under 23(e)(2)(c)(iii), subject to the Court's reduction to the attorneys' fees as explained below.

43.     **Rule 23(e)(2)(C)(iv) - There Are No Agreements Required to Be Identified Under Rule 23(e)(3).** Next, the Court has considered whether there are any other agreements "required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C)(iv). Apart from the Settlement Agreement, there are no such agreements, so this factor supports final approval. Peter Decl. ¶ 23.

44.     **Rule 23(e)(2)(D) - Class Members Are Treated Equitably.** The final Rule 23 inquiry is whether the Settlement Agreement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement applies to all Class Members equally as they are each entitled to receive the same payment based on the number of Godiva Chocolate Products they purchased and whether they have documented Proof of Purchase. *See Carlotti v. ASUS Computer Int'l,* No. 18-CV-03369-DMR, 2019 WL 6134910, at *13 (N.D. Cal. Nov. 19, 2019) (holding that class members were treated equitably from a settlement, even when

those with proof of purchase could recover more). The remaining *Grinnell* factors, discussed below, are independent from the Rule 23 inquiry.[2]

45.     ***Grinnell* Factor No. 2 - Settlement Class Members' Reaction.** Under *Grinnell*, the Court should consider the Class's reaction to the Settlement. After completing the robust, Court-approved notice plan, and although three objections were filed, as well as a letter expressing concerns from certain State Attorneys General, the reaction from the class appears to have been mostly positive. Over 500,000 claims were ultimately filed, and only 18 people submitted valid requests for exclusion. *See* Supp. Prutsman Decl. ¶ 18; *see also Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) ("The fact that the vast majority of class members neither objected nor opted out is a strong indication" of fairness). Accordingly, this *Grinnell* factor is satisfied.

46.     Mr. Huang and the State Attorneys General raise concerns about the claims rate. But the Parties note that the claims rate here is 2.83 percent. Such a rate is "commendable for a large nationwide consumer class action like this one," according to the Plaintiffs. Accordingly, the Court finds that this factor favors the Settlement.

47.     ***Grinnell* Factor No. 3 - The Stage of the Proceedings and the Amount of Discovery Completed Warrants Final Approval.** The next factor considers "whether the parties . . . counsel possessed a record sufficient to permit evaluation of the merits of Plaintiffs' claims, the strengths of the defenses asserted by Defendants, and the value of Plaintiffs' causes of action for purposes of settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *7 (S.D.N.Y. July 21, 2020). The relevant inquiry for this factor is whether

---

[2] These include (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.*, No. MDL 1500, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006*)*. Here, Plaintiffs conducted substantial discovery before the mediations and before executing the Settlement Agreement. Class Counsel also consulted with experts in the fields of economics and statistics regarding damages, and the chocolate industry, before the mediation sessions. Accordingly, this *Grinnell* factor is satisfied.

48.     ***Grinnell* Factor No. 7 - Whether Defendant Can Withstand a Substantially Greater Judgment.** The Court should next consider a defendant's ability to withstand a greater judgment. However, not all of the *Grinnell* factors must be satisfied, and a defendant's ability to withstand a greater judgment, does not, standing alone, suggest that the settlement is unfair. *See Athale v. Sinotech Energy Ltd.*, No. 11 Civ. 05831 (AJN), 2013 WL 11310686, at *4, 6 (S.D.N.Y. Sept. 4, 2013). This factor is either neutral or supports the reasonableness of the Settlement because while Godiva could perhaps withstand a greater judgment, it, like many companies, faced economic hardship during the pandemic. Moreover, Godiva has closed all of its North American brick and mortar stores, further calling into question Godiva's ability to withstand a greater judgment.

