**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVE HESSE and ADAM BUXBAUM, et al.,<br><br>　　　　*Plaintiffs*<br><br>v.<br><br>GODIVA CHOCOLATIER, INC.,<br>　　　　*Defendants*. | No. 1:19-cv-0972-LAP<br><br>Fed. R. Civ. Proc. 23(e) |

**OBJECTOR SHIYANG HUANG'S REPLY FOR AN OBJECTOR AWARD**

**REPLY BRIEF IN SUPPORT OF MOTION FOR OBJECTOR AWARD**

As stated earlier, Huang will not sugar-coat his inadvertent but avoidable mistake: He apologizes that he mistakenly only recalled Judge Nathan's chamber rules, but failed to be fully compliant to this Court's chamber rules on pre-motion conferences. *See generally* Dkt. No. 139.

But Plaintiffs' Counsel should not get a chance to sugar-coat their fiduciary breaches to class members, after they sought $5 million in fees with largely "hypothetical" class recovery. Further, Plaintiffs even admitted Huang's objections succeeded partially to justify some award. Opp. at 4 (claiming the Court overruled a "majority of arguments" but agreed with a *minority* of his arguments). All in all, Plaintiffs should not succeed in denying objectors of awards permissible under Rule 23 committee notes—2018 amendment, solely by segregating class relief with their fee award, so that class members got nothing more from $2.15 million that GODIVA was willing to pay. Had Plaintiffs not committed the two offenses, Huang needed not object:

- *First,* Plaintiffs misled Objectors with "raw data" that wildly differed from actual numbers, when **Plaintiffs' actual numbers only came 3 weeks <u>after</u> objection deadline**. *See* Mot. at 2, 6-7. Thanks to Plaintiffs' faulty estimates under an intentional schedule to blindfold objectors, the Class relief went from about $5 million (near objection deadline) to nearly $7.5 million after claim counts doubled in days. *See ibid.*

- *Second,* Plaintiffs insisted to base their fee petition on "hypothetical" recovery that the Class was never getting, triggering the Rule 23(e)(2) problems until this Court's order reduced Plaintiffs' $5 million fee request by over $2 million to "ameliorate[]" the inequities between counsel's fee award and actual class recovery . *See* Dkt. 135 at 23, 28.

1

Regrettably, the rest of Plaintiffs opposition is predominantly frivolous.[1] Huang's reply thus focuses on Plaintiffs' the most problematic parts of their misrepresentations.

First, Plaintiffs faults Huang for making "duplicative" objections; and for doing so *before* Objector Lehrer. How could Huang "duplicat[e]" Lehrer *before* Lehrer filed his?! *Compare* **Huang Obj., Dkt. 92** (**Feb. 28, 2022**) *with* **Lehrer Obj., Dkts. 93-97** (**Mar. 7, 2022**). Even if one generously assumes duplication occurred (which is itself doubtful), common sense shows that Plaintiffs' claim (that Huang copycatted Lehrer *ex ante*), as an order-of-operations matter, is wholly frivolous. *Cf. Saucillo v. Peck*, No. 20-55119, 25 F.4th 1118 (9th Cir. 2022) (Huang "need[s] not be an oracle and predict" that Lehrer *might* copy after him). Even when Huang filed objections after another experienced objector attorney, a Chief District Judge rejected Plaintiffs' exact claim here. *In re Optical Disk Drive Prods. Antitrust Litig.,* No. 3:10-md-2143, Dkt. 3067 at 2 (N.D. Cal. Oct. 18, 2021) (granting Huang an objector award because he "did not merely ride on [another attorney's] coattails, or parrot his arguments. Rather, Huang conducted his own research and analysis, which he presented articulately and, for the most part, respectfully.")

Second, Plaintiffs sells a hyperbole that Huang "mocked" NAD with a *courtesy copy* of this Court's final order, and, *as a courtesy*, previewed the only part that NAD likely cared to know—"Please find attached final order today, which did not include any *cy pres* award to your firm/division." Dkt. 138-3 at 2. How was it "mocking?!" Only Plaintiffs could twist it that way.

