PERKINS COIE

1888 Century Park East
Suite 1700
Los Angeles, CA 90067-1721

T +1.310.788.9900
F +1.310.788.3399
PerkinsCoie.com

December 16, 2022

David T. Biderman
DBiderman@perkinscoie.com
D. +1.415.344.7003
F. +1.310.843.1242

Hon. Loretta A. Preska
U.S. District Court for the Southern District of New York
500 Pearl St., Courtroom 12A
New York, NY 10007

Re: *Hesse v. Godiva Chocolatier, Inc.,* No. 1:19-cv-0972-LAP
   Statement of Godiva Chocolatier, Inc. ("Godiva") in Advance of Status Conference

Dear Judge Preska:

This letter sets forth the position of Defendant Godiva Chocolatier, Inc. ("Godiva") in advance of the Status Conference scheduled on December 20, 2022.

**I.   FACTUAL BACKGROUND**
**A.   The Court Granted Final Approval to the Settlement Agreement.**

The Court granted Final Approval of the Class Settlement in this matter as of July 1, 2022. *See* Dkt. No. 144. Among other things, this Final Approval Order expressly incorporated the Class Action Settlement Agreement and specified that the Agreement had the full force and effect as a Court Order. Final Approval Order, Dkt. No. 135, ¶ 76. No appeal was taken.

In support of the Motion for Final Approval, the Settlement Administrator ("Kroll") filed a declaration reporting "currently approved" claims and reporting claim totals "as of March 21, 2022." Supplemental Declaration of Jim Prutsman, Dkt. No. 105 ("Prutsman Decl.") *Id.* ¶¶ 11-17. Subsequent to Final Approval, Kroll, on its own initiative and consistent with its obligations under the Settlement Agreement, continued to review approved claims to ensure that they were valid. **Exhibit A** summarizes the claims figures following Kroll's review. Among other things, Kroll discovered that a bot stemming from a foreign country had been used to manufacture fraudulent claims. Kroll learned of these fraudulent claims because this same type of fraud (which Kroll did

not know about when it initially approved the claims) had occurred in another settlement it was administering, prompting Kroll to re-review certain of the approved claims in this matter. Kroll then identified that the same fraud had occurred in this matter, informed the Parties, and adjusted the number of claims that were approved to be paid because of this fraud and other indicia of fraudulent claims, such as address and payment duplication. *See* Settlement Agreement, Dkt. No. 67-1, ¶ 75 (obligating Kroll to "ensure payment of only legitimate claims"). Kroll's adjustment resulted in a decrease of valid claims from 509,953 claims valued at $7,555,229.38 (per the March 21, 2022 Prutsman Declaration) to 435,230 valid claims valued at $6,294,760.00.

After being informed of Kroll's findings, Godiva requested the Administrator to undertake a final, limited quality control check to ensure that the Administrator was confident in the revised claim numbers. Contrary to Plaintiffs' assertion in their Request for a Status Conference ("Request"), Dkt. No. 148, dated November 10, 2022, this quality check was the only review that Godiva asked Kroll to perform, and it was limited in nature, taking only approximately twenty staff hours and costing less than $5,000 to perform. This additional check has since been completed and Godiva understands that it resulted in confirmation of the numbers Kroll provided, namely 435,230 valid claims valued at $6,294,760.00.

  **B. Meanwhile, The Parties Discussed a Payment Schedule.**

When the Plaintiffs filed their Request, the Parties were engaged in discussions before Mediator Jill Sperber concerning a revised schedule allowing Godiva to fully fund the Settlement Benefits (as defined in the Settlement Agreement) for the Settlement Class Members in payments over time. Plaintiffs agreed to the revised payment schedule but there was disagreement over two aspects of the stipulation: (i) the overall amount of Settlement Benefits given the fraud Kroll

identified and (ii) interest to be assessed for any missed payments. Even though no agreement was memorialized, Godiva has funded the Settlement Benefits payment in accordance with the timeline agreed, included here as **Exhibit B,** and is current with that schedule.

**II.     GODIVA'S POSITION**
   **A.     The Settlement Agreement Requires That Only Valid Claims Be Paid.**

Godiva's position is simple – only valid claims should be paid. This position is consistent with common sense, due process, and the terms of the Court-approved Settlement Agreement. Plaintiffs' argument that Godiva is obligated to pay the value of claims originally identified by Kroll for payment but subsequently found to be fraudulent lacks foundation. Nothing in the Settlement Agreement obligates Godiva to pay for the value of fraudulent claims; in fact, Plaintiffs' position is in direct contradiction to the terms of the Settlement and is inappropriate.

First, the Settlement Agreement itself expressly forecloses Plaintiffs' position. Under the Agreement, Godiva is not obligated to make any payment for claims that "are initially determined to be valid, but are later discovered to be fraudulent." Settlement Agreement ¶ 76. The Settlement Agreement contains no temporal limitation on Kroll's obligation to "ensure payment of only legitimate claims," Settlement Agreement ¶ 75, and Kroll's declaration in support of Final Approval plainly demonstrates that it had not yet completed its claims review. *See* Prutsman Decl. *Id.* ¶¶ 11-17 (discussing "currently approved" claims and reported claim totals "as of March 21, 2022"). The Administrator acted pursuant to its continuing obligation to ensure payment of only legitimate claims and, on its own initiative, undertook a review of claims, as described above.