49.     ***Grinnell* Factor Nos. 8-9: Range of Reasonableness of Settlement Fund.** The final *Grinnell* factors require the Court to consider both "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Charron v. Wiener*, 731 F.3d 241, 247 (2d Cir. 2013); *see also Payment Card*, 330 F.R.D. at 47-48 (these factors "are often combined for the purposes of analysis."). Here, each Class Member who submits

a timely and valid Claim Form will receive compensation of $1.25 per product, up to an aggregate amount of $15 without Proof of Purchase and $25 with Proof of Purchase. This relief is reasonable when weighed against the damages recoverable assuming Plaintiffs were able to certify a litigation class and then prevail at trial on their claims. In addition, the benefits provided to Settlement Class Members are similar to those approved by other courts in similar geographic origin false advertising class actions. Peter Decl. ¶¶ 52-54.

50.     The State Attorneys General raised the prospect that the capped recovery for Class Members with proof of purchase artificially depressed the claims rate. The Parties contend that the cap is necessary to prevent fraudulent claims and is not uncommon for that reason. They cite *Fitzhenry-Russell v. Coca-Cola Co.*, 2019 WL 6111378, at *2 (N.D. Cal. June 13, 2019) (approving an $80 cap with proof of purchase); *Retta v. Millennium Prods., Inc.*, 2017 WL 5479637, at *2 (C.D. Cal. Aug. 22, 2017) (approving a $60 cap with proof of purchase); *Ferron v. Kraft Heinz Foods Co.*, 2021 WL 2940240, at *4 (S.D. Fla. July 13, 2021) (approving a $25 cap with proof of purchase). The Court finds that the cap here is sufficient, considering, as noted above, the challenges of proving damages at trial. Accordingly, in the Court's view, this is a reasonable negotiated term.

## ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVE SERVICE AWARDS

51.     Plaintiffs request $5,000,000 in attorneys' fees and costs, which shall be paid by Godiva separate and apart from the money made available to satisfy Settlement Benefits to the Class and to pay the Settlement Notice and Administration Costs. After deducting Plaintiffs' litigation costs of $67,835.44, Plaintiffs seek $4,932,164.56 in attorneys' fees. Mr. Huang and Mr. Lehrer object to the amount of the attorneys' fees. For the reasons explained below, the Court awards $67,835.44 in costs and $2,782,164.56 in attorneys' fees to Class Counsel.

52.     Class Counsel in a class action settlement may be entitled to a "reasonable fee." *Goldberger*, 209 F.3d at 47. There are two methods available to the Court to calculate attorneys' fees: the "lodestar" method and the "percentage of the fund" method. *Id.* The Court utilizes the percentage method, as it "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores*, 396 F.3d at 121. The percentage method is also the preferred method in the Second Circuit. *Pantelyat v. Bank of America, N.A.*, No. 16-cv-8964 (AJN), 2019 WL 402854, at *8 (S.D.N.Y. Jan. 31, 2019). However, because the lodestar remains useful as a "cross check on the reasonableness of the requested percentage," *Goldberger*, 209 F.3d at 43 (internal quotation marks omitted), the Court also cross checks the reasonableness of Plaintiffs' fee request based on Class Counsel's lodestar.

53.     **The Court Awards Attorneys' Fees Under the Percentage Method**. Under the percentage method, the court calculates the fee award as some percentage of the funds made available to the Settlement Class. *See Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007). Plaintiffs urge the Court to use the percentage-of-total value method over the lodestar method, and argue that the "total value" of the Settlement is $20,465,096—"(1) the $15 million maximum amount made available to satisfy settlement class member claims, (2) the minimum of $465,096 for settlement notice and administration costs,[3] and (3) the requested $5 million for attorneys' fees and reasonable expenses."

---

[3] Kroll's costs increased to $972,186.74 by the time of the Final Approval Hearing. Supp. Prutsman Decl. ¶ 19.