---

[1] Huang already preemptively replied to Plaintiffs' opposition arguing that Huang created "zero benefit" by Plaintiffs' design. **Mot. at 2, 6-7.** Huang also preemptively highlighted that Plaintiffs misled objectors by providing "raw data" that wildly differs from actual data. **Mot. 6 n.4.**

Plaintiffs' hyperboles went on and on. They next insisted their hopeless theory that Objectors all lack standing to challenge anything; not even *Berni v. Barilla, S.p.A.,* 964 F.3d 141 (2d Cir. 2020) could support their position. Worse, Model R. of Prof'l Conduct 3.3(a)(2) says, "A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel." Plaintiffs failed to ever discuss *Berni,* until now. Although a circuit split exists and Huang did not find binding Second Circuit law on point, multiple courts of appeals held that "if [Plaintiffs'] counsel knowingly concealed dispositive adverse authority it engaged in professional misconduct." *In re Hendrix*, 986 F.2d 195 (7th Cir. 1993) (citing ABA Model R. of Prof'l Conduct 3.3(a)(3) (1983)); *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346 (Fed. Cir. 2003); *United States v. Stringfellow*, 911 F.2d 225, 227 (9th Cir. 1990).

Plaintiffs were so short of reasons to next load up irrelevant *ad hominem*. To start, they copied *ad hominem* from other class counsels (who lost $18 million fees to class members due to Huang's advocacy; no wonder they are resentful of Huang), which the presiding court ignored. Plaintiffs' claim contradicts Huang's consent to allow Ms. Akinaka to present argument as a female junior attorney here: under Plaintiffs' made-up logic, Huang predictably would oppose her role and force opposing counsel to swap their sole speaker overnight. *But that never happened*, and Plaintiffs' copy-over in this case are merely creating distractions out of fictions.[2]

---

[2] Copycatting other's *ad hominem* was bad enough; but the *Optical Disk* court did not even rule on the *ad hominem* that Plaintiffs here cited. *See Optical Disk,* No. 3:10-md-2143-RS, Dkt. 3087 (recognizing that Huang contributed to retrieving more information). Plaintiffs also watered

3

Fifth, Plaintiffs cites some States' rules claiming that Huang's award is akin to "sharing fees" with them. Had Plaintiffs been so faithful to the rules, they would not have unloaded 50 pages of reply briefs at Objectors a week before fairness hearing, or asked for a blindfold-objectors schedule for them to seek $5 million fees. But sharing fees with their client? This is not. "Good-faith objections can assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance under Rule 23(h)." *Rule 23 Advisory Committee Notes—2018 Amendment.* Huang is obviously adverse to Plaintiffs in this motion, and they obvious know that. Thus, it is far from "sharing" fees; Huang requested an order to forfeit a part of Plaintiffs' fee, and use that to fund an award to an objector for calling out Plaintiffs' fiduciary failures while representing a class under Fed. R. Civ. Proc. 23 *et seq.*

Sixth, Plaintiffs try to stir confusion between the **"service award"** that Huang opposed, from **"objector awards"** that Huang advocated. Plaintiffs' patently remarkable inability to distinguish the two undermines themselves enough—it is the same sort of surprises as Plaintiffs once e-mailed an argument to Huang that a Federal Appendix case is a reported case and thus not unpublished. *United States v. Marchena-Silvestre*, 802 F.3d 196, 203 (1st Cir. 2015) ("you not only know it's wrong, but it causes you to wonder about everything you heard before.").

But nevertheless, Huang discusses why these two concepts are unrelated to each other. Such stark differences has no occasion for judicial estoppel that Plaintiffs argued for.

---

down Huang's prior results with only "some basis to conclude Mr. Huang's played a role in increasing the fund to the class by nearly $22 million" in *Optical Disk*. No, the *Optical Disk* court held that Huang would lead to the *same result even if nobody else objected*. *See* Mot. 5.