The Settlement Agreement also established caps on the amount that class members could obtain and established a *cy pres* to receive legitimate but unclaimed funds. Settlement Agreement

¶¶ 68.d, 75. There is no basis whatsoever under the Settlement Agreement to require Godiva to pay fraudulent claims simply because Kroll did not identify the fraud before Final Approval, or to assign the value of fraudulent claims either *pro rata* to class members holding legitimate claims or to the *cy pres*. Plaintiffs are asking the Court to impose a settlement that was never entered into or approved.

Second, Plaintiffs' current position contradicts what they represented to the Court at Final Approval, where they claimed additional payments for funds Godiva was to retain would represent a "windfall." Final Approval Order ¶ 35 ("The Parties argue that it is reasonable for Godiva to retain unclaimed settlement dollars because otherwise 'participating class members [would] receive a windfall . . .' The Court agrees.").

Finally, Plaintiffs' position violates common sense. Plaintiffs are asking Godiva to pay the value of claims Kroll determined to be fraudulent. In other words, Plaintiffs are requesting the Court order payment for fraud and that simply does not make sense.

**B.      Plaintiffs' Insistence on Godiva's Payment of Interest is Moot.**

Plaintiffs insist that Godiva pay penalties on missed payments in the form of interest. They argue that Godiva must be subject to penalties if they miss payment dates in the as-yet unexecuted agreement regarding the payment schedule. Godiva is current with this schedule. Plaintiffs have no basis to argue that Godiva should pay interest on payments it has made or on the value of claims Kroll has identified as fraudulent.

**C.      Plaintiffs' Independent Audit Is Inappropriate and Without Authority.**

Godiva further asks the Court to direct Plaintiffs, specifically Class Counsel, to (i)

immediately cease its separate review of Kroll's claim file and (ii) defer to the Settlement Agreement as it relates to Kroll's authority to identify valid and legitimate claims for payment.

In the weeks after Plaintiffs filed their Request, Plaintiffs have insisted that Kroll hand over its work product so that Plaintiffs can do their own audit of all claims received (more than 829,000 claims). Plaintiffs have repeatedly emailed and called Kroll for this claims file, despite the Settlement Agreement's clear language that Kroll is the "final decision maker on the validity of any claim." *Id*. ¶ 80. Instead, Plaintiffs seek to re-write the Settlement Agreement and would like to determine on their own who is eligible to receive benefits under the Settlement.

Contrary to Plaintiffs' assertion in its Request, Godiva has not, and will not, be excluding any claims from payment that the Administrator determines to be legitimate, and that the Settlement Agreement obligates Godiva to pay. Godiva has done nothing to reduce or exclude any claim that Kroll has determined to be valid. While all Parties should agree that only legitimate, non-fraudulent claims should be paid, Plaintiffs request that Godiva pay the value of claims that the Administrator has unequivocally deemed to be fraudulent. Not only does that offend common sense and due process, but it is also directly contrary to the approved Settlement Agreement. *See* Settlement Agreement ¶¶ 76, 80.

At bottom, Kroll acted swiftly and appropriately on its own initiative to confirm the validity of initially approved claims, as required by the Settlement Agreement. Unhappy with this process, Plaintiffs seek to reverse Kroll's findings, and determine who in Plaintiffs' view should obtain benefits under the Settlement. That is inappropriate, and this Court should so inform the Plaintiffs.

Sincerely,

**PERKINS COIE LLP**

/s/  *David T. Biderman*
David T. Biderman (Admitted *Pro Hac Vice*)
1888 Century Park East
Suite 1700
Los Angeles, California 90067-1721
Phone: 310.788.9900
Fax: 310.788.3399

Dennis C. Hopkins
1155 Avenue of the Americas, 22nd Floor
New York, NY  10036-2711
dhopkins@perkinscoie.com
Phone:  212.262.6900
Fax:  212.977.1649

Thomas J. Tobin
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
ttobin@perkinscoie.com
Phone:  206.359.8000
Fax:  206.359.9000

*Attorneys for Defendant*
*Godiva Chocolatier, Inc.*

## EXHIBIT A

|  | **Claims Identified by Kroll for Potential Payment of Settlement Benefits** | **Monetary Value of Claims Identified by Kroll for Potential Payment of Settlement Benefits** |
|---|---|---|
| Totals as of March 21, 2022 (Supplemental Declaration of James Prutsman, Dkt. No. 105) | 509,953 Claims | $7,555,229.38 |
| Current Totals (Following Kroll's review of claims and limited quality control check) | 435,230 Claims | $$6,294,760.00 |

## EXHIBIT B

| Godiva Pay Date to Kroll To Fund Settlement Benefits | Amount |
|---|---|
| 10/31/2022 | $621,770.00 |
| 11/30/2022 | $787,355.00 |
| 12/31/2022 | $2,002,237.50 |
| 1/20/2023 | The remainder of the settlement payments to the Settlement Class. |
| 1/20/2023 | Plaintiffs Hesse and Buxbaum Incentive Awards ($5,000 Total). |