54.     Under the percentage method used by Plaintiffs, the $5 million fee represents approximately 25 percent of the approximately $20 million total value. However, Plaintiffs' total value method considers the total possible funds—including unclaimed funds—rather than actual benefit conferred on the class. The Court agrees with Plaintiffs that the percentage method is reasonable and appropriate in this case. Counsel point to *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 437 (2d Cir. 2007), in which the Second Circuit held that the "allocation of fees by percentage should . . . be awarded on the basis of the total funds made available." But *Masters* is distinguishable on the ground that the defendant there did not retain the unclaimed portion of the settlement fund like Godiva will under the proposed settlement here. As Judge Pauley observed in *Hart v. BHH LLC*, *Masters* focused on the "benefit achieved for class members," *Hart v. BHH LLC*, 2020 WL 5645984, at *7 (S.D.N.Y. Sept. 22, 2020) (quoting Masters, 473 F.2d at 438), but "any benefit from funds reverted back or never tendered by defendants are purely hypothetical" and "provide no benefit to the class." *Id.* at *19-*20 (S.D.N.Y. Sept. 22, 2020) ("The theoretical benefit [of the settlement fund] dwarfs any real benefit the class receives."). The same is true here. As in *Hart*, "unclaimed funds should not be used when assessing the fee percentage" where only a portion of the total potential settlement has been claimed and the remains would be retained by defendants. *Id.* at *7. Because Godiva will retain any unpaid funds (approximately $7.5 million), approximately half of the purported $15 million benefit is "purely hypothetical."

55.     Applying the actual benefit to the percentage method, the total value of the proposed settlement is $13,459,580.70: ($4,932,164.56 in attorneys' fees, plus $7,555,229.38 in class payments, plus $972,186.74 in settlement notice and administration costs to date). The $5 million attorneys' fees request represents approximately 37 percent of this amount. Mr. Lehrer

urges the Court to award $2.5 million in fees, which would represent approximately 25 percent of $7 million in actual awards, plus approximately $500,000 in notice and administration costs, plus $2.5 million in fees. The Court agrees with Mr. Lehrer that 25 percent of the total value is reasonable and appropriate. However, as just discussed, and using Plaintiffs' most recently provided figures, the total value is $7,555,229.38 in actual class payments, plus $972,186.74 in settlement notice and administration costs to date, plus attorneys' fees. A fee award of $5 million would represent approximately 37 percent of the total value. The Court finds that such a percentage is not reasonably appropriate under the circumstances. Working backward from the 25 percent of the value, the Court finds that a reasonable and appropriate attorneys' fee and costs award is $2,850,000. That is $7,555,229.38 of class payment, plus $972,186.74 in notice costs, and $2,850,000 in fees, which equals $11,337,416.12. Under that calculus, the $2,850,000 fee and costs represents approximately 25 percent of the total value of the Settlement.

56.     The awarded fees are also reasonable under the following *Goldberger* factors: "'(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.'" *Signet*, 2020 WL 4196468, at *18 (quoting *Goldberger*, 209 F.3d at 50).

57.     ***Goldberger* Factor No. 1: Class Counsel's Time and Labor**. As set forth in Class Counsel's declarations, Class Counsel zealously litigated this case on behalf of the Class. The scope of worked performed by Class Counsel was necessary and reasonable for complex class actions of this type. And if the Settlement is approved, Class Counsel will continue to devote considerable time in the future overseeing administration of the Settlement. *In re Facebook, Inc. IPO Sec. and Derivative Litig.*, MDL No. 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9,

2015) (considering class counsel's future efforts to oversee the claims process in awarding a 33% fee). Accordingly, this factor supports the requested fee award.[4]

58.     ***Goldberger* Factor No. 2: The Magnitude and Complexity of the Litigation**. As an initial matter, "[m]ost class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000). The Court finds that Plaintiffs and Class Counsel deftly managed several complex issues, including a federal preemption defense and issues relating to the reasonable consumer standard and damages. The fact that not all of these issues were formally litigated and resolved does not diminish their existence. To the contrary, obtaining this Settlement while avoiding the potential for adverse rulings, speaks to the complexity of the issues involved and Class Counsel's ability to manage them efficiently. Accordingly, this factor supports the requested fee award.