1. A "**service award**" paid to class representatives ordinarily **reduces class members' available recovery** in any common-fund situation, beyond "reasonable" attorney's fee stated under Rule 23(h). *See Muransky v. Godiva Chocolatiers, Inc.,* 922 F.3d 1175, 1197 n.10 *vac'd for en banc rehearing*, 939 F.3d 1278 (11th Cir. 2019) ("incentive award of $10,000 resulted in a reduction of about 21 cents in the recovery of the class members"). Such award is a part of class's "common fund", even when such fund is stipulated to be paid separately by Defendants under *Manual for Complex Litig.* § 21.75 (4th ed. 2008). *See ibid.* ("If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees ... the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class."); *In re GM Trucks*, 55 F.3d 768, 821 (3d Cir. 1995) ("private agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."). Multiple circuits agree that settlement relief to the Class and payments of attorney's fee, costs and expenses are a "package deal" altogether. *Briseno*, 998 F.3d at 1023 n.1 (indirect citing *Johnston v. Comerica Mortg. Corp.,* 83 F.3d 241, 246 (8th Cir. 1996)); *Pearson v. NBTY Inc.,* 772 F.3d 778, 786 (7th Cir. 2014).

2. Huang's requested **objector award**, however, ***will not reduce class recovery by a single penny.*** Because *Plaintiffs caused* the blindfolded schedule before objection deadline, and *Plaintiffs* sought the improper $5 million fee award with "hypothetical" relief, Plaintiffs must fund such award as multiple courts has held as a prevailing standard for objector awards. That is why the common-fund doctrine originated from the concepts of *equity*: Huang *equitably* asked class counsel to fund any court-ordered awards: their insistence to demand $5 million out of largely "hypothetical" class relief was the single core cause for Huang

5

to object in this case. Further, it would be patently unfair for objectors to bill class members solely because Class's supposedly-fiduciary class counsel needed objectors to keep them honest. *See* Mot. at 7 & n.7 (collecting numerous authorities). Huang did not mirror named plaintiffs' service award request: his request did not ask class members to lose even a single penny.

Moreover, awards to objectors are permissible under Rule 23, because it never said *pro se* objectors are entitled to *absolutely nothing* even if they advocated any successful objections. No court has held that. Indeed, multiple circuits recognized lack of incentives for class members to object for little *pro rata* benefit, and *Rule 23 committee notes—2018 amendment* encouraged "Good-faith objections [to] assist the court in evaluating a proposal under Rule 23(e)(2). It is legitimate for an objector to seek payment for providing such assistance under Rule 23(h)."

Lastly, Plaintiffs complain that Huang has not disclosed any charity recipient in mind; this is one more meritless argument: **class counsel's *cy pres* proposal is distributing class members' money** and is thus held to a far stricter standard that multiple circuits published opinions and Supreme Court even granted certiorari to review. *Frank v. Gaos,* 139 S. Ct. 1041 (2019). In stark comparison, **Huang's willingness to donate any of *his* court-ordered award** is a whole different matter of discretion to himself. Plaintiffs apparently cannot even distinguish these two wildly different premises, and the rest of their opposition brief truly speaks for itself.

## CONCLUSION

Plaintiffs' opposition should be rejected. Huang's motion should be granted.

Dated: May 2, 2022                                      Respectfully Submitted,

Shiyang Huang
/S/ SHIYANG HUANG
2800 SW Engler Ct.
Topeka, KS 66614
314-669-1858
defectivesettlement@gmail.com

**CERTIFICATE OF COMPLIANCE TO S.D.N.Y. LOCAL RULE 11.1, AND, COMPLIANCE TO CHAMBER RULES OF HONORABLE JUDGE PRESKA**

I hereby certify that this document is created on a 12-point or larger font, and no more than 25 pages as a main memorandum, or no more than 10 pages as reply.

/s/ Shiyang Huang

**CERTIFICATE OF SERVICE**

I hereby certify that on May 2, 2022, I filed the foregoing paper with this Court, and ECF will notify all participants in the case.

/s/ Shiyang Huang