59.     ***Goldberger* Factor No. 3: The Risk of the Litigation**. This factor is often cited as the "first, and most important, *Goldberger factor*." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 361 (E.D.N.Y. 2010) (internal quotation marks omitted). As a general matter, success in contingent litigation of consumer class actions like this one is far from certain. It presents real risks of not only recovering zero fees despite considerable outlays of attorney time, but also the prospect of losing significant advanced out-of-pocket costs. Peter Decl. ¶¶ 35, 38; Wand Decl. ¶¶ 27-28. The Court further recognizes that litigating this case to a favorable classwide judgment presents real risk, as it would likely require Plaintiffs to certify a class, defeat a motion

---

[4] The Court's analysis regarding the lodestar cross check, discussed *infra*, overlaps with this factor. *McGreevy v. Life Alert Emergency Response, Inc.*, 258 F. Supp. 3d 380, 389 (S.D.N.Y. 2017) (when the percentage method is used, the analysis of *Goldberger* Factor No. 1 also serves as a lodestar "cross check" on the reasonableness of the percentage awarded).

for summary judgment, prevail on the merits at trial, and then defend the results on appeal. And even if successful, any payment would not be made for years. Class Counsel decided to pursue this litigation on a full contingency basis in the face of these risks. *Goldberger*, 209 F.3d at 53 ("(o)f course contingency risk . . . must be considered in setting a reasonable fee."); *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132(CM)(GWG), 2014 WL 1883494, at *14 (S.D.N.Y. May 9, 2014) ("The Second Circuit has recognized that the risk associated with a case undertaken on a contingent basis is an important factor in determining an appropriate fee award."). Accordingly, this factor supports the requested fee award.

60.     ***Goldberger* Factor No. 4: The Quality of the Representation**. The "result achieved is a major factor to be considered in making a fee award and in assessing the quality of the representation." *Fleisher v. Phoenix Life Ins. Co*., No. 11-cv-8405 (CM), 2015 WL 10847814, at *21 (S.D.N.Y. Sept. 9, 2015). The excellent result obtained here speaks to the quality of Class Counsel's representation. For one, this Settlement guarantees Settlement Class Members timely payment of amounts commensurate with the risks they faced at trial , including in proving and substantiating their damages stemming from the challenged conduct, while avoiding the inherent uncertainty of an unfavorable ruling. That Class Counsel was able to negotiate this Settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage, is a testament to the skill displayed by Class Counsel. *See In re BioScrip, Inc. Sec. Litig.*, 273 F.Supp.3d at 502 (recognizing that the skill of opposing counsel can be considered under this *Goldberger* factor). Lastly, the efficiency and relative speed of resolution reflects the quality of Class Counsel's representation, and it should not serve as a basis for a downward departure from what is a reasonable percentage fee. *In re Interpublic Sec. Litig.*, No. 02-CV-6527 (DLC), 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26,

2004). Indeed, Class Members will derive a substantial benefit by receiving timely payment under this Settlement. Accordingly, this factor supports the requested fee award.

61.     *Goldberger* **Factor No. 5: The Requested Fee in Relation to the Settlement**. This factor is discussed above.

62.     *Goldberger* **Factor No. 6: Public Policy Considerations**. In awarding attorneys' fees, the Second Circuit "take[s] into account the social and economic value of class actions, and the need to encourage experienced and able counsel to undertake such litigation." *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 399 (S.D.N.Y. 1999). Accordingly, this factor supports the requested fee award.

63.     **The Requested Fee Award is Reasonable Under a Lodestar Cross Check**. The Court also applies a lodestar cross check. As part of the cross check, the lodestar is determined by "multiplying the hours spent by each attorney and paraprofessional . . . by their current hourly rates[.]" *Signet*, 2020 WL 4196468, at *16.

64.     The reasonableness of the $2,850,000 fee and costs award is confirmed by the lodestar method. Class Counsel's lodestar fees are $1,471,214.50 for 2,258.6 hours of work billed. That means that the lodestar multiple is 1.9. Although courts in this district have awarded lodestar multipliers as high as four or five, *Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *8-9 (collecting cases and rejecting a lodestar multiplier of 7.04 and approving a multiplier of 5.65), "a multiplier near 2 should, in most cases, be sufficient compensation," *Lazo v. Kim's Nails at York Ave., Inc.*, 2019 WL 95638, at *3 (S.D.N.Y. Jan. 2, 2019). Mr. Lehrer urges the Court to adopt a multiplier of 1.7, which would provide approximately $2.5 million in fees. He argues this is more in line with multipliers accepted in this court, and he cites *In re Platinum & Palladium Commodities Litig.*, 2015 WL 4560206 at *4 (S.D.N.Y. July 7, 2015) (rejecting a 2.6 multiplier;

applying a 1.9 multiplier). Plaintiffs respond that their time spent on the matter will only increase while responding to objections, overseeing the settlement administration process, and potentially litigation of appeals.

65.     The Court finds that under the circumstances, and given the additional attorney work that may be required, a lodestar multiple of 1.9 is reasonable and appropriate. The Court notes that Class Counsel's time and labor support the $2,850,000 fee. They have expended approximately 2,258.6 hours on this litigation. Class Counsel successfully opposed a motion to dismiss, engaged in discovery, consulted with experts, prepared for class certification, and negotiated a successful settlement. Moreover, the magnitude and complexity of litigation supports the award. Third, the risk of litigation supports the fee, especially considering that class counsel took on the case on a fully contingent basis. Finally, the quality of representation is evinced by Class Counsel's ability to negotiate the settlement against a sophisticated company represented by highly capable counsel, while avoiding adverse rulings that could have reduced Plaintiffs' negotiating leverage.

66.     Looking at additional objections to the reasonableness of the fee award, Messrs. Huang and Lehrer raise a number of additional objections to the fee award, including the possibility that the Parties colluded by negotiating excessively high attorneys' fees while also depressing the claims rate, that the Parties agreed Godiva would not challenge the fee award, and that unclaimed funds would be retained by Godiva. The Court finds that these additional concerns are ameliorated by the fact that (1) the settlement was reached over two mediations with a respected mediator, and (2) the Court has reduced the requested fee by some 43 percent, from 5 million to 2.85 million. In sum, the Court finds that the proposed $5 million fee was excessive, but it agrees that fees of 25

percent of the total value of the Settlement (accounting for the benefit actually obtained) is appropriate. Thus, the Court awards Class Counsel attorneys' fees in the amount of $2,782,164.56.

67.    **Class Counsel's Costs Are Reasonable**. Class Counsel is also entitled to be reimbursed for litigation costs and expenses. *See In re Marsh ERISA Litig.*, 265 F.R.D. 128, 150 (S.D.N.Y. 2010).   Here, Class Counsel has incurred $67,835.44 in expenses. Peter Decl. ¶ 36; Wand Decl. ¶ 29. These costs have not been challenged by the Objectors. The Court finds that these expenses, primarily attributed to expert consulting fees, were typical and reasonable and should be reimbursed to Class Counsel. *See Yang v. Focus Media Holding Ltd.*, No. 11 Civ. 9051(CM)(GWG), 2014 WL 4401280, at *19 (S.D.N.Y. Sept. 4, 2014) (approving mediator fees, expert fees, computer research, photocopying, postage, meals, and court filing fees).

68.    **The Class Representative Service Awards**. Mr. Huang objects to the $5,000 service awards proposed to the individual Plaintiffs, and he argues that the named Plaintiffs should receive zero. The Court disagrees. In examining the reasonableness of service awards, courts consider the personal risk incurred by the named plaintiff, the time and effort expended by the named plaintiff in assisting the prosecution of the litigation, and the ultimate recovery in vindicating statutory rights. *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 187 (2005). Here, the declarations of the named Plaintiffs note that each one spent between 30 and 35 hours on the case. The Court finds, however, that the description of the services was conclusory in that the individuals state that they reviewed the pleadings (although neither is a lawyer), responded to written discovery and document discovery, which, as counsel pointed out at the Final Approval Hearing, had primarily to do with their candy purchases and was perhaps, at least as to the Godiva purchases, the same documentary inquiry that any class member had. The Plaintiffs also said that they understood that their names would be part of the public record in connection with the lawsuit.

29

Being part of a candy lawsuit is not something that one worries about every day. Accordingly, the Court finds that, based on the factors noted in the *Frank* court, a service award of $2,500 to each of the named Plaintiffs is appropriate here. And that is particularly appropriate in light of the *de minimis* recovery by the members of the Class.

### ARNTZEN, LEHRER, AND HUANG OBJECTIONS AND CONCERNS FROM STATE ATTORNEYS GENERAL

69.     Plaintiffs argue that Mr. Lehrer lacks standing because he did not submit a valid Claim Form. The Court will exercise its equitable power to recognize the claim and the Objection filed by Mr. Lehrer, finding that permitting it will not prejudice any party.

70.     Plaintiffs also argue that Mr. Huang, and Ms. Arntzen, lack standing. Because the Court has an independent obligation to determine whether the Settlement is fair, reasonable and adequate, it need not rule on the specific objections to standing, but considers the substance of the Objections as the Court deems appropriate.

71.     The Court overrules the Arnzten Objection because she articulates no grounds under which she will be affected by this Settlement, and moreover, her Objection regarding the creation of a separate settlement fund is predicated on a theory of liability unrelated to the issues in this case.

72.     In sum, the Court has considered the arguments made by all of the Objectors, and the concerns raised by the State Attorneys General, and overrules any arguments made by them to the extent they are inconsistent with the findings of fact and conclusions of law as set forth in with this Order.

### CONCLUSION

73.     Accordingly, the Court finds that the Settlement is fair, reasonable, and adequate.

74.     The Settlement is hereby finally approved in all respects, and the Court certifies the following Settlement Class:

> All Persons who purchased any Godiva Chocolate Product in the United States during the Class Period.

> Excluded from the Settlement Class are: (a) Godiva and any of its parents', affiliates', or subsidiaries' employees, officers and directors, (b) distributors, retailers or re-sellers of Godiva Chocolate Products, (c) governmental entities, (d) the Court, the Court's immediate family, Court staff; (e) the mediator and her staff and immediate family; (f) counsel of record for the Parties, and their respective law firms; and (g) all Persons who timely and properly exclude themselves from the Settlement Class.

> The Class Period is from January 31, 2015 through October 26, 2021.

> Godiva Chocolate Product means any product manufactured and sold by Godiva, or sold under the Godiva brand, which contains chocolate.

75.     The Court appoints Plaintiffs as representatives of the Class and Faruqi & Faruqi LLP and the Wand Law Firm, P.C. as counsel for the Class.

76.     The Parties are hereby directed to further implement the Settlement Agreement according to its terms and provisions consistent with this Order. The Settlement Agreement is hereby incorporated into this Final Approval Order in full and shall have the full force of an Order of this Court.

77.     Kroll is authorized and directed to issue Settlement Benefits to Settlement Class Members who submitted timely and valid Claim Forms in accordance with the terms of the Settlement Agreement. Any funds that are validly claimed but not negotiated by Settlement Class Members within the timeframe set forth in the Settlement Agreement shall be paid to _____.

78.     The Court approves and awards: (1) attorneys' fees and expenses in the amount of $2,850,000, and (2) a Class Representative Service Award of $2,500 to each of the two named

Plaintiffs. These payments shall be paid by Godiva to Plaintiffs and Class Counsel in accordance with the terms of the Settlement Agreement.

79.     Upon the Effective Date of the Settlement, Releasing Parties (i.e., Plaintiffs and all Settlement Class Members who did not submit a valid and timely Request for Exclusion) shall release the following claims against Godiva and the other Released Parties:

> Any claim, cross-claim, liability, right, demand, suit, matter, obligation, damage, restitution, disgorgement, loss or cost, attorneys' fee, cost or expense, action or cause of action, of every kind and description that the Releasing Party had or has, including assigned claims, whether in arbitration, administrative, or judicial proceedings, whether as individual claims or as claims asserted on a class basis or on behalf of the general public against any of the Released Parties that are based on, arise out of, or relate to the allegations or claims in the Action, that the Godiva Chocolate Products were misleadingly marketed or sold, or that relate to the labeling and marketing of the Godiva Chocolate Products. Excluded from the Released Claims is any claim for alleged bodily injuries arising out of use of the Godiva Chocolate Products.

80.     The Released Claims are limited to claims that are based on, arise out of, or relate to the allegations or claims asserted in this Action – i.e., namely, that the Products have been promoted, labeled, marketed, or sold under false or deceptive country of origin claims or related to the "Belgium 1926" claim. Peter Decl. ¶ 50, Ex. E.

81.     With respect to all Released Claims, the Parties have waived and relinquished to the fullest extent permitted by law (a) the provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY

and (b) any law of any state or territory of the United States, federal law, or principle of common law, or of international or foreign law, that is similar, comparable or equivalent to Section 1542 of the California Civil Code.

82.     Upon the Effective Date of the Settlement, and the Final Judgment to be entered hereon, the above release of claims and the Settlement Agreement will be binding on, and will have *res judicata* and preclusive effect on, all pending and future lawsuits or other proceedings maintained by or on behalf of the Releasing Parties. All Releasing Parties are hereby permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in any lawsuit or other action in any jurisdiction based on or arising out of any of the Released Claims.

83.     The 18 Persons who have submitted valid and timely Requests for Exclusion listed in Exhibit A to the Supplemental Declaration of James R. Prutsman (ECF No. 105) are excluded from the Settlement Class and are not bound by this Order or the Final Judgment.

84.     This Final Approval Order, the Final Judgment to be entered hereon, the Settlement Agreement, and all acts, statements, documents or proceedings relating to the Settlement are not, and shall not be construed as, used as, or deemed to be evidence of, an admission by or against Godiva of any fault, wrongdoing, or liability on the part of Godiva or of the validity for litigation of any claims that have been, or could have been, asserted in the Action. This Order, the Settlement or any such communications shall not be offered or received in evidence in any action of proceeding, or be used in any way as an admission or concession or evidence of any liability or wrongdoing of any nature or that Plaintiffs, any Settlement Class Member, or any other person has suffered any damage; provided, however, that the Settlement, this Final Approval Order and the Final Judgment to be entered hereon, may be filed in any action by Godiva or Settlement Class Member seeking to enforce the Settlement or the Final Judgment by injunctive or other relief, or to assert defenses including, but not limited to, *res judicata*, collateral estoppel, release, good faith settlement, or any theory of claim preclusion or issue preclusion or similar defense or

counterclaim. The Settlement's terms shall be forever binding on, and shall have *res judicata* and preclusive effect in, all pending and future lawsuits or other proceedings as to Released Claims and other prohibitions set forth in this Final Approval Order that are maintained by, or on behalf of, the Releasing Parties or any other person subject to the provisions of this Order.

85.     Upon the Effective Date of this Final Approval Order, and the Final Judgment to be entered hereon, this Action shall be dismissed on the merits and with prejudice.

86.     Without affecting the finality of this Final Approval Order, and the Final Judgment to be entered hereon, for purposes of appeal, Court shall retain jurisdiction over all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement.

**IT IS SO ORDERED.**

DATED: _____           _____
                                   Honorable Loretta A. Preska
                                   United States District Judge